UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
SOUTHERN DIVISION

ROCK SOUND COMMUNICATIONS CORP.,                    CASE NO.:

    Plaintiff,

vs.                                                 **COMPLAINT FOR
                                                    INJUNCTIVE RELIEF
                                                    AND DECLARATORY
ATLAS COMMUNICATIONS, LTD.                          JUDGMENT**

    Defendant.

_____/

    Plaintiff, ROCK SOUND COMMUNICATIONS CORP. ("Rock Sound") hereby files

this Complaint against Defendant, ATLAS COMMUNICATIONS, LTD. ("Atlas"), pursuant to

Rule 5.1 of the Local Rules of the United States District Court for the Southern District of

Florida. In support, Rock Sound states as follows:

## PARTIES AND JURISDICTION

    1.    Plaintiff Rock Sound is a corporation organized and existing under the laws of

Delaware, with its principle place of business in Florida. Rock Sound's principle address is 1909

Tyler Street, Hollywood, Florida, 33020.

    2.    Defendant Atlas is a corporation organized and existing under the laws of

Pennsylvania, with a principle address of 482 Norristown Road, Blue Bell, Pennsylvania, 19422.

    3.    Rock Sound is seeking injunctive relief against Atlas.

    4.    Jurisdiction over this action is proper pursuant to 28 U.S.C. § 1332.



5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2), as the events giving rise to this claim substantially occurred in the Southern District of Florida.

## FACTUAL ALLEGATIONS

6.     Rock Sound is a recently formed company which provides telephone card services to the general public and, concomitantly with that service, provides telephone carrier service for the users of that card. Specifically, Rock Sound sells prepaid telephone cards to the general public and provides the customers with long distance service through the use of these cards.

7.     Rock Sound became an operating company on January 7, 2000, upon the acquisition of substantially all of the assets of two other corporations—U.S. Digital, Inc. ("U.S. Digital") and Telecard Dispensing Corporation ("Telecard"), both of which are Florida corporations.

8.     In order to provide its customers with long distance service through the use of the prepaid cards, Rock Sound must enter into contracts with long distance carriers, in addition to providing its own switching facilities. Consequently, when the holder of the card uses the card, they call an 800 number, and that number then goes to a switch, which is owned by Rock Sound. Rock Sound then, in turn, routes the call to an appropriate long distance and terminating carrier.

9.     Rock Sound, as is customary in this industry, does not enter into contracts directly with long distance carriers. Rather, Rock Sound contracts directly with companies called aggregators, who are responsible for obtaining the necessary long distance carrier contracts.

10.    Atlas is engaged in the business of being an aggregator. Consequently, it is Atlas' job to obtain the lowest per minute long distance rate from long distance carriers to pass on to the service carrier of the prepaid phone cards.

**Zuckerman, Spaeder, Taylor & Evans, LLP**

11.     Prior to Rock Sound's acquisition of U.S. Digital's assets, U.S. Digital had an existing contract with Atlas to use Atlas as its aggregator. Atlas charges for its services on a per minute charge. According to the contract between Atlas and U.S. Digital, Atlas was charging U.S. Digital .0415 cents per minute. However, Atlas represented to U.S. Digital that Atlas was going to be able to substantially reduce that rate because of new contracts with various carriers. Atlas specifically represented that it would be obtaining a lower rate from the long distance carrier, Quest Communications Corporation ("Quest"). Based upon that representation, U.S. Digital made Atlas its exclusive aggregator and became wholly reliant on Atlas.

12.     Atlas also specifically represented to Rock Sound prior to Rock Sound's acquisition of U.S. Digital's assets, that Atlas would be substantially reducing the rates and that this reduction would go into effect immediately after Rock Sound's closing with U.S. Digital. Rock Sound went through with the closing based upon Atlas' representation regarding the lower phone rates. Moreover, Atlas' representation regarding the lower phone rates was a substantial and critical part of Rock Sound's decision to acquire substantially all of the assets of U.S. Digital and Telecard.

13.     At all times pertinent hereto, Atlas knew that Rock Sound was acquiring the assets of U.S. Digital and Telecard based on the new Quest rates and further understood that Rock Sound was entering this business solely because of the new Quest rates. Atlas again represented on Thursday, January, 6, 2000, that the new Quest rate would be put into effect at the time Rock Sound acquired the assets of U.S. Digital and Telecard.

14.     Prior to Rock Sound's acquisition of U.S. Digital, U.S. Digital owed money to Atlas for service previously provided.

**Zuckerman, Spaeder, Taylor & Evans, LLP**

15.    Although Rock Sound purchased the assets of U.S. Digital, Rock Sound did not assume U.S. Digital's liabilities. Atlas knew that Rock Sound's purchase of U.S. Digital was solely for the assets of that company.

16.    At the closing on January 7, 2000, Rock Sound received a call from Mike Spurlin, President of Atlas, who demanded that if Atlas did not immediately receive $800,000.00 owed by U.S. Digital, Atlas would cut off service to Rock Sound and essentially "pull the plug." This would have effectively destroyed Rock Sound's entire business. Consequently, Rock Sound was forced to immediately wire $800,000.00 to Atlas, which Rock Sound then took as a deduction of the purchase price of the assets of U.S. Digital.

17.    The total purchase price of U.S. Digital's assets, which included the rights to the Atlas relationship, was $10 million dollars. Additionally, Rock Sound paid $4 million dollars for the assets of Telecard. Accordingly, Rock Sound's $14 million dollar investment in these two companies was solely dependent upon the existing relationship with Atlas. Atlas was fully aware of this fact.

18.    Atlas' billing procedure consisted of billing their clients on an estimated weekly interval, on a weekly arrears basis. Payment is due five days from the date of invoice. Reconciliation is done at the end of the month.

19.    Before Rock Sound even received its first bill from Atlas, Atlas sent Rock Sound an outstanding bill from U.S. Digital in the sum of approximately $700,000.00. Again, Atlas demanded immediate payment of the $700,000.00, otherwise Atlas would cut off service to Rock Sound. In order to protect Rock Sound's substantial investment, and not to effectively destroy the company, Rock Sound immediately wired the $700,000.00 to Atlas (January 13-14, 2000).

4

**Zuckerman, Spaeder, Taylor & Evans, LLP**

20.     Upon receiving its first invoice from Atlas, it was readily apparent to Rock Sound that the new lower rates that Atlas represented would be in effect were not being applied. Consequently, Atlas billed Rock Sound at the old, higher rate of .0415 cents per minute. In effect, this meant that Rock Sound was generating insufficient revenues and had created a "losing" company. The more phone cards Rock Sound sold, the more money they lost.

21.     On January 19, 2000, at approximately 2:30 p.m., Rock Sound contacted Atlas to address this matter. The President, Mike Spurlin, once again indicated that the new rates would go into effect and promised to work with Rock Sound in dealing with the payment situation that had been created due to Atlas' billing. Spurlin further represented that he would have to talk to the chairman of Atlas, Frank Scardino, in order to get this approved. At approximately 5:30 p.m. on the same day, Scardino and Spurlin called Rock Sound back and indicated that the deal was not acceptable and that they wanted an additional $732,000.00 wired that day. They again threatened to disconnect service to Rock Sound unless Rock Sound promised to pay the aforementioned sum by Friday, January 21, 2000.

22.     When Rock Sound indicated that it was unable to make that payment, Atlas again reiterated that it would give Rock Sound until Friday to make the payment before cutting off service.

## COUNT I
## FRAUDULENT INDUCEMENT

23.     Rock Sound realleges and incorporates paragraphs 1 through 16 above as if fully set forth herein.

24.     Atlas misrepresented a material fact when it agreed to provide services for Rock Sound to operate its business. Atlas further misrepresented a material fact when it told Rock Sound that Atlas would obtain a lower rate from Quest for Rock Sound's benefit, to go into

5

**Zuckerman, Spaeder, Taylor & Evans, LLP**

effect immediately upon the closing of the deal between Rock Sound and U.S. Digital. At the time that it made these misrepresentations, Atlas knew or should have known that these statements were false.

25.    Atlas intended to induce Rock Sound to go through with the closing based upon Atlas' representation that it would obtain a lower phone rate from Quest. Additionally, Atlas induced Rock Sound to maintain Atlas as its exclusive inbound service carrier based upon this same misrepresentation.

26.    Rock Sound was injured as a result of justifiably relying on Atlas' misrepresentation and will be immediately harmed if service is terminated.

WHEREFORE, Plaintiff demands injunctive relief against Defendant and such other relief as the Court deems proper.

## COUNT II
## BREACH OF ORAL CONTRACT

27.    Rock Sound realleges and incorporates paragraphs 1 through 16 above as if fully set forth herein.

28.    Atlas and Rock Sound entered into an express oral contract, wherein Atlas promised to provide services to Rock Sound and at the lower rates promised for Quest's long distance service immediately upon closing if Rock Sound agreed to maintain Atlas as Rock Sound's exclusive inbound service carrier.

29.    Atlas breached the contract by failing to provide the lower Quest rates as promised, and by continuing to charge Rock Sound the old, higher rate previously imposed upon U.S. Digital.

30.    Atlas did not have a legal excuse to refuse to perform the contract as agreed.

Zuckerman, Spaeder, Taylor & Evans, LLP

31.    Atlas' promise to provide the service at the lower phone rate was the basis of the bargain between Atlas and Rock Sound.

32.    Atlas has demanded that Rock Sound pay for its exclusive services at the higher not agreed upon rates which constitutes a breach of contract.  Atlas has further threatened that if Rock Sound did not agree to its unilateral demands it will further breach the contract by terminating the service.

WHEREFORE, Plaintiff demands injunctive relief against Defendant and such other relief as the Court deems proper.

## COUNT III
### DECLARATORY JUDGMENT ACTION TO DETERMINE VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

33.    Rock Sound realleges and incorporates paragraphs 1 through 16 above as if fully set forth herein.

34.    This is an action for injunctive and other relief pursuant to the Florida Deceptive and Unfair Trade Practices Act, ("FDUTPA") Fla. Stat. § 501.201, et. seq.

35.    Rock Sound is a "consumer" engaged in a "consumer transaction" with Atlas, pursuant to FDUTPA,  as Rock Sound is a corporation that agreed to maintain Atlas as its exclusive inbound service provider in exchange for Atlas' promise to obtain a low rate from the long distance carrier, Quest.

36.    Atlas is engaged in a "trade or commerce" pursuant to FDUTPA, as it is responsible for providing long distance carrier service to Rock Sound by contracting with different long distance carriers to obtain the lowest per minute long distance rate.

37.    Atlas engaged in unconscionable and unfair acts in violation of Florida Statutes § 501.201, et. seq.   Specifically, Atlas continuously threatened to immediately cut off Rock

**Zuckerman, Spaeder, Taylor & Evans, LLP**

Sound's phone line services unless Rock Sound agreed to pay for U.S. Digital's outstanding bills. Rock Sound was under no legal obligation to pay for U.S. Digital's outstanding bills, as Rock Sound did not assume U.S. Digital's liabilities when it purchased the assets of U.S. Digital. Atlas knew that Rock Sound only purchased the assets of U.S. Digital.

38.     At the time Atlas threatened Rock Sound, Rock Sound was obligated to service over one million customers pursuant to the prepaid phone cards.

39.     Rock Sound was forced to pay Atlas for U.S. Digital's outstanding bills in order to maintain its operations and continue servicing its customers.

40.     Rock Sound seeks a declaratory judgment action declaring that Atlas has violated FDUPTA and a temporary restraining order and such other injunctive relief to maintain the status quo pending such determination.

WHEREFORE, Plaintiff demands a declaratory judgment and injunctive relief against Defendant and such other relief as the Court deems proper.

Dated:  January 20, 2000

Respectfully submitted,

Ronald B. Ravikoff, Esquire
Florida Bar No. 0244155
John Arrastia, Jr., Esquire
Florida Bar No. 0072461
Alicia Shick, Esquire
Florida Bar No. 124842
Zuckerman, Spaeder, Taylor & Evans, LLP
201 South Biscayne Boulevard
Suite 900
Miami, Florida 33131
Telephone:  (305) 579-0110
Facsimile:  (305) 579-9749
Attorneys for Plaintiff Rock Sound

Zuckerman, Spaeder, Taylor & Evans, LLP

JS 44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I (a) PLAINTIFFS
ROCK SOUND COMMUNICATIONS CORPORATION

## DEFENDANTS
ATLAS COMMUNICATIONS, LTD.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _Broward_
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _Pennsylvania_
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

A-Broward 00-CV06096 Gold/smartin

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Ronald B. Ravikoff, Esq.
Zuckerman, Spaeder, Taylor & Evans LLP
201 South Biscayne Blvd. - Suite 900
Miami, Florida 33131 (305) 579-0110

ATTORNEYS (IF KNOWN)

**(d)** COUNTY AND DIVISION WHEREIN ACTION AROSE  Broward

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)
- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)
Fraud, Breach of Contract, Florida Deceptive and Unfair Trade Practice Act (Chap. 501, Pt. II, Fla. Stat.)

IVa. ___2___ days estimated (for both sides) to try entire case.

## V. NATURE OF SUIT (PLACE AN x IN ONE BOX ONLY)

**CONTRACT (A)**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- A/B ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- A/B ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders Suits
- ☒ 190 Other Contract
- ☐ 195 Contract Product Liability

**TORTS (A)**
PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury— Med Malpractice
- ☐ 365 Personal Injury— Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- B ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**REAL PROPERTY (A)**
- ☐ 210 Land Condemnation
- B ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**CIVIL RIGHTS (A)**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS (B)**
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 Habeas Corpus
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
*Category A or B

**FORFEITURE/PENALTY (B)**
- ☐ 610 Agriculture
- ☐ 620 Food & Drug
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR (A)**
- ☐ 710 Fair Labor Standards Act
- B ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- B ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY (A)**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS (A)**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY (B)**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC (405(g))
- ☐ 863 DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS (A)**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES (A)**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes
- A/B ☐ 890 Other Statutory Actions

## VI. ORIGIN (PLACE AN x IN ONE BOX ONLY)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION** ☐ UNDER F.R.C.P. 23  DEMAND $
JURY DEMAND: ☐ YES ☒ NO  Check YES only if demanded in complaint

## VIII. RELATED CASE(S) IF ANY (See instructions):
JUDGE _____  DOCKET NUMBER _____

DATE 1/20/2000
SIGNATURE OF ATTORNEY OF RECORD
RONALD B. RAVIKOFF

Receipt 815803 $150.00  1/20/00

UNITED STATES DISTRICT