IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 00-6096-CIV-GOLD/MONTON

ROCK SOUND COMMUNICATIONS
CORPORATION,

      Plaintiff,

v.

ATLAS COMMUNICATIONS, LTD.,

      Defendant.

   :
   :
   :
   :
   :
   :
   :
   :
   :
   :
   :

FILED by ___ D.C.
INTAKE

JAN 24 2000

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. MIAMI

## DEFENDANT'S MOTION TO VACATE THE TEMPORARY RESTRAINING ORDER BASED ON PLAINTIFF'S FRAUD ON THE COURT, FOR LACK OF JURISDICTION, AND IN THE ALTERNATIVE TO INCREASE THE BOND REQUIREMENT

Pursuant to Rule 65 of the Federal Rules of Civil Procedure and Rule 7.1.E of the Local Rules of this Court, Defendant Atlas Communications, Ltd. ("Atlas"), through its undersigned attorneys, respectfully requests that the Court vacate the temporary restraining order, entered on January 21, 2000, on account of the fraud of Plaintiff Rock Sound Communications Corporation ("Rock Sound") on the Court and Atlas, for lack of jurisdiction, and in the alternative to increase the bond requirement.

1

In support thereof, Atlas states as follows:

5.    On Friday, January 21, 2000, Atlas received by fax a copy of a Temporary Restraining Order ("TRO"), entered by the Court, prohibiting Atlas "from, directly or indirectly, cutting off service to Rock Sound . . . or the account currently being billed to Rock Sound . . . under the name of U.S. Digitel, Inc." See TRO (filed Jan. 21, 2000) at 3. A true and correct copy of the TRO is attached as Exhibit A..

6.    Atlas avers that the TRO was obtained by Rock Sound as result of Rock Sound's fraud on the Court and Atlas, that the Court lacks jurisdiction over the subject matter of this action based on a mandatory forum selection provision in the parties' agreement, and in the alternative to raise the bond requirement to prevent irreparable harm to Atlas.

7.    On July 14, 1999, Atlas entered into a contract for the sale of pre-paid long distance telecommunications services with U.S. Digitel, Inc. ("Digitel"). Pursuant to the contract, a true and correct copy being attached hereto as Exhibit B, Digitel was required to pay Atlas for pre-paid telephone services provided. Due to Digitel's defaults under the terms of the contract, Atlas and Digitel entered into a Forbearance Agreement and Addendum to Forbearance Agreement, on September 24, 1999 and December 3, 1999, respectively. See Exhibit B.

8.    As of Janury 6, 2000, Digitel owed Atlas in excess of $4,700,000 for

2

services provided by Atlas, which Digitel resold to its customers, and which Digitel failed to pay Atlas.

9.     On or about January 6 or 7, 2000, Digitel entered into a sham transaction with Rock Sound whereby Rock Sound purchased Digitel from its principals, in return for Rock Sound's promise to pay Digitel's principals $8,000,000 on or about February 7, 2000.  The payment of the $8,000,000 was secured by notes held by Digitel's principals.

10.     Through the Digitel/Rock Sound transaction, Digitel's principals attempting to avoid their liability to Atlas, while still being able to receive the proceeds from the sham transaction with Rock Sound, such moneys being the rightful property of Atlas for telecommunications services provided, but for which Atlas was not paid.

11.     In an attempt to recover the sums due and owing Atlas, Mr. Michael W. Spurlin, President of Atlas, contacted Mr. Henry Ritter of Rock Sound.  As a result of ongoing discussions conducted prior to January 14, 2000, Rock Sound promised to pay Atlas $300,000, via wire transfer, no later than January 18, 2000, as payment on the indebtedness Digitel/Rock Sound totaling approximately $3.5 million as of January 20, 2000.  See Affidavit of Michael W. Spurlin, attached hereto as Exhibit C.  Rock Sound further agreed to make daily wire transfers of $100,000 to Atlas on January 19-21, 2000, for a total payment of $600,000 against the $732,100 billed by Atlas to

3

Digitel/Rock Sound, and due and payable on January 10, 2000.

12.     On January 18, 2000, Mr. Ritter and John Scafidi of Rock Sound represented to Mr. Spurlin that the $300,000 payment was delayed due to meetings and internal funding issues at Rock Sound.  Atlas relied on Rock Sound's representation and continued to supply telecommunications services to Rock Sound.

13.     On January 19, 2000, Messrs. Scafidi and Ritter represented to Mr. Spurlin that the $300,000 wire transfer would be sent that day.  However, later in the day, Rock Sound informed Atlas that the payment would not be made due to insufficient funds in Rock Sound's operating account; and further assured Mr. Spurlin, that the situation would be remedied the following day.  Atlas relied on Rock Sound's representation and continued to supply telecommunications services to Rock Sound.

14.     Mr. Spurlin requested that Mr. Ritter provide information regarding Rock Sound's ability to pay its debts as they came due.  Mr Ritter informed Mr. Spurlin that Rock Sound was having difficulties paying its suppliers of telecommunications services in addition to Atlas.

15.     Mr. Ritter informed Mr. Spurlin that Rock Sound fully intended to pay Atlas at least $100,000 by wire transfer for Thursday, January 20, 2000, and $300,000 by wire transfer for Friday, January 21, 2000.  Atlas relied on Rock Sound's representation and continued to supply telecommunications services to Rock Sound.

16.     Mr. Ritter further agreed to contact Atlas by 9:30 a.m. on Thursday,

4

January 20, 2000, to advise Mr. Spurlin of the status of the promised payments.

17.     When Mr. Spurlin was finally able to contact Mr. Ritter after 11:00 a.m. on Thursday, January 20, 2000, Mr. Ritter informed Atlas for the first time that it had only $50,000 in its operating account.  Of the $50,000, Rock Sound wired only $25,000 to Atlas.

18.     Mr. Spurlin informed Mr. Ritter that the Digitel/Rock Sound indebtedness was already in excess of $3.2 million and that every week Rock Sound was incurring telecommunications charges in excess of $700,000 per week.

19.     Mr. Ritter further assured Atlas that a meeting was scheduled with Rock Sound's bankers to secure the necessary funding and that Rock Sound would contact Atlas no later than 4:30 p.m. on Thursday, January 20, 2000, to advise of the progress Rock Sound was making in securing the necessary funding from its banks.

20.     Atlas received no call from Rock Sound at 4:30 p.m.  Accordingly, Atlas terminated all further telecommunications services to the Digitel/Rock Sound account.

21.     At approximately 6:30 p.m. on Thursday, January 20, 2000, Mr. Spurlin telephoned Rock Sound seeking to speak with Mr. Ritter.  Mr. Spurlin was informed that Mr. Ritter was meeting with Rock Sound's bankers.

22.     Mr. Steven Tashman requested of Mr. Spurlin that Atlas resume service to Rock Sound.  Mr. Tashman and Mr. David Griffee assured Mr. Spurlin that, in

return for resuming service, Atlas would be paid approximately $700,000 by the close of business on Friday, January 21, 2000.

23.    In reliance on Rock Sound's promise, Atlas restored telecommunications services to the Digitel/Rock Sound account at approximately 7:30 p.m., Janaury 20, 2000.

24.    In addition, Mr. Ritter contacted Mr. Spurlin at approximately 7:45 p.m. on January 20, 2000, to further assure Atlas that Rock Sound would make a wire transfer to Atlas of $707,100, before the end of banking business on Friday, January 21, 2000.

25.    Mr. Spurlin asked Mr. Ritter to confirm his promise of payment in writing by 9:30 a.m., January 21, 2000; and in return, Mr. Spurlin agreed to prepare a memorandum of understanding outlining the parties' discussions and addressing the Atlas/Rock Sound relationship in general.

26.    On Friday, January 21, 2000, at approximately 11:30 a.m., after previous drafts, Mr. Ritter sent Atlas a letter via facsimile confirming Rock Sound's promise to make the $707,100 payment by end of business that day.  Correspondingly, Mr. Spurlin sent to Mr. Ritter via facsimile a draft of the memorandum of understanding.

27.    At the very instant that Mr. Ritter was assuring and re-assuring Atlas that payment would be made, and in contradiction to all of the assurances and representations of payment made in the preceding weeks, Rock Sound's attorneys

6

were obtaining a TRO from this Court prohibiting Atlas from discontinuing service

for non-payment. A copy of the TRO, unaccompanied by Rock Sound's complaint,

affidavits, or other moving papers, was faxed to Mr. Spurlin at 12:10 p.m. on Friday,

January 21, 2000, less than forty-five minutes after Rock Sound promised Atlas in

writing that it would make the approximately $700,000 payment. Needless to say

Atlas was never notified of any intention on the part of Rock Sound to seek relief in

Court let alone an ex parte TRO.

28.    Rock Sound, through knowing and intentional misrepresentations,

fraudulently obtained reactivation of its telecommunications services from Atlas.

While promising to make the required payments in return for services, Rock Sound

had its attorneys prepare a Verified Complaint, affidavits and other moving papers to

be filed on the same day that Rock Sound promised to make payments toward its

outstanding and substantial indebtedness to Atlas.

29.    Immediately upon receiving the TRO from Plaintiff's counsel, Atlas

contacted its undersigned counsel. Counsel was shocked and dismayed to learn that

Plaintiff's counsel had failed to provide Atlas with the Verified Complaint, affidavits,

and other moving papers supporting the entry of the TRO.

30.    Counsel for Atlas made repeated written requests of Plaintiff's counsel on

Friday, January 21, 2000, to provide the necessary pleadings, see Exhibit D (Letters of

Defendant's Counsel to Plaintiff's Counsel, dated January 21, 2000), so that Atlas may

have notice of the claims against it, and may properly prepare a response to the TRO

by the Court's deadline of Tuesday, January 25, 2000. Plaintiff's counsel ignored these

repeated requests.

31.    It was not until Monday, January 24, 2000, that counsel for Atlas

received the supporting papers to the TRO. Since noon on Friday, January 21, 2000,

Atlas had no knowledge of the claims against it, nor of the bases for the TRO. Atlas

only had notice that the Court had enjoined it from discontinuing service to Rock

Sound for nonpayment, which continued service costs Atlas at least $100,000 per day,

if not paid by Rock Sound.

32.    Furthermore, in direct violation of the very TRO, which Plaintiff

wrongfully obtained, Plaintiff's counsel, despite repeated written requests on January

21, 2000, failed to give Atlas notice that a bond had in fact been posted. Thus, Atlas

had no notice of whether the Court's order was in effect.

33.    A review of Plaintiff's papers filed in support of their motion for a TRO

reveals that they did not advise the Court of the repeated representations of

representatives of Rock Sound to make the payments due and owing under the

Digitel/Rock Sound agreement. Nor did Plaintiff inform the Court that, at the very

time its counsel was preparing for and seeking the TRO, Plaintiff was re-assuring Atlas

in writing that payment would be made if Atlas turned the service on and kept it on.

34.    Accordingly, Rock Sound obtained the TRO at issue by defrauding Atlas

into resuming service, through their misrepresentations and promises of payment, and by defrauding the Court through their misrepresentations and omissions of facts material to the Atlas/Rock Sound relationship.

35.     Moreover, Plaintiff's conduct is all the more egregious in that they clearly planned to dupe Atlas into resuming the service knowing full well that a mandatory injunction, directing Atlas to reconnect Rock sound's service, was far more difficult to obtain, particularly on an <u>ex parte</u> basis.

36.     In addition, the deliberate delay of over three days by Plaintiff's counsel in providing the Verified Complaint and other moving papers to undersigned counsel is inexcusable.  If Plaintiff's counsel was capable of faxing the TRO to Atlas, as it did, it was likewise just as capable faxing the notice of posting of bond and Verified Complaint to Atlas and its counsel.  <u>See</u> Rule 65 of the Federal Rules of Civil PRocedure.

37.     The Atlas/Digitel contract which governs the Atlas/Rock Sound relationship provides that all disputes arising out of the business relationship must be brought in the State and Federal Courts of the Commonwealth of Pennsylvania. Thus, under well established Supreme Court jurisprudence, <u>Carnival Cruise Lines, Inc. v. Shute</u>, 499 U.S. 585 (1991), this Court lacked the necessary jurisdiction to enter the TRO on January 21, 2000.  <u>See</u> Exhibit B.  This fact was also deliberately omitted in the filings of the plaintiff with this Court.

38.    It is asserted upon information and belief that the Digitel/Rock Sound transaction was entered into by Plaintiff as a vehicle to avoid the obligations of Digitel to Atlas, and in an effort to continue to obtain telecommunication services from Atlas. On or about February 7, 2000, unless otherwise ordered, Rock Sound shall pay to the principals of Digitel $8,000,000, over $5,000,000 of which is owed to Atlas for previous and current charges for telecommunications services.

39.    The current bond of $10,000 is woefully inadequate to prevent the irreparable harm Atlas will suffer should it be required to continue to provide services to Rock Sound.  Currently, Plaintiff owes Atlas in excess of $5,000,0000 and is incurring additional daily charges of at least $100,000.  Clearly, $10,000 will not prevent the irreparable harm against which the bonding requirement of Rule 65 is designed to protect.  See Rule 65 of the Federal Rules of Civil Procedure.

WHEREFORE, Cominex respectfully requests that the Court:

(1) increase the bond requirement on Plaintiff's TRO to an amount sufficient to prevent irreparable harm to Atlas, and thus Atlas seeks a bond requirement in excess of $8,000,000 to adequately secure Atlas pending resolution of Plaintiff's motion for a preliminary injunction;

(2) vacate the temporary restraining order on account of Plaintiff's fraud on the Court and Atlas resulting from Plaintiff's knowing and intentional

10

misrepresentations; or,

(3) vacate the temporary restraining order for lack of subject matter jurisdiction,

pursuant to the unambiguous terms of the contract between the parties; or,

(4) in addition to requiring a bond sufficient to prevent irreparable harm to

Atlas, as set forth in (1) supra, Order the hold the stock of Digitel to be placed

in trust with the Clerk of the Court immediately pending resolution of this civil

action.

Respectfully submitted,

BLANK ROME COMISKY &McCAULEY, LLP

By: _____
  HOWARD M. CAMERIK
  Fl. Bar No. 703435
  STEVEN A. LESSNE
  Fl. Bar No. 0107514
  1200 North Federal Highway, Suite 417
  Boca Raton, FL 33432
  Telephone: (561) 417-8100
  Facsimile: (561) 417-8101
  Email:Camerik@Blankrome.com
    Lessne@Blankrome.com

Of Counsel:

Jerome R. Richter
Anthony Vidovich
Blank Rome Comisky & McCauley, LLP
One Logan Square
Philadelphia, PA 19103

Telephone: (215) 569-5500
Facsimile: (561) 569-5694

Attorneys for Atlas Communications, Ltd.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 00-6096-CIV-GOLD/SIMONTON

ROCK SOUND COMMUNICATIONS CORP.,

        Plaintiff,

vs.

ATLAS COMMUNICATIONS, LTD.,

        Defendant.

_____/



## ORDER GRANTING EMERGENCY MOTION FOR
## TEMPORARY RESTRAINING ORDER

THIS CAUSE is before the court upon *Plaintiff's Emergency Motion for Temporary Restraining Order Without Notice*, filed on January 20, 2000. Plaintiff Rock Sound Communication Corp. ("Rock Sound") seeks to prevent the defendant, Atlas Communications, Ltd. ("Atlas"), from unilaterally terminating service it is providing Rock Sound. Jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1332, based on the diverse citizenship of the parties, as well as Federal Rule of Civil Procedure 65(b).

To be entitled to a temporary restraining order, the movant must show the following factors: (1) a substantial likelihood of success on the merits; (2) a showing of irreparable injury; (3) the threatened injury outweighs the harm the temporary restraining order would inflict; and (4) the temporary restraining order would serve the public interest. *Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir. 1995). Having carefully considered the plaintiff's emergency motion, the accompanying affidavits, the applicable law, and the record as a whole, the court makes the following findings:

ATTACHMENT / EXHIBIT **A**

1.  Based on the affidavits and pleadings filed by Rock Sound, there is a substantial likelihood of success on the merits for Rock Sound's claims of unfair trade practices, breach of contract, and fraudulent inducement.

2.  There is good cause to believe that there will be irreparable injury to the moving party if this emergency temporary restraining order is not granted.  Based on the affidavit of Alan H. Lipkowitz and the accompanying documents, there is good cause to believe the company, Rock Sound, will be eliminated if service is cut off by Atlas.

3.  There is good cause to believe the threatened injury outweighs the harm the temporary restraining order would inflict.  The harm to the movant would be significant, but there does not appear to be significant harm to Atlas if it continues providing service.

4.  There is good cause to believe the temporary restraining order would serve the public interest.  Based on the affidavits and documents filed by the movant, over 1.3 million members of the general public who have purchased telephone cards provided by Rock Sound would lose service, 75 Rock Sound employees would lose jobs, and over 4,000 distributors would lose business opportunities.

5.  There is good cause to believe that, unless restrained and enjoined by order of this court, defendant Atlas would immediately effectuate the termination of service to Rock Sound.

6.  It is appropriate and the interests of justice require that this temporary restraining order be granted without notice to defendant Atlas as it appears that immediate and irreparable injury, loss,

or damage will result if notice is given.

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that *Plaintiff's Emergency Motion for Temporary Restraining Order Without Notice* is GRANTED. This Temporary Restraining Order goes into effect upon the posting of a bond in the amount of $10,000. It is further

**ORDERED AND ADJUDGED** that defendant Atlas Communications, Ltd., and its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with any of them, who receive actual notice of this Order, by personal service or otherwise, and each of them, be and hereby are temporarily restrained and enjoined from, directly or indirectly, cutting off service to Rock Sound Communications Corporation or the account currently being billed to Rock Sound Communications Corporation under the name of U.S. Digital, Inc. It is further

**ORDERED AND ADJUDGED** that this Temporary Restraining Order shall expire at 5:00 p.m. on January 28, 2000, unless, for good cause shown, it is extended or unless the party against whom it is directed consents that it may be extended for a longer period. It is further

**ORDERED AND ADJUDGED** that a hearing on whether to grant a preliminary injunction shall be held at 4:00 p.m. on January 28, 2000 before the Honorable Alan S. Gold, United States District Judge for the Southern District of Florida, at 301 North Miami Avenue, Miami, Florida, 10th Floor.[1] Prior to the hearing, the parties shall present all direct testimony of witnesses by affidavit

---

[1] The court recognizes the short time frame allotted between the time the parties must conduct their discovery and file and/or supplement their submissions to the court for consideration and the date of the

-3-

or sworn statement. These affidavits or sworn statements shall be filed with the court prior to 12:30 p.m., January 27, 2000. Examination of witnesses at the hearing shall be limited to cross examination of the witness testimony submitted by affidavit or sworn statement, giving the opposing party the opportunity for brief, focused re-direct examination, if warranted. Opening statements shall be presented in writing and must be filed with the court by 9:30 a.m. on January 28, 2000. Each counsel shall also file, by 5:00 p.m. on January 25, 2000, a comprehensive memorandum of law setting forth the legal and factual considerations regarding the appropriate amount of bond, notwithstanding the amount of bond currently set, to be posted by the plaintiff in the event that the court grants the relief plaintiff is seeking. Counsel's memoranda shall include citations to, and discussions of, the relevant case law. All additional briefs, points and authorities, findings of fact, conclusions of law, or other submissions which the parties believe the court should consider regarding the issuance of an order on plaintiff's request for preliminary injunction and other relief shall be filed with the court and delivered to the offices of opposing party and/or their attorneys no later than 5:00 p.m. on January 25, 2000. It is further

ORDERED AND ADJUDGED that this Order is entered to maintain the status quo and is without prejudice as to the merits, claims, or defenses which have been or may be asserted in future litigation.

---

hearing. However, the court is compelled to follow this scheduling scheme pursuant to the time limitations placed upon it by Rule 65(b) of the Federal Rules of Civil Procedure. Upon agreement of the parties, the court shall grant a continuance of the hearing, provided the relief afforded by the Temporary Restraining Order remains in effect until the time of the hearing.

Case No.: 00-6096-CIV-GOLD

DONE and ORDERED in Chambers at Miami, Florida, this 2/ day of January, 2000.

*at 10:45 AM*



ALAN S. GOLD
UNITED STATES DISTRICT JUDGE

copies furnished:

U.S. Magistrate Judge Andrea M. Simonton

Ronald B. Ravikoff, Esq.
Attorney for Plaintiff
Zuckerman, Spaeder, Taylor & Evans LLP
201 South Biscayne Boulevard, Ste. 900
Miami, FL 33131
Phone: (305) 579-0110
FAX: (305) 579-9749
**(with directions for immediate service of defendant)**

Certified to be a true and
correct copy of the document on file
Clarence Maddox, Clerk,
U.S. District Court
Southern District of Florida
By _____
Deputy Clerk
Date 1-24-

## AFFIDAVIT

I, Michael W. Spurlin, being duly sworn according to law, hereby depose, swear, and affirm as follows:

1.     I am an adult individual over the age of 21 and I reside at 2138 Jericho Drive, Jamison, PA 18929

2.     I am President of Atlas Communications, Ltd. ("Atlas") and am responsible for the day-to-day operations of Atlas.

3.     Atlas has been providing long distance services to U.S. Digitel, Inc. ("U.S. Digitel") pursuant to a Carrier Dedicated Services Agreement ("Carrier Agreement") dated February 3, 1998.

4.     During the course of 1999 U.S. Digitel defaulted under the Carrier Agreement which resulted in the Parties entering into a Forbearance Agreement dated September 24, 1999 pursuant to which U.S. Digitel was to repay all past-due amounts, as well as make estimated weekly payments in order to receive continuing service.  The Forbearance Agreement was subsequently amended by Addendum on December 3, 1999.

5.     Over the last two months, U.S. Digitel has been unable to meet its obligations under the Forbearance Agreement and the accompanying Addendum. During this time period, I was advised that U.S. Digitel was going to be purchased by Rock Sound Communications Corporation ("Rock Sound") who would in turn pay all outstanding amounts due Atlas. U.S. Digitel currently owes Atlas $4,743,900.00

6.     Last Monday, I advised the principal's of U.S. Digitel that Atlas would have to disconnect service unless it received a payment of $300,000.00 by the close of business on Tuesday together with daily payments of $100,000.00. The principals of U.S. Digitel/Rock Sound represented that these payments would be made in a timely manner.

7.     On Tuesday evening, I received a telephone call from Henry Ritter, Executive Vice President of Rock Sound who advised that the $300,000 payment could not be made but that Rock Sound was meeting with the bank on Thursday and he would advise on Wednesday when Atlas could expect to receive the $300,000 payment.

8.     On Wednesday, I again spoke to Mr. Ritter who stated that Rock Sound could only forward $100,000.00 by Thursday but would wire an additional $300,000.00 on Friday from the current funds within the operating account.

9.     On Thursday, I received a telephone call from Mr. Ritter explaining that Rock Sound only had $50,000.00 in its operating account and that he was wiring $25,000.00 as a good faith payment. I explained to Mr. Ritter that $25,000.00 was


ATTACHMENT / EXHIBIT B

a nominal sum when taking into account the balance due Atlas and that Atlas would require a payment of $707,100.00 prior to the close of business in order for service not to be terminated. Atlas did not receive any further payments on Thursday.

10.    At approximately 5:00 PM on Thursday, I instructed Atlas' operations unit to shut off service to U.S. Digitel/Rock Sound.

11.    Later that evening, I received a call from the principals of U.S. Digitel/Rock Sound advising that a payment of $707,100.00 would be made to Atlas by the close of business on Friday if service was immediately restored. The principals of U.S. Digitel/Rock Sound further agreed that this payment commitment would be provided to Atlas in writing by 9:30 AM on Friday and would be included within a memo of understanding to be drafted by Atlas' General Counsel outlining the payments to be made moving forward.

12.    On Friday morning, I received a document from Mr. Ritter entitled "Commitment of Financing Undertaking" which was a general acknowledgement of Rock Sound's promise to pay for services obtained from Atlas. At approximately 11:00 AM, I contacted Mr. Ritter and advised him that this Commitment Letter was unacceptable and that he would need to specifically set forth the amount with which Rock Sound was going to wire to Atlas prior to the close of business or service would again be shut down. At approximately 11:30 AM, I received a revised Commitment of Financial Undertaking executed by Mr. Ritter setting forth that Rock Sound had received a copy of the $700,000.00 invoice and would have the debt paid by the close of business. A copy of the Commitment of Financial Undertaking is attached hereto as Exhibit, "A."

13.    At approximately 11:45 AM I once again spoke with Mr. Ritter and advised him that Atlas' in-house counsel had completed the Memo of Understanding and that the same was being forwarded to him for execution on behalf of Rock Sound. Mr. Ritter advised that he would call me with his comments.

14.    At 12:12 PM, I received a call from Ronald Ravikoff, Esquire advising that Rock Sound had just obtained a Temporary Restraining Order against Atlas, enjoining it from terminating service to Rock Sound.

15.    At no time was I ever advised by Mr. Ritter that Rock Sound was preparing and/or filing a Motion for a Temporary Restraining Order regardless of the fact that I spoke to him throughout the course of Friday morning. At no time on Friday was I ever served with a copy of the Motion for a Temporary Restraining Order. Moreover, Atlas' General Counsel was neither served with a copy of the Motion nor was he placed on notice that the same was being filed and presented to the Court on Friday morning irrespective of the fact that the principals of U.S. Digitel/Rock Sound had personal knowledge of the identity and address of our General Counsel.

16.    At 12:25 PM, on Friday I received a copy of the Order granting the Motion and was subsequently advised by the principals of Rock Sound that no payment would be made on Friday in light of the entry of the Temporary Restraining Order.



Michael W. Spurlin

Sworn to and subscribed before me this ___24th___ day of ___JANUARY___, 2000.

Notary Public

Notarial Seal
Jack R. Medaris, Notary Public
Whitpain Twp., Montgomery County
My Commission Expires Dec. 8, 2003
Member, Pennsylvania Association of Notaries

# WHOLESALE SERVICES AGREEMENT

This Wholesale Services Agreement ("Agreement") is entered into and effective this _14_ day of _July_, 1999, by and between Atlas Communications, Ltd. ("Atlas"), a Pennsylvania corporation, with its principal offices located at 482 Norristown Road, Blue Bell, Pennsylvania 19422, and U.S. Digitel, Inc., a Florida corporation ("Purchaser"), with its principal offices located at 1909 Tyler Street, 8th Floor, Hollywood, Florida 33020 (hereinafter "Party" or "Parties").

## RECITALS:

WHEREAS, Atlas has obtained special rates for domestic and international services from one of its underlying carriers and would like to offer these rates and services to its existing customers; and

WHEREAS, Purchaser desires to purchase these domestic and international services as hereinafter set forth;

NOW, THEREFORE, in consideration of the mutual covenants and other valuable consideration, the Parties agree as follows:

## TERMS

### 1)    TERM OF AGREEMENT

1.1    Initial Term.  The initial term of this Agreement shall commence on the date first above written and shall continue for a period of one (1) year. Upon the expiration of the initial term, this Agreement will automatically renew on a month to month basis until terminated by either Party upon thirty (30) days prior written notice to the other.

1.2    Termination Upon Default.  Upon the occurrence of an Event of Default, Atlas may terminate this Agreement immediately by delivering written notice of termination to Purchaser.

### 2)    PRICING

2.1    Rates. The rates and charges for the services provided to Purchaser under this Agreement are set forth within Schedule "A" and are separate and distinct from the rates charged by Atlas for services provided under any other agreement(s) with Purchaser. Atlas reserves the right to modify its charges and rates from time to time. Usage sensitive service modifications shall be

Initial

Initial

1

ATTACHMENT / EXHIBIT _C_

issued and binding upon the Purchaser twenty (20) days after notice is issued by Atlas for domestic services and upon five (5) days notice for international services. Notice shall be provided either in writing, e-mail, facsimile or overnight mail to Purchaser and for non-usage charges, by amendment or supplement to the Atlas or its underlying carrier's Tariffs or Schedules.

2.2    Volume Discounts. In the event that Purchaser receives volume discounts hereunder, Purchaser agrees that its discount shall be based upon Purchaser's actual usage during the subject month. No discounts will be provided that are based upon cumulative usage by Purchaser.

## 3)    BILLING AND PAYMENTS

Atlas will invoice Purchaser for its usage on a monthly basis. Purchaser shall pay the undisputed portion of each invoice within ten (10) days from the date of each invoice. A late charge of one and one-half percent (1.5%) per month or the maximum permitted under the applicable usury law, whichever is lower, will be charged on any overdue amounts.

## 4)    PAYMENT OBLIGATION

In light of Atlas' ultimate payment obligation to its underlying carriers, Purchaser agrees that it will dispute any monthly charges in writing, within fifteen (15) days from the date of each invoice. In the event Purchaser fails to dispute such charges in writing within the fifteen (15) day time period, then Purchaser does hereby waive its right to dispute and withhold payment for any such charges. However, if a dispute is timely issued as aforesaid, then the parties shall attempt in good faith to resolve the dispute within seven (7) days. In the event that the dispute cannot be resolved, then either Party may elect to submit the dispute to arbitration in accordance with the terms of this Agreement.

## 5)    SECURITY FOR PAYMENT

Atlas may require security in the form of a cash deposit or letter of credit in a format acceptable to Atlas. In the event of a default by Purchaser, Atlas shall be entitled, without further notice, to suspend all service and draw from the deposit all amounts due Atlas. In order to re-establish service, Purchaser must replenish the deposit (by wire transfer into Atlas' specified account or as specified by Atlas) within forty-eight (48) hours of receipt of written notice from Atlas. In the event Purchaser fails to replenish the security deposit within the above time period, then Atlas may immediately terminate this Agreement and proceed to enforce all of its rights and remedies under this Agreement.

Initial

Initial

2

utilized by Purchaser under this Agreement. In the event Purchaser fails to meet the above average, Atlas shall provide Purchaser with written notice that the average MOUs have not been met and Purchaser shall have an additional five (5) days from the date of the notice to reach the above average. If Purchaser does not comply with the above requirement then Atlas shall have the right to immediately terminate and require Purchaser to immediately release to Atlas, those Circuits that were under the 100,000 MOU level for that month without liability to Purchaser for disconnection.

## 9)  SERVICE QUALITY

Atlas does not warrant or guarantee the quality of the services provided under this Agreement, nor is it responsible for interruptions of such services.

## 10)  CONFIDENTIALITY/ NON-CIRCUMVENT

10.1 Confidential Information. For purposes of this Agreement, confidential information shall include, without limitation, the terms of this Agreement, the Parties' customer lists and associated information and such other confidential materials and sales data provided by one Party to the other, either in writing, orally or otherwise (hereinafter, "Confidential Information"). Each Party acknowledges that any Confidential Information which may be provided to it by the other Party may have substantial value to that Party. Both Parties agree to take all reasonable and necessary steps to preserve the confidentiality of all Confidential Information received from the other, whether communicated in writing, electronically, orally or otherwise.

10.2 Exceptions. The restrictions on the disclosure of Confidential Information shall not apply to (i) information which at the time of disclosure was generally available to the public; (ii) information which subsequent to its disclosure by a Party is published or otherwise becomes available to the public through means other than an act or omission of the Receiving Party; (iii) the information was received by a Party free of any obligation to keep it confidential or which is subsequently and independently developed in good faith by that Party without reference to or use of the Confidential Information; and (iv) information rightfully acquired in good faith from a third party on a non-confidential basis without breach of an agreement to maintain said information in confidence. A Party shall return or destroy all Confidential Information and all copies thereof, including, without limitation, written and electronic copies, as well as all summaries, notes or other documents, materials or things containing Confidential Information, to the other promptly upon the reasonable written request of the other party.

10.3 Non-circumvent. Purchaser agrees that it shall not attempt to circumvent this Agreement by attempting to obtain the services provided herein from any of Atlas' underlying carriers for a period of two (2) years from the termination of this Agreement.

Initial

Initial

4

10.4   Survival. The Parties hereby agree that the confidentiality provisions reflected in this Agreement shall survive the termination of this Agreement for a period of one (1) year.

## 1)   MISCELLANEOUS

11.1.   Fraudulent Calls. Purchaser shall indemnify and hold Atlas harmless from all costs, expenses, damages, fines or actions arising from claims made or related to alleged fraudulent calls. Purchaser shall not be excused from paying Atlas for services on the basis that fraudulent calls comprised a portion of the services. In the event Atlas reasonably believes fraudulent calls are being made, nothing contained herein shall prohibit, or require, Atlas from taking any action (without notice to Purchaser or End Users) Atlas deems reasonably necessary to prevent such fraudulent calls from taking place.

11.2.   Injunctive Relief. Purchaser agrees that the business and ensuing relationship with Atlas is, and will be, unique, and its default will cause irreparable harm to Atlas, and may not be susceptible to remedy by money damages alone. Therefore, upon the occurrence of an Event of Default, Atlas shall be entitled to immediate injunctive relief, including temporary restraining orders or preliminary or permanent injunctions *ex parte* and without the necessity of posting a bond, in addition to any legal remedies to which Atlas may be entitled.

11.3   Regulatory Compliance. Purchaser warrants that it is an Interexchange Carrier of interstate and international services, as duly tariffed before the FCC, and certified for intrastate services by various state PUCs. Purchaser shall comply, and cause each of its subsidiaries and affiliates to comply, in all material respects with all applicable laws, rules, statutes and regulations of the FCC, the PUC and the rules, regulations and orders of courts and any other applicable regulatory bodies and agencies.

11.4   Force Majeure. If Atlas' performance of this Agreement or any obligation hereunder is prevented, restricted or interfered with by causes beyond its reasonable control including, but not limited to, acts of G-d, fire, explosion, vandalism, power failure, cable cut, storm or other similar occurrence, supplier failure, any law, order, regulation, direction, action or request of the United States government, or state or local government, or of any department, agency, commission, court, bureau, corporation or other instrumentality of any one or more such governments, or of any civil or military authority, or by national emergency, insurrection, riot, war, strike, lockout or work stoppage or other labor difficulties, or supplier failure, shortage, breach or delay, then Atlas shall be excused, without incurring any liability, from such performance on a day-to-day basis to the extent of such restriction or interference.

11.5   Indemnification. Purchaser agrees to indemnify Atlas, its affiliated companies, any third-party provider of Services or facilities employed in provision of Services and their respective officers, directors, employees, stockholders and affiliates (the "Indemnified Parties")

Initial _____

Initial _____

5

for, and hold the Indemnified Parties harmless from and against, any and all claims, demands, suits, actions, causes, losses, damages, assessments or payments that others receiving Services through Purchaser, or any other Person, may assert arising out of or relating in any way to this Agreement, to any Services supplied under this Agreement, including the FCC, PUC or other regulatory body or agency or marketing or sales practices of Purchaser. Purchaser further agrees to reimburse each Indemnified Party for all reasonable costs and expenses including attorneys' fees incurred by such Indemnified Party due to such Indemnified Party's direct participation either as a party or witness in any administrative, regulatory, civil or criminal proceeding initiated in respect to this Agreement, the Related Documents, by Atlas, Purchaser, or any other Person.

11.6    Blanket LOA. Purchaser shall deliver to Atlas the Blanket Letter of Agency in the form set forth within Schedule "D" attached hereto. Atlas need not commence providing services until Purchaser shall have duly executed and delivered same to Atlas.

11.7    Use of Names and Logos. Purchaser shall not publish or use any advertising, sales promotions, press releases, or other publicity matters which use the corporate or trade names, logos, trademarks, trade dress, service marks or any copyrighted material of Atlas or its underlying carrier without the prior written consent of Atlas. Customer shall provide to Atlas for its prior review and written approval, all promotions, advertising or other materials or activity whereby it proposes to use or display Atlas' name or describing or referring to the Services to be provided by Atlas.

11.8    Entire Agreement. This Agreement constitutes the entire agreement among the Parties hereto with respect to the specific services provided under this Agreement only. Nothing contained herein shall serve to alter the terms or rates set forth in any other agreement(s) between the Parties and any such agreement(s) shall remain in full force and effect as to the specific services provided therein. Neither this Agreement nor any provisions hereof may be changed, waived, discharged, or terminated orally, but only by an agreement in writing signed by the Party against whom or which the enforcement of such change, waiver, discharge or termination is sought.

11.9    Waiver. Any failure on the part of any Party hereto to comply with any of its obligations, agreements or conditions hereunder may be waived by any other Party to whom such compliance is owed. No waiver of any provision of this Agreement shall be deemed, or shall constitute, a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver.

11.10    Severability. In the event that any provision of this Agreement or any word, phrase, clause, sentence or other portion thereof should be held to be unenforceable or invalid for any reason, such provision or portion thereof shall be modified or deleted in such a manner so as to make this Agreement, as modified, legal and enforceable to the fullest extent permitted under applicable laws.

Initial

Initial

6

11.11  Governing Law.  This Agreement shall be governed by and construed under and interpreted in accordance with the laws of the Commonwealth of Pennsylvania without regard to that States' choice of law provisions. The Parties consent to the settlement of all disputes through Arbitration in accordance with the then current procedures of the American Arbitration Association. The arbitration shall be conducted by a single arbitrator and shall be held in Philadelphia, PA. Judgment upon any award rendered may be entered in any court having jurisdiction thereof. Decisions of the arbitrator shall be final and binding on the Parties.

11.12  Notices.  All notices, requests, demands or other communications required or permitted to be given or made hereunder shall be in writing and delivered personally by the sender or a private overnight courier service, or sent by pre-paid, first class, certified or registered mail, return receipt requested, or by facsimile transmission, to the intended recipient thereof at its address or facsimile number set out below. Any such notice, demand or communication shall be deemed to have been duly given immediately if given or made by confirmed facsimile, on the next business day if sent by private courier, or five days after mailing, and in proving same it shall be sufficient to show that the envelope containing the same was duly addressed, stamped and posted, or that receipt of a facsimile was confirmed by the recipient. The addresses and facsimile numbers of the Parties for purposes of this Agreement are:

ATLAS:          482 Norristown Road
                Blue Bell, Pennsylvania 19422
                Attn: President
                Facsimile: (610) 940-9049

PURCHASER:      U.S. Digitel, Inc.
                1909 Tyler Street, 8th Floor
                Hollywood, FL 33020
                Attn: David Griffee
                Facsimile: (954) 927-7770

Any Party may change the address or facsimile number to which notices, requests, demands or other communications to such Party shall be delivered or mailed by giving notice thereof to the other Party hereto in the manner provided herein.

11.13  Amendments.  This Agreement may not be changed, altered or modified unless such change, alteration or modification is clearly established in writing and signed by an authorized representative of each Party.

Initial
Initial

7

11.14  <u>Assignment</u>. Neither Party shall assign any or all of its rights under this Agreement without the express written consent of the other Party, which consent shall not be unreasonably withheld.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their officers thereunto the day and year first written above.

ATLAS COMMUNICATIONS, LTD.                    U.S. DIGITEL, INC.

By: _____                  By: _____

Print: ___FRANK SCARDINO___                   Print: _DAVID R. GRIEBEL_

Title: _____V. Chair_____                     Title: _PRESIDENT_

Initial _____
Initial _____

8

## SCHEDULE B

### CERTIFICATED CUSTOMER
### QUESTIONNAIRE AND AFFIDAVIT
### FOR ATLAS COMMUNICATIONS, LTD.

*N/A*

Please give complete answers to all of the following questions. Your Wholesale Domestic Services Agreement ("Agreement") with Atlas Communications Ltd. ("ATLAS") may not be executed, and no orders may be accepted from you, until ATLAS receives a completed Questionnaire and Affidavit from you. The Questionnaire and Affidavit is a part of the Agreement and inaccurate answers to this questionnaire are grounds for immediate suspension or termination of your Agreement. You must submit a newly completed and updated questionnaire each year. In the event any of the information provided herein changes prior to the scheduled update, you must inform ATLAS of those changes promptly in writing.

Name of Company: _____

Address: _____

Telephone: _____    Fax: _____

Name of person to contact with questions regarding responses to this form:

_____

a.    What is your state of incorporation? _____
      Is your company currently in good standing in that state?  Yes/No.
      **Please attach a copy of your certificate of incorporation.**

b.    What states do you currently do business in?

      _____

c.    Please attach copies of federal and applicable state tax-exempt certificates. A state tax-exempt certificate must be presented for each state you are certified to resell in.

d.    In which states are you qualified to do business as a foreign corporation?

      _____

      _____

Initial _____

Initial _____

9

NA

e.    In which states are you certified by the state utility commission to resell long distance service? _____
_____

Please attach copies of all certificates, and for those states which require an informational filing, please attach copies of those filings.

f.    Do you have an interstate tariff on file with the FCC?  Yes/No.  If so, please provide the date the first tariff was filed. _____

g.    Do you have an international tariff or Section 214 authorization on file with the FCC? Yes/No.  If so, please provide the date the first tariff or the Section 214 authorization was filed. _____

I swear the foregoing information is true and correct.

_____
Signature

_____
Print Name

_____
Title

_____
Company Name

STATE OF                              )
                                     SS.
COUNTY OF                             )

On this _____ day of _____, 199__, the foregoing instrument was acknowledged before me by _____.

In witness whereof, I have set my hand and official seal this _____ day of _____, 199__.

_____
Notary Public

My commission expires: _____

Initial [signature]

Initial _____

10

## SCHEDULE C

### A.    *PAYPHONE SURCHARGE AFFIRMATION ADDENDUM*

Purchaser acknowledges that it is solely responsible to make any and all payphone service
provider surcharges levied by the Federal Communications Commission, or any state regulatory
body. Neither Atlas nor any long distance provider from whom Atlas purchases long distance
services has or will make payphone surcharge payments on your behalf.

Atlas shall provide Purchaser with any information in its possession that would permit the
identification of payphones as the source for toll-free calls.

Acknowledged by:

Initial

Initial

11

***SCHEDULE D***

***BLANKET LETTER OF AGENCY***

On _____, Purchaser entered into an agreement with Atlas Communications, Ltd. for the purpose of ordering telecommunications services.

Under the terms of this agreement and by this letter, Purchaser authorizes Atlas Communications, Ltd. to issue orders for services which are in the name of Purchaser.

The parties each acknowledge that the LOAs AND/OR VLOAs with such orders are the property of Purchaser.

This Letter of Agency will remain in effect until rescinded in writing by Purchaser and delivered to Atlas Communications, Ltd. upon sixty (60) days written notice.

U.S. Digitel, Inc.:                          Atlas Communications, Ltd.:


_____                _____
Name                                         Name


_____                _____
Signature                                    Signature


_____                _____
Title                                        Title


_____                _____
Date                                         Date

Initial

Initial

12

**SCHEDULE D**

**BLANKET LETTER OF AGENCY**

On _____, Purchaser entered into an agreement with Atlas

Communications, Ltd. for the purpose of ordering telecommunications services.

Under the terms of this agreement and by this letter, Purchaser authorizes Atlas

Communications, Ltd. to issue orders for services which are in the name of Purchaser.

The parties each acknowledge that the LOAs AND/OR VLOAs with such orders are the

property of Purchaser.

This Letter of Agency will remain in effect until rescinded in writing by Purchaser and

delivered to Atlas Communications, Ltd. upon sixty (60) days written notice.

| U.S. Digital, Inc.: | Atlas Communications, Ltd.: |
|---|---|
| *John P. Scafidi* | |
| **Name** | **Name** |
| *John P. Scafidi* | |
| **Signature** | **Signature** |
| *Chief Financial Officer* | |
| **Title** | **Title** |
| *7/19/00* | |
| **Date** | **Date** |

12



# FACSIMILE TRANSMISSION

**TO:** Don Shea

**COMPANY:**

**FAX NUMBER:** 610-940-9049

**FROM:** John Scafidi

**RE:**

**DATE:** 7/15/99

**PAGES (including cover sheet):**

---

Message

Dave,

Would you please sign the LOA? Our counsel prefers to have one on file for each agreement. Please mail back to me as I will need fresh ink on the paper. Thank you

This message is intended for the use of the individual or entity to whom it is addressed and may contain information that is privileged, confidential and/or exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the address below via the Postal Service. Thank you.

Atlas Communications, 482 Norristown Road, Suite 200, Blue Bell, PA 19422    610-940-9040



# Atlas Communications
## Interstate Termination Rates
### Schedule A - Q1

#### Volume Discount Pricing Structure

| Volume Level | Discount |
|---|---|
| $0 - $250,000 | 0% |
| $250,001 - $500,000 | 4% |
| $500,001 - $750,000 | 9% |
| $750,001 - $1,000,000 | 13% |
| $1,000,000 + ** | 15% |

\* Volume Level Buckets & Discounts are Product Type Specific.

\*\* Upon customer reaching $1,000,000+, all traffic for a given month
will be priced at the $1,000,000 + Pricing Structure.

| LATA | PRIMARY STATE | CLASS | SWITCH MEETPOINT | | | | | | RATES - POP MEETPOINT | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | ATL | MW | NW | S | SE | SW | POP ATL | POP MW | POP S | POP SW |
| 120 | ME | RBOC | $0.0257 | $0.0273 | $0.0304 | $0.0304 | $0.0273 | $0.0319 | $0.0273 | $0.0319 | $0.0334 | $0.0385 |
| 120 | ME | ITC | $0.0796 | $0.0811 | $0.0842 | $0.0842 | $0.0811 | $0.0857 | $0.0811 | $0.0857 | $0.0873 | $0.0903 |
| 122 | NH | RBOC | $0.0257 | $0.0273 | $0.0304 | $0.0304 | $0.0273 | $0.0319 | $0.0273 | $0.0319 | $0.0334 | $0.0365 |
| 122 | NH | ITC | $0.0645 | $0.0660 | $0.0691 | $0.0691 | $0.0660 | $0.0706 | $0.0660 | $0.0706 | $0.0722 | $0.0752 |
| 124 | VT | RBOC | $0.0257 | $0.0273 | $0.0304 | $0.0304 | $0.0273 | $0.0319 | $0.0273 | $0.0319 | $0.0334 | $0.0365 |
| 124 | VT | ITC | $0.0730 | $0.0746 | $0.0777 | $0.0777 | $0.0746 | $0.0792 | $0.0746 | $0.0792 | $0.0807 | $0.0838 |
| 126 | MA | RBOC | $0.0257 | $0.0273 | $0.0304 | $0.0304 | $0.0273 | $0.0319 | $0.0273 | $0.0319 | $0.0334 | $0.0365 |
| 126 | MA | ITC | $0.1006 | $0.1021 | $0.1052 | $0.1052 | $0.1021 | $0.1068 | $0.1021 | $0.1068 | $0.1083 | $0.1114 |
| 128 | MA | RBOC | $0.0257 | $0.0273 | $0.0304 | $0.0304 | $0.0273 | $0.0319 | $0.0273 | $0.0319 | $0.0334 | $0.0365 |
| 128 | MA | ITC | $0.1006 | $0.1021 | $0.1052 | $0.1052 | $0.1021 | $0.1068 | $0.1021 | $0.1068 | $0.1083 | $0.1114 |
| 130 | RI | RBOC | $0.0257 | $0.0273 | $0.0304 | $0.0304 | $0.0273 | $0.0319 | $0.0273 | $0.0319 | $0.0334 | $0.0365 |
| 130 | RI | ITC | $0.0257 | $0.0273 | $0.0304 | $0.0304 | $0.0273 | $0.0319 | $0.0273 | $0.0319 | $0.0334 | $0.0365 |
| 132 | NY | RBOC | $0.0257 | $0.0273 | $0.0304 | $0.0304 | $0.0273 | $0.0319 | $0.0273 | $0.0319 | $0.0334 | $0.0365 |
| 132 | NY | ITC | $0.0587 | $0.0603 | $0.0634 | $0.0634 | $0.0603 | $0.0649 | $0.0603 | $0.0649 | $0.0664 | $0.0895 |
| 133 | NY | RBOC | $0.0257 | $0.0273 | $0.0304 | $0.0304 | $0.0273 | $0.0319 | $0.0273 | $0.0319 | $0.0334 | $0.0365 |
| 133 | NY | ITC | $0.0606 | $0.0622 | $0.0652 | $0.0652 | $0.0622 | $0.0668 | $0.0622 | $0.0668 | $0.0683 | $0.0714 |
| 134 | NY | RBOC | $0.0257 | $0.0273 | $0.0304 | $0.0304 | $0.0273 | $0.0319 | $0.0273 | $0.0319 | $0.0334 | $0.0365 |
| 134 | NY | ITC | $0.0936 | $0.0952 | $0.0982 | $0.0982 | $0.0952 | $0.0998 | $0.0952 | $0.0998 | $0.1013 | $0.1044 |
| 136 | NY | RBOC | $0.0257 | $0.0273 | $0.0304 | $0.0304 | $0.0273 | $0.0319 | $0.0273 | $0.0319 | $0.0334 | $0.0365 |
| 136 | NY | ITC | $0.1258 | $0.1274 | $0.1305 | $0.1305 | $0.1274 | $0.1320 | $0.1274 | $0.1320 | $0.1335 | $0.1366 |
| 138 | NY | RBOC | $0.0257 | $0.0273 | $0.0304 | $0.0304 | $0.0273 | $0.0319 | $0.0273 | $0.0319 | $0.0334 | $0.0365 |
| 138 | NY | ITC | $0.0415 | $0.0430 | $0.0461 | $0.0461 | $0.0430 | $0.0476 | $0.0430 | $0.0476 | $0.0492 | $0.0522 |
| 140 | NY | RBOC | $0.0257 | $0.0273 | $0.0304 | $0.0304 | $0.0273 | $0.0319 | $0.0273 | $0.0319 | $0.0334 | $0.0365 |
| 140 | NY | ITC | $0.1012 | $0.1027 | $0.1058 | $0.1058 | $0.1027 | $0.1074 | $0.1027 | $0.1074 | $0.1089 | $0.1120 |
| 220 | NJ | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 220 | NJ | ITC | $0.0252 | $0.0267 | $0.0298 | $0.0298 | $0.0267 | $0.0313 | $0.0267 | $0.0313 | $0.0329 | $0.0359 |
| 222 | NJ | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 222 | NJ | ITC | $0.0252 | $0.0267 | $0.0298 | $0.0298 | $0.0267 | $0.0313 | $0.0267 | $0.0313 | $0.0329 | $0.0359 |
| 224 | NJ | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 224 | NJ | ITC | $0.0252 | $0.0267 | $0.0298 | $0.0298 | $0.0267 | $0.0313 | $0.0267 | $0.0313 | $0.0329 | $0.0359 |
| 226 | PA | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 226 | PA | ITC | $0.0464 | $0.0479 | $0.0510 | $0.0510 | $0.0478 | $0.0525 | $0.0479 | $0.0526 | $0.0641 | $0.0571 |
| 228 | PA | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 228 | PA | ITC | $0.0697 | $0.0712 | $0.0743 | $0.0743 | $0.0712 | $0.0759 | $0.0712 | $0.0759 | $0.0774 | $0.0805 |
| 230 | PA | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 230 | PA | ITC | $0.0419 | $0.0434 | $0.0465 | $0.0465 | $0.0434 | $0.0480 | $0.0434 | $0.0480 | $0.0496 | $0.0526 |
| 232 | PA | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 232 | PA | ITC | $0.0596 | $0.0612 | $0.0643 | $0.0643 | $0.0612 | $0.0658 | $0.0612 | $0.0658 | $0.0673 | $0.0704 |
| 234 | PA | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 234 | PA | ITC | $0.0549 | $0.0564 | $0.0595 | $0.0595 | $0.0564 | $0.0610 | $0.0564 | $0.0610 | $0.0626 | $0.0656 |
| 236 | DC | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |



# Atlas Communications For OC / ITC
## Interstate Termination Rates
### Schedule A - Q1

#### Volume Discount Pricing Structure

| Volume Level Buckets | Discount % * |
|---|---|
| $0 - $250,000 | 0% |
| $250,001 - $500,000 | 4% |
| $500,001 - $750,000 | 9% |
| $750,001 - $1,000,000 | 13% |
| $1,000,000 + ** | 15% |

\* Volume Level Buckets & Discounts are Product Type Specific.

\*\* Upon customer reaching $1,000,000+, all traffic for a given month will be priced at the $1,000,000 + Pricing Structure.

| LATA | PRIMARY STATE | CLASS | SWITCH MEETPOINT | | | | | | RATES - POP MEETPOINT | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | ATL | MW | NW | S | SE | SW | POP-ATL | POP MW | POP-S | POP SW |
| 236 | DC | ITC | $0.0626 | $0.0642 | $0.0672 | $0.0672 | $0.0642 | $0.0688 | $0.0642 | $0.0688 | $0.0703 | $0.0734 |
| 238 | MD | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 238 | MD | ITC | $0.1072 | $0.1087 | $0.1118 | $0.1118 | $0.1087 | $0.1133 | $0.1087 | $0.1133 | $0.1149 | $0.1180 |
| 240 | MD | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 240 | MD | ITC | $0.1072 | $0.1087 | $0.1118 | $0.1118 | $0.1087 | $0.1133 | $0.1087 | $0.1133 | $0.1149 | $0.1180 |
| 242 | MD | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 242 | MD | ITC | $0.1072 | $0.1087 | $0.1118 | $0.1118 | $0.1087 | $0.1133 | $0.1087 | $0.1133 | $0.1149 | $0.1180 |
| 244 | VA | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 244 | VA | ITC | $0.0447 | $0.0462 | $0.0493 | $0.0493 | $0.0462 | $0.0508 | $0.0462 | $0.0508 | $0.0524 | $0.0554 |
| 246 | VA | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 246 | VA | ITC | $0.0507 | $0.0522 | $0.0553 | $0.0553 | $0.0522 | $0.0568 | $0.0522 | $0.0568 | $0.0584 | $0.0615 |
| 248 | VA | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 248 | VA | ITC | $0.0624 | $0.0639 | $0.0670 | $0.0670 | $0.0639 | $0.0685 | $0.0639 | $0.0685 | $0.0701 | $0.0732 |
| 250 | VA | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 250 | VA | ITC | $0.0403 | $0.0418 | $0.0449 | $0.0449 | $0.0418 | $0.0464 | $0.0418 | $0.0464 | $0.0480 | $0.0510 |
| 252 | VA | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 252 | VA | ITC | $0.0630 | $0.0645 | $0.0676 | $0.0676 | $0.0645 | $0.0691 | $0.0645 | $0.0691 | $0.0706 | $0.0737 |
| 254 | WV | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 254 | WV | ITC | $0.0364 | $0.0379 | $0.0410 | $0.0410 | $0.0379 | $0.0426 | $0.0379 | $0.0426 | $0.0441 | $0.0472 |
| 256 | WV | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 256 | WV | ITC | $0.0933 | $0.0949 | $0.0979 | $0.0979 | $0.0949 | $0.0995 | $0.0949 | $0.0995 | $0.1010 | $0.1041 |
| 320 | OH | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 320 | OH | ITC | $0.0584 | $0.0569 | $0.0600 | $0.0600 | $0.0600 | $0.0615 | $0.0600 | $0.0615 | $0.0630 | $0.0661 |
| 322 | OH | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 322 | OH | ITC | $0.0513 | $0.0498 | $0.0528 | $0.0528 | $0.0528 | $0.0544 | $0.0528 | $0.0544 | $0.0559 | $0.0580 |
| 324 | OH | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 324 | OH | ITC | $0.0532 | $0.0516 | $0.0547 | $0.0547 | $0.0547 | $0.0563 | $0.0547 | $0.0569 | $0.0578 | $0.0609 |
| 325 | OH | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 325 | OH | ITC | $0.0584 | $0.0519 | $0.0550 | $0.0550 | $0.0550 | $0.0565 | $0.0580 | $0.0585 | $0.0580 | $0.0611 |
| 326 | OH | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 326 | OH | ITC | $0.0572 | $0.0556 | $0.0587 | $0.0587 | $0.0587 | $0.0602 | $0.0587 | $0.0602 | $0.0618 | $0.0648 |
| 328 | OH | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 328 | OH | ITC | $0.0541 | $0.0526 | $0.0557 | $0.0557 | $0.0557 | $0.0572 | $0.0557 | $0.0572 | $0.0587 | $0.0618 |
| 330 | IN | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 330 | IN | ITC | $0.0467 | $0.0451 | $0.0482 | $0.0482 | $0.0482 | $0.0498 | $0.0482 | $0.0498 | $0.0513 | $0.0544 |
| 332 | IN | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 332 | IN | ITC | $0.0566 | $0.0551 | $0.0582 | $0.0582 | $0.0582 | $0.0597 | $0.0582 | $0.0597 | $0.0612 | $0.0643 |
| 334 | IN | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 334 | IN | ITC | $0.0467 | $0.0451 | $0.0482 | $0.0482 | $0.0482 | $0.0498 | $0.0482 | $0.0498 | $0.0513 | $0.0544 |
| 336 | IN | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 336 | IN | ITC | $0.0616 | $0.0601 | $0.0632 | $0.0632 | $0.0632 | $0.0647 | $0.0632 | $0.0647 | $0.0662 | $0.0693 |

QDA-V QDA-V 5-20-99 -US Digital          CONFIDENTIAL          Initials _____ Initials _____

Atlas Communications RBOC / ITC
Interstate Termination Rates
Schedule A - Q1

**Volume Discount Pricing Structure**

| Volume Level Bucket ** | Discount % * |
|---|---|
| $0 - $250,000 | |
| $250,001 - $500,000 | 0% |
| $500,001 - $750,000 | 4% |
| $750,001 - $1,000,000 | 9% |
| $1,000,000 + ** | 13% |
| | 15% |

\* Volume Level Buckets & Discounts are Product Type Specific.
\*\* Upon customer reaching $1,000,000+, all traffic for a given month will be priced at the $1,000,000 + Pricing Structure.

| LATA | PRIMARY STATE | CLASS | ATL | MW | SWITCH MEETPOINT NW | S | SE | SW | RATES - POP MEETPOINT POP ATL | POP MW | POP S | POP SW |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 338 | IN | RBOC | $0.0152 | $0.0138 | $0.0167 | $0.0167 | | | | | | $0.0167 |
| 338 | IN | ITC | $0.0609 | $0.0599 | $0.0624 | $0.0624 | $0.0167 | $0.0182 | $0.0624 | $0.0182 | $0.0198 | $0.0229 |
| 340 | MI | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | | $0.0167 | | | |
| 340 | MI | ITC | $0.0461 | $0.0455 | $0.0466 | $0.0167 | $0.0167 | $0.0624 | $0.0659 | $0.0182 | $0.0198 | $0.0229 |
| 342 | MI | RBOC | $0.0152 | $0.0136 | $0.0466 | $0.0167 | $0.0167 | $0.0466 | $0.0481 | $0.0466 | $0.0182 | $0.0198 | $0.0688 |
| 342 | MI | ITC | $0.0492 | $0.0477 | $0.0167 | $0.0167 | $0.0167 | $0.0481 | $0.0167 | $0.0182 | $0.0497 | $0.0528 |
| 344 | MI | RBOC | $0.0152 | $0.0138 | $0.0508 | $0.0508 | $0.0167 | $0.0508 | $0.0182 | $0.0481 | $0.0497 | $0.0229 |
| 344 | MI | ITC | $0.0458 | $0.0442 | $0.0473 | $0.0167 | $0.0473 | $0.0523 | $0.0167 | $0.0182 | $0.0539 | $0.0528 |
| 346 | MI | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0473 | $0.0508 | $0.0523 | $0.0538 | $0.0229 |
| 346 | MI | ITC | $0.0604 | $0.0588 | $0.0167 | $0.0167 | $0.0473 | $0.0488 | $0.0473 | $0.0182 | $0.0198 | $0.0569 |
| 348 | MI | RBOC | $0.0152 | $0.0138 | $0.0619 | $0.0619 | $0.0167 | $0.0182 | $0.0167 | $0.0488 | $0.0504 | $0.0229 |
| 348 | MI | ITC | $0.0480 | $0.0414 | $0.0445 | $0.0167 | $0.0619 | $0.0635 | $0.0167 | $0.0182 | $0.0198 | $0.0534 |
| 350 | WI | RBOC | $0.0152 | $0.0138 | $0.0167 | $0.0167 | $0.0167 | $0.0445 | $0.0619 | $0.0635 | $0.0650 | $0.0229 |
| 350 | WI | ITC | $0.0580 | $0.0565 | $0.0596 | $0.0596 | $0.0167 | $0.0481 | $0.0445 | $0.0182 | $0.0198 | $0.0681 |
| 352 | WI | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0596 | $0.0167 | $0.0461 | $0.0478 | $0.0229 |
| 352 | WI | ITC | $0.0580 | $0.0565 | $0.0596 | $0.0596 | $0.0596 | $0.0611 | $0.0167 | $0.0182 | $0.0198 | $0.0507 |
| 354 | WI | RBOC | $0.0152 | $0.0138 | $0.0167 | $0.0167 | $0.0167 | $0.0596 | $0.0596 | $0.0611 | $0.0627 | $0.0229 |
| 354 | WI | ITC | $0.0554 | $0.0539 | $0.0569 | $0.0569 | $0.0167 | $0.0569 | $0.0167 | $0.0182 | $0.0198 | $0.0657 |
| 356 | WI | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0569 | $0.0596 | $0.0611 | $0.0626 | $0.0229 |
| 356 | IL | ITC | $0.0568 | $0.0553 | $0.0584 | $0.0584 | $0.0167 | $0.0584 | $0.0167 | $0.0182 | $0.0198 | $0.0657 |
| 358 | IL | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0584 | $0.0585 | $0.0600 | $0.0229 |
| 358 | IL | ITC | $0.0621 | $0.0606 | $0.0638 | $0.0638 | $0.0167 | $0.0598 | $0.0167 | $0.0182 | $0.0198 | $0.0691 |
| 360 | IL | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0638 | $0.0584 | $0.0599 | $0.0614 | $0.0229 |
| 360 | IL | ITC | $0.0608 | $0.0590 | $0.0621 | $0.0621 | $0.0167 | $0.0652 | $0.0167 | $0.0182 | $0.0198 | $0.0645 |
| 362 | IL | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0621 | $0.0632 | $0.0667 | $0.0229 |
| 362 | IL | ITC | $0.0751 | $0.0735 | $0.0766 | $0.0766 | $0.0167 | $0.0621 | $0.0167 | $0.0182 | $0.0198 | $0.0698 |
| 364 | IL | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0766 | $0.0637 | $0.0652 | $0.0229 |
| 364 | IL | ITC | $0.0751 | $0.0735 | $0.0167 | $0.0766 | $0.0766 | $0.0781 | $0.0167 | $0.0637 | $0.0198 | $0.0683 |
| 366 | IL | RBOC | $0.0152 | $0.0136 | $0.0766 | $0.0167 | $0.0167 | $0.0766 | $0.0766 | $0.0781 | $0.0797 | $0.0229 |
| 366 | IL | ITC | $0.0751 | $0.0735 | $0.0167 | $0.0167 | $0.0766 | $0.0781 | $0.0167 | $0.0781 | $0.0198 | $0.0828 |
| 368 | IL | RBOC | $0.0152 | $0.0136 | $0.0766 | $0.0766 | $0.0167 | $0.0766 | $0.0766 | $0.0781 | $0.0797 | $0.0229 |
| 368 | IL | ITC | $0.0489 | $0.0473 | $0.0504 | $0.0167 | $0.0766 | $0.0766 | $0.0167 | $0.0781 | $0.0198 | $0.0828 |
| 370 | IL | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0504 | $0.0766 | $0.0781 | $0.0797 | $0.0229 |
| 370 | IL | ITC | $0.0498 | $0.0482 | $0.0167 | $0.0504 | $0.0504 | $0.0519 | $0.0167 | $0.0781 | $0.0198 | $0.0828 |
| 374 | IL | RBOC | $0.0152 | $0.0136 | $0.0513 | $0.0513 | $0.0167 | $0.0519 | $0.0504 | $0.0519 | $0.0188 | $0.0229 |
| 374 | IL | ITC | $0.0572 | $0.0557 | $0.0588 | $0.0167 | $0.0513 | $0.0529 | $0.0167 | $0.0182 | $0.0198 | $0.0828 |
| 376 | IL | RBOC | $0.0152 | $0.0557 | $0.0167 | $0.0167 | $0.0167 | $0.0588 | $0.0513 | $0.0529 | $0.0535 | $0.0566 |
| 376 | NC | ITC | $0.0518 | $0.0503 | $0.0534 | $0.0588 | $0.0167 | $0.0609 | $0.0167 | $0.0529 | $0.0544 | $0.0575 |
| 420 | NC | RBOC | $0.0171 | $0.0186 | $0.0187 | $0.0187 | $0.0167 | $0.0588 | $0.0167 | $0.0529 | $0.0198 | $0.0229 |
| 420 | NC | ITC | $0.0570 | $0.0585 | $0.0217 | $0.0534 | $0.0534 | $0.0588 | $0.0167 | $0.0603 | $0.0618 | $0.0649 |
| 422 | NC | RBOC | $0.0171 | $0.0186 | $0.0616 | $0.0570 | $0.0171 | $0.0534 | $0.0182 | $0.0549 | $0.0198 | $0.0229 |
| | | ITC | $0.0570 | $0.0585 | $0.0217 | $0.0171 | $0.0156 | $0.0549 | $0.0167 | $0.0549 | $0.0565 | $0.0595 |
| | | RBOC | $0.0171 | $0.0186 | $0.0616 | $0.0570 | $0.0555 | $0.0585 | $0.0186 | $0.0233 | $0.0202 | $0.0229 |
| | | | | | | | $0.0585 | $0.0186 | $0.0585 | $0.0601 | $0.0233 |
| | | | | | | | $0.0186 | | $0.0632 | $0.0229 | $0.0632 |
| | | | | | | | | | | $0.0229 |

CONFIDENTIAL

Initials          Initials



# Atlas Communications - RBOC / ITC
## Interstate Termination Rates
### Schedule A - Q1
#### Volume Discount Pricing Structure

| Volume Level Buckets and Discount % * | |
|---|---|
| $0 - $250,000 | 0% |
| $250,001 - $500,000 | 4% |
| $500,001 - $750,000 | 9% |
| $750,001 - $1,000,000 | 13% |
| $1,000,000 + ** | 15% |

\* Volume Level Buckets & Discounts are Product Type Specific.

\*\* Upon customer reaching $1,000,000+, all traffic for a given month will be priced at the $1,000,000 + Pricing Structure.

| LATA | PRIMARY STATE | CLASS | SWITCH MEETPOINT | | | | | | RATES - POP MEETPOINT | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | ATL | MW | NW | S | SE | SW | POP ATL | POP MW | POP S | POP SW |
| 422 | NC | ITC | $0.0420 | $0.0435 | $0.0466 | $0.0420 | $0.0404 | $0.0435 | $0.0435 | $0.0481 | $0.0451 | $0.0481 |
| 424 | NC | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 424 | NC | ITC | $0.0373 | $0.0388 | $0.0419 | $0.0373 | $0.0358 | $0.0388 | $0.0388 | $0.0434 | $0.0404 | $0.0434 |
| 426 | NC | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 426 | NC | ITC | $0.0602 | $0.0618 | $0.0648 | $0.0602 | $0.0587 | $0.0618 | $0.0618 | $0.0664 | $0.0633 | $0.0664 |
| 428 | NC | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 428 | NC | ITC | $0.0441 | $0.0457 | $0.0487 | $0.0441 | $0.0426 | $0.0457 | $0.0457 | $0.0503 | $0.0472 | $0.0503 |
| 430 | SC | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 430 | SC | ITC | $0.0411 | $0.0427 | $0.0458 | $0.0411 | $0.0396 | $0.0427 | $0.0427 | $0.0473 | $0.0442 | $0.0473 |
| 432 | SC | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 432 | SC | ITC | $0.0537 | $0.0552 | $0.0583 | $0.0537 | $0.0522 | $0.0552 | $0.0552 | $0.0599 | $0.0568 | $0.0599 |
| 434 | SC | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 434 | SC | ITC | $0.0488 | $0.0503 | $0.0534 | $0.0488 | $0.0472 | $0.0503 | $0.0503 | $0.0549 | $0.0519 | $0.0549 |
| 436 | SC | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 436 | SC | ITC | $0.0508 | $0.0523 | $0.0554 | $0.0508 | $0.0492 | $0.0523 | $0.0523 | $0.0569 | $0.0539 | $0.0569 |
| 438 | GA | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 438 | GA | ITC | $0.0523 | $0.0539 | $0.0570 | $0.0523 | $0.0508 | $0.0539 | $0.0539 | $0.0585 | $0.0554 | $0.0585 |
| 440 | GA | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 440 | GA | ITC | $0.0568 | $0.0584 | $0.0614 | $0.0568 | $0.0553 | $0.0584 | $0.0584 | $0.0630 | $0.0599 | $0.0630 |
| 442 | GA | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 442 | GA | ITC | $0.0650 | $0.0665 | $0.0696 | $0.0650 | $0.0635 | $0.0665 | $0.0665 | $0.0712 | $0.0681 | $0.0712 |
| 444 | GA | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 444 | GA | ITC | $0.0917 | $0.0932 | $0.0963 | $0.0917 | $0.0901 | $0.0932 | $0.0932 | $0.0978 | $0.0948 | $0.0978 |
| 446 | GA | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 446 | GA | ITC | $0.0975 | $0.0990 | $0.1021 | $0.0975 | $0.0960 | $0.0990 | $0.0990 | $0.1036 | $0.1006 | $0.1036 |
| 448 | FL | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 448 | FL | ITC | $0.0322 | $0.0338 | $0.0368 | $0.0322 | $0.0307 | $0.0338 | $0.0338 | $0.0384 | $0.0353 | $0.0384 |
| 450 | FL | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 450 | FL | ITC | $0.0462 | $0.0478 | $0.0508 | $0.0462 | $0.0447 | $0.0478 | $0.0478 | $0.0524 | $0.0493 | $0.0524 |
| 452 | FL | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 452 | FL | ITC | $0.0305 | $0.0320 | $0.0351 | $0.0305 | $0.0289 | $0.0320 | $0.0320 | $0.0366 | $0.0335 | $0.0366 |
| 454 | FL | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 454 | FL | ITC | $0.0342 | $0.0357 | $0.0388 | $0.0342 | $0.0327 | $0.0357 | $0.0357 | $0.0404 | $0.0373 | $0.0404 |
| 456 | FL | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 456 | FL | ITC | $0.0462 | $0.0478 | $0.0508 | $0.0462 | $0.0447 | $0.0478 | $0.0478 | $0.0524 | $0.0493 | $0.0524 |
| 458 | FL | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 458 | FL | ITC | $0.0357 | $0.0352 | $0.0383 | $0.0337 | $0.0321 | $0.0352 | $0.0352 | $0.0398 | $0.0368 | $0.0398 |
| 460 | FL | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 460 | FL | ITC | $0.0404 | $0.0419 | $0.0450 | $0.0404 | $0.0388 | $0.0419 | $0.0419 | $0.0465 | $0.0435 | $0.0465 |
| 462 | KY | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 462 | KY | ITC | $0.0568 | $0.0583 | $0.0614 | $0.0568 | $0.0552 | $0.0583 | $0.0583 | $0.0629 | $0.0598 | $0.0629 |

QDA-V QDA-V 5-20-99 -US Digital                    CONFIDENTIAL                    Initials _____ Initials _____

## Atlas Communications - RBOC

### Interstate Termination Rates
### Schedule A - Q1

#### Volume Discount Pricing Structure

| Volume Level Buckets * | Discount as % * |
|---|---|
| $0 - $250,000 | 0% |
| $250,001 - $500,000 | 4% |
| $500,001 - $750,000 | 9% |
| $750,001 - $1,000,000 | 13% |
| $1,000,000 + ** | 15% |

\* Volume Level Buckets & Discounts are Product Type Specific.
\*\* Upon customer reaching $1,000,000+, all traffic for a given month
will be priced at the $1,000,000 + Pricing Strucute.

| LATA | PRIMARY STATE | CLASS | SWITCH MEETPOINT | | | | | | RATES - POP MEETPOINT | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | ATL | MW | NW | S | SE | SW | POP ATL | POP MW | POP S | POP SW |
| 464 | KY | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 464 | KY | ITC | $0.0617 | $0.0633 | $0.0664 | $0.0617 | $0.0602 | $0.0633 | $0.0633 | $0.0679 | $0.0648 | $0.0679 |
| 466 | KY | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 466 | KY | ITC | $0.0244 | $0.0260 | $0.0290 | $0.0244 | $0.0229 | $0.0260 | $0.0260 | $0.0306 | $0.0275 | $0.0306 |
| 468 | TN | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 468 | TN | ITC | $0.0817 | $0.0833 | $0.0864 | $0.0817 | $0.0802 | $0.0833 | $0.0833 | $0.0879 | $0.0848 | $0.0879 |
| 470 | TN | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 470 | TN | ITC | $0.0715 | $0.0730 | $0.0761 | $0.0715 | $0.0699 | $0.0730 | $0.0730 | $0.0776 | $0.0746 | $0.0776 |
| 472 | TN | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 472 | TN | ITC | $0.0682 | $0.0697 | $0.0728 | $0.0682 | $0.0666 | $0.0697 | $0.0697 | $0.0743 | $0.0712 | $0.0743 |
| 474 | TN | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 474 | TN | ITC | $0.0624 | $0.0639 | $0.0670 | $0.0624 | $0.0608 | $0.0639 | $0.0639 | $0.0685 | $0.0654 | $0.0685 |
| 476 | AL | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 476 | AL | ITC | $0.0561 | $0.0576 | $0.0607 | $0.0561 | $0.0545 | $0.0576 | $0.0576 | $0.0622 | $0.0592 | $0.0622 |
| 477 | AL | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 477 | AL | ITC | $0.0588 | $0.0604 | $0.0634 | $0.0588 | $0.0573 | $0.0604 | $0.0604 | $0.0650 | $0.0618 | $0.0650 |
| 478 | AL | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 478 | AL | ITC | $0.0618 | $0.0634 | $0.0664 | $0.0618 | $0.0603 | $0.0634 | $0.0634 | $0.0680 | $0.0649 | $0.0680 |
| 480 | AL | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 480 | AL | ITC | $0.0737 | $0.0752 | $0.0783 | $0.0737 | $0.0722 | $0.0752 | $0.0752 | $0.0798 | $0.0768 | $0.0798 |
| 482 | MS | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 482 | MS | ITC | $0.0634 | $0.0649 | $0.0680 | $0.0634 | $0.0618 | $0.0649 | $0.0649 | $0.0695 | $0.0664 | $0.0696 |
| 484 | MS | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 484 | MS | ITC | $0.0634 | $0.0649 | $0.0680 | $0.0634 | $0.0618 | $0.0649 | $0.0649 | $0.0695 | $0.0664 | $0.0695 |
| 486 | LA | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 486 | LA | ITC | $0.0678 | $0.0694 | $0.0724 | $0.0678 | $0.0663 | $0.0694 | $0.0694 | $0.0740 | $0.0709 | $0.0740 |
| 488 | LA | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 488 | LA | ITC | $0.0696 | $0.0711 | $0.0742 | $0.0696 | $0.0681 | $0.0711 | $0.0711 | $0.0758 | $0.0727 | $0.0758 |
| 490 | LA | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 490 | LA | ITC | $0.1083 | $0.1098 | $0.1129 | $0.1083 | $0.1067 | $0.1098 | $0.1098 | $0.1144 | $0.1114 | $0.1144 |
| 492 | LA | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 492 | LA | ITC | $0.1083 | $0.1098 | $0.1129 | $0.1083 | $0.1067 | $0.1098 | $0.1098 | $0.1144 | $0.1114 | $0.1144 |
| 520 | MO | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0223 |
| 520 | MO | ITC | $0.0619 | $0.0604 | $0.0635 | $0.0635 | $0.0635 | $0.0650 | $0.0635 | $0.0650 | $0.0666 | $0.0690 |
| 521 | MO | RBOC | $0.0173 | $0.0158 | $0.0189 | $0.0189 | $0.0189 | $0.0204 | $0.0189 | $0.0204 | $0.0220 | $0.0250 |
| 521 | MO | ITC | $0.0482 | $0.0468 | $0.0497 | $0.0497 | $0.0497 | $0.0512 | $0.0497 | $0.0512 | $0.0528 | $0.0550 |
| 522 | MO | RBOC | $0.0173 | $0.0158 | $0.0189 | $0.0189 | $0.0189 | $0.0204 | $0.0189 | $0.0204 | $0.0220 | $0.0250 |
| 522 | MO | ITC | $0.0522 | $0.0507 | $0.0537 | $0.0537 | $0.0537 | $0.0553 | $0.0537 | $0.0553 | $0.0568 | $0.0590 |
| 524 | MO | RBOC | $0.0173 | $0.0158 | $0.0189 | $0.0189 | $0.0189 | $0.0204 | $0.0189 | $0.0204 | $0.0220 | $0.0250 |
| 524 | MO | ITC | $0.0606 | $0.0590 | $0.0621 | $0.0621 | $0.0621 | $0.0637 | $0.0621 | $0.0637 | $0.0652 | $0.0680 |
| 526 | AR | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |

Case 0:00-cv-06096-ASG   Document 48   Entered on FLSD Docket 01/23/2000   Page 39 of 90

# Atlas Communications RBOC/ITC
## Interstate Termination Rates
### Schedule A - Q1

#### Volume Discount Pricing Structure

| Volume Level Buckets * | Discount % * |
|---|---|
| $0 - $250,000 | 0% |
| $250,001 - $500,000 | 4% |
| $500,001 - $750,000 | 9% |
| $750,001 - $1,000,000 | 13% |
| $1,000,000 + ** | 15% |

\* Volume Level Buckets & Discounts are Product Type Specific.

\** Upon customer reaching $1,000,000+, all traffic for a given month will be priced at the $1,000,000 + Pricing Structure.

| LATA | PRIMARY STATE | CLASS | SWITCH MEETPOINT | | | | | | RATES - POP MEETPOINT | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | ATL | MW | NW | S | SE | SW | POP ATL | POP MW | POP S | POP SW |
| 526 | AR | ITC | $0.0609 | $0.0594 | $0.0609 | $0.0563 | $0.0578 | $0.0578 | $0.0624 | $0.0640 | $0.0594 | $0.0624 |
| 526 | AR | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 528 | AR | ITC | $0.0712 | $0.0697 | $0.0712 | $0.0666 | $0.0681 | $0.0681 | $0.0727 | $0.0743 | $0.0697 | $0.0727 |
| 530 | AR | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 530 | AR | ITC | $0.0685 | $0.0670 | $0.0685 | $0.0639 | $0.0654 | $0.0654 | $0.0701 | $0.0716 | $0.0670 | $0.0701 |
| 532 | KS | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0178 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 532 | KS | ITC | $0.0699 | $0.0683 | $0.0699 | $0.0653 | $0.0668 | $0.0668 | $0.0714 | $0.0730 | $0.0683 | $0.0714 |
| 534 | KS | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 534 | KS | ITC | $0.0679 | $0.0664 | $0.0679 | $0.0633 | $0.0648 | $0.0648 | $0.0695 | $0.0710 | $0.0664 | $0.0695 |
| 536 | OK | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 536 | OK | ITC | $0.0529 | $0.0514 | $0.0529 | $0.0483 | $0.0499 | $0.0499 | $0.0545 | $0.0560 | $0.0514 | $0.0545 |
| 538 | OK | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 538 | OK | ITC | $0.0482 | $0.0467 | $0.0482 | $0.0436 | $0.0451 | $0.0451 | $0.0497 | $0.0513 | $0.0467 | $0.0497 |
| 540 | TX | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 540 | TX | ITC | $0.0864 | $0.0849 | $0.0864 | $0.0818 | $0.0834 | $0.0834 | $0.0880 | $0.0895 | $0.0849 | $0.0880 |
| 542 | TX | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 542 | TX | ITC | $0.0856 | $0.0841 | $0.0856 | $0.0810 | $0.0825 | $0.0825 | $0.0871 | $0.0887 | $0.0841 | $0.0871 |
| 544 | TX | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 544 | TX | ITC | $0.0528 | $0.0512 | $0.0528 | $0.0481 | $0.0497 | $0.0497 | $0.0543 | $0.0558 | $0.0512 | $0.0543 |
| 546 | TX | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 546 | TX | ITC | $0.0612 | $0.0597 | $0.0612 | $0.0566 | $0.0582 | $0.0582 | $0.0628 | $0.0643 | $0.0597 | $0.0628 |
| 548 | TX | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 548 | TX | ITC | $0.0597 | $0.0581 | $0.0597 | $0.0551 | $0.0566 | $0.0566 | $0.0612 | $0.0628 | $0.0581 | $0.0612 |
| 550 | TX | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 550 | TX | ITC | $0.0304 | $0.0288 | $0.0304 | $0.0258 | $0.0278 | $0.0273 | $0.0319 | $0.0334 | $0.0288 | $0.0319 |
| 552 | TX | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 552 | TX | ITC | $0.0304 | $0.0288 | $0.0304 | $0.0258 | $0.0273 | $0.0273 | $0.0319 | $0.0334 | $0.0288 | $0.0319 |
| 554 | TX | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 554 | TX | ITC | $0.0304 | $0.0288 | $0.0304 | $0.0258 | $0.0273 | $0.0273 | $0.0319 | $0.0334 | $0.0288 | $0.0319 |
| 556 | TX | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 556 | TX | ITC | $0.0304 | $0.0288 | $0.0304 | $0.0258 | $0.0273 | $0.0273 | $0.0319 | $0.0334 | $0.0288 | $0.0319 |
| 558 | TX | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 558 | TX | ITC | $0.0304 | $0.0288 | $0.0304 | $0.0258 | $0.0273 | $0.0273 | $0.0319 | $0.0334 | $0.0288 | $0.0319 |
| 560 | TX | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 560 | TX | ITC | $0.0416 | $0.0401 | $0.0416 | $0.0370 | $0.0385 | $0.0385 | $0.0431 | $0.0447 | $0.0401 | $0.0431 |
| 562 | TX | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 562 | TX | ITC | $0.0304 | $0.0288 | $0.0304 | $0.0258 | $0.0273 | $0.0273 | $0.0319 | $0.0334 | $0.0288 | $0.0319 |
| 564 | TX | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 564 | TX | ITC | $0.0304 | $0.0288 | $0.0304 | $0.0258 | $0.0273 | $0.0273 | $0.0319 | $0.0334 | $0.0288 | $0.0319 |
| 566 | TX | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 566 | TX | ITC | $0.0304 | $0.0288 | $0.0304 | $0.0258 | $0.0273 | $0.0273 | $0.0319 | $0.0334 | $0.0288 | $0.0319 |

QDA-V QDA-V 5-20-99 -US Digitel          CONFIDENTIAL          Initials _____ Initials _____



# Atlas Communications - RP~C/ITC
## Interstate Termination Rates
### Schedule A - Q1

#### Volume Discount Pricing Structure

| Volume Level Buckets * | Discounts ** |
|---|---|
| $0 - $250,000 | 0% |
| $250,001 - $500,000 | 4% |
| $500,001 - $750,000 | 9% |
| $750,001 - $1,000,000 | 13% |
| $1,000,000 + ** | 15% |

\* Volume Level Buckets & Discounts are Product Type Specific.

\*\* Upon customer reaching $1,000,000+, all traffic for a given month
will be priced at the $1,000,000 + Pricing Structure.

| LATA | PRIMARY STATE | CLASS | SWITCH MEETPOINT | | | | | | RATES - POP MEETPOINT | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | ATL | MW | NW | S | SE | SW | POP ATL | POP MW | POP S | POP SW |
| 568 | TX | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 568 | TX | ITC | $0.0304 | $0.0288 | $0.0304 | $0.0258 | $0.0273 | $0.0273 | $0.0319 | $0.0334 | $0.0288 | $0.0319 |
| 570 | TX | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 570 | TX | ITC | $0.0304 | $0.0288 | $0.0304 | $0.0258 | $0.0273 | $0.0273 | $0.0319 | $0.0334 | $0.0288 | $0.0319 |
| 620 | MN | RBOC | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0186 | $0.0202 | $0.0186 | $0.0202 | $0.0217 | $0.0248 |
| 620 | MN | ITC | $0.0592 | $0.0577 | $0.0608 | $0.0608 | $0.0608 | $0.0623 | $0.0608 | $0.0623 | $0.0639 | $0.0669 |
| 624 | MN | RBOC | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0186 | $0.0202 | $0.0186 | $0.0202 | $0.0217 | $0.0248 |
| 624 | MN | ITC | $0.0626 | $0.0611 | $0.0642 | $0.0642 | $0.0642 | $0.0657 | $0.0642 | $0.0657 | $0.0673 | $0.0703 |
| 626 | MN | RBOC | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0186 | $0.0202 | $0.0186 | $0.0202 | $0.0217 | $0.0248 |
| 626 | MN | ITC | $0.0620 | $0.0605 | $0.0636 | $0.0636 | $0.0636 | $0.0651 | $0.0636 | $0.0651 | $0.0667 | $0.0697 |
| 628 | MN | RBOC | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0186 | $0.0202 | $0.0186 | $0.0202 | $0.0217 | $0.0248 |
| 628 | MN | ITC | $0.0651 | $0.0636 | $0.0668 | $0.0668 | $0.0668 | $0.0682 | $0.0668 | $0.0682 | $0.0697 | $0.0728 |
| 630 | IA | RBOC | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0186 | $0.0202 | $0.0186 | $0.0202 | $0.0217 | $0.0248 |
| 630 | IA | ITC | $0.0832 | $0.0817 | $0.0848 | $0.0848 | $0.0848 | $0.0869 | $0.0848 | $0.0863 | $0.0878 | $0.0909 |
| 632 | IA | RBOC | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0186 | $0.0202 | $0.0186 | $0.0202 | $0.0217 | $0.0248 |
| 632 | IA | ITC | $0.0418 | $0.0403 | $0.0434 | $0.0434 | $0.0434 | $0.0449 | $0.0434 | $0.0449 | $0.0464 | $0.0495 |
| 634 | IA | RBOC | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0186 | $0.0202 | $0.0186 | $0.0202 | $0.0217 | $0.0248 |
| 634 | IA | ITC | $0.0707 | $0.0691 | $0.0722 | $0.0722 | $0.0722 | $0.0737 | $0.0722 | $0.0737 | $0.0753 | $0.0784 |
| 635 | IA | RBOC | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0186 | $0.0202 | $0.0186 | $0.0202 | $0.0217 | $0.0248 |
| 635 | IA | ITC | $0.0740 | $0.0725 | $0.0755 | $0.0755 | $0.0755 | $0.0771 | $0.0755 | $0.0771 | $0.0786 | $0.0817 |
| 636 | ND | RBOC | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0186 | $0.0202 | $0.0186 | $0.0202 | $0.0217 | $0.0248 |
| 636 | ND | ITC | $0.0639 | $0.0624 | $0.0654 | $0.0654 | $0.0654 | $0.0670 | $0.0654 | $0.0670 | $0.0685 | $0.0716 |
| 638 | ND | RBOC | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0186 | $0.0202 | $0.0186 | $0.0202 | $0.0217 | $0.0248 |
| 638 | ND | ITC | $0.0639 | $0.0624 | $0.0654 | $0.0654 | $0.0654 | $0.0670 | $0.0654 | $0.0670 | $0.0685 | $0.0716 |
| 640 | SD | RBOC | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0186 | $0.0202 | $0.0186 | $0.0202 | $0.0217 | $0.0248 |
| 640 | SD | ITC | $0.1097 | $0.1082 | $0.1113 | $0.1113 | $0.1113 | $0.1128 | $0.1113 | $0.1128 | $0.1144 | $0.1174 |
| 644 | NE | RBOC | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0186 | $0.0202 | $0.0186 | $0.0202 | $0.0217 | $0.0248 |
| 644 | NE | ITC | $0.0646 | $0.0630 | $0.0661 | $0.0661 | $0.0661 | $0.0676 | $0.0661 | $0.0676 | $0.0692 | $0.0723 |
| 646 | NE | RBOC | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0186 | $0.0202 | $0.0186 | $0.0202 | $0.0217 | $0.0248 |
| 646 | NE | ITC | $0.0622 | $0.0606 | $0.0637 | $0.0637 | $0.0637 | $0.0652 | $0.0637 | $0.0652 | $0.0668 | $0.0698 |
| 648 | MT | RBOC | $0.0202 | $0.0186 | $0.0156 | $0.0202 | $0.0217 | $0.0171 | $0.0217 | $0.0232 | $0.0232 | $0.0217 |
| 648 | MT | ITC | $0.1073 | $0.1058 | $0.1027 | $0.1073 | $0.1089 | $0.1043 | $0.1089 | $0.1104 | $0.1104 | $0.1089 |
| 650 | MT | RBOC | $0.0202 | $0.0186 | $0.0156 | $0.0202 | $0.0217 | $0.0171 | $0.0217 | $0.0232 | $0.0232 | $0.0217 |
| 650 | MT | ITC | $0.1178 | $0.1162 | $0.1192 | $0.1178 | $0.1193 | $0.1147 | $0.1193 | $0.1208 | $0.1208 | $0.1193 |
| 652 | ID | RBOC | $0.0202 | $0.0186 | $0.0156 | $0.0202 | $0.0217 | $0.0171 | $0.0217 | $0.0232 | $0.0232 | $0.0217 |
| 652 | ID | ITC | $0.0696 | $0.0681 | $0.0650 | $0.0696 | $0.0712 | $0.0665 | $0.0712 | $0.0727 | $0.0727 | $0.0712 |
| 654 | WY | RBOC | $0.0202 | $0.0186 | $0.0156 | $0.0202 | $0.0217 | $0.0171 | $0.0217 | $0.0232 | $0.0232 | $0.0217 |
| 654 | WY | ITC | $0.0882 | $0.0866 | $0.0836 | $0.0882 | $0.0897 | $0.0851 | $0.0897 | $0.0912 | $0.0912 | $0.0897 |
| 656 | CO | RBOC | $0.0217 | $0.0202 | $0.0171 | $0.0171 | $0.0186 | $0.0156 | $0.0232 | $0.0248 | $0.0202 | $0.0202 |
| 656 | CO | ITC | $0.0682 | $0.0667 | $0.0636 | $0.0636 | $0.0652 | $0.0621 | $0.0698 | $0.0713 | $0.0667 | $0.0667 |
| 658 | CO | RBOC | $0.0217 | $0.0202 | $0.0171 | $0.0171 | $0.0186 | $0.0156 | $0.0232 | $0.0248 | $0.0202 | $0.0202 |

Page 8
QDA-V QDA-V 5-20-99 -US Digital                  CONFIDENTIAL.                  Initials _____   Initials _____



# Atlas Communications - RBC/ITC

## Interstate Termination Rates
### Schedule A - Q1

#### Volume Discount Pricing Structure

| Volume Level Buckets (Mthly Revenue) | Discount |
|---|---|
| $0 - $250,000 | 0% |
| $250,001 - $500,000 | 4% |
| $500,001 - $750,000 | 9% |
| $750,001 - $1,000,000 | 13% |
| $1,000,000 + ** | 15% |

* Volume Level Buckets & Discounts are Product Type Specific.

** Upon customer reaching $1,000,000+, all traffic for a given month
will be priced at the $1,000,000 + Pricing Strucute.

| LATA | PRIMARY STATE | CLASS | SWITCH MEETPOINT | | | | | | RATES - POP MEETPOINT | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | ATL | MW | NW | S | SE | SW | POP ATL | POP MW | POP S | POP SW |
| 658 | CO | ITC | $0.1062 | $0.1047 | $0.1016 | $0.1016 | $0.1031 | $0.1001 | $0.1078 | $0.1093 | $0.1047 | $0.1047 |
| 660 | UT | RBOC | $0.0217 | $0.0202 | $0.0171 | $0.0171 | $0.0186 | $0.0156 | $0.0232 | $0.0248 | $0.0202 | $0.0202 |
| 660 | UT | ITC | $0.0654 | $0.0639 | $0.0608 | $0.0608 | $0.0624 | $0.0593 | $0.0670 | $0.0685 | $0.0639 | $0.0639 |
| 664 | NM | RBOC | $0.0217 | $0.0202 | $0.0171 | $0.0171 | $0.0186 | $0.0156 | $0.0232 | $0.0248 | $0.0202 | $0.0202 |
| 664 | NM | ITC | $0.0562 | $0.0547 | $0.0516 | $0.0516 | $0.0531 | $0.0501 | $0.0578 | $0.0593 | $0.0547 | $0.0547 |
| 666 | AZ | RBOC | $0.0217 | $0.0202 | $0.0171 | $0.0171 | $0.0186 | $0.0156 | $0.0232 | $0.0248 | $0.0202 | $0.0202 |
| 666 | AZ | ITC | $0.1053 | $0.1038 | $0.1007 | $0.1007 | $0.1022 | $0.0992 | $0.1069 | $0.1084 | $0.1038 | $0.1038 |
| 668 | AZ | RBOC | $0.0217 | $0.0202 | $0.0171 | $0.0171 | $0.0186 | $0.0156 | $0.0232 | $0.0248 | $0.0202 | $0.0202 |
| 668 | AZ | ITC | $0.1053 | $0.1038 | $0.1007 | $0.1007 | $0.1022 | $0.0992 | $0.1069 | $0.1084 | $0.1038 | $0.1038 |
| 670 | OR | RBOC | $0.0202 | $0.0186 | $0.0156 | $0.0202 | $0.0217 | $0.0171 | $0.0217 | $0.0232 | $0.0232 | $0.0217 |
| 670 | OR | ITC | $0.0630 | $0.0615 | $0.0584 | $0.0630 | $0.0645 | $0.0599 | $0.0645 | $0.0661 | $0.0661 | $0.0645 |
| 672 | OR | RBOC | $0.0202 | $0.0186 | $0.0156 | $0.0202 | $0.0217 | $0.0171 | $0.0217 | $0.0232 | $0.0232 | $0.0217 |
| 672 | OR | ITC | $0.0618 | $0.0603 | $0.0572 | $0.0618 | $0.0634 | $0.0587 | $0.0634 | $0.0649 | $0.0649 | $0.0634 |
| 674 | WA | RBOC | $0.0202 | $0.0186 | $0.0156 | $0.0202 | $0.0217 | $0.0171 | $0.0217 | $0.0232 | $0.0232 | $0.0217 |
| 674 | WA | ITC | $0.0463 | $0.0447 | $0.0416 | $0.0463 | $0.0478 | $0.0432 | $0.0478 | $0.0493 | $0.0493 | $0.0478 |
| 676 | WA | RBOC | $0.0202 | $0.0186 | $0.0156 | $0.0202 | $0.0217 | $0.0171 | $0.0217 | $0.0232 | $0.0232 | $0.0217 |
| 676 | WA | ITC | $0.0527 | $0.0511 | $0.0480 | $0.0527 | $0.0542 | $0.0496 | $0.0542 | $0.0557 | $0.0557 | $0.0542 |
| 720 | NV | RBOC | $0.0307 | $0.0292 | $0.0261 | $0.0261 | $0.0276 | $0.0246 | $0.0323 | $0.0338 | $0.0292 | $0.0292 |
| 720 | NV | ITC | $0.0735 | $0.0719 | $0.0688 | $0.0689 | $0.0704 | $0.0673 | $0.0750 | $0.0768 | $0.0719 | $0.0719 |
| 721 | NV | RBOC | $0.0307 | $0.0292 | $0.0261 | $0.0261 | $0.0276 | $0.0246 | $0.0323 | $0.0338 | $0.0292 | $0.0292 |
| 721 | NV | ITC | $0.0170 | $0.0155 | $0.0124 | $0.0124 | $0.0140 | $0.0109 | $0.0186 | $0.0201 | $0.0155 | $0.0155 |
| 722 | CA | RBOC | $0.0289 | $0.0274 | $0.0243 | $0.0243 | $0.0258 | $0.0228 | $0.0304 | $0.0320 | $0.0274 | $0.0274 |
| 722 | CA | ITC | $0.0486 | $0.0470 | $0.0439 | $0.0439 | $0.0455 | $0.0424 | $0.0501 | $0.0516 | $0.0470 | $0.0470 |
| 724 | CA | RBOC | $0.0289 | $0.0274 | $0.0243 | $0.0243 | $0.0258 | $0.0228 | $0.0304 | $0.0320 | $0.0274 | $0.0274 |
| 724 | CA | ITC | $0.0751 | $0.0736 | $0.0705 | $0.0705 | $0.0720 | $0.0689 | $0.0766 | $0.0782 | $0.0736 | $0.0736 |
| 726 | CA | RBOC | $0.0289 | $0.0274 | $0.0243 | $0.0243 | $0.0258 | $0.0228 | $0.0304 | $0.0320 | $0.0274 | $0.0274 |
| 726 | CA | ITC | $0.0709 | $0.0693 | $0.0662 | $0.0662 | $0.0678 | $0.0647 | $0.0724 | $0.0739 | $0.0693 | $0.0693 |
| 728 | CA | RBOC | $0.0289 | $0.0274 | $0.0243 | $0.0243 | $0.0258 | $0.0228 | $0.0304 | $0.0320 | $0.0274 | $0.0274 |
| 728 | CA | ITC | $0.0475 | $0.0460 | $0.0429 | $0.0429 | $0.0444 | $0.0414 | $0.0490 | $0.0506 | $0.0460 | $0.0460 |
| 730 | CA | RBOC | $0.0289 | $0.0274 | $0.0243 | $0.0243 | $0.0258 | $0.0228 | $0.0304 | $0.0320 | $0.0274 | $0.0274 |
| 730 | CA | ITC | $0.0228 | $0.0213 | $0.0182 | $0.0182 | $0.0198 | $0.0167 | $0.0244 | $0.0259 | $0.0213 | $0.0213 |
| 732 | CA | RBOC | $0.0289 | $0.0274 | $0.0243 | $0.0243 | $0.0258 | $0.0228 | $0.0304 | $0.0320 | $0.0274 | $0.0274 |
| 732 | CA | ITC | $0.0689 | $0.0673 | $0.0642 | $0.0642 | $0.0658 | $0.0627 | $0.0704 | $0.0719 | $0.0673 | $0.0673 |
| 734 | CA | RBOC | $0.0289 | $0.0274 | $0.0243 | $0.0243 | $0.0258 | $0.0228 | $0.0304 | $0.0320 | $0.0274 | $0.0274 |
| 734 | CA | ITC | $0.0689 | $0.0673 | $0.0642 | $0.0642 | $0.0658 | $0.0627 | $0.0704 | $0.0719 | $0.0673 | $0.0673 |
| 736 | CA | RBOC | $0.0289 | $0.0274 | $0.0243 | $0.0243 | $0.0258 | $0.0228 | $0.0304 | $0.0320 | $0.0274 | $0.0274 |
| 736 | CA | ITC | $0.0689 | $0.0673 | $0.0642 | $0.0642 | $0.0658 | $0.0627 | $0.0704 | $0.0719 | $0.0673 | $0.0673 |
| 738 | CA | RBOC | $0.0289 | $0.0274 | $0.0243 | $0.0243 | $0.0258 | $0.0228 | $0.0304 | $0.0320 | $0.0274 | $0.0274 |
| 738 | CA | ITC | $0.0674 | $0.0659 | $0.0628 | $0.0626 | $0.0644 | $0.0613 | $0.0690 | $0.0705 | $0.0659 | $0.0659 |
| 740 | CA | RBOC | $0.0289 | $0.0274 | $0.0243 | $0.0243 | $0.0258 | $0.0228 | $0.0304 | $0.0320 | $0.0274 | $0.0274 |
| 740 | CA | ITC | $0.0290 | $0.0275 | $0.0244 | $0.0244 | $0.0259 | $0.0228 | $0.0305 | $0.0321 | $0.0275 | $0.0275 |

QDA-V QDA-V 5-20-99 -US Digital          CONFIDENTIAL          Initials _____ Initials _____





# Atlas Communications - R^C/ITC

## Interstate Termination Rates
### Schedule A - Q1

#### Volume Discount Pricing Structure

| Volume Level Bucket ($) | Discount (%) |
|---|---|
| $0 - $250,000 | 0% |
| $250,001 - $500,000 | 4% |
| $500,001 - $750,000 | 9% |
| $750,001 - $1,000,000 | 13% |
| $1,000,000 + ** | 15% |

* Volume Level Buckets & Discounts are Product Type Specific.

** Upon customer reaching $1,000,000+, all traffic for a given month
will be priced at the $1,000,000 + Pricing Structure.

| LATA | PRIMARY STATE | CLASS | SWITCH MEETPOINT ATL | MW | NW | S | SE | SW | RATES - POP MEETPOINT POP ATL | POP MW | POP S | POP SW |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 820 | PR | N/A | $0.0748 | $0.0762 | $0.0792 | $0.0746 | $0.0731 | $0.0762 | $0.0762 | $0.0808 | $0.0777 | $0.0808 |
| 822 | USVI | N/A | $0.0746 | $0.0762 | $0.0792 | $0.0746 | $0.0731 | $0.0762 | $0.0762 | $0.0808 | $0.0808 | $0.0808 |
| 832 | AK | N/A | $0.0777 | $0.0762 | $0.0731 | $0.0777 | $0.0792 | $0.0746 | $0.0782 | $0.0808 | $0.0808 | $0.0792 |
| 834 | HI | N/A | $0.0792 | $0.0777 | $0.0746 | $0.0746 | $0.0762 | $0.0731 | $0.0808 | $0.0823 | $0.0777 | $0.0777 |
| 836 | MID/WAKE | N/A | $0.0792 | $0.0777 | $0.0746 | $0.0746 | $0.0762 | $0.0731 | $0.0808 | $0.0823 | $0.0777 | $0.0777 |
| 920 | CT | RBOC | $0.0266 | $0.0282 | $0.0319 | $0.0318 | $0.0282 | $0.0328 | $0.0282 | $0.0328 | $0.0343 | $0.0374 |
| 920 | CT | ITC | $0.0594 | $0.0610 | $0.0641 | $0.0641 | $0.0610 | $0.0656 | $0.0610 | $0.0656 | $0.0671 | $0.0702 |
| 921 | NY | RBOC | $0.0551 | $0.0586 | $0.0597 | $0.0597 | $0.0566 | $0.0612 | $0.0586 | $0.0612 | $0.0627 | $0.0658 |
| 921 | NY | ITC | $0.0566 | $0.0582 | $0.0612 | $0.0612 | $0.0582 | $0.0628 | $0.0582 | $0.0628 | $0.0643 | $0.0674 |
| 922 | OH | RBOC | $0.0178 | $0.0163 | $0.0194 | $0.0194 | $0.0194 | $0.0209 | $0.0194 | $0.0209 | $0.0224 | $0.0255 |
| 922 | OH | ITC | $0.0512 | $0.0496 | $0.0527 | $0.0527 | $0.0527 | $0.0542 | $0.0527 | $0.0542 | $0.0558 | $0.0589 |
| 923 | OH | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 923 | OH | ITC | $0.0496 | $0.0480 | $0.0511 | $0.0511 | $0.0511 | $0.0526 | $0.0511 | $0.0526 | $0.0542 | $0.0573 |
| 924 | PA | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 924 | PA | ITC | $0.0347 | $0.0362 | $0.0393 | $0.0393 | $0.0362 | $0.0408 | $0.0362 | $0.0408 | $0.0424 | $0.0455 |
| 927 | VA | RBOC | $0.0258 | $0.0273 | $0.0304 | $0.0304 | $0.0273 | $0.0319 | $0.0273 | $0.0319 | $0.0335 | $0.0365 |
| 927 | VA | ITC | $0.0191 | $0.0207 | $0.0237 | $0.0237 | $0.0207 | $0.0253 | $0.0207 | $0.0253 | $0.0268 | $0.0299 |
| 928 | VA | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 928 | VA | ITC | $0.0182 | $0.0198 | $0.0229 | $0.0229 | $0.0198 | $0.0244 | $0.0198 | $0.0244 | $0.0259 | $0.0290 |
| 929 | VA | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 929 | VA | ITC | $0.0868 | $0.0881 | $0.0912 | $0.0912 | $0.0881 | $0.0927 | $0.0881 | $0.0927 | $0.0942 | $0.0973 |
| 930 | VA | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 930 | VA | ITC | $0.0769 | $0.0785 | $0.0815 | $0.0815 | $0.0785 | $0.0831 | $0.0785 | $0.0831 | $0.0846 | $0.0877 |
| 932 | WV | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 932 | WV | ITC | $0.1060 | $0.1095 | $0.1126 | $0.1126 | $0.1095 | $0.1142 | $0.1095 | $0.1142 | $0.1157 | $0.1188 |
| 937 | IN | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 937 | IN | ITC | $0.0467 | $0.0451 | $0.0482 | $0.0482 | $0.0482 | $0.0498 | $0.0482 | $0.0498 | $0.0513 | $0.0544 |
| 938 | IN | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 938 | IN | ITC | $0.0467 | $0.0451 | $0.0482 | $0.0482 | $0.0482 | $0.0498 | $0.0482 | $0.0498 | $0.0513 | $0.0544 |
| 939 | FL | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 939 | FL | ITC | $0.0285 | $0.0300 | $0.0331 | $0.0285 | $0.0270 | $0.0300 | $0.0300 | $0.0347 | $0.0316 | $0.0347 |
| 949 | NC | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 949 | NC | ITC | $0.0212 | $0.0227 | $0.0258 | $0.0212 | $0.0198 | $0.0227 | $0.0227 | $0.0273 | $0.0242 | $0.0273 |
| 951 | NC | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 951 | NC | ITC | $0.0212 | $0.0227 | $0.0258 | $0.0212 | $0.0198 | $0.0227 | $0.0227 | $0.0273 | $0.0242 | $0.0273 |
| 952 | FL | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 952 | FL | ITC | $0.0184 | $0.0199 | $0.0230 | $0.0184 | $0.0168 | $0.0199 | $0.0199 | $0.0245 | $0.0215 | $0.0245 |
| 953 | FL | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 953 | FL | ITC | $0.0285 | $0.0300 | $0.0331 | $0.0285 | $0.0270 | $0.0300 | $0.0300 | $0.0347 | $0.0316 | $0.0347 |
| 955 | AL | RBOC | $0.0785 | $0.0800 | $0.0831 | $0.0785 | $0.0769 | $0.0800 | $0.0800 | $0.0846 | $0.0815 | $0.0846 |
| 955 | AL | ITC | $0.0785 | $0.0800 | $0.0831 | $0.0785 | $0.0769 | $0.0800 | $0.0800 | $0.0846 | $0.0815 | $0.0846 |

QDA-V QDA-V 5-20-99 -US Digital          CONFIDENTIAL          Initials ____ Initials ____





# Atlas Communications RBOC 01/13/2000
## Interstate Termination Rates
### Schedule A - Q1

#### Volume Discount Pricing Structure

| Volume Level Buckets and Discount Rate * | Discount Rate |
|---|---|
| $0 - $250,000 | 0% |
| $250,001 - $500,000 | 4% |
| $500,001 - $750,000 | 9% |
| $750,001 - $1,000,000 | 13% |
| $1,000,000 + ** | 15% |

\* Volume Level Buckets & Discounts are Product Type Specific.

\*\* Upon customer reaching $1,000,000+, all traffic for a given month
will be priced at the $1,000,000 + Pricing Strucute.

| LATA | PRIMARY STATE | CLASS | SWITCH MEETPOINT | | | | | | RATES - POP MEETPOINT | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | ATL | MW | NW | S | SE | SW | POP ATL | POP MW | POP S | POP SW |
| 956 | TN | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 956 | TN | ITC | $0.0232 | $0.0248 | $0.0278 | $0.0232 | $0.0217 | $0.0248 | $0.0248 | $0.0294 | $0.0263 | $0.0294 |
| 958 | NE | RBOC | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0186 | $0.0202 | $0.0186 | $0.0202 | $0.0217 | $0.0248 |
| 958 | NE | ITC | $0.0255 | $0.0240 | $0.0270 | $0.0270 | $0.0270 | $0.0286 | $0.0270 | $0.0286 | $0.0301 | $0.0332 |
| 960 | ID | RBOC | $0.0202 | $0.0186 | $0.0156 | $0.0202 | $0.0217 | $0.0171 | $0.0217 | $0.0232 | $0.0232 | $0.0217 |
| 960 | ID | ITC | $0.0781 | $0.0766 | $0.0735 | $0.0781 | $0.0797 | $0.0781 | $0.0797 | $0.0812 | $0.0812 | $0.0797 |
| 961 | TX | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 961 | TX | ITC | $0.0304 | $0.0288 | $0.0304 | $0.0258 | $0.0273 | $0.0273 | $0.0319 | $0.0334 | $0.0288 | $0.0319 |
| 963 | MT | RBOC | $0.0172 | $0.0157 | $0.0126 | $0.0172 | $0.0188 | $0.0142 | $0.0188 | $0.0203 | $0.0203 | $0.0188 |
| 963 | MT | ITC | $0.1178 | $0.1162 | $0.1132 | $0.1178 | $0.1193 | $0.1147 | $0.1193 | $0.1208 | $0.1208 | $0.1193 |
| 973 | CA | RBOC | $0.0289 | $0.0274 | $0.0243 | $0.0243 | $0.0258 | $0.0228 | $0.0304 | $0.0320 | $0.0274 | $0.0274 |
| 973 | CA | ITC | $0.0228 | $0.0213 | $0.0182 | $0.0182 | $0.0198 | $0.0167 | $0.0244 | $0.0259 | $0.0213 | $0.0213 |
| 974 | NY | RBOC | $0.0257 | $0.0273 | $0.0304 | $0.0304 | $0.0273 | $0.0319 | $0.0273 | $0.0319 | $0.0334 | $0.0365 |
| 974 | NY | ITC | $0.0117 | $0.0133 | $0.0164 | $0.0164 | $0.0133 | $0.0179 | $0.0133 | $0.0179 | $0.0194 | $0.0225 |
| 976 | IL | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 976 | IL | ITC | $0.0458 | $0.0443 | $0.0474 | $0.0474 | $0.0474 | $0.0489 | $0.0474 | $0.0489 | $0.0504 | $0.0535 |
| 977 | IL | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 977 | IL | ITC | $0.0361 | $0.0345 | $0.0376 | $0.0376 | $0.0376 | $0.0392 | $0.0376 | $0.0392 | $0.0407 | $0.0438 |
| 978 | IL | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 978 | IL | ITC | $0.0751 | $0.0735 | $0.0766 | $0.0766 | $0.0766 | $0.0781 | $0.0766 | $0.0781 | $0.0797 | $0.0828 |
| 980 | AZ | RBOC | $0.0831 | $0.0815 | $0.0785 | $0.0785 | $0.0800 | $0.0769 | $0.0846 | $0.0862 | $0.0815 | $0.0815 |
| 980 | AZ | ITC | $0.0831 | $0.0815 | $0.0785 | $0.0785 | $0.0800 | $0.0769 | $0.0846 | $0.0862 | $0.0815 | $0.0815 |
| 981 | UT | RBOC | $0.0831 | $0.0815 | $0.0785 | $0.0785 | $0.0800 | $0.0769 | $0.0846 | $0.0862 | $0.0815 | $0.0815 |
| 981 | UT | ITC | $0.0831 | $0.0815 | $0.0785 | $0.0785 | $0.0800 | $0.0769 | $0.0846 | $0.0862 | $0.0815 | $0.0815 |
| 836 | NID/WAKE | N/A | $0.0792 | $0.0777 | $0.0748 | $0.0746 | $0.0762 | $0.0731 | $0.0808 | $0.0823 | $0.0777 | $0.0777 |
| 930 | VA | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 930 | VA | ITC | $0.0769 | $0.0785 | $0.0815 | $0.0815 | $0.0785 | $0.0831 | $0.0785 | $0.0831 | $0.0846 | $0.0877 |

CONFIDENTIAL

Initials ___ Initials ___

## Atlas Communications: RL C ITC
### Intrastate Termination Rates
### Schedule A - Q2

**Volume Discount Pricing Structure**

| Volume Level Pricing | Discount % |
|---|---|
| $0 - $250,000 | 0% |
| $250,001 - $500,000 | 4% |
| $500,001 - $750,000 | 9% |
| $750,001 - $1,000,000 | 13% |
| $1,000,000 + ** | 15% |

\* Volume Level Buckets & Discounts are Product Type Specific.
\*\* Upon customer reaching $1,000,000+, all traffic for a given month
will be priced at the $1,000,000 + Pricing Strucute.

| STATE | RATES RBOC | ITC |
|---|---|---|
| AL | $0.0975 | $0.0707 |
| AR | $0.0643 | $0.0739 |
| AZ | $0.1075 | $0.8457 |
| CA | $0.0911 | $0.1095 |
| CO | $0.1290 | $0.1175 |
| CT | $0.0592 | $0.0755 |
| DC | $0.0592 | $0.0582 |
| DE | $0.0604 | $0.0547 |
| FL | $0.0612 | $0.1151 |
| GA | $0.0435 | $0.0459 |
| HI | $0.0555 | $0.0555 |
| IA | $0.0901 | $0.1256 |
| ID | $0.1743 | $0.1923 |
| IL | $0.0806 | $0.0537 |
| IN | $0.0306 | $0.0777 |
| KS | $0.0544 | $0.1169 |
| KY | $0.0340 | $0.0443 |
| LA | $0.0390 | $0.0428 |
| MA | $0.0751 | $0.0751 |
| MD | $0.0523 | $0.0523 |
| ME | $0.1307 | $0.1488 |
| MI | $0.0306 | $0.0629 |
| MN | $0.1028 | $0.1186 |
| MO | $0.0722 | $0.1934 |
| MS | $0.0467 | $0.1647 |
| MT | $0.0958 | $0.1794 |
| NC | $0.1209 | $0.1177 |
| ND | $0.1148 | $0.1148 |
| NE | $0.1378 | $0.1693 |
| NH | $0.0746 | $0.0961 |
| NJ | $0.0830 | $0.0875 |
| NM | $0.1110 | $0.1985 |
| NV | $0.0497 | $0.0584 |
| NY | $0.0689 | $0.0721 |
| OH | $0.0306 | $0.0754 |
| OK | $0.0474 | $0.0879 |
| OR | $0.0778 | $0.0902 |
| PA | $0.0604 | $0.1054 |
| RI | $0.0401 | $0.0401 |
| SC | $0.0899 | $0.0751 |
| SD | $0.0918 | $0.0918 |
| TN | $0.0807 | $0.0858 |

QDA-V QDA-V 5-20-99 -US Digitel          CONFIDENTIAL                Initials _____ Initials _____

## Atlas Communications: RBOC ITC
## Intrastate Termination Rates
## Schedule A - Q2

### Volume Discount Pricing Structure

| | VOLUME DISCOUNT |
|---|---|
| $0 - $250,000 | 0% |
| $250,001 - $500,000 | 4% |
| $500,001 - $750,000 | 9% |
| $750,001 - $1,000,000 | 13% |
| $1,000,000 + ** | 15% |

\* Volume Level Buckets & Discounts are Product Type Specific.
\*\* Upon customer reaching $1,000,000+, all traffic for a given month
will be priced at the $1,000,000 + Pricing Strucute.

| STATE | RATES RBOC | ITC |
|---|---|---|
| TX | $0.1982 | $0.1592 |
| UT | $0.0533 | $0.0651 |
| VA | $0.0824 | $0.0745 |
| VT | $0.1029 | $0.1029 |
| WA | $0.0560 | $0.1222 |
| WI | $0.0306 | $0.0801 |
| WV | $0.0713 | $0.0867 |
| WY | $0.0695 | $0.1035 |



## Schedule A - QI

| Country | Country Code | City Code(s) | Rate |
|---|---|---|---|
| Afghanistan | 93 | N/A | $0.9588 |
| Albania | 355 | N/A | $0.2975 |
| Algeria | 213 | N/A | $0.3575 |
| American Samoa | 684 | N/A | $0.2169 |
| Andorra | 376 | N/A | $0.1975 |
| Angola | 244 | N/A | $0.4188 |
| Anguilla | 809/264 | N/A | $0.3963 |
| Antarctica | 672 | N/A | $0.3063 |
| Antigua | NPA 268 | N/A | $0.3975 |
| Argentina | 54 | N/A | $0.3713 |
| Argentina - Buenos Aires | 54 | 160-152,10,12,13,190-192,194,195,196, 198,199,18,17, 169,168. 157-166 | $0.1988 |
| Argentina - Mobile | 54 | 11,14,153,154, 155, 156,167,193,197 | $0.4338 |
| Armenia | 374 | N/A | $0.6100 |
| Aruba | 297 | N/A | $0.3125 |
| Ascension Island | 247 | N/A | $0.8213 |
| Australia | 61 | N/A | $0.0663 |
| Australia - Mobile | 61 | 14,15,16,17,18, 19,4,500 | $0.0850 |
| Austria | 43 | N/A | $0.1036 |
| Austria - Vienna | 43 | 1 | $0.1075 |
| Azerbaijan | 994 | N/A | $0.4338 |
| Azores | 992 | N/A | $0.2319 |
| Bahamas | NPA 242 | N/A | $0.1763 |
| Bahrain | 973 | N/A | $0.6550 |
| Bangladesh | 880 | N/A | $0.7500 |
| Barbados | 246 | N/A | $0.3838 |
| Belarus | 375 | N/A | $0.3963 |
| Belgium | 32 | N/A | $0.0675 |
| Belgium - Mobile | 32 | 16,17,18,45,47, 49,7,88,90,94,95, 96,98 | $0.5325 |
| Belize | 501 | N/A | $0.5413 |
| Benin | 229 | N/A | $0.5138 |
| Bermuda | 809 | N/A | $0.1698 |
| Bhutan | 975 | N/A | $0.4875 |
| Bolivia | 591 | N/A | $0.5325 |
| Bosnia & Herzegovina | 387 | N/A | $0.9300 |
| Botswana | 267 | N/A | $0.3475 |
| Brazil | 55 | N/A | $0.2888 |
| Brazil - Rio de Janiero | 55 | 210-218 | $0.2888 |
| Brazil - Sao Paulo | 55 | 110-118 | $0.1450 |

## Schedule A - QI

| Country | Country Code | City Code(s) | Rate |
|---|---|---|---|
| Brazil - Mobile | 55 | 118,219 | $0.3050 |
| British Virgin Islands | 809 | N/A | $0.3575 |
| Brunei | 673 | N/A | $0.3763 |
| Bulgaria | 359 | N/A | $0.3088 |
| Burkina Faso | 226 | N/A | $0.6813 |
| Burundi | 257 | N/A | $0.6013 |
| Cambodia | 855 | N/A | $0.9588 |
| Cameroon | 237 | N/A | $0.7913 |
| Canada (NPA 204) | 2 | N/A | $0.0538 |
| Canada (NPA 250) | 2 | N/A | $0.0438 |
| Canada (NPA 306) | 2 | N/A | $0.0538 |
| Canada (NPA 403) | 2 | N/A | $0.0538 |
| Canada (NPA 416) | 2 | N/A | $0.0363 |
| Canada (NPA 418) | 2 | N/A | $0.0388 |
| Canada (NPA 450) | 2 | N/A | $0.0538 |
| Canada (NPA 506) | 2 | N/A | $0.0538 |
| Canada (NPA 514) | 2 | N/A | $0.0338 |
| Canada (NPA 519) | 2 | N/A | $0.0388 |
| Canada (NPA 604) | 2 | N/A | $0.0400 |
| Canada (NPA 613) | 2 | N/A | $0.0375 |
| Canada (NPA 705) | 2 | N/A | $0.0388 |
| Canada (NPA 709) | 2 | N/A | $0.0538 |
| Canada (NPA 780) | 2 | N/A | $0.0538 |
| Canada (NPA 807) | 2 | N/A | $0.0538 |
| Canada (NPA 819) | 2 | N/A | $0.0388 |
| Canada (NPA 867) | 2 | N/A | $0.0538 |
| Canada (NPA 902) | 2 | N/A | $0.0538 |
| Canada (NPA 905) | 2 | N/A | $0.0363 |
| Cape Verde Islands | 238 | N/A | $0.5825 |
| Cayman Islands | 809/345 | N/A | $0.2863 |
| Central African Republic | 236 | N/A | $0.8853 |
| Chad | 235 | N/A | $1.1038 |
| Chile | 56 | N/A | $0.1688 |
| Chile - Santiago | 56 | 2 | $0.1725 |
| Chile - Mobile | 56 | 9 | $0.1688 |
| China | 86 | N/A | $0.3988 |
| China - Beijing | 86 | 10-19 | $0.8663 |
| China - Canton | 86 | 20 | $0.4038 |
| China - Shanghai | 86 | 21 | $0.3363 |
| China - Mobile | 86 | 13,8,9 | $0.4125 |
| Christmas & Cocos Islands | 672 | N/A | $0.3213 |
| Colombia | 57 | N/A | $0.6913 |
| Colombia - Baranquilla | 57 | 58 | $0.6913 |
| Colombia - Bogota | 57 | 1 | $0.1300 |
| Colombia - Cali | 57 | 23 | $0.2375 |
| Colombia - Medellin | 57 | 4 | $0.1613 |
| Colombia - Mobile | 57 | 3 | $0.6913 |
| Comros | 269 | N/A | $0.5638 |
| Congo, Republic of | 242 | N/A | $0.6463 |
| Cook Islands | 682 | N/A | $1.2025 |
| Costa Rica | 506 | N/A | $0.2525 |
| Costa Rica - Mobile | 506 | 283,284,3 | $0.2525 |
| Croatia | 385 | N/A | $0.3125 |
| Cuba | 53 | 0,1,3,6,8,5,4,2,7 | $0.6875 |

Carrier International Rates

## Schedule A - QI

| Country | Country Code | City Code(s) | Rate |
|---|---|---|---|
| Cyprus | 357 | N/A | $0.3275 |
| Czech Republic | 420 | N/A | $0.2438 |
| Denmark | 45 | N/A | $0.0913 |
| Denmark - Mobile | 45 | 20,21,22,26,28, 30,40 | $0.0913 |
| Diego Garcia | 246 | N/A | $0.7375 |
| Djibouti | 253 | N/A | $0.7963 |
| Dominica | 809 | N/A | $0.5300 |
| Dominican Republic | 809 | N/A | $0.1763 |
| Ecuador | 593 | N/A | $0.2888 |
| Ecuador - Mobile | 593 | 9 | $0.3888 |
| Ecuador - Quito | 593 | 2 | $0.2738 |
| Egypt | 20 | N/A | $0.5750 |
| Egypt - Cairo | 20 | 2 | $0.5775 |
| El Salvador | 503 | N/A | $0.3850 |
| El Salvador - Mobile | 503 | 8 | $0.4425 |
| Equatorial Guinea | 240 | N/A | $0.8288 |
| Eritrea | 291 | N/A | $1.0638 |
| Estonia | 372 | N/A | $0.2438 |
| Ethiopia | 251 | N/A | $1.0163 |
| Faeroe Islands | 298 | N/A | $0.2138 |
| Falkland Islands | 500 | N/A | $0.3363 |
| Fiji Islands | 679 | N/A | $0.7638 |
| Finland | 358 | N/A | $0.0963 |
| France | 33 | N/A | $0.0550 |
| France - Paris | 33 | 1 | $0.0550 |
| France - Mobile | 33 | 6 | $0.0888 |
| French Antilles (incl. Martinique) | 596 | N/A | $0.3275 |
| French Guiana | 594 | N/A | $0.3963 |
| French Polynesia | 689 | N/A | $0.5325 |
| Gabon Republic | 241 | N/A | $0.5625 |
| Gambia | 220 | N/A | $0.5613 |
| Georgia | 995 | N/A | $1.3263 |
| Germany | 49 | N/A | $0.0588 |
| Germany - Frankfurt | 49 | 69,335 | $0.0625 |
| Germany - Mobile | 49 | 16,17 | $0.3563 |
| Ghana | 233 | N/A | $0.4500 |
| Gibraltar | 350 | N/A | $0.3400 |
| Greece | 30 | N/A | $0.2825 |
| Greece - Athens | 30 | 1 | $0.1975 |
| Greenland | 299 | N/A | $0.3213 |
| Grenada | 809 | N/A | $0.5450 |
| Guadeloupe | 590 | N/A | $0.3963 |
| Guam | 671 | N/A | $0.0725 |
| Guantanamo Bay | 53 | 9 | $0.7188 |
| Guatemala | 502 | N/A | $0.3100 |
| Guatemala - Mobile | 502 | 20 | $0.3100 |
| Guinea | 224 | N/A | $0.4575 |
| Guinea - Bissau | 245 | N/A | $0.8513 |
| Guyana | 592 | N/A | $0.7413 |
| Haiti | 509 | N/A | $0.4813 |
| Honduras | 504 | N/A | $0.5300 |
| Hong Kong | 852 | N/A | $0.0725 |
| Hong Kong - Mobile | 852 | 1,812,819,821,9 | $0.0913 |

**Carrier International Rates**

## Schedule A - QI

| Country | Country Code | City Code(s) | Rate |
|---|---|---|---|
| Hungary | 36 | N/A | $0.2225 |
| Iceland | 354 | N/A | $0.1163 |
| India | 91 | N/A | $0.6875 |
| India - Bombay | 91 | 22 | $0.6850 |
| India - Madras | 91 | 44 | $0.6850 |
| India - New Deli | 91 | 11 | $0.6100 |
| India - Mobile | 91 | 98 | $0.6850 |
| Indonesia | 62 | N/A | $0.4575 |
| Indonesia - Jakarta | 62 | 1 | $0.2118 |
| INMARSAT - Atlantic East | 871 | N/A | $6.6888 |
| INMARSAT - Atlantic West | 874 | N/A | $6.5363 |
| INMARSAT - Indian | 843 | N/A | $6.5363 |
| INMARSAT - Pacific | 872 | N/A | $6.5363 |
| Iran | 98 | N/A | $0.8069 |
| Iraq | 964 | N/A | $1.0200 |
| Ireland | 353 | N/A | $0.0988 |
| Ireland - Dublin | 353 | 1 | $0.0850 |
| Ireland - Mobile | 353 | 8 | $0.1400 |
| Iridium | 881 | N/A | $9.3750 |
| Israel | 972 | N/A | $0.1513 |
| Israel - Mobile | 972 | 5 | $0.1625 |
| Italy - Milan | 972 | 2 | $0.1076 |
| Italy - Rome | 972 | 6 | $0.1075 |
| Italy/Vatican City | 39 | N/A | $0.1075 |
| Italy/Vatican City - Mobile | 39 | 330,335,336,337, 338,347,348,360, 368 | $0.5019 |
| Ivory Coast | 225 | N/A | $0.9288 |
| Jamaica | 809/876 | N/A | $0.5088 |
| Japan | 81 | N/A | $0.1038 |
| Japan - Osaka | 81 | 62-69 | $0.0775 |
| Japan Sapporo | 81 | 11 | $0.1075 |
| Japan - Tokyo | 81 | 32-39 | $0.0763 |
| Japan - Mobile | 81 | 10,20,30,31,40, 50,60,61,70,80,90 | $0.1375 |
| Jordan | 962 | N/A | $0.7150 |
| Jordan - Mobile | 962 | 79 | $0.7150 |
| Kazakhstan | 7 | 310-318,320- 330,336 | $0.6100 |
| Kenya | 254 | N/A | $0.6250 |
| Kiribati | 686 | N/A | $0.8838 |
| Korea, North | 850 | N/A | $0.8213 |
| Korea, South | 82 | N/A | $0.1413 |
| Korea, South - Mobile | 82 | 11,16,17,18,19 | $0.2588 |
| Korea, South - Seoul | 82 | 2 | $0.1425 |
| Kuwait | 965 | N/A | $0.6775 |
| Kuwait - Mobile | 965 | 9 | $0.7463 |
| Kyrgyzstan | 7 or 996 | N/A | $0.6163 |
| Kyrgyzstan - Mobile | 7 or 996 | 31,32,94,35,36, 97,39 | $0.6163 |
| Laos | 856 | N/A | $0.8363 |
| Latvia | 371 | N/A | $0.3413 |
| Lebanon | 961 | N/A | $0.5850 |
| Lebanon - Mobile | 961 | 3 | $0.6363 |

KOREGHD066998    ID.0402    PAGE   32/34

## Carrier International Rates
## Schedule A - QI

| Country | Country Code | City Code(s) | Rate |
|---------|--------------|--------------|------|
| Lesotho | 266 | N/A | $0.3688 |
| Liberia | 231 | N/A | $0.4338 |
| Libya | 218 | N/A | $0.3363 |
| Liechtenstein | 41 | 75 | $0.1100 |
| Lithuania | 370 | N/A | $0.3519 |
| Luxembourg | 352 | N/A | $0.1225 |
| Macau | 853 | N/A | $0.3625 |
| Macedonia | 389 | N/A | $0.4113 |
| Madagascar | 261 | N/A | $0.7313 |
| Malawi | 265 | N/A | $0.4563 |
| Malaysia | 60 | N/A | $0.2063 |
| Maldives | 960 | N/A | $0.7538 |
| Mali Republic | 223 | N/A | $0.8513 |
| Malta | 356 | N/A | $0.2375 |
| Marshall Islands | 692 | N/A | $0.3813 |
| Mauritania | 222 | N/A | $0.6550 |
| Mauritius | 230 | N/A | $0.8100 |
| Mayotte Island | 269 | N/A | $0.5638 |
| Mexico - Rate Step 1 | N/A | N/A | $0.1613 |
| Mexico - Rate Step 2 | N/A | N/A | $0.1613 |
| Mexico - Rate Step 3 | N/A | N/A | $0.1613 |
| Mexico - Rate Step 4 | N/A | N/A | $0.1963 |
| Mexico - Rate Step 5 | N/A | N/A | $0.1963 |
| Mexico - Rate Step 6 | N/A | N/A | $0.1963 |
| Mexico - Rate Step 7 | N/A | N/A | $0.1963 |
| Mexico - Rate Step 8 | N/A | N/A | $0.1963 |
| Micronesia | 691 | N/A | $0.6860 |
| Moldova | 373 | N/A | $0.4425 |
| Monaco | 377 | N/A | $0.1238 |
| Mongolia | 976 | N/A | $0.9813 |
| Montserrat | 664 | N/A | $0.5463 |
| Morocco | 212 | N/A | $0.5025 |
| Mozambique | 258 | N/A | $0.4725 |
| Myanmar (Formely Burma) | 95 | N/A | $0.9350 |
| Namibia | 264 | N/A | $0.2500 |
| Nauru | 674 | N/A | $0.7088 |
| Nepal | 977 | N/A | $0.8063 |
| Netherlands | 31 | N/A | $0.0688 |
| Netherlands - Mobile | 31 | 6,9 | $0.0963 |
| Netherlands Antilles | 599 | N/A | $0.4175 |
| Nevis | 869 | N/A | $0.3813 |
| New Caledonia | 687 | N/A | $0.6925 |
| New Zealand | 64 | N/A | $0.0925 |
| New Zealand - Mobile | 64 | 21,22,23,24,25,26,29,8,900 | $0.0925 |
| Nicaragua | 505 | N/A | $0.4875 |
| Niger Republic | 227 | N/A | $0.5950 |
| Nigeria | 234 | N/A | $0.7463 |
| Niue | 683 | N/A | $1.1100 |
| Norfolk Island | 672 | N/A | $0.5013 |
| Northern Mariana Islands | 670 | N/A | $0.0725 |
| Norway | 47 | N/A | $0.0913 |
| Norway - Mobile | 47 | 80,92,94 | $0.0913 |
| Oman | 968 | N/A | $0.7613 |

Plan:Q-I.   QDA-V 6-20-99 -US Digital          Confidential          Initial: _____ Initial: _____

## Carrier International Maps
## Schedule A - QI

| Country | Country Code | City Code(s) | Rate |
|---|---|---|---|
| Pakistan | 92 | N/A | $0.7563 |
| Pakistan - Karachi | 92 | 21 | $0.7463 |
| Palau, Republic of | 680 | N/A | $0.6100 |
| Panama | 507 | N/A | $0.5413 |
| Papua New Guinea | 675 | N/A | $0.3750 |
| Paraguay | 595 | N/A | $0.5775 |
| Peru | 51 | N/A | $0.4113 |
| Peru - Lima | 51 | 14 | $0.3425 |
| Peru - Mobile | 51 | 19 | $0.4113 |
| Philippines | 63 | N/A | $0.3238 |
| Philippines - Manila | 63 | 20-23, 25,26,28,240, 243-249, 290, 292-299 | $0.2888 |
| Poland | 48 | N/A | $0.2475 |
| Portugal | 351 | N/A | $0.2313 |
| Portugal - Lisbon | 351 | 1 | $0.2063 |
| Qatar | 974 | N/A | $0.6663 |
| Reunion Island | 262 | N/A | $0.5175 |
| Romania | 40 | N/A | $0.4038 |
| Russia | 7 | N/A | $0.3538 |
| Russia - St. Petersburg | 7 | 812 | $0.1763 |
| Russia - Moscow | 7 | 095 | $0.1050 |
| Rwanda | 250 | N/A | $0.8513 |
| San Marino | 378 | N/A | $0.2888 |
| Sao Tome | 239 | N/A | $2.1175 |
| Saudi Arabia | 966 | N/A | $0.7913 |
| Senegal Republic | 221 | N/A | $0.9138 |
| Seychelles Islands | 248 | N/A | $0.9588 |
| Sierra Leone | 232 | N/A | $0.8219 |
| Singapore | 65 | N/A | $0.1763 |
| Slovak Republic | 421 | N/A | $0.3063 |
| Slovenia | 386 | N/A | $0.2313 |
| Solomon Islands | 677 | N/A | $0.6100 |
| Somalia | 252 | N/A | $0.7838 |
| South Africa | 27 | N/A | $0.3738 |
| South Africa - Johannesburg | 27 | 11 | $0.2675 |
| South Africa - Mobile | 27 | 3,82 | $0.3663 |
| Spain | 34 | N/A | $0.1450 |
| Spain - Barcelona | 34 | 93 | $0.1363 |
| Spain - Madrid | 34 | 91 | $0.1363 |
| Spain - Mobile | 34 | 6 | $0.1486 |
| Sri Lanka | 94 | N/A | $0.8300 |
| St. Helena | 290 | N/A | $0.7313 |
| St. Kitts | 869 | N/A | $0.3813 |
| St. Lucia | 758 | N/A | $0.5300 |
| St. Pierre/Miquelon | 508 | N/A | $0.2675 |
| St. Vincent/Grenadines | 809 | N/A | $0.5025 |
| Sudan | 249 | N/A | $0.4100 |
| Suriname | 597 | N/A | $0.9438 |
| Swaziland | 268 | N/A | $0.2975 |
| Sweden | 46 | N/A | $0.0586 |
| Sweden - Mobile | 46 | 10,70,73 | $0.0688 |
| Switzerland | 41 | N/A | $0.0775 |

Plan:Q-I.    QDA-V 5-20-99 -US Digital          Confidential                    Initial: _____ Initial: _____

## Schedule A - QI

| Country | Country Code | City Code(s) | Rate |
|---|---|---|---|
| Switzerland - Mobile | 41 | 20,40,70,74,77, 78,89 | $0.6325 |
| Syrian Arab Republic | 963 | N/A | $0.6850 |
| Taiwan | 886 | N/A | $0.2138 |
| Tawain - Tainan | 886 | 6 | $0.1638 |
| Taiwan - Taipei | 886 | 2 | $0.1150 |
| Taiwan - Mobile | 886 | 9 | $0.2138 |
| Tajikistan | 7 | 364,377,379, 431,433 | $1.5863 |
| Tanzania | 255 | N/A | $0.5569 |
| Thailand | 66 | N/A | $0.4038 |
| Thailand - Bangkok | 66 | 2 | $0.3775 |
| Togo | 228 | N/A | $0.6363 |
| Tokelau | 690 | N/A | $0.1475 |
| Tonga Islands | 676 | N/A | $0.9813 |
| Trinidad & Tobago | 809 | N/A | $0.5300 |
| Tunisia | 216 | N/A | $0.4425 |
| Turkey | 90 | N/A | $0.2069 |
| Turkey - Mobile | 90 | 5 | $0.3219 |
| Turkey - Istanbul | 90 | 212,216 | $0.2138 |
| Turkmenistan | 7 or 993 | N/A | $0.8738 |
| Turks & Caicos | 809/868 | N/A | $0.4338 |
| Tuvalu | 688 | N/A | $0.9498 |
| Uganda | 256 | N/A | $0.3613 |
| Ukraine | 380 | N/A | $0.3663 |
| United Arab Emirates | 971 | N/A | $0.4575 |
| United Kingdom | 44 | N/A | $0.0388 |
| United Kingdom - London | 44 | 171,181 | $0.0388 |
| United Kingdom - Mobile | 44 | 0,2,3,4,5,6,7,8,9 | $0.0619 |
| Uruguay | 598 | N/A | $0.5925 |
| Uzbekistan | 7 or 998 | N/A | $0.5950 |
| Vanuatu, Republic of | 678 | N/A | $0.8363 |
| Venezuela | 58 | N/A | $0.3100 |
| Venezuela - Caracas | 58 | 20,21,22,24,25, 26,28,27,29,230, 231-237 | $0.1450 |
| Venezuela - Mobile | 58 | 14,16 | $0.3363 |
| Vietnam | 84 | N/A | $0.9488 |
| Vietnam - Ho Chi Min City | 84 | 8 | $0.9588 |
| Wallis & Futuna Islands | 681 | N/A | $0.3850 |
| Western Samoa | 685 | N/A | $0.6850 |
| Yemen Arab Republic | 967 | N/A | $0.8363 |
| Yemen Democratic Republic | 969 | N/A | $0.9888 |
| Yugoslavia (incl. Serbia) | 381 | N/A | $0.3513 |
| Zaire, Republic of | 243 | N/A | $0.6700 |
| Zambia | 260 | N/A | $0.5075 |
| Zimbabwe | 263 | N/A | $0.3963 |

# STATEMENT OF JURISDICTION / VENUE

- Atlas presently has two contracts with U.S. Digital, Inc. pursuant to which it is providing service.

- The Carrier Dedicated Services Agreement ("Carrier Agreement") dated February 3, 1998 is the Agreement through which Atlas provides services to U.S. Digital which Atlas procures through Sprint.

- The Wholesale Services Agreement ("Wholesale Agreement") is the Agreement through which Atlas provides services to U.S. Digital which Atlas procures through Qwest Communications.

- The balance due Atlas arises almost exclusively through services provided under the Carrier Agreement.

- The services which are presently being provided to U.S. Digital are almost exclusively provided under the Wholesale Agreement.

- Paragraph 9.2 of the Carrier Agreement provides in pertinent, "any legal action or proceeding with respect to this Agreement or any related document and any action for enforcement of any judgment or award in respect thereof shall be brought in the Court of Common Pleas of Montgomery County, Commonwealth of Pennsylvania or in the U.S. District Court for the Eastern District of Pennsylvania located in Philadelphia, Pennsylvania. By execution and delivery of this Agreement, each of Atlas and Customer hereby accepts for itself and in respect of its property, generally and unconditionally the personal and subject matter jurisdiction of the aforesaid Courts. Customer irrevocably consents to the service of process by the aforementioned Courts and any such action or proceeding by the mailing of copies of the complaint, writ or other process by registered or certified mail, postage prepaid, to it at its address as set forth herein. Both Atlas and Customer hereby irrevocably waive any objection that they may now have or hereafter have to the laying of venue any actions or proceedings arising out of or in connection with this Agreement or any other related documents brought in the Courts referred to above and hereby further irrevocably waive and agree not to plead or claim in any such Court that any such action or proceeding brought in any such Court has been brought in any inconvenient form." The Carrier Agreement further provides in pertinent part, "this Agreement and the other related documents and the rights and obligations of the Parties hereunder and thereunder shall be construed in accordance with and be governed by, the laws of the Commonwealth of Pennsylvania excluding its conflict of law provisions."

- Paragraph 11.11 of the Wholesale Agreement provides in pertinent part, "this Agreement shall be governed by and construed under and interpreted in accordance with the laws of the Commonwealth of Pennsylvania without regard to that state's choice of law provisions. The Parties consent to the settlement of all disputes through arbitration in accordance with the then current procedures of the American Arbitration Association. The arbitration shall be conducted by a single arbitrator and shall be held in Philadelphia, Pennsylvania. Judgment upon any award rendered may be entered in any Court having jurisdiction thereof. Decisions of the arbitrator shall be final and binding on the Parties."

## ATLAS COMMUNICATIONS, LTD.

### CARRIER DEDICATED SERVICES AGREEMENT

| | |
|---|---|
| **AGREEMENT DATE:** | February 3, 1998 |
| **CUSTOMER:** | U.S. DIGITEL, INC. |
| **JURISDICTION OF ORGANIZATION:** | |
| **CUSTOMER ADDRESS:** | U.S. Digitel Inc., 1909 Tyler St., Third Floor, Hollywood, FL 33020 |
| **CUSTOMER FACSIMILE NUMBER:** | (954)-927-7702 |
| **CUSTOMER TELEPHONE NUMBER:** | (954)-927-7770 |
| **CUSTOMER FISCAL YEAR END:** | |
| **SERVICES TERM:** | Eighteen (18) month initial term with a $100,000.00 take or pay following an (8) eight month ramp up period. |
| **RELATED DOCUMENTS:** | $75,000.00 Letter of Credit in a form, and issued by a bank, acceptable to Atlas. UCC-1 statements executed by the Customer. |
| **INITIAL DEPOSIT:** | $75,000.00 Letter of Credit. |

Customer _____   Atlas _____

# ATLAS COMMUNICATIONS, LTD.

## CARRIER DEDICATED SERVICES AGREEMENT

This Carrier Dedicated Services Agreement ("Agreement") is being made by and between ATLAS COMMUNICATIONS, LTD., a Pennsylvania corporation ("Atlas"), and the CUSTOMER identified on the face sheet hereof ("Customer").

## TERMS

## ARTICLE 1 - SERVICES

**1.1. Term and Provision of Services.**

(a)    *Effective Date:*  This Agreement shall be effective as of the date this Agreement is executed by an officer of Atlas (the "Effective Date") and shall continue, subject to the provisions of this Agreement, for the Services Term as set forth on the face page hereof. Unless written notice is given by either party to the other at least ninety (90) days prior to the expiration date of the Services Term, this Agreement shall remain in effect and the Services Term shall extend indefinitely until such ninety (90) day written notice is given.

(b)    *Commencement of Services:*  Atlas need not commence providing services until Customer shall have duly executed and delivered to Atlas all security, security instruments, and other documents described on the face page hereof (the "Related Documents") and fulfilled any other conditions herein or therein.

(c)    *Description of Service:*  For purposes of this Agreement, Atlas will provide nationwide dedicated inbound and outbound origination and termination

(d)    *Scope of Services:*   Services may be provided through a third party network provider, over Atlas' own network, or through such other means as Atlas may elect, at Atlas' sole discretion. Customer acknowledges that Atlas is building its own long distance network and hereby agrees that Atlas may re-provision any or all lines submitted by Customer to Atlas over such network. Atlas shall provision dedicated circuits through its underlying carriers for domestic origination and termination from, and to, the Customer's switch.

(e)    *Carrier of Record:*  Atlas is the underlying network with respect to the provisioning of nationwide dedicated carrier transport services, contemplated by Customer and Atlas as the entire scope of this Agreement. For the duration of this Agreement, Customer shall be the carrier of record and shall comply with, all requirements applicable to a carrier of record as promulgated by the Federal Communications Commission ("FCC"), State Public Services or Utilities Commissions ("PUCs"), or any equivalent governmental body.

(f)    *Quality of Service:*  Atlas shall provide the quality of Services to Customer, consistent with industry standards, and consistent with the quality of service that the underlying carrier provides to Atlas.

**1.2. Cancellation.**

This Agreement will continue beyond the initial term unless Customer or Atlas gives at least ninety (90) days written notice prior to the end of the initial term.  This Agreement may be cancelled by Customer or Atlas

\\ATLAS-1\SYS\WORD\LEGAL\WORD\USDIGIT\USDGCON6.DOC- 2 -          Initialed _____Initialed    3/1

pursuant to Article 3 or, after the initial term, upon ninety (90) days written notice. In the event of termination or cancellation, Customer shall pay Atlas a Termination Charge as defined in Section 2.9.

## ARTICLE 2 – PAYMENTS, CHARGES, AND BILLING

2.1. Pricing.

(a)     *Usage Sensitive Rates:*  Usage Sensitive Services shall be billed to Customer at the rates set forth in Schedules D-1, D-2, D-3, and D-4 attached hereto and made a part of this Agreement.

(b)     *Monthly Recurring, Non-Recurring and Miscellaneous Charges:*  Monthly recurring, non-recurring and miscellaneous charges are set forth in Schedule E attached hereto and made a part of this Agreement.

(c)     *Minimum Monthly Commitment and Ramp Period:* Customer agrees to the Minimum Monthly Commitments and ramp period as set forth in Schedule D, attached hereto and made a part of this Agreement.

(d)     *Pass Through of Regulatory Surcharges:*  Customer shall be responsible for payment of surcharge(s) levied by the FCC, PUCs, or equivalent governmental body which are directly or indirectly levied against Atlas related to Services hereunder.

2.2. Customer Billing.

(a)     *Responsibility for Payment:*  Customer's obligation to pay for usage sensitive charges with respect to any Services shall commence as of the date the Services are used by Customer. Customer's obligation to pay for non-usage sensitive charges, including non-recurring setup costs, shall commence when Services are made available to Customer. Customer's obligation to pay for Minimum Monthly Commitments and any applicable regulatory surcharges shall commence upon the Effective Date of this Agreement.

(b)     *[Weekly] Billing Procedures:*  Atlas will invoice Customer on a weekly basis beginning no later than fourteen (14) days from the date Customer first shall be obligated to pay for Services.  Atlas will send Customer a statement covering amounts owed to Atlas in connection with this Agreement and the other Related Documents. Customer acknowledges and understands that there will be a transition period before the actual call records are available and the [weekly] billing process is operational. Atlas shall provide Customer with estimated invoices during this period. Customer agrees to pay Atlas on this estimated basis. The estimated usage billings shall be based upon the number of T-1.5 circuits installed at a price per T-1.5 for domestic service of two thousand five hundred dollars ($2,500.00) per week. . After the actual billing process is in place, there will be a true-up of estimated billings to determine whether the Customer is owed a credit or, in the alternative, owes additional sums of money.

(c)     *Payment Due Dates:*  Amounts payable to Atlas shall be payable within five (5) days of the statement date. A late charge of two percent (2%) per month, or the maximum permitted under applicable usury or like laws, whichever is lower, will be charged on any overdue amounts.

2.3. Regulatory/Taxes/PUC Reporting:  Customer shall be responsible for, and hold Atlas harmless from, all liability with respect to regulatory or tax matters related to Customer's traffic hereunder. Customer acknowledges and understands that Customer shall be responsible to pay, or reimburse Atlas, for applicable federal, state or local use, excise, gross receipts, sales and privilege taxes, duties, fees or similar liabilities (other than general income or

property taxes), whether charged to or against Atlas or Customer based on the Services furnished to Customer and/or to Customer End Users and/or supply Atlas with the appropriate tax exempt certificate(s). Nothing herein, however, obligates or restricts Atlas to collect any applicable taxes.

**2.4. Modification of Charges.** Atlas reserves the right to modify its charges and rates, from time to time, for Usage Sensitive Services by written notices to Customer and for Non-Usage Sensitive charges by amendment or supplements to applicable Atlas Tariffs or Schedules. Notwithstanding anything contained herein to the contrary, Customer shall have upon thirty (30) days written notice, the right to terminate the Agreement without liability for the termination fee, if such modification results in an average increase in charges of three percent (3%) or more per annum on Usage Sensitive Charges in the aggregate.

**2.5. Suspension of Services.** In the event any amounts payable by Customer are not paid in full by the date due, Atlas shall have among its rights, the right (a) to refuse to provision new orders and/or (b) suspend all or any portion of the Services to Customer until such time as Customer has paid in full all such charges and amounts then due to Atlas, including any late fees and interest. Atlas need not reinstate Services to Customer before payment is made in full and Customer further provides Atlas with satisfactory assurance of Customer's ability to pay for future Services in the form of a deposit, letter of credit or other security acceptable to Atlas. Customer shall be responsible for all costs of reinstating Services. Such suspension shall not relieve Customer from payment of the Termination Charge, as referred to in Section 2.9, and all such charges and amounts then due to Atlas, including late fees and all monthly minimum commitments due during the Services Term.

**2.6. Expedited Services Charges.** If Customer requests expedited Services and Atlas agrees to such request, Atlas will pass through any additional charges incurred by Atlas or assessed by any third parties. Atlas may require advance payment of estimated additional charges. If Atlas expedites service and, for whatever reason, Customer cancels service or is not ready to receive service, then Customer will pay, in addition to these charges, as a liquidated damage and not as a penalty, Two Hundred Fifty Dollars ($250.00) per day for each day Customer is not ready to receive service.

**2.7. Fraudulent Calls.** Customer shall indemnify and hold Atlas harmless from all costs, expenses, damages, fines or actions arising from claims made which are in any way related to or arise from alleged fraudulent calls. Customer shall not be excused from paying Atlas for Services on the basis that fraudulent calls comprised a portion of the Services. In the event Atlas reasonably believes fraudulent calls are being made, nothing contained herein shall prohibit, or require, Atlas from taking any action (without notice to Customer or End Users) Atlas deems reasonably necessary to prevent such fraudulent calls from taking place. Among the steps Atlas may take, include without limitation, denying Services to particular ANIs or terminating Services to or from specific locations.

**2.8. Collateral Security.** Atlas reserves the right to withhold initiation or full implementation of Services under this Agreement pending Atlas' initial satisfactory credit review and the receipt of the Related Documents and any security or other deposit specified on the face page hereof. If at any time during the term of this Agreement Customer's billings exceed, or are equivalent to, the security listed on the face sheet of this Agreement, Customer shall, within twenty-four (24) hours written notice, remit additional security in an amount reasonably determined by Atlas, in its sole discretion, necessary to further secure telecommunications services hereunder. In addition to the above, Atlas further reserves the right to modify its requirements, if any, with respect to any security or other assurance provided by Customer for payments due hereunder if Customer's Usage Sensitive Charges are thirty-three or more percent (33%) greater than the average of the prior three (3) months usage or late payments, or if Customer exceeds one hundred twenty-five thousand dollars ($125,000.00) in weekly usage and late payments.

Initialed ___ Initialed 3/1

2.9.  Termination Charge.  Subject to section 1.1 (f), in the event of Customer cancellation of the Agreement pursuant to Section 1.2 or termination pursuant to Article 3 or otherwise pursuant to this Agreement, Customer shall immediately pay all charges for Services through the effective date of such cancellation or termination plus, as additional liquidated damages and not as a penalty because damages are difficult to calculate, a Termination Charge (the "Termination Charge") equal to one hundred percent (100%) of the remaining Minimum Monthly Commitment set forth in Schedule D.  In addition, Customer shall remain liable for the payment of any other monies due prior to the date of cancellation or termination, which sums shall become immediately due and payable.

## ARTICLE 3 - DEFAULT AND TERMINATION

3.1.  Events of Default.

(a)  One or more of the following events shall constitute an "Event of Default":

(i)  Customer fails to pay when due any charges due under this Agreement, including any amounts due under the Related Documents.

(ii)  Customer fails to perform or observe any of the covenants contained in Article 5.

(iii)  Any representation or warranty made by Customer under or in connection with this Agreement or any Related Document shall prove to have been incorrect in any material respect when made.

(iv)  Any misrepresentation shall have been made by Customer regarding the nature of the products or services provided by Atlas or the relationship between Customer and its network carrier.

(v)  Customer shall fail to perform or observe any other term, covenant or agreement contained in this Agreement or any Related Document and any such failure shall remain unremedied for 10 days after written notice thereof shall have been given to Customer by Atlas.

(vi)  Customer shall not pay its debts (including, without limitation, amounts assessed or owing in respect of taxes) as such debts become due, or shall admit in writing its inability to pay its debts generally, or shall make a general assignment for the benefit of creditors; or any proceeding shall be instituted by or against Customer seeking to adjudicate it as bankrupt or insolvent, or seeking liquidation, winding up, reorganization, arrangement, adjustment, protection, relief, or composition of it or its debts under any law relating to bankruptcy, insolvency or reorganization or relief of debtors, or seeking the entry of an order for relief or the appointment of a receiver, trustee, or other similar official for it or for any substantial part of its property; or Customer shall take any corporate action to authorize any of the actions set forth above in this subsection.

(vii)  Any event, act or condition shall occur, or not occur, which, in the judgment of Atlas has a material adverse effect on the business or operations of Customer and such condition shall remain unremedied for five (5) days after written notice thereof shall have been given to Customer by Atlas.

(viii)  Atlas shall fail to perform or observe any material term, covenant or agreement contained in this Agreement or any related document on its part to be performed or observed and any such failure shall remain unremedied for thirty (30) days after written notice thereof shall have been given to Atlas by Customer.

\\ATLAS-1\SYS\WORD\LEGAL\WORD\USDIGIT\USDGCON6.DOC- 5 -          Initialed _____ Initialed 3/4

3.2. **Remedies.** If an Event of Default shall occur, then any or all of the following actions may be taken by Atlas:

(i) By written notice, sent by both overnight mail and facsimile, Customer or Atlas may declare this Agreement to be terminated, whereupon the obligation of Atlas to provide Services hereunder shall immediately cease and be of no further effect;

(ii) All amounts payable by Customer to Atlas under this Agreement, the Related Documents or otherwise, shall be forthwith due and payable without presentment, demand, protest or other notice of any kind, all of which Customer expressly waives;

(iii) Atlas may exercise any and all rights and remedies which Atlas may have under this and the Related Documents; as well as any and all other rights and remedies which Atlas may have at law or in equity.

3.3. **Event of Default.** If an Event of Default specified in Section 3.1(a)(vi) shall occur, the result that would occur upon the giving of notice, as described above, shall occur automatically and without notice or any further act by Atlas.

3.4. **Security Interests.** Customer grants Atlas a continuing security interest, and termination of this Agreement for any reason shall not terminate the security interest or relieve Customer of the liability and responsibility of and for payment of any sums due to Atlas, including Termination charges.

3.5. **Government Action.** If any material term contained in this Agreement or the rates charged to customer for the services are required to be modified or found to be unlawful by an order of any court of competent jurisdiction, the FCC, the PUC or any other local, state or federal government authority of competent jurisdiction then Atlas shall have the right, upon thirty (30) days prior notice to Customer, without incurring any liability, to cancel all or any portion of the services and/or to terminate this Agreement.

## ARTICLE 4 - ABSENCE OF WARRANTY AND LIMITATION OF LIABILITY

4.1. ATLAS MAKES NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, CONCERNING THE SERVICES PROVIDED HEREUNDER, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR USE, ALL OF WHICH WARRANTIES ARE HEREBY EXPRESSLY EXCLUDED AND DISCLAIMED. IN NO EVENT WILL ATLAS BE LIABLE, IN THE ABSENCE OF GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, TO CUSTOMER OR ANY OTHER PERSON, FIRM OR ENTITY FOR ANY DAMAGES WHETHER DIRECT, INDIRECT, CONSEQUENTIAL, SPECIAL, INCIDENTAL, ACTUAL, PUNITIVE, EXEMPLARY OR OTHERWISE, OR FOR ANY LOST PROFITS, LOSS OF REVENUE, LOSS OF CUSTOMERS OR GOODWILL OF ANY KIND OR NATURE WHATSOEVER, ARISING OUT OF ANY MISTAKE, ACCIDENT, ERROR, OMISSION, INTERRUPTION, OR DEFECT IN TRANSMISSION, OR DELAY OR ACTION OR INACTION OF ANY THIRD PARTY, OR ARISING OUT OF OR RELATING IN ANY FASHION TO THE SERVICES OR THE OBLIGATIONS OF ATLAS UNDER THIS AGREEMENT OR ANY RELATED DOCUMENT INCLUDING WITHOUT LIMITATION, ANY FAILURE TO TIMELY OR ACCURATELY PROVIDE ANY PORTION OF THE SERVICES. IF, AND TO THE EXTENT, THE FOREGOING DISCLAIMER IS DISALLOWED IN ANY JURISDICTION, THE MAXIMUM LIABILITY, IF ANY, OF ATLAS FOR ALL DAMAGES, INCLUDING WITHOUT LIMITATION, DAMAGES FOR BREACH OF THIS AGREEMENT OR BREACH OF WARRANTY,

\\ATLAS-1\SYS\WORD\LEGAL\WORD\USDIGIT\USDGCON6.DOC- 6 -          Initialed _____ Initialed 3 H

WHETHER ARISING IN CONTRACT, NEGLIGENCE OR OTHER TORT, SHALL NOT EXCEED TEN THOUSAND DOLLARS ($10,000.00).

## ARTICLE 5 - REPRESENTATIONS OF CUSTOMER

5.1. Customer represents and warrants as follows:

(a) **Good Standing.** Customer is an entity as described on the face sheet hereof, duly formed, validly existing and in good standing under the laws of the jurisdiction of its organization, and in those jurisdictions in which it conducts business.

(b) **Corporate Authority.** The execution, delivery and performance by Customer of this Agreement and the Related Documents are within Customer's corporate powers, have been duly authorized by all necessary corporate action, do not require the consent of any Person, and as contemplated by this Agreement, do not contravene (i) Customer's charter or by-laws or (ii) any law, regulation or contractual or other restriction binding on or affecting Customer, and do not, or will not, result in, require the creation of, or conflict with, any lien, security interest or other charge or encumbrance (other than pursuant hereto) upon or with respect to any of its properties.

(c) **Governmental Authority.** No authorization or approval or other action by, and no notice to or filing with, any governmental authority or regulatory body is required for the due execution, delivery and performance by Customer of this Agreement or any Related Document to which it is or will be a party except as contemplated by this Agreement which will, or have been, duly secured.

(d) **Legality.** This Agreement is, and each other Related Document to which Customer will be a party when delivered hereunder will be, legal, valid and binding obligations of Customer enforceable against Customer in accordance with their respective terms.

(e) **Pending or Threatened Actions.** There is no pending or threatened action or proceeding affecting Customer or any of its parent companies, subsidiaries or affiliates before any court, governmental agency or arbitrator, which may adversely affect (i) the financial condition or operations of Customer or any such parent company, subsidiary or affiliate or (ii) Customer's ability to perform under this Agreement.

(f) **Misrepresentations.** No representation, warranty or statement made by Customer in this Agreement, the Related Documents, or any other documents, instruments or communications delivered by Customer to Atlas or its representatives in connection with the transactions contemplated hereunder contains or will contain any untrue statement of a material fact or omits or will omit to state any material fact necessary to make the statements contained herein or therein not misleading.

5.2 Customer makes the following covenants for the Services Term:

(a) **Regulatory Compliance.** Customer is an Interexchange Carrier of interstate and international services, as duly tariffed before the FCC, and certified for intrastate services by various state PUCs. Customer shall comply, and cause each of its subsidiaries and affiliates to comply, in all material respects with all applicable laws, rules, statutes and regulations of the FCC, the PUC and the rules, regulations and orders of courts and any other applicable regulatory bodies and agencies.

(b) **Material Transactions.** Customer shall not, without advanced written consent from Atlas, reorganize, engage in any transaction that could result in a change of control of its ownership, consolidate with or merge into any other Person or convey, transfer or lease all or substantially all of its assets to any Person unless the Person formed by such consolidation or into which it is merged or the Person which acquires by conveyance, transfer or lease all or substantially all of its assets or control, shall: (i) assume in writing all of the obligations of Customer hereunder and under the other Related Documents and such Person, in the sole judgment of Atlas, is capable of performing and financially able to perform, without increased risk to Atlas, such obligations and (ii) provide such other written representations and other security as are acceptable to Atlas. However, Atlas shall not unreasonably withhold its approval to a proposed change in control of ownership, change in corporate structure, or intended transfer of assets, if this Agreement is expressly assumed and Customer supplies such financial data and other information reasonably requested by Atlas for Atlas' determination of risk, and thereafter, upon Atlas' request and Customer's compliance with additional security demands made by Atlas in its sole discretion.

(c) **Financial Statements.** Atlas can request from time to time, and Customer shall deliver to Atlas within thirty (30) days of Atlas' request, an unaudited consolidated balance sheet of Customer for the quarter or year then ended and its related nonconsolidated statements of income for the quarter or year then ended and consolidated statements of changes in equity or retained earnings and changes in financial position based on cash flow for the year then ended, as required by and in accordance with Generally Accepted Accounting Principles and consistent with the records of Customer, as well as its tax returns.

(d) **Certification.** Customer shall deliver to Atlas, together with each of the above-required financial statements, a certificate signed by the President, CEO, or Managing Partner of Customer certifying that (i) such officer or partner has reviewed the provisions hereof and of the other Related Documents (ii) the representations of Customer contained herein are true and correct on the date of such certificate (iii) Customer has performed and fulfilled all of its obligations and covenants under this Agreement and the Related Documents and no Event of Default, or event that would constitute an Event of Default but for the requirement that notice be given or time elapse or both, has occurred during the relevant fiscal quarter or fiscal year and (iv) that the financial statements are true and correct and give an accurate picture of the Customer's financial condition.

(e) **Indemnification.** Customer agrees to indemnify Atlas, its affiliated companies, any third-party provider of Services or facilities employed in provision of Services and their respective officers, directors, employees, stockholders and affiliates (the "Indemnified Parties") for, and hold the Indemnified Parties harmless from and against, any and all claims, demands, suits, actions, causes, losses, damages, assessments or payments that others receiving Services through Customer, or any other Person, may assert arising out of or relating in any way to this Agreement, to any Services supplied under this Agreement, including the FCC, PUC or other regulatory body or agency or marketing or sales practices of Customer. Customer further agrees to reimburse each Indemnified Party for all reasonable costs and expenses including attorneys' fees incurred by such Indemnified Party due to such Indemnified Party's direct participation either as a party or witness in any administrative, regulatory, civil or criminal proceeding initiated in respect to this Agreement, the Related Documents, by Atlas, Customer, or any other Person.

(f) **Additional Information.** Customer shall deliver to Atlas, promptly upon request, such other information concerning the financial condition, operations or business of Customer as Atlas may reasonably request from time to time.

(g) **Blanket LOA.** Customer shall deliver to Atlas the Blanket Letter of Agency in Schedule F hereto. Atlas need not commence providing services until Customer shall have duly executed and delivered same to Atlas.

## ARTICLE 6 - REPRESENTATIONS OF ATLAS

6.1. Atlas represents and warrants as follows:

(a) **Good Standing.** Atlas is duly formed, validly existing and in good standing under the laws of the Commonwealth of Pennsylvania.

(b) **Corporate Authority.** The execution, delivery and performance by Atlas of this Agreement or the Related Documents are within Atlas' corporate powers, have been duly authorized by all necessary corporate action, do not require the consent of any Person, do not contravene (i) Atlas' charter or by-laws or (ii) any law, regulation or contractual or other restriction binding on or affecting Atlas, and do not or will not result in or require the creation of, or conflict with, any lien, security interest or other charge or encumbrance (other than pursuant hereto) upon or with respect to any of its properties.

(c) **Governmental Authority.** Atlas is an Interexchange Carrier of interstate and international services, as duly tariffed before the FCC, and certified for intrastate services by various state Public Utility or Service Commissions ("PUC"). No authorization or approval or other action by, and no notice to or filing with, any governmental authority or regulatory body is required for the due execution, delivery and performance by Atlas of this Agreement or any Related Document to which it is or will be a party except as contemplated by this Agreement which will, or have been, duly secured.

(d) **Legality.** This Agreement is, and each other Related Document to which Atlas will be a party when delivered hereunder will be, legal, valid and binding obligations of Atlas enforceable against Atlas in accordance with their respective terms.

(e) **Pending or Threatened Actions.** There is no pending or threatened action or proceeding affecting Atlas or any of its parent companies, subsidiaries or affiliates before any court, governmental agency or Arbitrator, which may adversely affect the financial condition or operations of Atlas or any such parent company, subsidiary or affiliate or Atlas's ability to perform under this Agreement.

(f) **Misrepresentations.** No representation, warranty or statement made by Atlas in this Agreement contains or will contain any untrue statement of a material fact or omits or will omit to state any material fact necessary to make the statements contained herein not misleading.

## ARTICLE 7 - PROPRIETARY PROPERTY

7.1 Use of Names and Logos.

(a) Customer shall not publish or use any advertising, sales promotions, press releases, or other publicity matters which use the corporate or trade names, logos, trademarks, trade dress, service marks or any copyrighted material of Atlas or its underlying carrier without the prior written consent of Atlas. Customer shall provide to Atlas for its prior review and written approval, all promotions, advertising or other materials or activity whereby it proposes to use or display Atlas' name or describing or referring to the Services to be provided by Atlas. Customer agrees to change or correct, at Customer's expense, any such material or activity which Atlas, in its sole judgment, determines to be inaccurate, misleading or otherwise objectionable. Customer is explicitly authorized to use only the following statements in its sales literature: (i) "Customer utilizes the Atlas network", (ii) "Customer utilizes Atlas'

\\ATLAS-1\SYS\WORD\LEGAL\WORD\USDIGIT\USDGCON6.DOC- 9 -            Initialed _____ Initialed

facilities", (iii) "Atlas provides only the network facilities", and (iv) "Atlas is our network services provider". Customer may identify underlying carriers in fulfillment contact with the End User.

## ARTICLE 8 - CONFIDENTIAL INFORMATION

8.1.  **Confidential Information.**  Customer understands and agrees that the terms and conditions of this Agreement and all documents referenced herein (including invoices to Customer for Services provided hereunder), communications between the parties regarding this Agreement or the Services to be provided hereunder (including price quotes to Customer for any Services proposed to be provided or actually provided hereunder), as well as such information relevant to any other agreement between the parties (collectively "Confidential Information"), are confidential as between Customer and Atlas.

8.2.  **Limited Disclosure.**  Customer shall not disclose any Confidential Information to any third party, except to its employees as necessary to implement this Agreement and to consultants retained by Customer to provide advice, consultation, analysis, legal counsel or any other services in connection with this Agreement, if the employee or consultant agrees to be bound by the confidentiality obligations of this Agreement. Notwithstanding the foregoing, Customer may disclose Confidential Information to third parties (i) as may be required by law, regulation or legal process and (ii) as necessary for the enforcement of this Agreement. If Customer becomes aware of any action or other regulatory or court proceeding that might require it to disclose any Confidential Information, Customer will give immediate written notice of such motion or proceeding to Atlas and shall act cooperatively to retain the confidentiality of the terms hereof.

8.3.  **Press Releases.**  The parties further agree that any press release, advertisement or publication generated by Customer regarding this Agreement, the Services provided hereunder or in which Customer desires to mention the name of Atlas or Atlas' affiliated companies, will be submitted to Atlas for its written approval prior to publication.

8.4.  **Survival of Mutual Nondisclosure Agreement.**  The parties agree that nothing herein relieves the parties of their obligations under any pre-existing Mutual Nondisclosure Agreements entered into between them during the course of negotiating this Agreement.

## ARTICLE 9 - GENERAL PROVISIONS

9.1.  **Notices.**  All notices required or with respect to this Agreement or the Related Documents shall be sent by both facsimile and overnight mail with reputable carrier, addressed as follows:

> Atlas Communications, Ltd.,
> 482 Norristown Road
> Blue Bell, Pennsylvania 19422
> Attention: General Counsel
>
> Facsimile number: (610) 260-0886

If to Customer, at the address and facsimile number specified on the face sheet hereof.

Should the address or facsimile number set forth change, the party changing its address shall notify the other, in writing, of such change and new address within fifteen (15) days prior to their relocation.

\\ATLAS-1\SYS\WORD\LEGAL\WORD\USDIGIT\USDGCON6.DOC- 10 -      Initialed _____ Initialed

9.2. **Jurisdiction; Applicable Law.**

(a) This Agreement and the other Related Documents and the rights and obligations of the parties hereunder and thereunder shall be construed in accordance with, and be governed by, the laws of the Commonwealth of Pennsylvania excluding its conflict of law provisions.

(b) Any legal action or proceeding with respect to this Agreement or any Related Document and any action for enforcement of any judgment or award in respect thereof shall be brought in the Court of Common Pleas of Montgomery County, Commonwealth of Pennsylvania or of the U.S. District Court for the Eastern District of Pennsylvania located in Philadelphia, Pennsylvania. By execution and delivery of this Agreement, each of Atlas and Customer hereby accepts for itself and in respect of its property, generally and unconditionally, the personal and subject matter jurisdiction of the aforesaid courts. Customer irrevocably consents to the service of process by the aforementioned courts in any such action or proceeding by the mailing of copies of the complaint, writ or other process by registered or certified mail, postage prepaid, to it at its address as set forth herein. Both Atlas and Customer hereby irrevocably waive any objection that they may now or hereafter have to the laying of venue any actions or proceedings arising out of or in connection with this Agreement or any other Related Documents brought in the courts referred to above and hereby further irrevocably waive and agree not to plead or claim in any such court that any such action or proceeding brought in any such court has been brought in an inconvenient forum.

9.3. **Attorney's Fees and Costs.** In the event of any legal dispute between the parties relating to the Agreement, the most prevailing party shall be entitled to all costs and legal expenses including, but not limited to, reasonable attorney's, accounting fees, court costs, expert witness expenses, and investigation expenses.

9.4. **Provisions Severable.** The terms and provisions of this Agreement are severable. In the event that any of them are held to be invalid or unenforceable in whole or in part, for any reason, such term or provision shall be enforced to the extent it is permissible to do so under prevailing law; and to the extent it cannot be so enforced, it shall be excluded from this Agreement, and the remaining terms and provisions shall prevail and remain in full force and effect.

9.5. **Force Majeure.** If Atlas' performance of this Agreement or any obligation hereunder is prevented, restricted or interfered with by causes beyond its reasonable control including, but not limited to, acts of G-d, fire, explosion, vandalism, power failure, cable cut, storm or other similar occurrence, supplier failure, any law, order, regulation, direction, action or request of the United States government, or state or local government, or of any department, agency, commission, court, bureau, corporation or other instrumentality of any one or more such governments, or of any civil or military authority, or by national emergency, insurrection, riot, war, strike, lockout or work stoppage or other labor difficulties, or supplier failure, shortage, breach or delay, then Atlas shall be excused from such performance on a day-to-day basis to the extent of such restriction or interference. Atlas shall use reasonable efforts under the circumstances to avoid or remove such causes or nonperformance and shall proceed to perform with reasonable dispatch whenever such causes are removed or cease. In the case of a supplier failure, breach or delay, Atlas shall use its best efforts to obtain an acceptable alternative.

9.6. **Survival of Terms.** The terms and provisions contained in this Agreement that, by their sense and context, are intended to survive the performance thereof by the parties hereto shall so survive the completion of performance and termination of this Agreement, including, without limitation, provisions for security, indemnification, confidentiality and the making of any and all payments due hereunder.

\\ATLAS-1\SYS\WORD\LEGAL\WORD\USDIGIT\USDGCON6.DOC- 11 -          Initialed _____ Initialed

1     **9.7. Rules of Construction.** Descriptive headings in this Agreement are for convenience only and shall not affect
2 the construction of this Agreement. No rule of construction requiring interpretation against the drafting party hereof
3 shall apply in the interpretation of this Agreement which was carefully reviewed by both parties in consultation with
4 their respective counsel. The words "herein," "hereof," "hereby," "hereto," "hereunder" and words of similar import
5 refer to this Agreement as a whole and not to any particular article, section, paragraph or other subdivision of this
6 Agreement. To the extent that there is a conflict between this Agreement and one of the Schedules hereto, the terms
7 of the Schedule will prevail. Defined terms shall include the plural and the singular as the context shall require.
8 Words having well-known technical or trade meanings shall be so construed, and all listings of items shall not be
9 taken to be exclusive, but shall include other items, whether similar or dissimilar to those listed, as the context
10 reasonably requires.
11
12     **9.8. Entire Agreement.** This Agreement, except as expressly set forth herein, may not be amended, altered or
13 modified unless such amendment, alteration or modification is set forth in writing and signed by all parties. Parties
14 agree that no representation shall be relied upon unless said representation is set forth in writing, signed by the
15 parties, and made part of this Agreement. This Agreement and Related Documents consists of all the terms and
16 conditions contained herein, any and all Tariffs applicable to Atlas or the underlying carriers relating to the
17 provisions of Services, and all documents incorporated herein specifically by reference, and constitutes the complete
18 and exclusive statement of the understandings between the parties and supersedes all proposals and prior
19 agreements, oral or written, by or between the parties or representations relating to Services provided hereunder. No
20 subsequent agreement between the parties concerning the Services shall be effective or binding unless it is made in
21 writing and subscribed to by authorized representatives of Customer and an officer of Atlas and, to the extent
22 required by law, filed with the FCC and/or the appropriate state regulatory agency. Nothing contained in this
23 Agreement shall require Atlas or Customer to take any action prohibited or omit to take any action required by the
24 FCC or any other regulatory authorities.
25
26     **9.9. Independent Contractor.** It is agreed that by virtue of this Agreement the relationship created is one of
27 independent contractors, with Customer purchasing services from Atlas. The parties are not partners, participants in
28 a joint venture, or employer-employee, and Customer shall not be deemed to be an agent of Atlas. This Agreement
29 and the provision of Services hereunder shall not result in a joint communication service offering to any third
30 parties.
31
32
33     **IN WITNESS WHEREOF,** and intending to be legally bound hereby, the parties have caused this Carrier
34 Dedicated Services Agreement to be executed by their authorized representatives on the date written below.
35
36
37 ATLAS COMMUNICATIONS, LTD.          US DIGITAL, INC.
38
39
40 By: _____          By: _____
41
42 Title: _General Counsel_             Title: _PRESIDENT_
43
44 Date: _2-9-98_                       Date: _2-3-98_
45

## SCHEDULE A

### BILLING INCREMENTS

Listed Services:

ATLAS transport services and their billing increments are as follows:

| SERVICE TYPE | Initial (sec) | Additional (sec) |
|---|---|---|
| Dedicated Interstate Termination | 18 | 6 |
| Dedicated Intrastate Termination | 18 | 6 |
| Dedicated Canadian Termination | 30 | 6 |
| Dedicated Mexico US Termination | 30 | 6 |
| Dedicated Mexico Int'l Termination | 60 | 60 |
| Dedicated Other Int'l Termination | 30 | 6 |
| | | |
| Dedicated Interstate Origination | 18 | 6 |
| Dedicated Intrastate Origination | 18 | 6 |
| Dedicated Canadian Origination | 30 | 6 |
| Dedicated Mexico Origination | 60 | 60 |
| Dedicated Other Int'l Origination | 30 | 6 |
| Dedicated Carribean Origination | 30 | 6 |

\\ATLAS-1\SYS\WORD\LEGAL\WORD\USDIGIT\USDGCON6.DOC- 13 -    Initialed ___ Initialed ___

**SCHEDULE B**

**CERTIFICATED CUSTOMER**
**QUESTIONNAIRE AND AFFIDAVIT**
**FOR ATLAS COMMUNICATIONS, LTD.**

Please give complete answers to all of the following questions. Your Carrier Dedicated Services Agreement ("Agreement") with Atlas Communications Ltd. ("ATLAS") may not be executed, and no orders may be accepted from you, until ATLAS receives a completed Questionnaire and Affidavit from you. The Questionnaire and Affidavit is a part of the Agreement and inaccurate answers to this questionnaire are grounds for immediate suspension or termination of your Agreement. You must submit a newly completed and updated questionnaire each year. In the event any of the information provided herein changes prior to the scheduled update, you must inform ATLAS of those changes promptly in writing.

Name of Company: U.S. DIGITEL INC.

Address: 1909 TYLER ST. 3RD FLOOR HOLLYWOOD FL. 33020

Telephone: 954 927 7770    Fax: 954 927 7702

Name of person to contact with questions regarding responses to this form:
DAVID GRIFFEE

a.  What is your state of incorporation? FLORIDA
    Is your company currently in good standing in that state? Yes/No.
    Please attach a copy of your certificate of incorporation. ← ATTACHMENT 3

b.  What states do you currently do business in?
    FLORIDA

c.  Please attach copies of federal and applicable state tax-exempt certificates. A state tax-exempt certificate must be presented for each state you are certified to resell in. ATTACHMENT 4

d.  In which states are you qualified to do business as a foreign corporation?
    SEE ATTACHMENTS 1 AND 2

e.  In which states are you certified by the state utility commission to resell long distance service?
    SEE ATTACHMENTS 1 AND 2

    Please attach copies of all certificates, and for those states, which require an informational filing, please attach copies of those filings.

f.  Do you have an interstate tariff on file with the FCC? Yes/No. If so, please provide the date the first tariff was filed. 1-26-98

\\ATLAS-1\SYS\WORD\LEGAL\WORD\USDIGIT\USDGCON6.DOC- 14 -        Initialed _____ Initialed _____

g.    Do you have an international tariff or Section 214 authorization on file with the FCC? (Yes)/No.  If so, please provide the date the first tariff or the Section 214 authorization was filed.

_1-26-98_

I swear the foregoing information is true and correct.

_____
Signature

_DAVID R. GRIFFEE_
Print Name

_PRESIDENT_
Title

_U.S. DIGITEL INC_
Company Name

STATE OF                                    )
                                           SS.
COUNTY OF                                   )

On this _5th_ day of _February_, 1998, the foregoing instrument was acknowledged before me by _David Griffee_

In witness whereof, I have set my hand and official seal this _5_ day of _February_, 1998.

_____

My commission expires:

OFFICIAL NOTARY SEAL
JOAN CASASANTA
NOTARY PUBLIC STATE OF FLORIDA
COMMISSION NO. CC529799
MY COMMISSION EXP. FEB. 1,2001

\\ATLAS-1\SYS\WORD\LEGAL\WORD\USDIGIT\USDGCON6.DOC- 15 -          Initialed _____ Initialed 34

## SCHEDULE C

### PAYPHONE SURCHARGE AFFIRMATION ADDENDUM

Customer acknowledges that it is solely responsible to make any and all payphone service provider surcharges levied by the Federal Communications Commission, or any state regulatory body. Neither Atlas nor any long distance provider from whom Atlas purchases long distance services has or will make payphone surcharge payments on your behalf.

Atlas shall provide Customer with any information in its possession that would permit the identification of payphones as the source for toll-free calls.

Acknowledged by:

\\ATLAS-1\SYS\WORD\LEGAL\WORD\USDIGIT\USDGCON6.DOC- 16 -        Initialed _____ Initialed _____

## SCHEDULE D

## RATES, RAMP UP, AND COMMITMENT

This Schedule is made as of the Agreement Date and forms a part of the Carrier Dedicated Services Agreement (the "Agreement"). Capitalized terms used herein without other definition shall be defined as in the Agreement.

The rates for Dedicated Services are set forth in the attached Schedules D-1, D-2, D-3, D-4.

Throughout the term of this Agreement, Customer shall maintain a minimum of Monthly Revenues in accordance with the table set forth below ("Minimum Monthly Commitment"). Customer will be invoiced and agrees to pay any shortfall (the difference between the Minimum Monthly Commitment and Monthly Revenue) in meeting its Minimum Monthly Commitment. For purposes of this Agreement, "Monthly Revenues" for any month shall mean and include the aggregate amount of all usage charges for services provided by or through Atlas to Customer under this Agreement included in the monthly statement for such month.

In the event the aggregate of Customer's Monthly Revenues exceed ~~two million dollars ($2,000,000.00)~~ *ONE MILLION FOUR HUNDRED THOUSAND DOLLARS ($1,400,000.00)* at any time during the initial ~~twenty-four (24)~~ *EIGHTEEN (18)* month Services Term (the Aggregate Commitment), then the Minimum Monthly Commitment for the remaining months during the initial Services Term shall be waived.

| MONTH | MINIMUM MONTHLY COMMITMENT (EACH MONTH) |
|---|---|
| 0-3 | None |
| 4 | $20,000.00 |
| 5 | $30,000.00 |
| 6 | $40,000.00 |
| 7 | $60,000.00 |
| 8-24 | $100,000.00 |
| 25 to end of Services Term | $100,000.00 |

Customer will receive a refund or credit of the shortfall charges assessed and paid during the seven month ramp period of the initial Services Term upon meeting its $100,000.00 monthly commitments or upon meeting the Aggregate Commitment.

The undersigned Atlas and Customer confirm that the foregoing is the Terms Schedule to the Agreement.

ATLAS COMMUNICATIONS, LTD.                     US DIGITEL, INC.

By: _____                    By: _____

Print name: Zachary L. Grayson                  Print name: DAVID R. GRAYBEE

Title: General Counsel                          Title: PRESIDENT

Date: 2/9/98                                     Date: 2-3-98

**Schedule D**
## ATLAS / Outbound Transportation

### DEDICATED TRANSPORT RATES

| Interstate Long Haul Transport ONLY Per Minute Buy Rates | | | |
|---|---|---|---|
| CROSS VOLUME in $ | OUTBOUND Transport | *Terminating Charges for State & LATA | Total Cost |
| $      0-K - $100,000K | $0.0220 | + | · = |
| $100,001K - $150,000K | $0.0168 | + | = |
| $150,001K - $200,000K | $0.0195 | + | = |
| $200,001K - $250,000K | $0.0190 | + | = |
| $250,001K - $350,000K | $0.0180 | + | = |
| Over $350,001K | $0.0175 | + | = |
| EXAMPLE | OUTBOUND Transport | *California LATA 1 | Total Cost |
| $ 50K - $100K | $0.0220 | + $0.0198 | = $0.0418 |

*See Loc Access Schedule for terminating access charges.

CONFIDENTIAL

## ATLAS / Inbound Transportation

### DEDICATED TRANSPORT RATES

| Interstate Long Haul Transport ONLY Per Minute Bay Rates | | | |
|---|---|---|---|
| GROSS VOLUME in $ | INBOUND Transport | *Originating Charges for State & LATA | Total Cost |
| $     0-K - $100,000K | $.0225 | + | = |
| $100,001K - $150,000K | $.0215 | + | = |
| $150,001K - $200,000K | $.0210 | + | = |
| $200,001K - $250,000K | $.0205 | + | = |
| $250,001K - $350,000K | $.0200 | + | = |
| Over $350,001K | $.0190 | + | = |
| | | | |
| EXAMPLE | INBOUND Transport | *California LATA 1 | Total Cost |
| $   50K - $100K | $.0235 | + | $.0228 | = | $.0463 |

*See Loc Access Schedule for origination access charges.

CONFIDENTIAL

ID: 0402   PAGE 23/38

Schedule D-2

Atlas Direct — Direct Toll Free Origination and Termination per Minute Charges

| State | # | Company | A | B |
|---|---|---|---|---|
| AL | 1 | BELL SOUTH | 0.0490 | 0.0267 |
| AR | 1 | SWBT | 0.0282 | 0.0169 |
| AZ | 1 | US WEST | 0.0257 | 0.0254 |
| CA | 1 | PACIFIC TEL | 0.0228 | 0.0194 |
| CO | 1 | US WEST | 0.0257 | 0.0259 |
| CT | 1 | SNET | 0.0308 | 0.0363 |
| CT | 1 | NYNEX | 0.0423 | 0.0363 |
| DC | 1 | BELL ATL | 0.0130 | 0.0200 |
| DE | 1 | BELL ATL | 0.0219 | 0.0208 |
| FL | 1 | BELL SOUTH | 0.0275 | 0.0260 |
| GA | 1 | BELL SOUTH | 0.0275 | 0.0261 |
| IA | 1 | US WEST | 0.0284 | 0.0259 |
| ID | 1 | US WEST | 0.0274 | 0.0278 |
| IL | 1 | AMERITECH | 0.0193 | 0.0168 |
| IN | 1 | AMERITECH | 0.0271 | 0.0224 |
| KS | 1 | SWBT | 0.0240 | 0.0245 |
| KY | 1 | BELL SOUTH | 0.0273 | 0.0267 |
| LA | 1 | BELL SOUTH | 0.0286 | 0.0271 |
| MA | 1 | NYNEX | 0.0421 | 0.0366 |
| MD | 1 | BELL ATL | 0.0321 | 0.0201 |
| ME | 1 | NYNEX | 0.0443 | 0.0389 |
| MI | 1 | AMERITECH | 0.0271 | 0.0224 |
| MN | 1 | US WEST | 0.0285 | 0.0257 |
| MO | 1 | SWBT | 0.0275 | 0.0240 |
| MS | 1 | BELL SOUTH | 0.0315 | 0.0294 |
| MT | 1 | US WEST | 0.0319 | 0.0272 |
| NC | 1 | BELL SOUTH | 0.0276 | 0.0261 |
| ND | 1 | US WEST | 0.0302 | 0.0264 |
| NE | 1 | US WEST | 0.0300 | 0.0262 |
| NH | 1 | NYNEX | 0.0427 | 0.0373 |
| NJ | 1 | BELL ATL | 0.0221 | 0.0201 |
| NM | 1 | US WEST | 0.0302 | 0.0264 |
| NV | 1 | PACIFIC TELESIS | 0.0262 | 0.0238 |
| NY | 1 | NYNEX | 0.0212 | 0.0208 |
| OH | 1 | AMERITECH | 0.0279 | 0.0242 |
| OK | 1 | SWBT | 0.0260 | 0.0245 |
| OR | 1 | US WEST | 0.0293 | 0.0251 |
| PA | 1 | BELL ATL | 0.0232 | 0.0202 |
| RI | 1 | NYNEX | 0.0419 | 0.0363 |
| SC | 1 | BELL SOUTH | 0.0273 | 0.0260 |
| SD | 1 | US WEST | 0.0247 | 0.0202 |
| TN | 1 | BELL SOUTH | 0.0276 | 0.0264 |
| TX | 1 | SWBT | 0.0274 | 0.0238 |
| UT | 1 | US WEST | 0.0286 | 0.0264 |
| VA | 1 | BELL ATL | 0.0233 | 0.0203 |
| VT | 1 | NYNEX | 0.0443 | 0.0347 |
| WA | 1 | US WEST | 0.0285 | 0.0256 |
| WI | 1 | AMERITECH | 0.0268 | 0.0223 |
| WV | 1 | BELL ATL | 0.0233 | 0.0205 |
| WY | 1 | US WEST | 0.0303 | 0.0305 |
| FL | 2 | SPRINT LTD | 0.0234 | 0.0237 |
| IL | 2 | SPRINT LTD | 0.0306 | 0.0265 |
| IN | 2 | SPRINT LTD | 0.0376 | 0.0481 |
| KS | 2 | SPRINT LTD | 0.0453 | 0.0615 |
| MN | 2 | SPRINT LTD | 0.0434 | 0.0619 |
| MO | 2 | SPRINT LTD | 0.0494 | 0.0623 |
| NC | 2 | SPRINT LTD | 0.0315 | 0.0314 |
| NE | 2 | SPRINT LTD | 0.0409 | 0.0653 |
| NJ | 2 | SPRINT LTD | 0.0324 | 0.0291 |
| NV | 2 | SPRINT LTD | 0.0149 | 0.0404 |
| OH | 2 | SPRINT LTD | 0.0408 | 0.0487 |
| OR | 2 | SPRINT LTD | 0.0601 | 0.0706 |
| PA | 2 | SPRINT LTD | 0.0404 | 0.0360 |
| SC | 2 | SPRINT LTD | 0.0266 | 0.0236 |

| State | # | Company | A | B |
|---|---|---|---|---|
| TN | 3 | SPRINT LTD | 0.0155 | 0.0316 |
| TX | 3 | SPRINT LTD | 0.0263 | 0.0635 |
| VA | 3 | SPRINT LTD | 0.0267 | 0.0323 |
| WA | 3 | SPRINT LTD | 0.0364 | 0.0673 |
| WY | 3 | SPRINT LTD | 0.0439 | 0.0726 |
| AL | 3 | GTE | 0.0342 | 0.0430 |
| AR | 3 | GTE | 0.0389 | 0.0398 |
| CA | 3 | GTE | 0.0284 | 0.0352 |
| FL | 3 | GTE | 0.0283 | 0.0282 |
| SD | 3 | GTE | 0.0438 | 0.0467 |
| IA | 3 | GTE | 0.0434 | 0.0336 |
| ID | 3 | GTE | 0.0313 | 0.0345 |
| IL | 3 | GTE | 0.0412 | 0.0470 |
| IN | 3 | GTE | 0.0362 | 0.0408 |
| KY | 3 | GTE | 0.0404 | 0.0469 |
| MI | 3 | GTE | 0.0416 | 0.0473 |
| MN | 3 | GTE | 0.0344 | 0.0416 |
| MO | 3 | GTE | 0.0366 | 0.0435 |
| NC | 3 | GTE | 0.0366 | 0.0447 |
| NE | 3 | GTE | 0.0436 | 0.0427 |
| NM | 3 | GTE | 0.0509 | 0.0506 |
| OH | 3 | GTE | 0.0291 | 0.0341 |
| OK | 3 | GTE | 0.0340 | 0.0437 |
| OR | 3 | GTE | 0.0287 | 0.0361 |
| PA | 3 | GTE | 0.0341 | 0.0382 |
| SC | 3 | GTE | 0.0376 | 0.0467 |
| TX | 3 | GTE | 0.0366 | 0.0416 |
| VA | 3 | GTE | 0.0239 | 0.0416 |
| WA | 3 | GTE | 0.0381 | 0.0447 |
| WI | 3 | GTE | 0.0462 | 0.0488 |
| AR | 4 | ALLTEL | 0.0632 | 0.0740 |
| AZ | 4 | CITIZENS | 0.0606 | 0.0782 |
| CA | 4 | CONTEL/CA | 0.0475 | 0.0685 |
| CO | 4 | PTI | 0.0439 | 0.0401 |
| GA | 4 | ALLTEL | 0.0296 | 0.0419 |
| IA | 4 | CEN-IWF | 0.0437 | 0.0751 |
| ID | 4 | CITIZENS | 0.0480 | 0.0682 |
| IL | 4 | TCG | 0.0390 | 0.0147 |
| KY | 4 | CINN BELL | 0.0236 | 0.0207 |
| LA | 4 | CENTURY | 0.0437 | 0.0542 |
| ME | 4 | TDS | 0.0466 | 0.0734 |
| MI | 4 | CENTURY | 0.0418 | 0.0714 |
| MN | 4 | CEN-MEANS | 0.0435 | 0.0702 |
| MO | 4 | ALLTEL | 0.0371 | 0.0613 |
| MT | 4 | CENTURY | 0.0445 | 0.0700 |
| MT | 4 | PTI | 0.0512 | 0.0448 |
| NC | 4 | ALLTEL | 0.0483 | 0.0485 |
| MS | 4 | LINCOLN | 0.0514 | 0.0566 |
| NV | 4 | CONTEL/CA | 0.0549 | 0.0644 |
| OH | 4 | CINN BELL | 0.0146 | 0.0603 |
| OK | 4 | ALLTEL | 0.0616 | 0.0617 |
| OR | 4 | PTI | 0.0440 | 0.0540 |
| PA | 4 | ALLTEL | 0.0330 | 0.0282 |
| SC | 4 | ALLTEL | 0.0277 | 0.0543 |
| SD | 4 | CEN-MEAN | 0.0435 | 0.0716 |
| TN | 4 | TDS | 0.0402 | 0.0625 |
| UT | 4 | CITIZENS | 0.0552 | 0.0747 |
| VT | 4 | TDS | 0.0146 | 0.0719 |
| WA | 4 | PTI | 0.0417 | 0.0514 |
| WI | 4 | CENTURY | 0.0711 | 0.0356 |
| WV | 4 | CITIZENS | 0.0409 | 0.0711 |
| WY | 4 | PTI | 0.0361 | 0.0432 |
| AR | 4 | CENTURY | 0.0611 | 0.0467 |

| State | # | Company | A | B |
|---|---|---|---|---|
| IA | 5 | ROCHESTER | 0.0458 | 0.0413 |
| MN | 5 | ROCHESTER | 0.0445 | 0.0391 |
| MT | 5 | CITIZENS | 0.0447 | 0.0687 |
| NV | 5 | CITIZENS | 0.0487 | 0.0804 |
| NY | 5 | ROCHESTER | 0.0290 | 0.0246 |
| OH | 6 | ALLTEL | 0.0472 | 0.0411 |
| TN | 6 | CITIZENS | 0.0512 | 0.0763 |
| WI | 6 | PTI | 0.0409 | 0.0706 |
| NY | 6 | CITIZENS | 0.0459 | 0.0666 |
| OR | 6 | CENTURY | 0.0438 | 0.0100 |
| WI | 6 | TDS | 0.0814 | 0.0712 |
| AK | 7 | LEC OTHER | 0.2072 | 0.1201 |
| AL | 7 | LEC OTHER | 0.0781 | 0.0656 |
| AR | 7 | LEC OTHER | 0.0654 | 0.0759 |
| AZ | 7 | LEC OTHER | 0.0807 | 0.0725 |
| CA | 7 | LEC OTHER | 0.0414 | 0.0650 |
| CO | 7 | LEC OTHER | 0.0764 | 0.0695 |
| CT | 7 | LEC OTHER | 0.0668 | 0.0700 |
| DC | 7 | LEC OTHER | 0.0735 | 0.0727 |
| DE | 7 | LEC OTHER | 0.0355 | 0.0727 |
| FL | 7 | LEC OTHER | 0.0461 | 0.0461 |
| GA | 7 | LEC OTHER | 0.0735 | 0.0659 |
| HI | 7 | LEC OTHER | 0.0355 | 0.0737 |
| IA | 7 | LEC OTHER | 0.0421 | 0.0606 |
| ID | 7 | LEC OTHER | 0.0810 | 0.0689 |
| IL | 7 | LEC OTHER | 0.0579 | 0.0443 |
| IN | 7 | LEC OTHER | 0.0816 | 0.0711 |
| KS | 7 | LEC OTHER | 0.0604 | 0.0750 |
| KY | 7 | LEC OTHER | 0.0756 | 0.0663 |
| LA | 7 | LEC OTHER | 0.0665 | 0.0591 |
| MA | 7 | LEC OTHER | 0.0640 | 0.0565 |
| MD | 7 | LEC OTHER | 0.0572 | 0.0635 |
| ME | 7 | LEC OTHER | 0.0461 | 0.0733 |
| MI | 7 | LEC OTHER | 0.0666 | 0.0657 |
| MN | 7 | LEC OTHER | 0.0706 | 0.0611 |
| MO | 7 | LEC OTHER | 0.0445 | 0.0674 |
| MS | 7 | LEC OTHER | 0.0469 | 0.0725 |
| MT | 7 | LEC OTHER | 0.0455 | 0.0649 |
| NC | 7 | LEC OTHER | 0.0450 | 0.0565 |
| ND | 7 | LEC OTHER | 0.0614 | 0.0679 |
| NE | 7 | LEC OTHER | 0.0410 | 0.0699 |
| NH | 7 | LEC OTHER | 0.0810 | 0.0698 |
| NJ | 7 | LEC OTHER | 0.0472 | 0.0414 |
| NM | 7 | LEC OTHER | 0.0411 | 0.0807 |
| NV | 7 | LEC OTHER | 0.0807 | 0.0740 |
| NY | 7 | LEC OTHER | 0.0565 | 0.0511 |
| OH | 7 | LEC OTHER | 0.0606 | 0.0561 |
| OK | 7 | LEC OTHER | 0.0440 | 0.0722 |
| OR | 7 | LEC OTHER | 0.0464 | 0.0796 |
| PA | 7 | LEC OTHER | 0.0706 | 0.0653 |
| PR | 7 | LEC OTHER | 0.0582 | 0.0442 |
| RI | 7 | LEC OTHER | 0.0855 | 0.0727 |
| SC | 7 | LEC OTHER | 0.0637 | 0.0571 |
| SD | 7 | LEC OTHER | 0.0646 | 0.0721 |
| TN | 7 | LEC OTHER | 0.0712 | 0.0643 |
| TX | 7 | LEC OTHER | 0.0575 | 0.0508 |
| UT | 7 | LEC OTHER | 0.0459 | 0.0757 |
| VA | 7 | LEC OTHER | 0.0773 | 0.0654 |
| VI | 7 | LEC OTHER | 0.0210 | 0.0250 |
| VT | 7 | LEC OTHER | 0.0808 | 0.0673 |
| WA | 7 | LEC OTHER | 0.0705 | 0.0610 |
| WI | 7 | LEC OTHER | 0.0790 | 0.0682 |
| WV | 7 | LEC OTHER | 0.0426 | 0.0719 |
| WY | 7 | LEC OTHER | 0.0902 | 0.0779 |

CONFIDENTIAL

Initials _____ Initials _____

Case 0:00-cv-06096-ASG    Document 10    Entered on FLSD Docket 01/25/2000    Page 74 of 90

RUMEBHD068998          ID:0402

Schedule D-3

## DEDICATED INTRASTATE RATES

| State | Dedicated Outbound Direct | Dedicated Inbound Direct Toll Free |
|---|---|---|
| Alaska | $0.1805 | $0.1805 |
| Alabama | $0.0588 | $0.0588 |
| Arkansas | $0.0694 | $0.0694 |
| Arizona | $0.1047 | $0.1047 |
| California "A" | $0.0386 | $0.0405 |
| California "B" | $0.0386 | $0.0405 |
| Colorado | $0.1022 | $0.1000 |
| Connecticut | $0.0647 | $0.0647 |
| Delaware | $0.0647 | $0.0647 |
| Florida | $0.0861 | $0.0754 |
| Georgia | $0.0706 | $0.0706 |
| Hawaii | $0.1718 | $0.1718 |
| Iowa | $0.1000 | $0.1000 |
| Idaho | $0.1066 | $0.1106 |
| Illinois | $0.0482 | $0.0482 |
| Indiana | $0.0824 | $0.0824 |
| Kansas | $0.1235 | $0.1235 |
| Kentucky | $0.0714 | $0.0699 |
| Louisiana | $0.0824 | $0.0824 |
| Massachusetts | $0.0706 | $0.0706 |
| Maryland | $0.0633 | $0.0633 |
| Maine | $0.1765 | $0.1847 |
| Michigan | $0.0824 | $0.0824 |
| Minnesota | $0.1059 | $0.1059 |
| Missouri | $0.1059 | $0.1059 |
| Mississippi | $0.0682 | $0.0682 |
| Montana | $0.1059 | $0.1051 |
| North Carolina | $0.1055 | $0.1055 |
| North Dakota | $0.1059 | $0.1094 |
| Nebraska | $0.1235 | $0.1235 |
| New Hampshire | $0.1059 | $0.1059 |
| New Jersey | $0.0781 | $0.0781 |
| New Mexico | $0.1235 | $0.1235 |
| Nevada | $0.0765 | $0.0765 |
| New York | $0.0676 | $0.0676 |
| Ohio | $0.0812 | $0.0812 |
| Oklahoma | $0.0812 | $0.0812 |
| Oregon | $0.1000 | $0.1000 |
| Pennsylvania | $0.0929 | $0.0929 |
| Rhode Island | $0.0694 | $0.0807 |
| South Carolina | $0.0948 | $0.0694 |
| South Dakota | $0.0824 | $0.0824 |
| Tennessee | $0.1059 | $0.1059 |
| Texas | $0.1101 | $0.1000 |
| Utah | $0.0941 | $0.0941 |
| Virginia | $0.0906 | $0.0906 |
| Vermont | $0.1353 | $0.1353 |
| Washington | $0.1118 | $0.1118 |
| Wisconsin | $0.0824 | $0.0824 |
| West Virginia | $0.0882 | $0.0901 |
| Wyoming | $0.1647 | $0.1647 |

Schedule D-4
## CANADA ORIGINATION

**CANADA**

CANADA Originating Service

| Direct Toll Free |
|---|
| Dedicated Inbound |

$0.1694

**CONFIDENTIAL**

Initials _____ Initials _____

# Schedule 5
## Non-Usage Charges
### (Underlying Carrier Network - Sprint)

| Description | Install / One Time Charges | | Monthly Recurring Charges | |
|---|---|---|---|---|
| **Dedicated Install & MRC Charges** | | | | |
| T-1 Local Loop | $ 1165 .00* | Waived | Tariffed | |
| Central Office Connection Fee | $ 327.00 * | Waived | Waived | |
| Access Coordination Fee | $ 207.00 * | Waived | Waived | |
| Entrance Facility Connection | N/A | Waived | Waived | |
| T-1 Installation and Coordination Charge per T-1 | $ 400.00 | | $ - | |
| DS3 Coordination Fee (AAV) | $ 600.00 | | $ - | |
| Bi-Directional T-1 fee /per T-1 | $ - | | $ 50.00 | |
| Charge per T-1 fee / per T-1 | $ - | | $ 50.00 | |
| | | | | |
| **Dedicated ISDN Charges** | | | | |
| ISDN T-1 Access | $ 1165 .00* | Waived | Tariff | |
| T-1 Installation and Coordination Charge per T-1 | $ 400.00 | | $ - | |
| D Channel | $ 2,000.00 | | $ 300.00 | |
| Backup D | $ 2,000.00 | | $ 100.00 | |
| ANI Delivery | $ 200.00 | | N/A | |
| | | | | |
| **Dedicated Expedite Fees / T-1 / DS3 **** | | | | |
| 0 - 5 Days | $ 1,000.00 ** | | N/A | |
| 6 - 10 Days | $ 825.00 ** | | N/A | |
| 11 - 14 Days | $ 650.00 ** | | N/A | |
| 15 - 20 Days | $ 475.00 ** | | N/A | |
| 21 - 29 Days | $ 300.00 ** | | N/A | |
| DS3 - Access Expedite Charge | $ 500.00 ** | | N/A | |
| | | | | |
| **Minimum Port Charg** | $ 150.00 | | N/A | |
| | | | | |
| **Account Code Charges** | | | | |
| Verified Accounting Codes- Dedicated | $ 20.00 | | $ 10.00 | |
| Non-Verified Accounting Codes -Dedicated | N/C | | $ 15.00 | |
| | | | | |
| **Toll Free Number Features:** | | | | |
| Route Advance (Off-Net) | N/A | | $ 36.40 | Plus $0.10 per minute |
| Route Advance (On-Net) | N/A | | $ 50.00 | |
| | | | | |
| Area Code Selection | $ 50.00 | | N/A | |
| Area Code / Exchange Selection | $ 50.00 | | N/A | |

Atlas Communications, Ltd.
Confidential

Initials _[signature]_ Initials _[signature]_

## Schedule E
## Non-Usage Charges
### (Underlying Carrier Network - Sprint)

| Description | Install / One Time Charges | Monthly Recurring Charges |
|---|---|---|
| **Toll Free Number Features:** | | |
| **Enhanced 800 Features:** | | |
| 1 - 3   Route Sets | See Routing Features | $ |
| 4 - 12  Route Sets | See Routing Features | $      250.00 |
| 13 - 99 Route Sets | See Routing Features | $      450.00 |
| | | |
| Area Code Routing | $     50.00 | Routing Plans As Above |
| Area Code / Exchange Routing | $     50.00 | Routing Plans As Above |
| Call Allocation | $     50.00 | Routing Plans As Above |
| Day of Week | $     50.00 | Routing Plans As Above |
| Day of Year | $     50.00 | Routing Plans As Above |
| Time of Day | $     50.00 | Routing Plans As Above |
| | | |
| **Command Routing** | $50 per/activation of alternative routing plan | |
| | | |
| **Enhanced 800 Change Charge** | $      50.00 | |
| | | |
| **Monthly Toll Free Number Charges** | | |
| Monthly Service Group Charge /Toll Free | N/A | $      50.00 |
| Monthly Toll Free Number Charge | N/A | Waived |
| | | |
| **International Toll Free Number Charges** | Waived | $      10.00 |
| | | |
| **Directory Listing / Per Number** | N/C | $      15.00 |
| | | |
| **CDR Tape Charge** | | $ 50 per Tape, plus $0.003 per CDR |

Usdigded.xls

*Atlas Communications, Ltd.*
*Confidential*

Initials _____  Intitials _____

# Schedule 5
## Non-Usage Charges
### (Underlying Carrier Network - Sprint)

| LEC Cap Charges | Maximum Originating Non-Bell Traffic % | Maximum Terminating Non-Bell Traffic % | Non-Bell Surcharge | |
|---|---|---|---|---|
| Dedicated Outbound | N/A | N/A | | N/A |
| Dedicated Toll Free Service | N/A | N/A | | N/A |
| Switched One Plus | 30% | 30% | $ | 0.06 |
| Switched Toll Free Service | 30% | 30% | $ | 0.06 |
| Calling Card | 30% | 30% | $ | 0.06 |

| Noncomplete Call Charges Dedicated & Switched Traffic | Maximum Non-Complete Toll Free Call Percentage | Per Call Surcharge | |
|---|---|---|---|
| Intrastate / Interstate | 10% | $ | 0.05 |
| International / Canadian | 10% | $ | 0.25 |

Rates are subject to change. Charges not listed in Schedule ____ , will be charged according to Atlas' or its underlying Carrier's applicable tariffs or at Atlas' cost.

Additional Services or Special Customer Applications will be passed onto customer at Atlas's cost.

* Install Charges will be waived provided such T-1s remain in service for a period of 24 months. If a T-1 is taken out of service for any reason within 24 months of installation, Customer will be debited back a prorated portion of the amount that was originally credited.

Atlas requires a 30 day notification when canceling a dedicated facility. Upon cancellation of dedicated facilities, Atlas will continue to charge customer for 30 days following a formal cancellation request. If customer provided access, Atlas must receive a Firm Order Commitment from the alternative access provider in order to disconnect/cancel services.

** If customer requests for services to be expedited, expedite charges will apply. Expedited requests are not guaranteed by Atlas or Atlas' underlying carrier.

*Atlas Communications, Ltd.*
*Confidential*

Usdigded.xls

Initials _____ Initials _____

SCHEDULE F

**BLANKET LETTER OF AGENCY**

On _2-3-98_ , Customer entered into an agreement with Atlas Communications, Ltd. for the purpose of ordering telecommunications services.

Under the terms of this agreement and by this letter, Customer authorizes Atlas Communications, Ltd. to issue orders for services, which are in the name of Customer.

The parties each acknowledge that the LOAs and/or VLOAs with such orders are the property of Customer.

This Letter of Agency will remain in effect until rescinded in writing by Customer and delivered to Atlas Communications, Ltd. upon sixty (60) days written notice.

US DIGITEL, INC.:                    ATLAS COMMUNICATIONS, LTD.:

DAVID R. GRIFFEE                     3 Grayson
Name                                 Name

_(signature)_                        _(signature)_
Signature                            Signature

PRESIDENT                            General Counsel
Title                                Title

2-3-98                               2-9-98
Date                                 Date

\\ATLAS-1\SYS\WORD\LEGAL\WORD\USDIGIT\USDGCON6.DOC- 18 -       Initialed _____ Initialed 3fl

# *Jerrell A. Breslin, P.A.*
## *Attorney at Law*

8200 SOUTHWEST 104ᵗʰ STREET
MIAMI, FLORIDA 33156

TELEPHONE (305) 279-7047
TELECOPIER (305) 273-0245

Thursday, January 29, 1998

Atlas Communications Ltd.
482 Norristown Road
Blue Bell, PA 19422

**Via Certified Mail**

**Re: Carrier Dedicated Services Agreement**

Gentlemen:

The undersigned is an attorney in good standing with the Florida Bar bearing Florida Bar # 269573 and a member of the Federal Trial Bar. The undersigned was requested to verify certain facts as they relate to the pending contract that U.S. Digitel Inc. anticipates will be entered into by and between Atlas Communications Ltd. And U.S. Digitel Inc.

Therefore please be advised that the undersigned is actively in the process of certifying and registering U.S. Digitel Inc., with the various Public Utilities Commissions (or their equivalents by different names in different states). As of the date of this letter U.S. Digitel Inc. has been authorized to conduct its business by the PUC's of approximately 18 states and the applications for the remaining states are either pending or in the process of being filed. No applications have been rejected.

This letter confirms that U.S. Digitel Inc. has retained the services of Jere J. Lane CPA and the undersigned to register and certify U.S. Digitel Inc. in all 50 states and that process has been vigorously pursued for the past month. It is anticipated that the process of approval in all 50 states will be completed in late February.

Please be further advised that the undersigned has reviewed the following requirements of the proposed agreement between U.S. Digitel Inc. and Atlas Communications Ltd., and that U.S. Digitel Inc. is in strict compliance with the following:

5.1. Customer Represents And Warrants As Follows:

(a) Good Standing:
Customer is an entity as described on the face sheet hereof, duly formed, validly existing and in good standing under the laws of the jurisdiction of its organization, and in those jurisdictions in which it conducts business.

*ATTACHMENT #1*

(b) Corporate Authority:

The execution, delivery and performance by customer of this agreement and the related documents are within customers corporate powers, have been duly authorized by all necessary corporate action, do not require the consent of any person, and as contemplated by this agreement, do not contravene (i) customer's charter or, by-laws or (ii) any law, regulation or contractual or other restriction binding on or affecting customer, and do not, or will not, result in, require the creation of, or conflict with, any lien, security interest or other charge or encumbrance (other than pursuant hereto) upon or with respect to any of its properties.

(c) Governmental Authority:

No authorization or approval or other action by, and no notice to or filing with, any governmental authority or regulatory body is required for the due execution, delivery and performance by customer of this agreement or any related document to which it is or will be a party except as contemplated by this agreement which will, or have been, duly secured.

(d) Legality:

This agreement is, and each other related document to which customer will be a party when delivered hereunder will be, legal, valid and binding obligations of customer enforceable against customer in accordance with their respective terms.

(e) Pending Or Threatened Actions:

There is no pending or threatened action or proceeding affecting customer or any of its parent companies, subsidiaries or affiliates before any court, governmental agency or arbitrator, which may adversely affect (i) the financial condition or operations of customer or any such parent company, subsidiary or affiliate or (ii) customer's ability to perform under this agreement.

(f) Misrepresentations:

No representation, warranty or statement by customer in this agreement, the related documents, or any other documents, instruments or communication delivered by customer to Atlas or its representatives in connection with the transactions contemplated hereunder contains or will contain any untrue statement of a material fact or omits or will omit to state any material fact necessary to make the statements contained herein or therein not misleading.

5.2  Customer Makes The Following Covenants For The Services Term:

(a)  Regulatory compliance:

Customer is an Interexchange carrier of interstate and international services, as duly tariffed before the FCC. and certified for intrastate services by various state PUC's. Customer shall comply, and cause each of its subsidiaries and affiliates to comply, in all material respects with all applicable laws, rules, statutes and regulations of the FCC, the PUC and the rules, regulations and orders of courts and any other applicable regulatory bodies and agencies.

(b)  Material Transactions.

Customer shall not, without advanced written consent from atlas, reorganize, engage in any transaction that could result in a change of control of its ownership, consolidate with or merge into any other person or convey, transfer or lease all, or substantially all of its assets to any person unless the person formed by such consolidation or into which it is merged or the person which acquires by conveyance, transfer or lease all or substantially all of its assets or control, shall: (i) assume in writing all of the obligations of customer hereunder and under the other related documents and such person, in the sole judgment of Atlas, is capable of performing and financially able to perform, without increased risk to Atlas, such obligations and (ii) provide such other written representations and other

security as are acceptable to atlas. However, Atlas shall not unreasonably withhold its approval to a proposed change in control of ownership, change in corporate structure, or intended transfer of assets. If this agreement is expressly assumed and customer supplies such financial data and other information reasonably requested by Atlas for Atlas' determination of risk, and thereafter, upon Atlas' request and customer's compliance with additional security demands made by Atlas in its sole discretion.

Therefore, you may rest assured that U.S. Digitel Inc. is a Florida corporation in good standing and that the agreements that are contemplated by and between U.S. Digitel Inc. and Atlas Communications Ltd., are authorized by both the corporate charter of U.S. Digitel Inc. and Florida Statutes.

Please feel free to contact the undersigned to further confirm or discuss the representations made herein or other matters relevant to your concerns.

Sincerely,

Jerrell A. Breslin, P.A.
Attorney at Law

State of Florida
County of Broward
    Appeared before me, Jerrell A. Breslin, on Thursday, January 29, 1998, and after being duly sworn affixed his signature hereto.

Notary Public

Jere J Lane
My Commission CC513172
Expires November 21, 2001

cc:
David Griffee, President U.S. Digitel Inc.
Craig Waltzer, CFO, U.S. Digitel Inc.
Jere J. Lane, CPA, U.S. Digitel Inc.

STATE OF FLORIDA

Commissioners:
JULIA L. JOHNSON, CHAIRMAN
J. TERRY DEASON
SUSAN F. CLARK
JOE GARCIA
E. LEON JACOBS, JR.



DIVISION OF RECORDS & REPORTING
BLANCA S. BAYÓ
DIRECTOR
(850) 413-6770

# Public Service Commission

January 28, 1998

Jere J. Lane, CPA
2901 NW 112 Avenue
Coral Springs, Florida   33065

Re: Docket No. 980123-TI

Dear Jere Lane:

This will acknowledge receipt of an application for certificate to provide interexchange telecommunications service by U.S. Digital, Inc., which was filed in this office on January 26, 1998 and assigned the above-referenced docket number. Appropriate staff members will be advised.

Mediation may be available to resolve any dispute in this docket. If mediation is conducted, it does not affect a substantially interested person's right to an administrative hearing. For more information, contact the Office of General Counsel at (850) 413-6078 or FAX (850) 413-6079.

Please make notes as well that Commission Rule 25-22.005(7), F.A.C., requires certificated companies to notify the Commission of any changes in name, telephone, address, or contact person. Should your application be granted by the Commission, you will be expected to comply with this rule by advising us of any changes as they occur.

Division of Records and Reporting
Florida Public Service Commission

*ATTACHMENT 2*



## FLORIDA DEPARTMENT OF STATE
Sandra B. Mortham
Secretary of State

December 22, 1997

U.S. DIGITEL, INC.
ATTN: CRAIG WALTZER
1909 TYLER ST.
HOLLYWOOD, FL 33020

The Articles of Incorporation for U.S. DIGITEL, INC. were filed on December 19, 1997 and assigned document number P97000106975. Please refer to this number whenever corresponding with this office regarding the above corporation.

PLEASE NOTE: COMPLIANCE WITH THE FOLLOWING PROCEDURES IS ESSENTIAL TO MAINTAINING YOUR CORPORATE STATUS. FAILURE TO DO SO MAY RESULT IN DISSOLUTION OF YOUR CORPORATION.

**A CORPORATION ANNUAL REPORT MUST BE FILED WITH THIS OFFICE BETWEEN JANUARY 1 AND MAY 1 OF EACH YEAR BEGINNING WITH THE CALENDAR YEAR FOLLOWING THE YEAR OF THE FILING DATE NOTED ABOVE AND EACH YEAR THEREAFTER. FAILURE TO FILE THE ANNUAL REPORT ON TIME MAY RESULT IN ADMINISTRATIVE DISSOLUTION OF YOUR CORPORATION.**

**A FEDERAL EMPLOYER IDENTIFICATION (FEI) NUMBER MUST BE SHOWN ON THE ANNUAL REPORT FORM PRIOR TO ITS FILING WITH THIS OFFICE. CONTACT THE INTERNAL REVENUE SERVICE TO INSURE THAT YOU RECEIVE THE FEI NUMBER IN TIME TO FILE THE ANNUAL REPORT. TO OBTAIN A FEI NUMBER, CONTACT THE IRS AT 1-800-829-3676 AND REQUEST FORM SS-4.**

**SHOULD YOUR CORPORATE MAILING ADDRESS CHANGE, YOU MUST NOTIFY THIS OFFICE IN WRITING, TO INSURE IMPORTANT MAILINGS SUCH AS THE ANNUAL REPORT NOTICES REACH YOU.**

Should you have any questions regarding corporations, please contact this office at the address given below.

John Nedeau, Document Specialist
New Filing Section

Letter Number: 597A00059900

Division of Corporations - P.O. BOX 6327 - Tallahassee, Florida 32314

ATTACHMENT 3

·US DIGITEL INC                                QUART LY

        NAME OF BUSINESS                      FILING FREQUENCY

THE FOLLOWING SALES TAX NUMBER HAS BEEN ASSIGNED TO YOUR ACCOUNT:

      FEBRUARY 28, 1998                    16-00-310289-66/0

        OPENING DATE                        ACCOUNT NUMBER

PLEASE REFER TO THIS NUMBER WHEN CORRESPONDING WITH THE DEPARTMENT
CONCERNING YOUR ACCOUNT.

YOU SHOULD RECEIVE A CERTIFICATE OF REGISTRATION ALONG WITH A BOOKLET OF
SALES TAX RETURNS AND SUPPLY OF ENVELOPES FROM TALLAHASSEE WITHIN THE
NEXT 30 DAYS.  IF THE CERTIFICATE OR RETURNS ARE NOT RECEIVED, PLEASE
CONTACT THE HOLLYWOOD TAXPAYER SERVICE CENTER TELEPHONE NO.(954)967-1000
OR TAXPAYERS ASSISTANCE SECTION 1-800-352-3671.
    <-- "X" TO CHANGE.  LAST CHANGED/SENT BY PID 721 ON  2/ 2/98 AT 12:31:51


FUNCTION KEY F1 TO CLEAR.

ATTACHMENT 4

Case 0:00-cv-06096-ASG      Document 10      Entered on FLSD Docket 01/25/2000      Page 86 of 90

# American Bank

POST OFFICE BOX 6879
HOLLYWOOD, FLORIDA 33081-0879

IRREVOCABLE LETTER OF CREDIT 77-102

February 9, 1998

To: BENEFICIARY:                    ****** *****75,000 **'s00cts
    Atlas Communications, Ltd.
    482 Norristown Road, Ste. 200
    Blue Bell, PA  19422

Gentlemen:

We hereby issue our Irrevocable Letter of Credit No. 77-102 in your, the beneficiary's, favor for the account of U.S. Digital, Inc., 1909 Tyler St., 3rd Fl., Hollywood, FL 33020, in the aggregate amount of Seventy-five Thousand and 00/100 US DOLLARS ($75,000.00 USD) available by your draft at sight drawn on us, bearing the number and the date of this credit and the name of our bank.

Your draft must be accompanied by the following documents:

1.    The original of this Letter of Credit, and all amendments, if any, for proper endorsement.

2.    Beneficiary's statement signed by an authorized signer of Atlas Communications, Ltd. certifying:

      "The amount of our draft represents funds due us under 'Carrier Dedicated Services Agreement' dated February 9, 1998 executed between Atlas Communications, Ltd. and U.S. Digitel, Inc. and that demand for payment has been made and that payment has not been received by Atlas Communications, Ltd., from U.S. Digitel, Inc. or any other source."

3.    Copy of invoice that conforms to the "Carrier Dedicated Service Agreement" dated February 9, 1998.

Partial drawings are permitted.

We hereby agree with you that drafts drawn under and in compliance with the terms of this Letter of Credit will be duly honored if presented at this office on or before February 9, 2000, the expiration date.

Except as otherwise expressly stated herein, this Letter of Credit is subject to the "Uniform Customs and Practice for Documentary Credit (1993 Revision), International Chamber of Commerce Brochure No. 500". This credit is subject to the provisions of Florida Law. If a conflict between the law of another state or country and Florida Law should arise, Florida Law shall prevail.

AMERICAN BANK OF HOLLYWOOD

BY: _Thomas L. Baert_____
    Thomas L. Baert, Vice President
      Hollywood Office • 6600 Taft Street • Hollywood, Florida 33024 • Broward (954) 966-9810 • Dade (305) 625-9578 • Fax (954) 966-4329
    Pembroke Park Office • 3131 West Hallandale Beach Blvd. • Pembroke Park, Florida 33009 • Broward (954) 962-1620 • Dade (305) 625-6454
                Lauderhill Office • 4499 North University Drive • Lauderhill, Florida 33351 • Broward (954) 741-3788
          Young Circle Office • 1811 North Young Circle • Hollywood, Florida 33020 • Broward (954) 921-1611
          Flamingo Road Office • 12399 Sheridan Street • Cooper City, Florida 33026 • Broward (954) 435-1771
    University & Sheridan Office • 2486 North University Drive • Pembroke Pines, Florida 33024 • Broward (954) 437-2488
          Hollywood Hills Office • 4100 Hollywood Boulevard • Hollywood, Florida 33021 • Broward (954) 987-1300

ID:0402

COMMUNICATION RESULT REPORT ( JAN.21.2000  4:20PM )

TTI

| FILE MODE | OPTION | ADDRESS (GROUP) | RESULT | PAGE |
|-----------|--------|-----------------|--------|------|
| 747 MEMORY TX | | 15614178101 | OK | P. 33/33 |

REASON FOR ERROR
E-1) HANG UP OR LINE FAIL          E-2) BUSY
E-3) NO ANSWER                     E-4) NO FACSIMILE CONNECTION

454 Norristown Road, Suite 125
Blue Bell, PA 19422
Fax: (610) 260-0685
Phone: (610) 940-8040 x2800

**LAW DEPARTMENT**

# Fax

| | | | |
|---|---|---|---|
| To: | Howard Camrik, Esquire | From: | Brendan J. Sherman, Esquire |
| | Blank, Rome, Comisky & McCauley | | Atlas Communications, Ltd. |
| Fax: | (561) 417-8101 | Pages: | (including cover sheet) : 34 |
| Phone: | (561) 417-8100 | Date: | January 21, 2000 |
| Re: | | CC: | |

☐ Urgent   ☐ For Review   ☐ Please Comment   ☐ Please Reply   ☐ Please Recycle

484 Norristown Road, Suite 123
Blue Bell, PA 19422
Fax (610) 260-0886
Phone: (610) 940-9040 x2300

**LAW DEPARTMENT**

# Fax

| To: | Howard Camrik, Esquire | From: | Brendan J. Sherman, Esquire |
|-----|------------------------|-------|------------------------------|
|     | Blank, Rome, Comisky & McCauley | | Atlas Communications, Ltd. |

| Fax: | (561) 417-8101 | Pages | (Including cover sheet) : 34 |
|------|----------------|-------|-------------------------------|

| Phone: | (561) 417-8100 | Date: | January 21, 2000 |
|--------|----------------|-------|-------------------|
| Re: | | CC: | |

☐ **Urgent**     ☐ **For Review**     ☐ **Please Comment**     ☐ **Please Reply**     ☐ **Please Recycle**

● **Comments:**

**BLANK ROME COMISKY & MCCAULEY LLP**

*Counselors at Law*

*Direct Dial Phone:*

*Pennsylvania*
*New Jersey*
*Delaware*
*Maryland*
*Washington, DC*
*Florida*

January 21, 2000

<u>Via Facsimile</u>

Ronald B. Ravikoff, Esq.
Zuckerman, Spaeder, Taylor & Evans LLP
201 South Biscayne Blvd., Suite 900
Miami, Florida 33131.

   Re: <u>Rock Sound Communications Corp. v. Atlas Communications, Ltd.</u>

Dear Mr. Ravikoff:

   Several hours ago I requested suitable confirmation that the bond required by the TRO had been posted. I have received no such confirmation as of this time, the end of the day on Friday. Thus, my client does not know whether the TRO is in effect, and in fact now has reason to believe that it is not. To protect itself from substantial losses, my client cannot in good conscience voluntarily keep your client's service on until such notification has been received.

   Furthermore, your failure to forward any supporting papers to either me or my client (accompanying the Order), a highly irregular action, has not only denied my client due process but thoroughly impairs our ability to prepare and file the papers the Order requires on such short notice. I demand that you immediately forward all papers filed, by fax, to both me and Anthony Vidovich at (215) 569-5555.

       Very truly yours,

       HOWARD M. CAMERIK

HMC:mk
cc: Brandon Sherman (Via Telefax)
  Anthony Vidovich, Esq. (Via Telefax)

**ATTACHMENT / EXHIBIT D**

1200 North Federal Highway, Suite 417, Boca Raton, Florida 33432 **Phone:** 561.417.8100 **Fax:** 561.417.8101

BLANK ROME COMISKY & McCAULEY LLP _____

*Counselors at Law*

*Pennsylvania*
*New Jersey*
*Delaware*
*Maryland*
*Washington, DC*
*Florida*

*Direct Dial Phone:*

January 21, 2000

<u>Via Facsimile</u>

Ronald B. Ravikoff, Esq.
Zuckerman, Spaeder, Taylor & Evans LLP
201 South Biscayne Blvd., Suite 900
Miami, Florida 33131.

      Re:   <u>Rock Sound Communications Corp. v. Atlas Communications, Ltd.</u>

Dear Mr. Ravikoff:

     This firm represents Atlas Communications, Ltd. with regard to the above-referenced matter.

     Please immediately telefax to me all papers that you filed in court today, including those filed in support of the TRO you obtained.

     This shall formally advised you that Atlas is not been furnished any, much less adequate, proof that the bond set forth in the TRO has been posted.

                  Very truly yours,

                  HOWARD M. CAMERIK

HMC:mk
cc:  Michael Spurlin (Via Telefax w/Enc)