## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 00-6096-CIV-GOLD/SIMONTON

ROCK SOUND COMMUNICATIONS      :
CORPORATION,
                               :

      Plaintiff,             :

                               :

v.                             :

                               :

ATLAS COMMUNICATIONS, LTD.,    :

                               :

      Defendant.            :

_____:

FILED by ___ D.C.
INTAKE

JAN 25 2000

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

### DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Defendant, Atlas Communications, Ltd. ("Atlas"), by and through its undersigned attorneys, hereby submits this Memorandum of Law in Opposition to the Motion of Plaintiff Rock Sound Communications Corporation ("Rock Sound") for Preliminary Injunction further enjoining Atlas from discontinuing telecommunications services to Rock Sound for non-payment of fees incurred in supplying these services.

## I.   STATEMENT OF FACTS

Atlas shall rely upon the facts set forth in the affidavits and exhibits submitted in support of this Memorandum of Law, and in support of Defendant's Motion to Vacate the Temporary Restraining Order Based on Plaintiff's Fraud on the Court, for Lack of

1

Jurisdiction, and in the Alternative to Increase the Bond ("Motion to Vacate TRO").

Specifically, Atlas shall rely upon the Affidavit of Michael W. Spurlin dated January 25,

2000 (Exhibit "A"), the Carrier Dedicated Services Agreement dated February 3, 1998

(Exhibit "B"), the Wholesale Services Agreement dated July 14, 1999 (Exhibit "C"), the

Forbearance Agreement dated September 24, 1999, as amended December 3, 1999 (Exhibit

"D") and the UCC-1 filed February 18, 1998 (Exhibit "E").

## II.    ARGUMENT

### A.    Legal Standard Governing Motions for Preliminary Injunction

Rule 65 of the Federal Rules of Civil Procedure governs the entry of temporary

restraining orders as well as preliminary injunctions.  See Fed. R. Civ. P. 65.  Rule 65(b)

of the Federal Rules of Civil Procedure provides, in relevant part:

> A temporary restraining order may be granted without written or oral notice to
> the adverse party or that party's attorney only if (1) it clearly appears from specific
> facts shown by affidavit or by the verified complaint that immediate and
> irreparable injury, loss, or damage will result to the applicant before the adverse
> party or that party's attorney can be heard in opposition, and (2) the applicant's
> attorney certifies to the court in writing the efforts, if any, which have been made
> to give the notice and the reasons supporting the claim that notice should not be
> required.

See Fed. R. Civ. P. 65(b).  Rule 65 further provides, in relevant part:

> No restraining order or preliminary injunction shall issue except upon the giving
> of security by the applicant, in such sum as the court deems proper, for the
> payment of such costs and damages as may be incurred or suffered by any party
> who is found to have been wrongfully enjoined or restrained.

See Fed. R. Civ. P. 65(c).

2

A District Court may only grant preliminary injunctive relief after considering four factors. Tefel v. Reno, 180 F.3d 1286, 1295 (11th Cir. 1999). The Court is required to find that the moving party has "establish[ed] the following four factors: (1) a substantial likelihood of success on the merits; (2) a threat of irreparable injury, (3) that its own injury would outweigh the injury to the nonmovant, and (4) that the injunction would not disserve the public interest." Tefel, 180 F.3d at 1295 (citing Haitian Refugee Ctr., Inc. v. Baker, 949 F.2d 1109, 1110 (11th Cir.1991) (per curium)); see also Laboratories Roldan, C. Por A. v. Tex Int'l, Inc., 902 F. Supp. 1555, 1565 (S.D. Fla. 1995). "The preliminary injunction is an extraordinary and drastic remedy not to be granted until the movant 'clearly carries the burden of persuasion' as to the four prerequisites. 'The burden of persuasion in all of the four requirements is at all times upon the plaintiff.'" United States v. Jefferson County, 720 F.2d 1511, 1519 (11th Cir.1983) (quoting Canal Authority of State of Florida v. Callaway, 489 F.2d 567, 573 (5th Cir.1974) and citing Cunningham, 808 F.2d at 819; Zardui- Quintana v. Richard, 768 F.2d 1213, 1216 (11th Cir.1985)).

## B.    Likelihood of Success on the Merits

Plaintiff's Complaint sets forth three causes of action, namely, claims for: (1) fraudulent inducement, Count I; (2) breach of oral contract, Count II; and (3) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 et seq., Count III. See Compl., Count I-III. Plaintiff has clearly failed to

3

demonstrate any likelihood of success on any of these claims because: (1) venue is improper in the Southern District of Florida; (2) Plaintiff assumed the liabilities of U.S. Digitel, Inc.; or alternatively, (3) Atlas has no contractual relationship with or obligation to Rock Sound such that Atlas can be required to supply telecommunications services; and (4) Plaintiff has failed to establish the required elements of each claim. Accordingly, Plaintiff's TRO must be vacated and its motion for a preliminary injunction denied.

### 1.    By Agreement of the Parties, Venue is Improper in the Southern District of Florida[1] and Dismissal is Warranted

Rock Sound admits that its purchase of U.S. Digitel, Inc. ("Digitel") "was solely dependent upon the existing relationship [between Digitel and] Atlas," see Compl., ¶ 17, and that "[Digitel's] relationship with Atlas was one of the principals assets, if not the definitive asset, acquired by Rock Sound." See Emergency Motion for Temporary Restraining Order, ¶6. Because Digitel's only relationship with Atlas was a contractual relationship, then by Plaintiff's own admission, in purchasing the assets of Digitel, Rock Sound intended to purchase Digitel's contractual relationship with Atlas, and further fully intended to conduct its business pursuant to the terms of the Digitel/Atlas contractual

---

[1] Because dismissals based on a contractual forum selection clause may be styled as motions to dismiss pursuant to Rule 12(b)(1) or (3) or (6), Defendant's counsel previously stated that the Court lacked jurisdiction to entertain this action pursuant to Rule 12(b)(1), based on Carnival Cruise Line, Inc. v. Shutes, 499 U.S. 585 (1991). In Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285 (11th Cir. 1998), the Eleventh Circuit held that dismissals based on forum-selection clauses are properly brought under Rule 12(b)(3), dismissal for improper venue. Id. at 1290.

4

provisions.[2] Accordingly, any entitlement that Rock Sound may claim to the provision of telecommunications services by Atlas must arise out of the Digitel/Atlas agreement. Conversely, based on plaintiff's admission, in addition to receiving the benefits of telecommunications services of the Digitel/Atlas agreement, formally referred to as the Carrier Dedicated Services Agreement, dated February 3, 1998 (Exhibit "B"), the Wholesale Services Agreement, dated July 14, 1999 (Exhibit "C"), the Forbearance Agreement between Atlas and Digitel, dated September 24, 1999, as amended December 3, 1999 (Exhibit "C") (collectively, the "Digitel Agreement"), Rock Sound would also be bound by the reciprocal obligations set forth in the Digitel Agreement.

Section 9.2 of the Carrier Dedicated Service Agreement provides, in relevant part:

> Any legal action or proceeding with respect to this Agreement or any Related Document and any action for enforcement of any judgment or award in respect thereof shall be brought in the Court of Common Pleas of Montgomery County, Commonwealth of Pennsylvania or of the U.S. District Court for the Eastern District of Pennsylvania located in Philadelphia, Pennsylvania. . . . Both Atlas and Customer [here Digitel and Rock Sound] hereby irrevocably waive any objection that they may now or hereafter have to the laying of venue [in] any actions or proceedings arising out of or in connection with this Agreement or any other Related Documents brought in the courts referred to above and hereby further irrevocably waive and agree not to plead or claim in any such court that any such action or proceeding brought in any such court has been brought in an

---

[2] For the reasons set forth in Section B(2) infra, Defendant disputes that Rock Sound was entitled to purchase Digitel's interest in the Digitel/Atlas business relationship without Atlas' prior written consent. More importantly, Plaintiff has pled claims based on a contractual relationship with Atlas, governed by the certain contractual documents. Yet Plaintiff failed, deliberately or otherwise, to attach these documents to its pleadings, thus preventing the Court from determining, upon a cursory review of such documents, that venue is improper in this district.

inconvenient forum.

See Exhibit "B" (emphasis supplied). Because forum selection clauses are generally enforceable as a matter of federal law, and because by Plaintiff's own admission, Plaintiff is bound by the terms of the Digitel Agreement, Plaintiff has waived its right to proceed in court against Atlas in a manner inconsistent with this unambiguous forum selection clause. Accordingly, pursuant to 28 U.S.C. § 1406[3] and Rule 12(b)(3) of the Federal Rules of Civil Procedure, Atlas is entitled to a dismissal of the present action for improper venue. See 28 U.S.C. § 1406(a); Fed. R. Civ. P. 12(b)(3); see also Carnival Cruise Line, Inc. v. Shutes, 499 U.S. 595 (1991); Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285,1290 (11th Cir. 1998). As the action must be dismissed for improper venue, Plaintiff's motion for preliminary injunction must likewise be denied, the TRO vacated as improvidently granted, and Plaintiff's bond forfeited.

### 2.    No Entitlement to Telecommunications Services

Should Rock Sound contend that the terms of the Digitel Agreement do not govern its relationship with Atlas, (1) any such argument would be in direct contradiction with the very allegations of Plaintiff's Complaint, see Compl., ¶ 17; and (2) any such

---

[3] Section 1406 provides, in relevant part:

The district court of a district in which is filed a case lying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

See 28 U.S.C. § 1406(a). (emphasis supplied)

6

argument would effectively establish that Rock Sound has no contractual entitlement to telecommunications services from Atlas. This latter point deserves further attention.

A close review of Plaintiff's Complaint reveals that the only contract for the provision of telecommunications services was between Digitel and Atlas. Plaintiff admits as much in ¶ 11 of the Complaint. See Compl., ¶ 11. Plaintiff's discussion of the price per minute merely refers to the separate pricing schedules under the Carrier Dedicated Services Agreement and the Wholesale Services Agreement both of which are part of the agreement which Atlas had with Digitel. As evidenced by the rates themselves, the substantial indebtedness of Digitel to Atlas was incurred under the terms of the Carrier Dedicated Services Agreement, not the Wholesale Services Agreement which provides for a lower price per minute of long distance service. Compare Carrier Dedicated Services Agreement (Exhibit "B") with Wholesale Services Agreement (Exhibit "C").

As discussed above, Rock Sound admits that its intention in purchasing the assets of Digitel was to obtain the right to conduct business with Atlas. See Compl., ¶ 17. The only thing that could give them that right was a written consent by Atlas to an assignment by Digitel of the Digitel Agreement. At the time of the purported purchase, January 6, 2000, Digitel owed Atlas in excess of $4.7 million. See Exhibit "A" (Affidavit of M. Spurlin, dated Jan. 25, 2000, ¶22). Despite Plaintiff's repeated contention that it purchased only Digitel's assets and not its liabilities, the principal asset, by Plaintiff's admission, the Digitel/Atlas relationship, was governed by the Digitel Agreement, or

7

more specifically for the purposes of the outstanding debt owed to Atlas, the Carrier

Dedicated Services Agreement. Section 5.2(b) of that agreement provides, in relevant part:

> [Digitel] shall not, <u>without advanced written consent from Atlas</u>, reorganize, <u>engage in any transaction that could result in a change of control or</u> its <u>ownership</u>, consolidate with <u>or</u> merge into any other Person or convey, <u>transfer</u> or lease <u>all or substantially all of its assets</u> to any Person <u>unless</u> the Person form by such consolidation or into which it is merger or <u>the Person which acquires by conveyance, transfer or lease</u> all or substantially all of its assets or control, <u>shall: (i) assume in writing all of the obligations of [Digitel] hereunder</u> and under the other Related Documents and such Person, in the sole judgment of Atlas, is capable of performing and financially able to perform, without increased risk to Atlas, such obligations and (ii) provide such other written representations and other security as are acceptable to Atlas.

<u>See</u> Exhibit "B" (emphasis added). Thus, Rock Sound, by the terms of the very agreement

it sought to acquire, was precluded from buying the assets of Digitel without first

obtaining the written consent of Atlas, which it did not, and without first agreeing in

writing to assume the obligations of Digitel, which Rock Sound itself repeatedly asserts

that it did not.

Consequently, based on Plaintiff's admissions and the terms of the Digitel

Agreement, to which Plaintiff maintains it purchased the rights, Plaintiff is either (1)

contractually obligated to Atlas for the debts of Digitel, or (2) by operation of Section

5.2(b) of the Carrier Dedicated Services Agreement, Rock Sound has no entitlement to

telecommunications services provided by Atlas, for any price, let alone the prices alleged

in the Complaint. Regardless of which option the Court favors, Rock Sound is precluded

from showing a likelihood of success on the merits.

8

Under the first option, Rock Sound is obligated to repay the debts of Digitel. Its failure to do so constitutes a breach of the Digitel Agreement with Atlas. Such wrongful conduct would not only relieve Atlas from its duties under the agreement, but under well-settled principles of equity, would preclude Rock Sound from being entitled to equity as its own inequitable conduct is the source of its own alleged harm. See Villas of Lake Jackson, Ltd. v. Leon County, 884 F.Supp. 1544, *1569 (N.D.Fla 1995), citing Ocean View Towers, Inc. v. First Fidelity Sav. and Loan Ass'n, 521 So.2d 325, 326 (Fla. 4th DCA 1988). Plaintiff's admissions in its Complaint support the conclusion that Rock Sound purchased Digitel's liabilities as well as its assets, notwithstanding its allegations to the contrary. In ¶¶ 16 and 19 of the Complaint, Plaintiff admits that it paid $1.5 million dollars to Atlas in partial satisfaction of the outstanding debt of Digitel to Atlas. Plaintiff does not allege, nor has Plaintiff produced any documentation, that it made these payments on Digitel's account to Atlas under protest. Nowhere has Rock Sound alleged or documented that it disputed its liability for the debts of Digitel. Clearly, if Rock Sound was making $1.5 million in payments on a debt it did not owe, a letter or notation of its displeasure would have been generated, but the record contains no such document.

Under the second option set forth above, Atlas has no contractual obligation to provide telecommunications services to Rock Sound. Any agreement between Atlas and Rock Sound, should one exist, would be terminable at will. Accordingly, because Rock Sound has no contractual entitlement to services, Atlas cannot be ordered to maintain

9

such services to Rock Sound, particularly where Rock Sound is receiving those services free of charge to the irreparable harm of Atlas.

### 3.   Atlas' Security Interest in the Assets of Digitel

Rock Sound contends that it purchased the assets of Digitel without purchasing any liabilities. See Compl., ¶ 15. However, Atlas had a previously perfected security interest covering all of Digitel's assets. See Exhibit "E" (UCC-1 filed February 18, 1998). In the transaction through which Rock Sound purchased Digitel, in return for its assets, Rock Sound issued notes to Digitel or its principals. Because Atlas had a perfected security interest in all of Digitel's assets, Rock Sound, as a debtor to Digitel, is the account debtor of Atlas. See Fl Stat. Ann. § 679.502 (Collection Rights of Secured Party); see also James J. White and Robert S. Summers, Uniform Commercial Code § 25-5 (4th ed. 1995). As Digitel's perfected creditor, Atlas was within its rights to look to Rock Sound for satisfaction of Digitel's debt, up to the extent of Rock Sound's indebtedness to Digitel, here $10 million dollars. See Compl., ¶17. Rock Sound admits that this common security interest arrangement existed in ¶ 16 of the Complaint. Specifically, in ¶ 16, Rock Sound states that after paying Atlas $800,000 in partial satisfaction of the debt of Digitel, Rock Sound "took a deduction of the purchase price of the assets of [Digitel]." See Compl., ¶ 16.

In addition, the nature of the "pre-paid" long distance services industry makes the fact that Atlas looked to Rock Sound for payment of the Digitel's indebtedness all the

more reasonable. First, with regard to the long distance time sold to Digitel, Atlas had already paid its carriers for these long distances services, hence, the services were "pre-paid." Second, Digitel obtained payment from its distributors for the long distance time resold. Thus, the cash assets and account receivables purchased by Rock Sound from Digitel were the rightful property of Atlas, due and owing for services previously provided to Digitel. Rock Sound's transfer of those assets from accounts bearing the "Digitel" name to those bearing the "Rock Sound" name, not only impairs Atlas's security interest, but effectively prevents Atlas from collecting under security interest, and gives Rock Sound the free use of cash assets and account receivables rightfully belonging to Atlas.

Therefore, under the well established principles of the law of security interests, Atlas was justified in looking to Rock Sound for payment on the debt of Digitel. Accordingly, any claims by Rock Sound based on Atlas' efforts to obtain such payment are baseless; thereby precluding the entry of a preliminary injunction.

### 4.    Fraudulent Inducement

Plaintiff has failed to demonstrate a likelihood of success on the merits of it claim for fraudulent inducement, set forth in Count I of the Complaint. See Compl., Count I. The elements of a cause of action for fraudulent inducement under Florida law include: (1) a false representation of material fact made with knowledge of its falsity or made without knowledge as to its truth or falsity or made under circumstances in which the

11

defendant ought to have known of its falsity; (2) intention to induce another to act upon the representation; and (3) resulting injury to the party acting in justifiable reliance on the representation. See Johnson v. Davis, 480 So. 2d 625, 627 (Fla. 1985).

A prerequisite to any fraud is a demonstration that a false statement of fact was made, or a material omission of fact was made. Id. Atlas made no false representations to Rock Sound. Even assuming that Atlas was required to provide Rock Sound with long distance services under the terms of the Digitel Agreement, the terms of that composite agreement provide that Rock Sound may obtain different long distance rates from Atlas for services provided by different long distance providers. See Exhibits "B", "C" and "D" (Digitel Agreement). Thus, contrary to Plaintiff's allegation that Atlas had to obtain "a lower rate from Quest [sic]," assuming Rock Sound had contractual rights under the Digitel Agreement, Rock Sound was free to route its traffic through the Qwest service or the Sprint service as provided by the terms of the Digitel Agreement. In doing so, Rock Sound would obtain the rates governing each of those major long distance carrier services.

Because Rock Sound has failed to demonstrate that Atlas made any false representations of fact, Plaintiff cannot demonstrate a likelihood of success on the merits of Count I. Accordingly, its motion for preliminary injunction must be denied.

### 5.    Breach of Oral Contract

"To state a cause of action for breach of an oral contract, a plaintiff is required to allege facts that . . . demonstrate that the parties mutually assented to a certain and definite

proposition and left no essential terms open." W.R. Townsend Contracting, Inc. v. Jensen Civil Construction, Inc., 728 So. 2d 297, 300 (Fla. Ct. Ap. 1999) (internal quotations and citation omitted). Because Atlas has not and does not require that Rock Sound use Atlas as its "exclusive inbound service carrier[,]" [4] as alleged in the Complaint at ¶ 28, no "oral contract" existed between Atlas and Rock Sound. Any such agreement, if any existed (which it did not), failed for lack of mutuality and lack of consideration. Moreover, it is simply not credible that sophisticated parties would enter into a multi-million dollar agreement on a handshake, and even less likely that such an oral agreement could cover all of the essential terms of this highly complex relationship. Accordingly, plaintiff cannot demonstrate a likelihood of success on the merits of Count II. Therefore, plaintiffs' motion for preliminary injunction based on this Count must be denied.

### 6.   Violation of the FDUTPA

Section 501.204 of the FDUTPA provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." See Fl Stat. Ann. § 501.204(1). Rock Sound's only allegation of "unfair or deceptive acts" is that Atlas informed Rock Sound that service would be discontinued if Plaintiff persisted in failing to pay its obligations to Atlas. Essentially, Atlas informed Plaintiff that it had to pay for services

---

[4] See, Exhibit "A" (Affidavit of Michael W. Spurlin, ¶9); see also Exhibit "C" (Wholesale Services Agreement, §10.3 - exclusivity language crossed out and initialed by the parties).

rendered. This is not a novel concept, nor is it a deceptive or unfair practice; rather it is the basis of any market transaction. Moreover, as set forth in Sections IIB(2),(3) supra, Atlas was fully justified in looking to Rock Sound to pay the obligations of Digitel, either as successor to those liabilities or as an account debtor.

### C.    Irreparable Harm

In its Motion for TRO, Plaintiff focuses its "irreparable harm" allegations on the irreparable harm which may result to Plaintiff's customers, distributors and employees, and not to Plaintiff itself. It is fundamental that the only relevant inquiry is whether the *movant* will suffer irreparable harm. See School Board of Pinellas County, Florida v. J.M., 957 F.Supp 1252, 1258 (M.D.Fla. 1997); see also West Point-Pepperell, Inc. v. Donovan, 689 F.2d 950, 956 (11th Cir. 1982); United States v. Jefferson County, 720 F.2d 1511 (11th Cir. 1983). Plaintiff's allegations as to the possible harm which others might suffer is therefore irrelevant.

Plaintiff has failed to demonstrate irreparable harm to itself. As the Eleventh Circuit has stated:

> The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

United States v. Jefferson County, 720 F.2d 1511, 1520 (11th Cir. 1983) (quoting Sampson v. Murray, 415 U.S. 61 (1974); see also Florida Panthers Hockey Club, Ltd. v. Miami

Sports and Exhibition Auth., 939 F. Supp. 855, 859 (S.D. Fla. 1996). In this case, Plaintiff has merely alleged that it will be harmed in its business should Atlas decide to discontinue telecommunications services to Rock Sound. Unlike in Florida Panthers, where the plaintiff would lose peculiar advantages to the contractual relationship and substantial good will, see id. at 859, in this case Rock Sound's alleged irreparable harm is merely economic in nature, and as a fledgling company, has yet to build any significant good will. Rock Sound is free to seek telecommunications services from any of a number of carriers and aggregators in the industry. There is nothing unique about the long distance service provided by Atlas. In cases such as these where mere money damages can adequately compensate a moving party, a Court must deny the request for preliminary injunction for failure to demonstrate irreparable harm. See Jefferson County, 720 F.2d at 1520.

### D.    Balance of the Equities and the Public Interest

Contrary to Plaintiff's allegations in the Complaint, Rock Sound has no exclusive relationship with Atlas. Rock Sound can easily obtain other long distance service for distribution to its retailers and consumers. Atlas, however, under the terms of the TRO and any contemplated preliminary injunction would be required to supply Rock Sound with telecommunications services with no assurance of being compensated for those services. Therefore, balancing the equities, it is clear that, in being forced to provide "free" service to Rock Sound, while Rock Sound continues to conduct business, generating income off of Atlas' service and using those proceeds to secure another long

15

distance carrier for service, Atlas will be the party which is irreparably harmed should Rock Sound's motion be successful. Equity surely cannot countenance such an unjust result.

Furthermore, Plaintiff's "public interest" analysis misses the point. The relevant inquiry is whether "the injunction would not disserve the public interest." Tefel, 180 F.3d at 1295, not whether the injunction would benefit the public. Moreover, even if the focus were on public good as opposed to public injury, the public interest will not be served by permitting Rock Sound to further disregard the sound public policies supporting the legal principles set forth in detail in Section II supra. On the contrary, Rock Sound's conduct will only drive service providers such as Atlas from the market, resulting in less competition and higher long distance charges to the residents of Florida.

## III.    CONCLUSION

For the reasons set forth above, Defendant Atlas Communications, Ltd. respectfully requests that Plaintiff's Motion for Preliminary Injunction be denied.

Respectfully submitted,

BLANK ROME COMISKY &McCAULEY, LLP

By: _____

     HOWARD M. CAMERIK
     Fl. Bar No. 703435
     STEVEN A. LESSNE
     Fl. Bar No. 0107514
     1200 North Federal Highway, Suite 417
     Boca Raton, FL 33432
     Telephone: (561) 417-8100
     Facsimile: (561) 417-8101
     Email:Camerik@Blankrome.com
            Lessne@Blankrome.com

Of Counsel:

Jerome R. Richter
Anthony Vidovich
Blank Rome Comisky & McCauley, LLP
One Logan Square
Philadelphia, PA 19103
Telephone: (215) 569-5500
Facsimile: (561) 569-5694

                Attorneys for Atlas Communications, Ltd.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction has been furnished by facsimile and U.S. Mail this 25th day of January, 2000 to: Ronald B. Ravikoff, Esq., Zuckerman, Spaeder, Taylor & Evans LLP, 201 South Biscayne Blvd., Suite 900, Miami, Florida 33131.

Ex- A

## AFFIDAVIT

I, Michael W. Spurlin, being duly sworn according to law, hereby depose, swear, and affirm as follows:

1.      I am an adult individual over the age of 21 and I reside at 2138 Jericho Drive, Jamison, PA 18929

2.      I am the President of Atlas Communications, Ltd. ("Atlas") and am responsible for the day-to-day operations of Atlas. I have personal knowledge of the facts set forth herein.

3.      Atlas has been providing long distance services to U.S. Digitel, Inc. ("USD") pursuant to a Carrier Dedicated Services Agreement ("Carrier Agreement") dated February 3, 1998 and a Wholesale Services Agreement ("Wholesale Agreement") dated July 14, 1999.

4.      During the course of December 1999 I learned from the principals of USD that they were in negotiations for the sale of their business to Rock Sound Communications Corporation ("RSC"). At no time was Atlas ever advised as to the nature of RSC's business, where it was incorporated, the identity of its shareholders, etc.

5.      At no time was Atlas ever advised that a closing allegedly occurred between RSC and USD on January 7, 2000 nor did Atlas provide its written consent for such a sale as required under paragraph 5.2(b) of the Carrier Agreement.

6.      To date, I have not seen any debit cards within the industry bearing the name of RSC. However, if in fact RSC did takeover USD's pre-paid calling card business, then by the very terms of the business, RSC has received payment for the services that USD purchased from Atlas. However, Neither USD nor RSC have agreed to pay Atlas for these services.

7.      Atlas is not an aggregator. Rather, Atlas is a full-fledged long distance carrier with a large portfolio of telecom related services. Accordingly, it is the customer and not Atlas who is responsible for obtaining the most favorable pricing based upon that customer's particular needs. Atlas as a wholesaler entered into two contracts with USD that included specific rates that are subject to change (increase or decrease) upon 5 days notice for international services and 20 days notice for domestic services. As a result, Atlas has no duty, express or implied to ensure that USD has the lowest pricing.

8.      During the month of December Atlas provided USD with an estimated rate of $0.0415 cents per minute that was based on USD's historical usage. This rate changed monthly and was not a "locked in" rate. Atlas has provided USD with

access to Qwest services under the Wholesale Agreement. Specific rates accompanied that Agreement and furthermore, the Agreement clearly provides that the rates are subject to change upon notification by Atlas.

9.    Atlas was not USD's exclusive provider of services. In fact, when Atlas included a "Non-circumvent" paragraph (paragraph 10.3) within the Wholesale Agreement, USD crossed out the provision and demanded that the parties initial the modification. Atlas agreed to the modification which allows USD to utilize the services of other carriers. Moreover, the principals of USD and I have spoken in the past regarding the other carriers (i.e. IDT, Star Communications, etc.) that USD has purchased services from in the past and in some cases, continue to provide services to USD.

10.    At no time did Atlas ever represent to RSC that upon the completion of any closing with USD, Atlas would provide it with lower rates from Qwest. To date, I have not seem any documentation (other than statements within RSC's Complaint as well as the affidavits attached thereto) to verify that a closing has occurred between USD and RSC.

11.    At no time did Atlas ever have any knowledge of RSC's alleged reliance on the Qwest rates when RSC decided to enter into negotiations with USD. Moreover, it is impossible for Atlas to provide Qwest rates "on demand." Rather, USD could not obtain Qwest services even after executing the Wholesale Agreement, unless and until USD negotiated service connectivity directly with Qwest. Notably, it is USD and not Atlas who selects the particular carrier (in this case either Sprint or Qwest) from whom it wishes to purchase service through its Agreements with Atlas.

12.    To date USD owes to Atlas in excess of $4,700,000.

13.    At all times the principals of both USD and RSC have advised me that when and if a sale did occur, that RSC would assume USD's obligations and would pay the balance due from USD in full on or before February 7, 2000.

14.    To secure USD's obligations, Atlas retains letters of credit (renewed in November of 1999) totaling $95,000 together with a perfected security interest (UCC-1) in and to all of USD's assets. Moreover, Atlas retains fully exercisable stock warrants for 20% of the issued and outstanding stock of both USD and Telecard Dispensing Corporation ("TDC").

15.    At no time during my discussions with the principals of RSC and USD on January 7, 2000 was I ever advised that a closing had occurred between the two entities. Rather the discussions focused on the bounced checks that USD had issued to Atlas totaling approximately $800,000. During my phone conversation, I advised that service would be terminated unless USD paid these bad checks.

16.    At no time did RSC ever request that an agreement be negotiated between Atlas and RSC. Moreover, Atlas never agreed to assign either the Carrier or the Wholesale Agreements to RSC, nor was there a request that Atlas terminate its security

interest in the assets of USD. Atlas retains its warrants for the purchase of up to 20% of the issued and outstanding stock of both USD and TDC.

17.    On or about January 13, 2000, I did demand that USD (or RSC on behalf of USD) pay to Atlas the sum of $700,000. This sum represented the amount due for an estimated weekly invoice that was then 2 weeks past due.

18.    At no time has Atlas ever issued an invoice to RSC. All invoices were issued to USD in accordance with the terms of the Agreements.

19.    On January 19, 2000 I had a phone conversation with the principals of RSC and USD. At no time, did I promise to provide USD (or RSC for that matter) with better rates from Qwest. Rather, I demanded that USD immediately wire $732,0000 to Atlas. This amount was to pay invoice #184 that was due on January 10, 2000 as well as invoice #185 that was due on January 17, 2000. During that phone conversation, I advised that I would need to know by the following day the exact amount that would be forwarded to Atlas. On January 20, 2000, I terminated USD's services since it had only forwarded a payment of $25,000 to be applied against its debt which at that point exceeded well over $3,000,000.

20.    At no time did Atlas ever misrepresent to USD (or RSC on USD's behalf) that Atlas would provide lower rates from Qwest. I did however advise USD that Atlas would review the effective rate utilized for the estimated weekly billing. I made it clear to the principals of both USD and RSC that any modification of the effective rate was contingent upon reaching a global settlement of all of the outstanding issues between Atlas and USD. This settlement never occurred and thus the effective rate remained the same.

21.    USD has maximized its current capacity with Qwest and no further capacity can be provided unless and until Qwest (rather than Atlas) provides connectivity to USD. Within the past two weeks, Atlas has received an order from USD to increase their capacity with Qwest which Atlas immediately placed with Qwest. At the present time, USD is waiting to negotiate connectivity directly with Qwest. Once its negotiations with Qwest are complete, USD will have the ability to utilize additional Qwest circuits through its Wholesale Agreement with Atlas.

22.    Atlas has incurred significant damages through its dealings with USD inasmuch as Atlas is owed in excess of $4,700,000 and has received no assurances from USD that this amount will be paid. In addition, Atlas' claim continues to grow since it is forced to continue to provide USD with service on account of the Temporary Restraining Order regardless of the fact that neither USD nor RSC has alleged that either will pay for these services. Atlas' claim continues to grow at the rate of $110,000 per day under current usage estimates.

Michael W. Spurlin

Sworn to and subscribed before me this
_____25+H_____ day of _JANUARY_, 2000.

Notary Public

Notarial Seal
Jack R. Medaris, Notary Public
Whitpain Twp., Montgomery County
My Commission Expires Dec. 8, 2003
Member, Pennsylvania Association of Notaries

Ex - B

# ATLAS COMMUNICATIONS, LTD.

## CARRIER DEDICATED SERVICES AGREEMENT

| | |
|---|---|
| **AGREEMENT DATE:** | February 3, 1998 |
| **CUSTOMER:** | U.S. DIGITEL, INC. |
| **JURISDICTION OF ORGANIZATION:** | |
| **CUSTOMER ADDRESS:** | U.S. Digitel Inc., 1909 Tyler St., Third Floor, Hollywood, FL 33020 |
| **CUSTOMER FACSIMILE NUMBER:** | (954)-927-7702 |
| **CUSTOMER TELEPHONE NUMBER:** | (954)-927-7770 |
| **CUSTOMER FISCAL YEAR END:** | |
| **SERVICES TERM:** | Eighteen (18) month initial term with a $100,000.00 take or pay following an (8) eight month ramp up period. |
| **RELATED DOCUMENTS:** | $75,000.00 Letter of Credit in a form, and issued by a bank, acceptable to Atlas. UCC-1 statements executed by the Customer. |
| **INITIAL DEPOSIT:** | $75,000.00 Letter of Credit. |

Customer _____ Atlas _____

## ATLAS COMMUNICATIONS, LTD.

## CARRIER DEDICATED SERVICES AGREEMENT

This Carrier Dedicated Services Agreement ("Agreement") is being made by and between **ATLAS COMMUNICATIONS, LTD.**, a Pennsylvania corporation ("Atlas"), and the **CUSTOMER** identified on the face sheet hereof ("Customer").

## TERMS

## ARTICLE 1 - SERVICES

**1.1. Term and Provision of Services.**

(a)  *Effective Date:*  This Agreement shall be effective as of the date this Agreement is executed by an officer of Atlas (the "Effective Date") and shall continue, subject to the provisions of this Agreement, for the Services Term as set forth on the face page hereof.  Unless written notice is given by either party to the other at least ninety (90) days prior to the expiration date of the Services Term, this Agreement shall remain in effect and the Services Term shall extend indefinitely until such ninety (90) day written notice is given.

(b)  *Commencement of Services:*  Atlas need not commence providing services until Customer shall have duly executed and delivered to Atlas all security, security instruments, and other documents described on the face page hereof (the "Related Documents") and fulfilled any other conditions herein or therein.

(c)  *Description of Service:*  For purposes of this Agreement, Atlas will provide nationwide dedicated inbound and outbound origination and termination

(d)  *Scope of Services:*  Services may be provided through a third party network provider, over Atlas' own network, or through such other means as Atlas may elect, at Atlas' sole discretion. Customer acknowledges that Atlas is building its own long distance network and hereby agrees that Atlas may re-provision any or all lines submitted by Customer to Atlas over such network.  Atlas shall provision dedicated circuits through its underlying carriers for domestic origination and termination from, and to, the Customer's switch.

(e)  *Carrier of Record:*  Atlas is the underlying network with respect to the provisioning of nationwide dedicated carrier transport services, contemplated by Customer and Atlas as the entire scope of this Agreement.  For the duration of this Agreement, Customer shall be the carrier of record and shall secure, and comply with, all requirements applicable to a carrier of record as promulgated by the Federal Communications Commission ("FCC"), State Public Services or Utilities Commissions ("PUCs"), or any equivalent governmental body.

(f)  *Quality of Service:*  Atlas shall provide the quality of Services to Customer, consistent with industry standards, and consistent with the quality of service that the underlying carrier provides to Atlas.

**1.2. Cancellation.**

This Agreement will continue beyond the initial term unless Customer or Atlas gives at least ninety (90) days written notice prior to the end of the initial term.  This Agreement may be cancelled by Customer or Atlas

\\ATLAS-1\SYS\WORD\LEGAL\WORD\USDIGIT\USDGCON6.DOC- 2 -    Initialed _____ Initialed 39

pursuant to Article 3 or, after the initial term, upon ninety (90) days written notice. In the event of termination or cancellation, Customer shall pay Atlas a Termination Charge as defined in Section 2.9.

## ARTICLE 2 – PAYMENTS, CHARGES, AND BILLING

**2.1. Pricing.**

(a)     *Usage Sensitive Rates:*  Usage Sensitive Services shall be billed to Customer at the rates set forth in Schedules D-1, D-2, D-3, and D-4 attached hereto and made a part of this Agreement.

(b)     *Monthly Recurring, Non-Recurring and Miscellaneous Charges:*  Monthly recurring, non-recurring and miscellaneous charges are set forth in Schedule E attached hereto and made a part of this Agreement.

(c)     *Minimum Monthly Commitment and Ramp Period*: Customer agrees to the Minimum Monthly Commitments and ramp period as set forth in Schedule D, attached hereto and made a part of this Agreement.

(d)     *Pass Through of Regulatory Surcharges:*  Customer shall be responsible for payment of surcharge(s) levied by the FCC, PUCs, or equivalent governmental body which are directly or indirectly levied against Atlas related to Services hereunder.

**2.2. Customer Billing.**

(a)     *Responsibility for Payment:*  Customer's obligation to pay for usage sensitive charges with respect to any Services shall commence as of the date the Services are used by Customer. Customer's obligation to pay for non-usage sensitive charges, including non-recurring setup costs, shall commence when Services are made available to Customer. Customer's obligation to pay for Minimum Monthly Commitments and any applicable regulatory surcharges shall commence upon the Effective Date of this Agreement.

(b)     *[Weekly] Billing Procedures:*  Atlas will invoice Customer on a weekly basis beginning no later than fourteen (14) days from the date Customer first shall be obligated to pay for Services. Atlas will send Customer a statement covering amounts owed to Atlas in connection with this Agreement and the other Related Documents. Customer acknowledges and understands that there will be a transition period before the actual call records are available and the [weekly] billing process is operational. Atlas shall provide Customer with estimated invoices during this period. Customer agrees to pay Atlas on this estimated basis. The estimated usage billings shall be based upon the number of T-1.5 circuits installed at a price per T-1.5 for domestic service of two thousand five hundred dollars ($2,500.00) per week. . After the actual billing process is in place, there will be a true-up of estimated billings to determine whether the Customer is owed a credit or, in the alternative, owes additional sums of money.

(c)     *Payment Due Dates:*  Amounts payable to Atlas shall be payable within five (5) days of the statement date. A late charge of two percent (2%) per month, or the maximum permitted under applicable usury or like laws, whichever is lower, will be charged on any overdue amounts.

**2.3. Regulatory/Taxes/PUC Reporting**:  Customer shall be responsible for, and hold Atlas harmless from, all liability with respect to regulatory or tax matters related to Customer's traffic hereunder. Customer acknowledges and understands that Customer shall be responsible to pay, or reimburse Atlas, for applicable federal, state or local use, excise, gross receipts, sales and privilege taxes, duties, fees or similar liabilities (other than general income or

property taxes), whether charged to or against Atlas or Customer based on the Services furnished to Customer and/or to Customer End Users and/or supply Atlas with the appropriate tax exempt certificate(s). Nothing herein, however, obligates or restricts Atlas to collect any applicable taxes.

**2.4. Modification of Charges.** Atlas reserves the right to modify its charges and rates, from time to time, for Usage Sensitive Services by written notices to Customer and for Non-Usage Sensitive charges by amendment or supplements to applicable Atlas Tariffs or Schedules. Notwithstanding anything contained herein to the contrary, Customer shall have upon thirty (30) days written notice, the right to terminate the Agreement without liability for the termination fee, if such modification results in an average increase in charges of three percent (3%) or more per annum on Usage Sensitive Charges in the aggregate.

**2.5. Suspension of Services.** In the event any amounts payable by Customer are not paid in full by the date due, Atlas shall have among its rights, the right (a) to refuse to provision new orders and/or (b) suspend all or any portion of the Services to Customer until such time as Customer has paid in full all such charges and amounts then due to Atlas, including any late fees and interest. Atlas need not reinstate Services to Customer before payment is made in full and Customer further provides Atlas with satisfactory assurance of Customer's ability to pay for future Services in the form of a deposit, letter of credit or other security acceptable to Atlas. Customer shall be responsible for all costs of reinstating Services. Such suspension shall not relieve Customer from payment of the Termination Charge, as referred to in Section 2.9, and all such charges and amounts then due to Atlas, including late fees and all monthly minimum commitments due during the Services Term.

**2.6. Expedited Services Charges.** If Customer requests expedited Services and Atlas agrees to such request, Atlas will pass through any additional charges incurred by Atlas or assessed by any third parties. Atlas may require advance payment of estimated additional charges. If Atlas expedites service and, for whatever reason, Customer cancels service or is not ready to receive service, then Customer will pay, in addition to these charges, as a liquidated damage and not as a penalty, Two Hundred Fifty Dollars ($250.00) per day for each day Customer is not ready to receive service.

**2.7. Fraudulent Calls.** Customer shall indemnify and hold Atlas harmless from all costs, expenses, damages, fines or actions arising from claims made which are in any way related to or arise from alleged fraudulent calls. Customer shall not be excused from paying Atlas for Services on the basis that fraudulent calls comprised a portion of the Services. In the event Atlas reasonably believes fraudulent calls are being made, nothing contained herein shall prohibit, or require, Atlas from taking any action (without notice to Customer or End Users) Atlas deems reasonably necessary to prevent such fraudulent calls from taking place. Among the steps Atlas may take, include without limitation, denying Services to particular ANIs or terminating Services to or from specific locations.

**2.8. Collateral Security.** Atlas reserves the right to withhold initiation or full implementation of Services under this Agreement pending Atlas' initial satisfactory credit review and the receipt of the Related Documents and any security or other deposit specified on the face page hereof. If at any time during the term of this Agreement Customer's billings exceed, or are equivalent to, the security listed on the face sheet of this Agreement, Customer shall, within twenty-four (24) hours written notice, remit additional security in an amount reasonably determined by Atlas, in its sole discretion, necessary to further secure telecommunications services hereunder. In addition to the above, Atlas further reserves the right to modify its requirements, if any, with respect to any security or other assurance provided by Customer for payments due hereunder if Customer's Usage Sensitive Charges are thirty-three or more percent (33%) greater than the average of the prior three (3) months usage or late payments, or if Customer exceeds one hundred twenty-five thousand dollars ($125,000.00) in weekly usage and late payments.

2.9.  **Termination Charge.**  Subject to section 1.1 (f), in the event of Customer cancellation of the Agreement pursuant to **Section 1.2** or termination pursuant to Article 3 or otherwise pursuant to this Agreement, Customer shall immediately pay all charges for Services through the effective date of such cancellation or termination plus, as additional liquidated damages and not as a penalty because damages are difficult to calculate, a Termination Charge (the "Termination Charge") equal to one hundred percent (100%) of the remaining Minimum Monthly Commitment set forth in Schedule D.  In addition, Customer shall remain liable for the payment of any other monies due prior to the date of cancellation or termination, which sums shall become immediately due and payable.

## ARTICLE 3 - DEFAULT AND TERMINATION

3.1.  **Events of Default.**

(a)  One or more of the following events shall constitute an "Event of Default":

(i) Customer fails to pay when due any charges due under this Agreement, including any amounts due under the Related Documents.

(ii) Customer fails to perform or observe any of the covenants contained in Article 5.

(iii) Any representation or warranty made by Customer under or in connection with this Agreement or any Related Document shall prove to have been incorrect in any material respect when made.

(iv) Any misrepresentation shall have been made by Customer regarding the nature of the products or services provided by Atlas or the relationship between Customer and its network carrier.

(v) Customer shall fail to perform or observe any other term, covenant or agreement contained in this Agreement or any Related Document and any such failure shall remain unremedied for 10 days after written notice thereof shall have been given to Customer by Atlas.

(vi) Customer shall not pay its debts (including, without limitation, amounts assessed or owing in respect of taxes) as such debts become due, or shall admit in writing its inability to pay its debts generally, or shall make a general assignment for the benefit of creditors; or any proceeding shall be instituted by or against Customer seeking to adjudicate it as bankrupt or insolvent, or seeking liquidation, winding up, reorganization, arrangement, adjustment, protection, relief, or composition of it or its debts under any law relating to bankruptcy, insolvency or reorganization or relief of debtors, or seeking the entry of an order for relief or the appointment of a receiver, trustee, or other similar official for it or for any substantial part of its property; or Customer shall take any corporate action to authorize any of the actions set forth above in this subsection.

(vii) Any event, act or condition shall occur, or not occur, which, in the judgment of Atlas has a material adverse effect on the business or operations of Customer and such condition shall remain unremedied for five (5) days after written notice thereof shall have been given to Customer by Atlas.

(viii) Atlas shall fail to perform or observe any material term, covenant or agreement contained in this Agreement or any related document on its part to be performed or observed and any such failure shall remain unremedied for thirty (30) days after written notice thereof shall have been given to Atlas by Customer.

3.2. **Remedies.** If an Event of Default shall occur, then any or all of the following actions may be taken by Atlas:

(i) By written notice, sent by both overnight mail and facsimile, Customer or Atlas may declare this Agreement to be terminated, whereupon the obligation of Atlas to provide Services hereunder shall immediately cease and be of no further effect;

(ii) All amounts payable by Customer to Atlas under this Agreement, the Related Documents or otherwise, shall be forthwith due and payable without presentment, demand, protest or other notice of any kind, all of which Customer expressly waives;

(iii) Atlas may exercise any and all rights and remedies which Atlas may have under this and the Related Documents; as well as any and all other rights and remedies which Atlas may have at law or in equity.

3.3. **Event of Default.** If an Event of Default specified in Section 3.1(a)(vi) shall occur, the result that would occur upon the giving of notice, as described above, shall occur automatically and without notice or any further act by Atlas.

3.4. **Security Interests.** Customer grants Atlas a continuing security interest, and termination of this Agreement for any reason shall not terminate the security interest or relieve Customer of the liability and responsibility of and for payment of any sums due to Atlas, including Termination charges.

3.5. **Government Action.** If any material term contained in this Agreement or the rates charged to customer for the services are required to be modified or found to be unlawful by an order of any court of competent jurisdiction, the FCC, the PUC or any other local, state or federal government authority of competent jurisdiction then Atlas shall have the right, upon thirty (30) days prior notice to Customer, without incurring any liability, to cancel all or any portion of the services and/or to terminate this Agreement.

### ARTICLE 4 - ABSENCE OF WARRANTY AND LIMITATION OF LIABILITY

4.1. ATLAS MAKES NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, CONCERNING THE SERVICES PROVIDED HEREUNDER, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR USE, ALL OF WHICH WARRANTIES ARE HEREBY EXPRESSLY EXCLUDED AND DISCLAIMED. IN NO EVENT WILL ATLAS BE LIABLE, IN THE ABSENCE OF GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, TO CUSTOMER OR ANY OTHER PERSON, FIRM OR ENTITY FOR ANY DAMAGES WHETHER DIRECT, INDIRECT, CONSEQUENTIAL, SPECIAL, INCIDENTAL, ACTUAL, PUNITIVE, EXEMPLARY OR OTHERWISE, OR FOR ANY LOST PROFITS, LOSS OF REVENUE, LOSS OF CUSTOMERS OR GOODWILL OF ANY KIND OR NATURE WHATSOEVER, ARISING OUT OF ANY MISTAKE, ACCIDENT, ERROR, OMISSION, INTERRUPTION, OR DEFECT IN TRANSMISSION, OR DELAY OR ACTION OR INACTION OF ANY THIRD PARTY, OR ARISING OUT OF OR RELATING IN ANY FASHION TO THE SERVICES OR THE OBLIGATIONS OF ATLAS UNDER THIS AGREEMENT OR ANY RELATED DOCUMENT INCLUDING WITHOUT LIMITATION, ANY FAILURE TO TIMELY OR ACCURATELY PROVIDE ANY PORTION OF THE SERVICES. IF, AND TO THE EXTENT, THE FOREGOING DISCLAIMER IS DISALLOWED IN ANY JURISDICTION, THE MAXIMUM LIABILITY, IF ANY, OF ATLAS FOR ALL DAMAGES, INCLUDING WITHOUT LIMITATION, DAMAGES FOR BREACH OF THIS AGREEMENT OR BREACH OF WARRANTY,

WHETHER ARISING IN CONTRACT, NEGLIGENCE OR OTHER TORT, SHALL NOT EXCEED TEN THOUSAND DOLLARS ($10,000.00).

## ARTICLE 5 - REPRESENTATIONS OF CUSTOMER

5.1. Customer represents and warrants as follows:

(a) **Good Standing.** Customer is an entity as described on the face sheet hereof, duly formed, validly existing and in good standing under the laws of the jurisdiction of its organization, and in those jurisdictions in which it conducts business.

(b) **Corporate Authority.** The execution, delivery and performance by Customer of this Agreement and the Related Documents are within Customer's corporate powers, have been duly authorized by all necessary corporate action, do not require the consent of any Person, and as contemplated by this Agreement, do not contravene (i) Customer's charter or by-laws or (ii) any law, regulation or contractual or other restriction binding on or affecting Customer, and do not, or will not, result in, require the creation of, or conflict with, any lien, security interest or other charge or encumbrance (other than pursuant hereto) upon or with respect to any of its properties.

(c) **Governmental Authority.** No authorization or approval or other action by, and no notice to or filing with, any governmental authority or regulatory body is required for the due execution, delivery and performance by Customer of this Agreement or any Related Document to which it is or will be a party except as contemplated by this Agreement which will, or have been, duly secured.

(d) **Legality.** This Agreement is, and each other Related Document to which Customer will be a party when delivered hereunder will be, legal, valid and binding obligations of Customer enforceable against Customer in accordance with their respective terms.

(e) **Pending or Threatened Actions.** There is no pending or threatened action or proceeding affecting Customer or any of its parent companies, subsidiaries or affiliates before any court, governmental agency or arbitrator, which may adversely affect (i) the financial condition or operations of Customer or any such parent company, subsidiary or affiliate or (ii) Customer's ability to perform under this Agreement.

(f) **Misrepresentations.** No representation, warranty or statement made by Customer in this Agreement, the Related Documents, or any other documents, instruments or communications delivered by Customer to Atlas or its representatives in connection with the transactions contemplated hereunder contains or will contain any untrue statement of a material fact or omits or will omit to state any material fact necessary to make the statements contained herein or therein not misleading.

5.2 Customer makes the following covenants for the Services Term:

(a) **Regulatory Compliance.** Customer is an Interexchange Carrier of interstate and international services, as duly tariffed before the FCC, and certified for intrastate services by various state PUCs. Customer shall comply, and cause each of its subsidiaries and affiliates to comply, in all material respects with all applicable laws, rules, statutes and regulations of the FCC, the PUC and the rules, regulations and orders of courts and any other applicable regulatory bodies and agencies.

(b) **Material Transactions.** Customer shall not, without advanced written consent from Atlas, reorganize, engage in any transaction that could result in a change of control of its ownership, consolidate with or merge into any other Person or convey, transfer or lease all or substantially all of its assets to any Person unless the Person formed by such consolidation or into which it is merged or the Person which acquires by conveyance, transfer or lease all or substantially all of its assets or control, shall: (i) assume in writing all of the obligations of Customer hereunder and under the other Related Documents and such Person, in the sole judgment of Atlas, is capable of performing and financially able to perform, without increased risk to Atlas, such obligations and (ii) provide such other written representations and other security as are acceptable to Atlas. However, Atlas shall not unreasonably withhold its approval to a proposed change in control of ownership, change in corporate structure, or intended transfer of assets, if this Agreement is expressly assumed and Customer supplies such financial data and other information reasonably requested by Atlas for Atlas' determination of risk, and thereafter, upon Atlas' request and Customer's compliance with additional security demands made by Atlas in its sole discretion.

(c) **Financial Statements.** Atlas can request from time to time, and Customer shall deliver to Atlas within thirty (30) days of Atlas' request, an unaudited consolidated balance sheet of Customer for the quarter or year then ended and its related nonconsolidated statements of income for the quarter or year then ended and consolidated statements of changes in equity or retained earnings and changes in financial position based on cash flow for the year then ended, as required by and in accordance with Generally Accepted Accounting Principles and consistent with the records of Customer, as well as its tax returns.

(d) **Certification.** Customer shall deliver to Atlas, together with each of the above-required financial statements, a certificate signed by the President, CEO, or Managing Partner of Customer certifying that (i) such officer or partner has reviewed the provisions hereof and of the other Related Documents (ii) the representations of Customer contained herein are true and correct on the date of such certificate (iii) Customer has performed and fulfilled all of its obligations and covenants under this Agreement and the Related Documents and no Event of Default, or event that would constitute an Event of Default but for the requirement that notice be given or time elapse or both, has occurred during the relevant fiscal quarter or fiscal year and (iv) that the financial statements are true and correct and give an accurate picture of the Customer's financial condition.

(e) **Indemnification.** Customer agrees to indemnify Atlas, its affiliated companies, any third-party provider of Services or facilities employed in provision of Services and their respective officers, directors, employees, stockholders and affiliates (the "Indemnified Parties") for, and hold the Indemnified Parties harmless from and against, any and all claims, demands, suits, actions, causes, losses, damages, assessments or payments that others receiving Services through Customer, or any other Person, may assert arising out of or relating in any way to this Agreement, to any Services supplied under this Agreement, including the FCC, PUC or other regulatory body or agency or marketing or sales practices of Customer. Customer further agrees to reimburse each Indemnified Party for all reasonable costs and expenses including attorneys' fees incurred by such Indemnified Party due to such Indemnified Party's direct participation either as a party or witness in any administrative, regulatory, civil or criminal proceeding initiated in respect to this Agreement, the Related Documents, by Atlas, Customer, or any other Person.

(f) **Additional Information.** Customer shall deliver to Atlas, promptly upon request, such other information concerning the financial condition, operations or business of Customer as Atlas may reasonably request from time to time.

(g) **Blanket LOA.** Customer shall deliver to Atlas the Blanket Letter of Agency in Schedule F hereto. Atlas need not commence providing services until Customer shall have duly executed and delivered same to Atlas.

## ARTICLE 6 - REPRESENTATIONS OF ATLAS

6.1. **Atlas represents and warrants as follows:**

(a) **Good Standing.** Atlas is duly formed, validly existing and in good standing under the laws of the Commonwealth of Pennsylvania.

(b) **Corporate Authority.** The execution, delivery and performance by Atlas of this Agreement or the Related Documents are within Atlas' corporate powers, have been duly authorized by all necessary corporate action, do not require the consent of any Person, do not contravene (i) Atlas' charter or by-laws or (ii) any law, regulation or contractual or other restriction binding on or affecting Atlas, and do not or will not result in or require the creation of, or conflict with, any lien, security interest or other charge or encumbrance (other than pursuant hereto) upon or with respect to any of its properties.

(c) **Governmental Authority.** Atlas is an Interexchange Carrier of interstate and international services, as duly tariffed before the FCC, and certified for intrastate services by various state Public Utility or Service Commissions ("PUC"). No authorization or approval or other action by, and no notice to or filing with, any governmental authority or regulatory body is required for the due execution, delivery and performance by Atlas of this Agreement or any Related Document to which it is or will be a party except as contemplated by this Agreement which will, or have been, duly secured.

(d) **Legality.** This Agreement is, and each other Related Document to which Atlas will be a party when delivered hereunder will be, legal, valid and binding obligations of Atlas enforceable against Atlas in accordance with their respective terms.

(e) **Pending or Threatened Actions.** There is no pending or threatened action or proceeding affecting Atlas or any of its parent companies, subsidiaries or affiliates before any court, governmental agency or Arbitrator, which may adversely affect the financial condition or operations of Atlas or any such parent company, subsidiary or affiliate or Atlas's ability to perform under this Agreement.

(f) **Misrepresentations.** No representation, warranty or statement made by Atlas in this Agreement contains or will contain any untrue statement of a material fact or omits or will omit to state any material fact necessary to make the statements contained herein not misleading.

## ARTICLE 7 - PROPRIETARY PROPERTY

7.1 **Use of Names and Logos.**

(a) Customer shall not publish or use any advertising, sales promotions, press releases, or other publicity matters which use the corporate or trade names, logos, trademarks, trade dress, service marks or any copyrighted material of Atlas or its underlying carrier without the prior written consent of Atlas. Customer shall provide to Atlas for its prior review and written approval, all promotions, advertising or other materials or activity whereby it proposes to use or display Atlas' name or describing or referring to the Services to be provided by Atlas. Customer agrees to change or correct, at Customer's expense, any such material or activity which Atlas, in its sole judgment, determines to be inaccurate, misleading or otherwise objectionable. Customer is explicitly authorized to use only the following statements in its sales literature: (i) "Customer utilizes the Atlas network", (ii) "Customer utilizes Atlas'

facilities", (iii) "Atlas provides only the network facilities", and (iv) "Atlas is our network services provider". Customer may identify underlying carriers in fulfillment contact with the End User.

## ARTICLE 8 - CONFIDENTIAL INFORMATION

**8.1. Confidential Information.** Customer understands and agrees that the terms and conditions of this Agreement and all documents referenced herein (including invoices to Customer for Services provided hereunder), communications between the parties regarding this Agreement or the Services to be provided hereunder (including price quotes to Customer for any Services proposed to be provided or actually provided hereunder), as well as such information relevant to any other agreement between the parties (collectively "Confidential Information"), are confidential as between Customer and Atlas.

**8.2. Limited Disclosure.** Customer shall not disclose any Confidential Information to any third party, except to its employees as necessary to implement this Agreement and to consultants retained by Customer to provide advice, consultation, analysis, legal counsel or any other services in connection with this Agreement, if the employee or consultant agrees to be bound by the confidentiality obligations of this Agreement. Notwithstanding the foregoing, Customer may disclose Confidential Information to third parties (i) as may be required by law, regulation or legal process and (ii) as necessary for the enforcement of this Agreement. If Customer becomes aware of any action or other regulatory or court proceeding that might require it to disclose any Confidential Information, Customer will give immediate written notice of such motion or proceeding to Atlas and shall act cooperatively to retain the confidentiality of the terms hereof.

**8.3. Press Releases.** The parties further agree that any press release, advertisement or publication generated by Customer regarding this Agreement, the Services provided hereunder or in which Customer desires to mention the name of Atlas or Atlas' affiliated companies, will be submitted to Atlas for its written approval prior to publication.

**8.4. Survival of Mutual Nondisclosure Agreement.** The parties agree that nothing herein relieves the parties of their obligations under any pre-existing Mutual Nondisclosure Agreements entered into between them during the course of negotiating this Agreement.

## ARTICLE 9 - GENERAL PROVISIONS

**9.1. Notices.** All notices required or with respect to this Agreement or the Related Documents shall be sent by both facsimile and overnight mail with reputable carrier, addressed as follows:

> Atlas Communications, Ltd.,
> 482 Norristown Road
> Blue Bell, Pennsylvania 19422
> Attention: General Counsel
>
> Facsimile number: (610) 260-0886

If to Customer, at the address and facsimile number specified on the face sheet hereof.

Should the address or facsimile number set forth change, the party changing its address shall notify the other, in writing, of such change and new address within fifteen (15) days prior to their relocation.

\\ATLAS-1\SYS\WORD\LEGAL\WORD\USDIGIT\USDGCON6.DOC- 10 -       Initialed _____Initialed _____

9.2. **Jurisdiction; Applicable Law.**

(a) This Agreement and the other Related Documents and the rights and obligations of the parties hereunder and thereunder shall be construed in accordance with, and be governed by, the laws of the Commonwealth of Pennsylvania excluding its conflict of law provisions.

(b) Any legal action or proceeding with respect to this Agreement or any Related Document and any action for enforcement of any judgment or award in respect thereof shall be brought in the Court of Common Pleas of Montgomery County, Commonwealth of Pennsylvania or of the U.S. District Court for the Eastern District of Pennsylvania located in Philadelphia, Pennsylvania. By execution and delivery of this Agreement, each of Atlas and Customer hereby accepts for itself and in respect of its property, generally and unconditionally, the personal and subject matter jurisdiction of the aforesaid courts. Customer irrevocably consents to the service of process by the aforementioned courts in any such action or proceeding by the mailing of copies of the complaint, writ or other process by registered or certified mail, postage prepaid, to it at its address as set forth herein. Both Atlas and Customer hereby irrevocably waive any objection that they may now or hereafter have to the laying of venue any actions or proceedings arising out of or in connection with this Agreement or any other Related Documents brought in the courts referred to above and hereby further irrevocably waive and agree not to plead or claim in any such court that any such action or proceeding brought in any such court has been brought in an inconvenient forum.

9.3. **Attorney's Fees and Costs.** In the event of any legal dispute between the parties relating to the Agreement, the most prevailing party shall be entitled to all costs and legal expenses including, but not limited to, reasonable attorney's, accounting fees, court costs, expert witness expenses, and investigation expenses.

9.4. **Provisions Severable.** The terms and provisions of this Agreement are severable. In the event that any of them are held to be invalid or unenforceable in whole or in part, for any reason, such term or provision shall be enforced to the extent it is permissible to do so under prevailing law; and to the extent it cannot be so enforced, it shall be excluded from this Agreement, and the remaining terms and provisions shall prevail and remain in full force and effect.

9.5. **Force Majeure.** If Atlas' performance of this Agreement or any obligation hereunder is prevented, restricted or interfered with by causes beyond its reasonable control including, but not limited to, acts of G-d, fire, explosion, vandalism, power failure, cable cut, storm or other similar occurrence, supplier failure, any law, order, regulation, direction, action or request of the United States government, or state or local government, or of any department, agency, commission, court, bureau, corporation or other instrumentality of any one or more such governments, or of any civil or military authority, or by national emergency, insurrection, riot, war, strike, lockout or work stoppage or other labor difficulties, or supplier failure, shortage, breach or delay, then Atlas shall be excused from such performance on a day-to-day basis to the extent of such restriction or interference. Atlas shall use reasonable efforts under the circumstances to avoid or remove such causes or nonperformance and shall proceed to perform with reasonable dispatch whenever such causes are removed or cease. In the case of a supplier failure, breach or delay, Atlas shall use its best efforts to obtain an acceptable alternative.

9.6. **Survival of Terms.** The terms and provisions contained in this Agreement that, by their sense and context, are intended to survive the performance thereof by the parties hereto shall so survive the completion of performance and termination of this Agreement, including, without limitation, provisions for security, indemnification, confidentiality and the making of any and all payments due hereunder.

**9.7. Rules of Construction.** Descriptive headings in this Agreement are for convenience only and shall not affect the construction of this Agreement No rule of construction requiring interpretation against the drafting party hereof shall apply in the interpretation of this Agreement which was carefully reviewed by both parties in consultation with their respective counsel. The words "herein," "hereof," "hereby," "hereto," "hereunder" and words of similar import refer to this Agreement as a whole and not to any particular article, section, paragraph or other subdivision of this Agreement. To the extent that there is a conflict between this Agreement and one of the Schedules hereto, the terms of the Schedule will prevail. Defined terms shall include the plural and the singular as the context shall require. Words having well-known technical or trade meanings shall be so construed, and all listings of items shall not be taken to be exclusive, but shall include other items, whether similar or dissimilar to those listed, as the context reasonably requires.

**9.8. Entire Agreement.** This Agreement, except as expressly set forth herein, may not be amended, altered or modified unless such amendment, alteration or modification is set forth in writing and signed by all parties. Parties agree that no representation shall be relied upon unless said representation is set forth in writing, signed by the parties, and made part of this Agreement. This Agreement and Related Documents consists of all the terms and conditions contained herein, any and all Tariffs applicable to Atlas or the underlying carriers relating to the provisions of Services, and all documents incorporated herein specifically by reference, and constitutes the complete and exclusive statement of the understandings between the parties and supersedes all proposals and prior agreements, oral or written, by or between the parties or representations relating to Services provided hereunder. No subsequent agreement between the parties concerning the Services shall be effective or binding unless it is made in writing and subscribed to by authorized representatives of Customer and an officer of Atlas and, to the extent required by law, filed with the FCC and/or the appropriate state regulatory agency. Nothing contained in this Agreement shall require Atlas or Customer to take any action prohibited or omit to take any action required by the FCC or any other regulatory authorities.

**9.9. Independent Contractor.** It is agreed that by virtue of this Agreement the relationship created is one of independent contractors, with Customer purchasing services from Atlas. The parties are not partners, participants in a joint venture, or employer-employee, and Customer shall not be deemed to be an agent of Atlas. This Agreement and the provision of Services hereunder shall not result in a joint communication service offering to any third parties.

**IN WITNESS WHEREOF,** and intending to be legally bound hereby, the parties have caused this Carrier Dedicated Services Agreement to be executed by their authorized representatives on the date written below.

ATLAS COMMUNICATIONS, LTD.

By: _____

Title: _General Counsel_

Date: _2-9/98_

US DIGITEL, INC.

By: _____

Title: _PRESIDENT_

Date: _2-3-98_

## SCHEDULE A

## BILLING INCREMENTS

Listed Services:

ATLAS transport services and their billing increments are as follows:

| SERVICE TYPE | Initial (sec) | Additional (sec) |
|---|---|---|
| Dedicated Interstate Termination | 18 | 6 |
| Dedicated Intrastate Termination | 18 | 6 |
| Dedicated Canadian Termination | 30 | 6 |
| Dedicated Mexico US Termination | 30 | 6 |
| Dedicated Mexico Int'l Termination | 60 | 60 |
| Dedicated Other Int'l Termination | 30 | 6 |
| | | |
| | | |
| Dedicated Interstate Origination | 18 | 6 |
| Dedicated Intrastate Origination | 18 | 6 |
| Dedicated Canadian Origination | 30 | 6 |
| Dedicated Mexico  Origination | 60 | 60 |
| Dedicated Other Int'l  Origination | 30 | 6 |
| Dedicated Carribean Origination | 30 | 6 |

**SCHEDULE B**

**CERTIFICATED CUSTOMER
QUESTIONNAIRE AND AFFIDAVIT
FOR ATLAS COMMUNICATIONS, LTD.**

Please give <u>complete</u> answers to all of the following questions. Your Carrier Dedicated Services Agreement ("Agreement") with Atlas Communications Ltd. ("ATLAS") may not be executed, and no orders may be accepted from you, until ATLAS receives a completed Questionnaire and Affidavit from you. The Questionnaire and Affidavit is a part of the Agreement and inaccurate answers to this questionnaire are grounds for immediate suspension or termination of your Agreement. You must submit a newly completed and updated questionnaire each year. In the event any of the information provided herein changes prior to the scheduled update, you <u>must</u> inform ATLAS of those changes promptly in writing.

Name of Company: _U.S. DiGiTEL INC._

Address: _1909 TYLER ST, 3RD FLOOR HOLLYWOOD FL. 33020_

Telephone: _954 927 7770_    Fax: _954 927 7702_

Name of person to contact with questions regarding responses to this form:
_DAVID GRIFFEE_

a.  What is your state of incorporation? _FLORiDA_
    Is your company currently in good standing in that state? (Yes)No.
    Please attach a copy of your certificate of incorporation. _✓ ATTACHMENT 3_

b.  What states do you currently do business in?
    _FLORiDA_

c.  Please attach copies of federal and applicable state tax-exempt certificates. A state tax-exempt certificate must be presented for each state you are certified to resell in. _ATTACHMENT 4_

d.  In which states are you qualified to do business as a foreign corporation?
    _SEE ATTACHMENTS 1 AND 2_

e.  In which states are you certified by the state utility commission to resell long distance service?
    _SEE ATTACHMENTS 1 AND 2_

    Please attach copies of all certificates, and for those states, which require an informational filing, please attach copies of those filings.

f.  Do you have an interstate tariff on file with the FCC? (Yes)No. If so, please provide the date the first tariff was filed. _1-26-98_

\\ATLAS-1\SYS\WORD\LEGAL\WORD\USDIGIT\USDGCON6.DOC- 14 -       Initialed _____ Initialed _____

g.  Do you have an international tariff or Section 214 authorization on file with the FCC? (Yes)/No. If so, please provide the date the first tariff or the Section 214 authorization was filed.

_1-26-98_

I swear the foregoing information is true and correct.

_David R. Ary_

Signature

DAVID R. GRIFFEE

Print Name

PRESIDENT

Title

U.S. DIGITEL INC.

Company Name

STATE OF                              )
                                     SS.
COUNTY OF                             )

On this 5ᵗʰ day of February, 1998, the foregoing instrument was acknowledged before me by David Griffee.

In witness whereof, I have set my hand and official seal this 5 day of February, 1998.

_Joan Casasanta_
Notary Public

My commission expires:

OFFICIAL NOTARY SEAL
JOAN CASASANTA
NOTARY PUBLIC STATE OF FLORIDA
COMMISSION NO. CC529759
MY COMMISSION EXP. FEB. 1, 2000

## SCHEDULE C

### PAYPHONE SURCHARGE AFFIRMATION ADDENDUM

Customer acknowledges that it is solely responsible to make any and all payphone service provider surcharges levied by the Federal Communications Commission, or any state regulatory body. Neither Atlas nor any long distance provider from whom Atlas purchases long distance services has or will make payphone surcharge payments on your behalf.

Atlas shall provide Customer with any information in its possession that would permit the identification of payphones as the source for toll-free calls.

Acknowledged by:

\\ATLAS-1\SYS\WORD\LEGAL\WORD\USDIGIT\USDGCON6.DOC- 16 -          Initialed _____ Initialed _____

**SCHEDULE D**

**RATES, RAMP UP, AND COMMITMENT**

This Schedule is made as of the Agreement Date and forms a part of the Carrier Dedicated Services Agreement (the "Agreement"). Capitalized terms used herein without other definition shall be defined as in the Agreement.

The rates for Dedicated Services are set forth in the attached Schedules D-1, D-2, D-3, D-4.

Throughout the term of this Agreement, Customer shall maintain a minimum of Monthly Revenues in accordance with the table set forth below ("Minimum Monthly Commitment"). Customer will be invoiced and agrees to pay any shortfall (the difference between the Minimum Monthly Commitment and Monthly Revenue) in meeting its Minimum Monthly Commitment. For purposes of this Agreement, "Monthly Revenues" for any month shall mean and include the aggregate amount of all usage charges for services provided by or through Atlas to Customer under this Agreement included in the monthly statement for such month.

In the event the aggregate of Customer's Monthly Revenues exceed ~~two million dollars ($2,000,000.00)~~ *ONE MILLION FOUR HUNDRED THOUSAND DOLLARS* at any *(1,400,000.00)* time during the initial ~~twenty-four (24)~~ *EIGHTEEN (18)* month Services Term (the Aggregate Commitment), then the Minimum Monthly Commitment for the remaining months during the initial Services Term shall be waived.

| MONTH | MINIMUM MONTHLY COMMITMENT (EACH MONTH) |
|---|---|
| 0-3 | None |
| 4 | $20,000.00 |
| 5 | $30,000.00 |
| 6 | $40,000.00 |
| 7 | $60,000.00 |
| 8-24 | $100,000.00 |
| 25 to end of Services Term | $100,000.00 |

Customer will receive a refund or credit of the shortfall charges assessed and paid during the seven month ramp period of the initial Services Term upon meeting its $100,000.00 monthly commitments or upon meeting the Aggregate Commitment.

The undersigned Atlas and Customer confirm that the foregoing is the Terms Schedule to the Agreement.

**ATLAS COMMUNICATIONS, LTD.**

By: _____
Print name: Zachary L. Grayson
Title: General Counsel
Date: 2/9/98

**US DIGITEL, INC.**

By: _____
Print name: DAVID R. GROFFEE
Title: PRESIDENT
Date: 2-3-98

\\ATLAS-1\SYS\WORD\LEGAL\WORD\USDIGIT\USDGCON6.DOC - 17 -    Initialed _____ Initialed

## DEDICATED TRANSPORT RATES

| Interstate Long Haul Transport ONLY Per Minute Buy Rates | | | | |
|---|---|---|---|---|
| **GROSS VOLUME in $** | **OUTBOUND Transport** | **\*Terminating Charges for State & LATA** | | **Total Cost** |
| $      0-K - $100,000K | $0.0220 | + | = | |
| $100,001K - $150,000K | $0.0200 | + | = | |
| $150,001K - $200,000K | $0.0195 | + | = | |
| $200,001K - $250,000K | $0.0190 | + | = | |
| $250,001K - $350,000K | $0.0180 | + | = | |
| Over $350,001K | $0.0175 | + | = | |
| | | | | |
| *EXAMPLE* | **OUTBOUND Transport** | **\*California LATA 1** | | **Total Cost** |
| $ 50K - $100K | $0.0220 | + $0.0198 | = | $0.0418 |

\*See Lec Access Schedule for terminating access charges.

CONFIDENTIAL

Initials _____ Initials

## DEDICATED TRANSPORT RATES

| Interstate Long Haul Transport ONLY Per Minute Buy Rates | | | |
|---|---|---|---|
| GROSS VOLUME in $ | INBOUND Transport | *Orginating Charges for State & LATA | Total Cost |
| $      0-K - $100,000K | $0.0235 | + | = |
| $100,001K - $150,000K | $0.0215 | + | = |
| $150,001K - $200,000K | $0.0210 | + | = |
| $200,001K - $250,000K | $0.0205 | + | = |
| $250,001K - $350,000K | $0.0200 | + | = |
| Over $350,001K | $0.0190 | + | = |

| EXAMPLE | INBOUND Transport | *California LATA 1 | Total Cost |
|---|---|---|---|
| $  50K - $100K | $0.0235 | + $0.0228 | = $0.0463 |

*See Lec Access Schedule for origination access charges.

CONFIDENTIAL

Initials _____ Initials _____

| State | No. | Company | Orig | Term |
|---|---|---|---|---|
| AL | 1 | BELL SOUTH | 0.0290 | 0.0267 |
| AR | 1 | SWBT | 0.0283 | 0.0248 |
| AZ | 1 | US WEST | 0.0297 | 0.0258 |
| CA | 1 | PACIFIC TEL | 0.0228 | 0.0198 |
| CO | 1 | US WEST | 0.0297 | 0.0259 |
| CT | 1 | SNET | 0.0308 | 0.0263 |
| CT | 1 | NYNEX | 0.0423 | 0.0363 |
| DC | 1 | BELL ATL | 0.0230 | 0.0200 |
| DE | 1 | BELL ATL | 0.0239 | 0.0208 |
| FL | 1 | BELL SOUTH | 0.0275 | 0.0260 |
| GA | 1 | BELL SOUTH | 0.0275 | 0.0261 |
| IA | 1 | US WEST | 0.0298 | 0.0259 |
| ID | 1 | US WEST | 0.0314 | 0.0278 |
| IL | 1 | AMERITECH | 0.0193 | 0.0168 |
| IN | 1 | AMERITECH | 0.0271 | 0.0236 |
| KS | 1 | SWBT | 0.0280 | 0.0245 |
| KY | 1 | BELL SOUTH | 0.0279 | 0.0267 |
| LA | 1 | BELL SOUTH | 0.0286 | 0.0271 |
| MA | 1 | NYNEX | 0.0421 | 0.0366 |
| MD | 1 | BELL ATL | 0.0231 | 0.0201 |
| ME | 1 | NYNEX | 0.0445 | 0.0389 |
| MI | 1 | AMERITECH | 0.0271 | 0.0236 |
| MN | 1 | US WEST | 0.0295 | 0.0257 |
| MO | 1 | SWBT | 0.0275 | 0.0240 |
| MS | 1 | BELL SOUTH | 0.0313 | 0.0294 |
| MT | 1 | US WEST | 0.0310 | 0.0272 |
| NC | 1 | BELL SOUTH | 0.0276 | 0.0262 |
| ND | 1 | US WEST | 0.0302 | 0.0268 |
| NE | 1 | US WEST | 0.0300 | 0.0262 |
| NH | 1 | NYNEX | 0.0427 | 0.0373 |
| NJ | 1 | BELL ATL | 0.0231 | 0.0201 |
| NM | 1 | US WEST | 0.0302 | 0.0264 |
| NV | 1 | PACIFIC TELESIS | 0.0262 | 0.0228 |
| NY | 1 | NYNEX | 0.0352 | 0.0306 |
| OH | 1 | AMERITECH | 0.0279 | 0.0242 |
| OK | 1 | SWBT | 0.0280 | 0.0245 |
| OR | 1 | US WEST | 0.0297 | 0.0258 |
| PA | 1 | BELL ATL | 0.0232 | 0.0202 |
| RI | 1 | NYNEX | 0.0419 | 0.0365 |
| SC | 1 | BELL SOUTH | 0.0275 | 0.0260 |
| SD | 1 | US WEST | 0.0347 | 0.0302 |
| TN | 1 | BELL SOUTH | 0.0278 | 0.0264 |
| TX | 1 | SWBT | 0.0274 | 0.0238 |
| UT | 1 | US WEST | 0.0296 | 0.0260 |
| VA | 1 | BELL ATL | 0.0232 | 0.0203 |
| VT | 1 | NYNEX | 0.0443 | 0.0387 |
| WA | 1 | US WEST | 0.0295 | 0.0256 |
| WI | 1 | AMERITECH | 0.0268 | 0.0233 |
| WV | 1 | BELL ATL | 0.0235 | 0.0205 |
| WY | 1 | US WEST | 0.0335 | 0.0305 |
| FL | 2 | SPRINT LTD | 0.0324 | 0.0338 |
| IL | 2 | SPRINT LTD | 0.0306 | 0.0265 |
| IN | 2 | SPRINT LTD | 0.0376 | 0.0481 |
| KS | 2 | SPRINT LTD | 0.0453 | 0.0615 |
| MN | 2 | SPRINT LTD | 0.0434 | 0.0619 |
| MO | 2 | SPRINT LTD | 0.0424 | 0.0623 |
| NC | 2 | SPRINT LTD | 0.0315 | 0.0314 |
| NE | 2 | SPRINT LTD | 0.0439 | 0.0632 |
| NJ | 2 | SPRINT LTD | 0.0324 | 0.0295 |
| NV | 2 | SPRINT LTD | 0.0143 | 0.0103 |
| OH | 2 | SPRINT LTD | 0.0409 | 0.0487 |
| OR | 2 | SPRINT LTD | 0.0628 | 0.0709 |
| PA | 2 | SPRINT LTD | 0.0324 | 0.0300 |
| SC | 2 | SPRINT LTD. | 0.0268 | 0.0326 |

| State | No. | Company | Orig | Term |
|---|---|---|---|---|
| TN | 2 | SPRINT LTD | 0.0253 | 0.0316 |
| TX | 2 | SPRINT LTD. | 0.0432 | 0.0635 |
| VA | 2 | SPRINT LTD. | 0.0267 | 0.0323 |
| WA | 2 | SPRINT LTD. | 0.0584 | 0.0675 |
| WY | 2 | SPRINT LTD. | 0.0539 | 0.0720 |
| AL | 3 | GTE | 0.0392 | 0.0430 |
| AR | 3 | GTE | 0.0389 | 0.0508 |
| CA | 3 | GTE | 0.0284 | 0.0352 |
| FL | 3 | GTE | 0.0285 | 0.0382 |
| HI | 3 | GTE | 0.0426 | 0.0467 |
| IA | 3 | GTE | 0.0434 | 0.0536 |
| ID | 3 | GTE | 0.0515 | 0.0545 |
| IL | 3 | GTE | 0.0412 | 0.0470 |
| IN | 3 | GTE | 0.0362 | 0.0406 |
| KY | 3 | GTE | 0.0406 | 0.0469 |
| MI | 3 | GTE | 0.0416 | 0.0473 |
| MN | 3 | GTE | 0.0348 | 0.0416 |
| MO | 3 | GTE | 0.0366 | 0.0455 |
| NC | 3 | GTE | 0.0366 | 0.0447 |
| NE | 3 | GTE | 0.0438 | 0.0427 |
| NM | 3 | GTE | 0.0509 | 0.0506 |
| OH | 3 | GTE | 0.0391 | 0.0440 |
| OK | 3 | GTE | 0.0349 | 0.0427 |
| OR | 3 | GTE | 0.0387 | 0.0450 |
| PA | 3 | GTE | 0.0344 | 0.0392 |
| SC | 3 | GTE | 0.0376 | 0.0447 |
| TX | 3 | GTE | 0.0376 | 0.0680 |
| VA | 3 | GTE | 0.0259 | 0.0416 |
| WA | 3 | GTE | 0.0388 | 0.0447 |
| WI | 3 | GTE | 0.0442 | 0.0488 |
| AR | 4 | ALLTEL | 0.0852 | 0.0740 |
| AZ | 4 | CITIZENS | 0.0606 | 0.0792 |
| CA | 4 | CONTEL/CA | 0.0472 | 0.0685 |
| CO | 4 | PTI | 0.0458 | 0.0401 |
| GA | 4 | ALLTEL | 0.0296 | 0.0449 |
| IA | 4 | CEA-INS | 0.0837 | 0.0731 |
| ID | 4 | CITIZENS | 0.0480 | 0.0682 |
| IL | 4 | TCG | 0.0230 | 0.0147 |
| KY | 4 | CINN BELL | 0.0238 | 0.0207 |
| LA | 4 | CENTURY | 0.0827 | 0.0720 |
| ME | 4 | TDS | 0.0846 | 0.0734 |
| MI | 4 | CENTURY | 0.0818 | 0.0716 |
| MN | 4 | CEA-MEANS | 0.0885 | 0.0782 |
| MO | 4 | ALLTEL | 0.0371 | 0.0312 |
| MS | 4 | CENTURY | 0.0805 | 0.0700 |
| MT | 4 | PTI | 0.0512 | 0.0445 |
| NC | 4 | ALLTEL | 0.0213 | 0.0185 |
| NE | 4 | LINCOLN | 0.0314 | 0.0266 |
| NV | 4 | CONTEL/CA | 0.0349 | 0.0444 |
| NY | 4 | TCG | 0.0339 | 0.0292 |
| OH | 4 | CINN BELL | 0.0246 | 0.0205 |
| OK | 4 | ALLTEL | 0.0616 | 0.0517 |
| OR | 4 | PTI | 0.0440 | 0.0380 |
| PA | 4 | ALLTEL | 0.0330 | 0.0282 |
| SC | 4 | ALLTEL | 0.0277 | 0.0243 |
| SD | 4 | CEA-SDN | 0.0868 | 0.0759 |
| TN | 4 | TDS | 0.0803 | 0.0695 |
| UT | 4 | CITIZENS | 0.0552 | 0.0747 |
| VT | 4 | TDS | 0.0848 | 0.0739 |
| WA | 4 | PTI | 0.0417 | 0.0348 |
| WI | 4 | CENTURY | 0.0733 | 0.0638 |
| WV | 4 | CITIZENS | 0.0499 | 0.0711 |
| PA | 4 | PTI | 0.0461 | 0.0452 |
| AR | 5 | CENTURY | 0.0881 | 0.0767 |

| State | No. | Company | Orig | Term |
|---|---|---|---|---|
| IA | 5 | ROCHESTER | 0.0458 | 0.0413 |
| MN | 5 | ROCHESTER | 0.0445 | 0.0391 |
| MT | 5 | CITIZENS | 0.0487 | 0.0687 |
| NV | 5 | CITIZENS | 0.0827 | 0.0804 |
| NY | 5 | ROCHESTER | 0.0290 | 0.0246 |
| OH | 5 | ALLTEL | 0.0472 | 0.0411 |
| TN | 5 | CITIZENS | 0.0512 | 0.0697 |
| WI | 5 | PTI | 0.0809 | 0.0706 |
| NY | 6 | CITIZENS | 0.0459 | 0.0668 |
| OH | 6 | CENTURY | 0.0438 | 0.0400 |
| WI | 6 | TDS | 0.0814 | 0.0712 |
| AK | 7 | LEC OTHER | 0.2072 | 0.1208 |
| AL | 7 | LEC OTHER | 0.0761 | 0.0654 |
| AR | 7 | LEC OTHER | 0.0854 | 0.0739 |
| AZ | 7 | LEC OTHER | 0.0807 | 0.0725 |
| CA | 7 | LEC OTHER | 0.0414 | 0.0450 |
| CO | 7 | LEC OTHER | 0.0784 | 0.0695 |
| CT | 7 | LEC OTHER | 0.0669 | 0.0709 |
| DC | 7 | LEC OTHER | 0.0935 | 0.0727 |
| DE | 7 | LEC OTHER | 0.0935 | 0.0727 |
| FL | 7 | LEC OTHER | 0.0451 | 0.0405 |
| GA | 7 | LEC OTHER | 0.0735 | 0.0659 |
| HI | 7 | LEC OTHER | 0.0935 | 0.0727 |
| IA | 7 | LEC OTHER | 0.0822 | 0.0498 |
| ID | 7 | LEC OTHER | 0.0839 | 0.0689 |
| IL | 7 | LEC OTHER | 0.0579 | 0.0443 |
| IN | 7 | LEC OTHER | 0.0816 | 0.0711 |
| KS | 7 | LEC OTHER | 0.0904 | 0.0750 |
| KY | 7 | LEC OTHER | 0.0756 | 0.0663 |
| LA | 7 | LEC OTHER | 0.0665 | 0.0551 |
| MA | 7 | LEC OTHER | 0.0440 | 0.0365 |
| MD | 7 | LEC OTHER | 0.0372 | 0.0635 |
| ME | 7 | LEC OTHER | 0.0826 | 0.0723 |
| MI | 7 | LEC OTHER | 0.0666 | 0.0651 |
| MN | 7 | LEC OTHER | 0.0786 | 0.0681 |
| MO | 7 | LEC OTHER | 0.0843 | 0.0674 |
| MS | 7 | LEC OTHER | 0.0489 | 0.0525 |
| MT | 7 | LEC OTHER | 0.0855 | 0.0689 |
| NC | 7 | LEC OTHER | 0.0650 | 0.0565 |
| ND | 7 | LEC OTHER | 0.0814 | 0.0679 |
| NE | 7 | LEC OTHER | 0.0810 | 0.0699 |
| NH | 7 | LEC OTHER | 0.0810 | 0.0699 |
| NJ | 7 | LEC OTHER | 0.0472 | 0.0414 |
| NM | 7 | LEC OTHER | 0.0881 | 0.0897 |
| NV | 7 | LEC OTHER | 0.0667 | 0.0760 |
| NY | 7 | LEC OTHER | 0.0585 | 0.0511 |
| OH | 7 | LEC OTHER | 0.0608 | 0.0561 |
| OK | 7 | LEC OTHER | 0.0840 | 0.0722 |
| OR | 7 | LEC OTHER | 0.0804 | 0.0796 |
| PA | 7 | LEC OTHER | 0.0756 | 0.0653 |
| PR | 7 | LEC OTHER | 0.0582 | 0.0482 |
| RI | 7 | LEC OTHER | 0.0935 | 0.0727 |
| SC | 7 | LEC OTHER | 0.0657 | 0.0571 |
| SD | 7 | LEC OTHER | 0.0848 | 0.0622 |
| TN | 7 | LEC OTHER | 0.0712 | 0.0643 |
| TX | 7 | LEC OTHER | 0.0575 | 0.0508 |
| UT | 7 | LEC OTHER | 0.0859 | 0.0757 |
| VA | 7 | LEC OTHER | 0.0773 | 0.0684 |
| VI | 7 | LEC OTHER | 0.0381 | 0.0293 |
| VT | 7 | LEC OTHER | 0.0808 | 0.0673 |
| WA | 7 | LEC OTHER | 0.0705 | 0.0610 |
| WI | 7 | LEC OTHER | 0.0790 | 0.0692 |
| WV | 7 | LEC OTHER | 0.0826 | 0.0779 |
| WY | 7 | LEC OTHER | 0.0603 | 0.0779 |

# DEDICATED INTRASTATE RATES

| State | Dedicated Outbound Direct | Dedicated Inbound Direct Toll Free |
|---|---|---|
| Alaska | $0.1805 | $0.1805 |
| Alabama | $0.0588 | $0.0588 |
| Arkansas | $0.0694 | $0.0694 |
| Arizona | $0.1047 | $0.1047 |
| California "A" | $0.0386 | $0.0405 |
| California "B" | $0.0386 | $0.0405 |
| Colorado | $0.1022 | $0.1000 |
| Connecticut | $0.0647 | $0.0647 |
| Delaware | $0.0647 | $0.0647 |
| Florida | $0.0861 | $0.0754 |
| Georgia | $0.0706 | $0.0706 |
| Hawaii | $0.1718 | $0.1718 |
| Iowa | $0.1000 | $0.1000 |
| Idaho | $0.1066 | $0.1106 |
| Illinois | $0.0482 | $0.0482 |
| Indiana | $0.0824 | $0.0824 |
| Kansas | $0.1235 | $0.1235 |
| Kentucky | $0.0714 | $0.0699 |
| Louisiana | $0.0824 | $0.0824 |
| Massachusetts | $0.0706 | $0.0706 |
| Maryland | $0.0633 | $0.0633 |
| Maine | $0.1765 | $0.1847 |
| Michigan | $0.0824 | $0.0824 |
| Minnesota | $0.1059 | $0.1059 |
| Missouri | $0.1059 | $0.1059 |
| Mississippi | $0.0682 | $0.0682 |
| Montana | $0.1059 | $0.1051 |
| North Carolina | $0.1055 | $0.1055 |
| North Dakota | $0.1059 | $0.1094 |
| Nebraska | $0.1235 | $0.1235 |
| New Hampshire | $0.1059 | $0.1059 |
| New Jersey | $0.0781 | $0.0781 |
| New Mexico | $0.1235 | $0.1235 |
| Nevada | $0.0765 | $0.0765 |
| New York | $0.0676 | $0.0676 |
| Ohio | $0.0812 | $0.0812 |
| Oklahoma | $0.0812 | $0.0812 |
| Oregon | $0.1000 | $0.1000 |
| Pennsylvania | $0.0929 | $0.0929 |
| Rhode Island | $0.0694 | $0.0807 |
| South Carolina | $0.0948 | $0.0694 |
| South Dakota | $0.0824 | $0.0824 |
| Tennessee | $0.1059 | $0.1059 |
| Texas | $0.1101 | $0.1000 |
| Utah | $0.0941 | $0.0941 |
| Virginia | $0.0906 | $0.0906 |
| Vermont | $0.1353 | $0.1353 |
| Washington | $0.1118 | $0.1118 |
| Wisconsin | $0.0824 | $0.0824 |
| West Virginia | $0.0882 | $0.0901 |
| Wyoming | $0.1647 | $0.1647 |

CONFIDENTIAL

Initials _____ Initials 391

**Schedule D-4**
**CANADA ORIGINATION**

<u>**CANADA**</u>

**CANADA Originating Service**

| Direct<br>Toll Free |
|---|
| Dedicated<br>Inbound |

$0.1694

CONFIDENTIAL

Initials _____ Initials _____

# Schedule E
# Non-Usage Charges
### (Underlying Carrier Network - Sprint)

| Description | Install / One Time Charges | | Monthly Recurring Charges |
|---|---|---|---|
| **Dedicated Install & MRC Charges** | | | |
| T-1 Local Loop | $ 1165 .00* | Waived | Tariffed |
| Central Office Connection Fee | $ 327.00 * | Waived | Waived |
| Acccess Coordination Fee | $ 207.00 * | Waived | Waived |
| Entrance Facility Connection | N/A | Waived | Waived |
| T-1 Installation and Coordination Charge per T-1 | $ 400.00 | $ - | |
| DS3 Coordination Fee (AAV) | $ 600.00 | $ - | |
| Bi-Directional T-1 fee /per T-1 | $ - | $ 50.00 | |
| Charge per T-1 fee / per T-1 | $ - | $ 50.00 | |
| | | | |
| **Dedicated ISDN Charges** | | | |
| ISDN T-1 Access | $ 1165 .00* | Waived | Tariff |
| T-1 Installation and Coordination Charge per T-1 | $ 400.00 | $ - | |
| D Channel | $ 2,000.00 | $ 300.00 | |
| Backup D | $ 2,000.00 | $ 100.00 | |
| ANI Delivery | $ 200.00 | N/A | |
| | | | |
| **Dedicated Expedite Fees / T-1 / DS3 \*\*** | | | |
| 0 - 5 Days | $ 1,000.00 ** | N/A | |
| 6 - 10 Days | $ 825.00 ** | N/A | |
| 11 - 14 Days | $ 650.00 ** | N/A | |
| 15 - 20 Days | $ 475.00 ** | N/A | |
| 21 - 29 Days | $ 300.00 ** | N/A | |
| DS3 - Access Expedite Charge | $ 500.00 ** | N/A | |
| | | | |
| **Minimum Port Charg** | $ 150.00 | N/A | |
| | | | |
| **Account Code Charges** | | | |
| Verified Accounting Codes- Dedicated | $ 20.00 | $ 10.00 | |
| Non-Verified Accounting Codes -Dedicated | N/C | $ 15.00 | |
| | | | |
| **Toll Free Number Features:** | | | |
| Route Advance (Off-Net) | N/A | $ 36.40 | Plus $0.10 per minute |
| Route Advance (On-Net) | N/A | $ 50.00 | |
| | | | |
| Area Code Selection | $ 50.00 | N/A | |
| Area Code / Exchange Selection | $ 50.00 | N/A | |

**Atlas Communications, Ltd.**
**Confidential**

Initials *[signature]* Intitials *[signature]*

# Non-Usage Charges
**(Underlying Carrier Network - Sprint)**

| Description | Install / One Time Charges | Monthly Recurring Charges |
|---|---|---|
| **Toll Free Number Features:** | | |
| **Enhanced 800 Features:** | | |
| 1 - 3    Route Sets | See Routing Features | $           - |
| 4 - 12    Route Sets | See Routing Features | $      250.00 |
| 13 - 99    Route Sets | See Routing Features | $      450.00 |
| | | |
| Area Code Routing | $      50.00 | Routing Plans As Above |
| Area Code / Exchange Routing | $      50.00 | Routing Plans As Above |
| Call Allocation | $      50.00 | Routing Plans As Above |
| Day of Week | $      50.00 | Routing Plans As Above |
| Day of Year | $      50.00 | Routing Plans As Above |
| Time of Day | $      50.00 | Routing Plans As Above |
| | | |
| **Command Routing** | $50 per/activation of alternative routing plan | |
| | | |
| **Enhanced 800 Change Charge** | $      50.00 | |
| | | |
| **Monthly Toll Free Number Charges** | | |
| Monthly Service Group Charge /Toll Free | N/A | $      50.00 |
| Monthly Toll Free Number Charge | N/A | Waived |
| | | |
| **International Toll Free Number Charges** | Waived | $      10.00 |
| | | |
| Directory Listing / Per Number | N/C | $      15.00 |
| | | |
| **CDR Tape Charge** | | $ 50 per Tape, plus $0.003 per CDR |

*Atlas Communications, Ltd.*
*Confidential*

Initials _____   Initials _____

## Schedule E
## Non-Usage Charges
### (Underlying Carrier Network - Sprint)

| LEC Cap Charges | Maximum Originating Non-Bell Traffic % | Maximum Terminating Non-Bell Traffic % | Non-Bell Surcharge | |
|---|---|---|---|---|
| Dedicated Outbound | N/A | N/A | N/A | |
| Dedicated Toll Free Service | N/A | N/A | N/A | |
| Switched One Plus | 30% | 30% | $ | 0.06 |
| Switched Toll Free Service | 30% | 30% | $ | 0.06 |
| Calling Card | 30% | 30% | $ | 0.06 |

| Noncomplete Call Charges Dedicated & Switched Traffic | Maximum Non-Complete Toll Free Call Percentage | Per Call Surcharge | |
|---|---|---|---|
| Intrastate / Interstate | 10% | $ | 0.05 |
| International / Canadian | 10% | $ | 0.25 |

Rates are subject to change.  Charges not listed in Schedule _____ , will be charged according to Atlas' or its underlying Carrier's applicable tariffs or at Atlas' cost.

Additional Services or Special Customer Applications will be passed onto customer at Atlas's cost.

* Install Charges will be waived provided such T-1s remain in service for a period of 24 months. If a T-1 is taken out of service for any reason within 24 months of installation, Customer will be debited back a prorated portion of the amount that was originally credited.

Atlas requires a 30 day notification when canceling a dedicated facility.  Upon cancellation of dedicated facilities, Atlas will continue to charge customer for 30 days following a formal cancellation request.  If customer provided access, Atlas must receive a Firm Order Commitment from the alternative access provider in order to disconnect/cancel services.

** If customer requests for services to be expedited, expedite charges will apply. Expedited requests are not guaranteed by Atlas or Atlas' underlying carrier.

*Atlas Communications, Ltd.*
*Confidential*

Initials _____ Initials _____

**SCHEDULE F**

**BLANKET LETTER OF AGENCY**

On _2- 3-9 8_ , Customer entered into an agreement with Atlas Communications, Ltd. for the

purpose of ordering telecommunications services.

Under the terms of this agreement and by this letter, Customer authorizes Atlas Communications, Ltd. to

issue orders for services, which are in the name of Customer.

The parties each acknowledge that the LOAs and/or VLOAs with such orders are the property of Customer.

This Letter of Agency will remain in effect until rescinded in writing by Customer and delivered to Atlas

Communications, Ltd. upon sixty (60) days written notice.

**US DIGITEL, INC.:**                      **ATLAS COMMUNICATIONS, LTD.:**

DAVID R. GRIFFEE                           3 Grayson
Name                                       Name

_(signature)_                              _(signature)_
Signature                                  Signature

PRESIDENT                                  Gene Counsel
Title                                      Title

2-3-98                                     2-9-98
Date                                       Date

\\ATLAS-1\SYS\WORD\LEGAL\WORD\USDIGIT\USDGCON6.DOC- 18 -          Initialed _____ Initialed 3M

*Jere J. Lane P.A.*
*Attorney at Law*

8280 SOUTHWEST 104TH STREET
MIAMI, FLORIDA 33156
———
TELEPHONE (305) 279-7047
TELECOPIER (305) 273-0245

Thursday, January 29, 1998

Atlas Communications Ltd.
482 Norristown Road
Blue Bell, PA  19422

**Via Certified Mail**

**Re: Carrier Dedicated Services Agreement**

Gentlemen:

The undersigned is an attorney in good standing with the Florida Bar bearing Florida Bar # 269573 and a member of the Federal Trial Bar. The undersigned was requested to verify certain facts as they relate to the pending contract that U.S. Digitel Inc. anticipates will be entered into by and between Atlas Communications Ltd. And U.S. Digitel Inc.

Therefore please be advised that the undersigned is actively in the process of certifying and registering U.S. Digitel Inc., with the various Public Utilities Commissions (or their equivalents by different names in different states). As of the date of this letter U.S. Digitel Inc. has been authorized to conduct its business by the PUC's of approximately 18 states and the applications for the remaining states are either pending or in the process of being filed. No applications have been rejected.

This letter confirms that U.S. Digitel Inc. has retained the services of Jere J. Lane CPA and the undersigned to register and certify U.S. Digitel Inc. in all 50 states and that process has been vigorously pursued for the past month. It is anticipated that the process of approval in all 50 states will be completed in late February.

Please be further advised that the undersigned has reviewed the following requirements of the proposed agreement between U.S. Digitel Inc. and Atlas Communications Ltd., and that U.S. Digitel Inc. is in strict compliance with the following:

5.1. Customer Represents And Warrants As Follows:

(a) Good Standing:
Customer is an entity as described on the face sheet hereof, duly formed, validly existing and in good standing under the laws of the jurisdiction of its organization, and in those jurisdictions in which it conducts business.

*ATTACHMENT #1*

(b) Corporate Authority:

The execution, delivery and performance by customer of this agreement and the related documents are within customers corporate powers, have been duly authorized by all necessary corporate action, do not require the consent of any person, and as contemplated by this agreement, do not contravene (i) customer's charter or, by-laws or (ii) any law, regulation or contractual or other restriction binding on or affecting customer, and do not, or will not, result in, require the creation of, or conflict with, any lien, security interest or other charge or encumbrance (other than pursuant hereto) upon or with respect to any of its properties.

(c) Governmental Authority:

No authorization or approval or other action by, and no notice to or filing with, any governmental authority or regulatory body is required for the due execution, delivery and performance by customer of this agreement or any related document to which it is or will be a party except as contemplated by this agreement which will, or have been, duly secured.

(d) Legality:

This agreement is, and each other related document to which customer will be a party when delivered hereunder will be, legal, valid and binding obligations of customer enforceable against customer in accordance with their respective terms.

(e) Pending Or Threatened Actions:

There is no pending or threatened action or proceeding affecting customer or any of its parent companies, subsidiaries or affiliates before any court, governmental agency or arbitrator, which may adversely affect (i) the financial condition or operations of customer or any such parent company, subsidiary or affiliate or (ii) customer's ability to perform under this agreement.

(f) Misrepresentations:

No representation, warranty or statement by customer in this agreement, the related documents, or any other documents, instruments or communication delivered by customer to Atlas or its representatives in connection with the transactions contemplated hereunder contains or will contain any untrue statement of a material fact or omits or will omit to state any material fact necessary to make the statements contained herein or therein not misleading.

5.2  Customer Makes The Following Covenants For The Services Term:

(a) Regulatory compliance:

Customer is an Interexchange carrier of interstate and international services, as duly tariffed before the FCC. and certified for intrastate services by various state PUC's. Customer shall comply, and cause each of its subsidiaries and affiliates to comply, in all material respects with all applicable laws, rules, statutes and regulations of the FCC, the PUC and the rules, regulations and orders of courts and any other applicable regulatory bodies and agencies.

(b) Material Transactions.

Customer shall not, without advanced written consent from atlas, reorganize, engage in any transaction that could result in a change of control of its ownership, consolidate with or merge into any other person or convey, transfer or lease all, or substantially all of its assets to any person unless the person formed by such consolidation or into which it is merged or the person which acquires by conveyance, transfer or lease all or substantially all of its assets or control, shall: (i) assume in writing all of the obligations of customer hereunder and under the other related documents and such person, in the sole judgment of Atlas, is capable of performing and financially able to perform, without increased risk to Atlas, such obligations and (ii) provide such other written representations and other

security as are acceptable to atlas. However, Atlas shall not unreasonably withhold its approval to a proposed change in control of ownership, change in corporate structure, or intended transfer of assets, If this agreement is expressly assumed and customer supplies such financial data and other information reasonably requested by Atlas for Atlas' determination of risk, and thereafter, upon Atlas' request and customer's compliance with additional security demands made by Atlas in its sole discretion.

Therefore, you may rest assured that U.S. Digitel Inc. is a Florida corporation in good standing and that the agreements that are contemplated by and between U.S. Digitel Inc. and Atlas Communications Ltd., are authorized by both the corporate charter of U.S. Digitel Inc. and Florida Statutes.

Please feel free to contact the undersigned to further confirm or discuss the representations made herein or other matters relevant to your concerns.

Sincerely,

Jerrell A. Breslin, P.A.
Attorney at Law

State of Florida
County of Broward
    Appeared before me, Jerrell A. Breslin, on Thursday, January 29, 1998, and after being duly sworn affixed his signature hereto.

Notary Public

Jere J Lane
My Commission CC603172
Expires November 21, 2000

cc:
David Griffee, President U.S. Digitel Inc.
Craig Waltzer, CFO, U.S. Digitel Inc.
Jere J. Lane, CPA, U.S. Digitel Inc.

**STATE OF FLORIDA**

Commissioners:
JULIA L. JOHNSON, CHAIRMAN
J. TERRY DEASON
SUSAN F. CLARK
JOE GARCIA
E. LEON JACOBS, JR.



DIVISION OF RECORDS & REPORTING
BLANCA S. BAYÓ
DIRECTOR
(850) 413-6770

# Public Service Commission

January 28, 1998

Jere J. Lane, CPA
2901 NW 112 Avenue
Coral Springs, Florida  33065

Re: Docket No. 980123-TI

Dear Jere Lane:

This will acknowledge receipt of an application for certificate to provide interexchange telecommunications service by U.S. Digitel, Inc., which was filed in this office on January 26, 1998 and assigned the above-referenced docket number. Appropriate staff members will be advised.

Mediation may be available to resolve any dispute in this docket. If mediation is conducted, it does not affect a substantially interested person's right to an administrative hearing. For more information, contact the Office of General Counsel at (850) 413-6078 or FAX (850) 413-6079.

Please make notes as well that Commission Rule 25-22.005(7), F.A.C., requires certificated companies to notify the Commission of any changes in name, telephone, address, or contact person. Should your application be granted by the Commission, you will be expected to comply with this rule by advising us of any changes as they occur.

Division of Records and Reporting
Florida Public Service Commission

*ATTACHMENT 2*



**FLORIDA DEPARTMENT OF STATE**
Sandra B. Mortham
Secretary of State

December 22, 1997

U.S. DIGITEL, INC.
ATTN: CRAIG WALTZER
1909 TYLER ST.
HOLLYWOOD, FL  33020

The Articles of Incorporation for U.S. DIGITEL, INC. were filed on December 19, 1997 and assigned document number P97000106975. Please refer to this number whenever corresponding with this office regarding the above corporation.

PLEASE NOTE:  COMPLIANCE WITH THE FOLLOWING PROCEDURES IS ESSENTIAL TO MAINTAINING YOUR CORPORATE STATUS.  FAILURE TO DO SO MAY RESULT IN DISSOLUTION OF YOUR CORPORATION.

A CORPORATION ANNUAL REPORT MUST BE FILED WITH THIS OFFICE BETWEEN JANUARY 1 AND MAY 1 OF EACH YEAR BEGINNING WITH THE CALENDAR YEAR FOLLOWING THE YEAR OF THE FILING DATE NOTED ABOVE AND EACH YEAR THEREAFTER. FAILURE TO FILE THE ANNUAL REPORT ON TIME MAY RESULT IN ADMINISTRATIVE DISSOLUTION OF YOUR CORPORATION.

A FEDERAL EMPLOYER IDENTIFICATION (FEI) NUMBER MUST BE SHOWN ON THE ANNUAL REPORT FORM PRIOR TO ITS FILING WITH THIS OFFICE. CONTACT THE INTERNAL REVENUE SERVICE TO INSURE THAT YOU RECEIVE THE FEI NUMBER IN TIME TO FILE THE ANNUAL REPORT. TO OBTAIN A FEI NUMBER, CONTACT THE IRS AT 1-800-829-3676 AND REQUEST FORM SS-4.

SHOULD YOUR CORPORATE MAILING ADDRESS CHANGE, YOU MUST NOTIFY THIS OFFICE IN WRITING, TO INSURE IMPORTANT MAILINGS SUCH AS THE ANNUAL REPORT NOTICES REACH YOU.

Should you have any questions regarding corporations, please contact this office at the address given below.

John Nedeau, Document Specialist
New Filing Section

Letter Number: 597A00059900

Division of Corporations - P.O. BOX 6327 -Tallahassee, Florida 32314

*ATTACHMENT 3*

**US DIGITEL INC**                                      QUAR' 'LY

**NAME OF BUSINESS**                              **FILING FREQUENCY**

THE FOLLOWING SALES TAX NUMBER HAS BEEN ASSIGNED TO YOUR ACCOUNT:

    FEBRUARY 28, 1998                          16-00-310289-66/0

      OPENING DATE                              ACCOUNT NUMBER

PLEASE REFER TO THIS NUMBER WHEN CORRESPONDING WITH THE DEPARTMENT
CONCERNING YOUR ACCOUNT.

YOU SHOULD RECEIVE A CERTIFICATE OF REGISTRATION ALONG WITH A BOOKLET OF
SALES TAX RETURNS AND SUPPLY OF ENVELOPES FROM TALLAHASSEE WITHIN THE
NEXT 30 DAYS.  IF THE CERTIFICATE OR RETURNS ARE NOT RECEIVED, PLEASE
CONTACT THE HOLLYWOOD TAXPAYER SERVICE CENTER TELEPHONE NO. (954)967-1000
OR TAXPAYERS ASSISTANCE SECTION 1-800-352-3671.
    <-- "X" TO CHANGE.  LAST CHANGED/SENT BY PID 721 ON  2/ 2/98 AT 12:31:51


UNCTION KEY F1 TO CLEAR.

ATTACHMENT 4

**American Bank**
POST OFFICE BOX 6879
HOLLYWOOD, FLORIDA 33081-0879

<u>IRREVOCABLE LETTER OF CREDIT 77-102</u>

February 9, 1998

To:  BENEFICIARY:
     Atlas Communications, Ltd.
     482 Norristown Road, Ste. 200
     Blue Bell, PA  19422

Gentlemen:

We hereby issue our Irrevocable Letter of Credit No. 77-102 in your, the beneficiary's, favor for the account of U.S. Digitel, Inc., 1909 Tyler St., 3rd Fl., Hollywood, FL 33020, in the aggregate amount of Seventy-five Thousand and 00/100 US DOLLARS ($75,000.00 USD) available by your draft at sight drawn on us, bearing the number and the date of this credit and the name of our bank.

Your draft must be accompanied by the following documents:

1.  The original of this Letter of Credit, and all amendments, if any, for proper endorsement.

2.  Beneficiary's statement signed by an authorized signer of Atlas Communications, Ltd. certifying:

    "The amount of our draft represents funds due us under 'Carrier Dedicated Services Agreement' dated February 9, 1998 executed between Atlas Communications, Ltd. and U.S. Digitel, Inc. and that demand for payment has been made and that payment has not been received by Atlas Communications, Ltd., from U.S. Digitel, Inc. or any other source."

3.  Copy of invoice that conforms to the "Carrier Dedicated Service Agreement" dated February 9, 1998.

Partial drawings are permitted.

We hereby agree with you that drafts drawn under and in compliance with the terms of this Letter of Credit will be duly honored if presented at this office on or before February 9, 2000, the expiration date.

Except as otherwise expressly stated herein, this Letter of Credit is subject to the "Uniform Customs and Practice for Documentary Credit (1993 Revision), International Chamber of Commerce Brochure No. 500".  This credit is subject to the provisions of Florida Law.  If a conflict between the law of another state or country and Florida Law should arise, Florida Law shall prevail.

AMERICAN BANK OF HOLLYWOOD

BY: _Thomas L. Baert_
Thomas L. Baert, Vice President

Hollywood Office • 6600 Taft Street • Hollywood, Florida 33024 • Broward (954) 966-9810 • Dade (305) 625-9578 • Fax (954) 966-4329
Pembroke Park Office • 3131 West Hallandale Beach Blvd. • Pembroke Park, Florida 33009 • Broward (954) 962-1620 • Dade (305) 625-6454
Lauderhill Office • 4499 North University Drive • Lauderhill, Florida 33351 • Broward (954) 741-3788
Young Circle Office • 1811 North Young Circle • Hollywood, Florida 33020 • Broward (954) 921-1811
Flamingo Road Office • 12399 Sheridan Street • Cooper City, Florida 33026 • Broward (954) 435-1771
University & Sheridan Office • 2488 North University Drive • Pembroke Pines, Florida 33024 • Broward (954) 437-2488
Hollywood Hills Office • 4100 Hollywood Boulevard • Hollywood, Florida 33021 • Broward (954) 987-1300

Ex-C

# WHOLESALE SERVICES AGREEMENT

This Wholesale Services Agreement ("Agreement") is entered into and effective this _14th_ day of _July_, 1999, by and between Atlas Communications, Ltd. ("Atlas"), a Pennsylvania corporation, with its principal offices located at 482 Norristown Road, Blue Bell, Pennsylvania 19422, and U.S. Digitel, Inc., a Florida corporation ("Purchaser"), with its principal offices located at 1909 Tyler Street, 8th Floor, Hollywood, Florida 33020 (hereinafter "Party" or "Parties").

## RECITALS:

**WHEREAS**, Atlas has obtained special rates for domestic and international services from one of its underlying carriers and would like to offer these rates and services to its existing customers; and

**WHEREAS**, Purchaser desires to purchase these domestic and international services as hereinafter set forth;

**NOW, THEREFORE**, in consideration of the mutual covenants and other valuable consideration, the Parties agree as follows:

## TERMS

### 1)    TERM OF AGREEMENT

1.1    Initial Term.  The initial term of this Agreement shall commence on the date first above written and shall continue for a period of one (1) year. Upon the expiration of the initial term, this Agreement will automatically renew on a month to month basis until terminated by either Party upon thirty (30) days prior written notice to the other.

1.2    Termination Upon Default.  Upon the occurrence of an Event of Default, Atlas may terminate this Agreement immediately by delivering written notice of termination to Purchaser.

### 2)    PRICING

2.1    Rates. The rates and charges for the services provided to Purchaser under this Agreement are set forth within Schedule "A" and are separate and distinct from the rates charged by Atlas for services provided under any other agreement(s) with Purchaser. Atlas reserves the right to modify its charges and rates from time to time. Usage sensitive service modifications shall be

Initial
Initial

1

issued and binding upon the Purchaser twenty (20) days after notice is issued by Atlas for domestic services and upon five (5) days notice for international services. Notice shall be provided either in writing, e-mail, facsimile or overnight mail to Purchaser and for non-usage charges, by amendment or supplement to the Atlas or its underlying carrier's Tariffs or Schedules.

    2.2    Volume Discounts. In the event that Purchaser receives volume discounts hereunder, Purchaser agrees that its discount shall be based upon Purchaser's actual usage during the subject month. No discounts will be provided that are based upon cumulative usage by Purchaser.

## 3)    BILLING AND PAYMENTS

    Atlas will invoice Purchaser for its usage on a monthly basis. Purchaser shall pay the undisputed portion of each invoice within ten (10) days from the date of each invoice. A late charge of one and one-half percent (1.5%) per month or the maximum permitted under the applicable usury law, whichever is lower, will be charged on any overdue amounts.

## 4)    PAYMENT OBLIGATION

    In light of Atlas' ultimate payment obligation to its underlying carriers, Purchaser agrees that it will dispute any monthly charges in writing, within fifteen (15) days from the date of each invoice. In the event Purchaser fails to dispute such charges in writing within the fifteen (15) day time period, then Purchase does hereby waive its right to dispute and withhold payment for any such charges. However, if a dispute is timely issued as aforesaid, then the parties shall attempt in good faith to resolve the dispute within seven (7) days. In the event that the dispute cannot be resolved, then either Party may elect to submit the dispute to arbitration in accordance with the terms of this Agreement.

## 5)    SECURITY FOR PAYMENT

    Atlas may require security in the form of a cash deposit or letter of credit in a format acceptable to Atlas. In the event of a default by Purchaser, Atlas shall be entitled, without further notice, to suspend all service and draw from the deposit all amounts due Atlas. In order to re-establish service, Purchaser must replenish the deposit (by wire transfer into Atlas' specified account or as specified by Atlas) within forty-eight (48) hours of receipt of written notice from Atlas. In the event Purchaser fails to replenish the security deposit within the above time period, then Atlas may immediately terminate this Agreement and proceed to enforce all of its rights and remedies under this Agreement.

Initial

Initial

2

## 6) EVENTS OF DEFAULT

6.1    Description. Each of the following events, separately, shall constitute an "Event of Default":

(a)    Purchaser shall fail to pay when due any amount owed to Atlas pursuant to this Agreement and any such failure shall remain unpaid for three (3) days after written notice thereof. Notwithstanding anything to the contrary contained in this Agreement, in the event that Purchaser fails to make payments to Atlas after the expiration of the above cure period, Atlas will have the right to immediately terminate service to Purchaser under this Agreement.

(b)    A Party shall fail to perform or observe in any material respect any material covenant contained in this Agreement, and any such failure shall remain unremedied for five (5) days after written notice thereof shall have been given to the defaulting Party by the non-defaulting Party.

6.2    Cumulative Remedies. Each Party's rights and remedies hereunder shall be cumulative and the exercise by either Party of any particular right or remedy shall not prevent such Party from exercising any other right or remedy.

## 7) TRANSPORT SERVICES AND OTHER CHARGES

All domestic calls are rated in six (6) second increments with a six (6) second initial period. International and Canadian calls are rated in six (6) second increments with a thirty (30) second initial period except for calls to Mexico which are rated in sixty (60) second increments with a sixty (60) second initial period. Purchaser will pay (unless proof of tax exempt status is provided) any applicable federal, state, or local taxes, surcharges or similar fees for the services whether charged to or against Atlas or Purchaser based on the services furnished to Purchaser and/or to Purchaser's end users. Purchaser is also responsible for any and all charges for DS-3, DS-1 or other access on a direct pass-through from Atlas' carriers. Any and all recurring charges and charges related to termination for such access shall be Purchaser's responsibility.

## 8) FACILITY UTILIZATION

Following a one time ramp up period of the first two full billing months after the effective date of this Agreement, the minimum monthly usage required per DS-1 or equivalent thereof (the "Circuits") is 100,000 minutes of use ("MOUs") averaged among all of the Atlas circuits

Initial

Initial

3

utilized by Purchaser under this Agreement. In the event Purchaser fails to meet the above average, Atlas shall provide Purchaser with written notice that the average MOUs have not been met and Purchaser shall have an additional five (5) days from the date of the notice to reach the above average. If Purchaser does not comply with the above requirement then Atlas shall have the right to immediately terminate and require Purchaser to immediately release to Atlas, those Circuits that were under the 100,000 MOU level for that month without liability to Purchaser for disconnection.

## 9)    SERVICE QUALITY

Atlas does not warrant or guarantee the quality of the services provided under this Agreement, nor is it responsible for interruptions of such services.

## 10)    CONFIDENTIALITY/ NON-CIRCUMVENT

10.1 Confidential Information. For purposes of this Agreement, confidential information shall include, without limitation, the terms of this Agreement, the Parties' customer lists and associated information and such other confidential materials and sales data provided by one Party to the other, either in writing, orally or otherwise (hereinafter, "Confidential Information"). Each Party acknowledges that any Confidential Information which may be provided to it by the other Party may have substantial value to that Party. Both Parties agree to take all reasonable and necessary steps to preserve the confidentiality of all Confidential Information received from the other, whether communicated in writing, electronically, orally or otherwise.

10.2 Exceptions. The restrictions on the disclosure of Confidential Information shall not apply to (i) information which at the time of disclosure was generally available to the public; (ii) information which subsequent to its disclosure by a Party is published or otherwise becomes available to the public through means other than an act or omission of the Receiving Party; (iii) the information was received by a Party free of any obligation to keep it confidential or which is subsequently and independently developed in good faith by that Party without reference to or use of the Confidential Information; and (iv) information rightfully acquired in good faith from a third party on a non-confidential basis without breach of an agreement to maintain said information in confidence. A Party shall return or destroy all Confidential Information and all copies thereof, including, without limitation, written and electronic copies, as well as all summaries, notes or other documents, materials or things containing Confidential Information, to the other promptly upon the reasonable written request of the other party.

10.3    Non-circumvent. Purchaser agrees that it shall not attempt to circumvent this Agreement by attempting to obtain the services provided herein from any of Atlas' underlying carriers for a period of two (2) years from the termination of this Agreement.

Initial

Initial

4

10.4   Survival.  The Parties hereby agree that the confidentiality provisions reflected in this Agreement shall survive the termination of this Agreement for a period of one (1) year.

## 1)   MISCELLANEOUS

11.1.  Fraudulent Calls.  Purchaser shall indemnify and hold Atlas harmless from all costs, expenses, damages, fines or actions arising from claims made or related to alleged fraudulent calls.  Purchaser shall not be excused from paying Atlas for services on the basis that fraudulent calls comprised a portion of the services.  In the event Atlas reasonably believes fraudulent calls are being made, nothing contained herein shall prohibit, or require, Atlas from taking any action (without notice to Purchaser or End Users) Atlas deems reasonably necessary to prevent such fraudulent calls from taking place.

11.2.  Injunctive Relief.  Purchaser agrees that the business and ensuing relationship with Atlas is, and will be, unique, and its default will cause irreparable harm to Atlas, and may not be susceptible to remedy by money damages alone.  Therefore, upon the occurrence of an Event of Default, Atlas shall be entitled to immediate injunctive relief, including temporary restraining orders or preliminary or permanent injunctions *ex parte* and without the necessity of posting a bond, in addition to any legal remedies to which Atlas may be entitled.

11.3   Regulatory Compliance.  Purchaser warrants that it is an Interexchange Carrier of interstate and international services, as duly tariffed before the FCC, and certified for intrastate services by various state PUCs.  Purchaser shall comply, and cause each of its subsidiaries and affiliates to comply, in all material respects with all applicable laws, rules, statutes and regulations of the FCC, the PUC and the rules, regulations and orders of courts and any other applicable regulatory bodies and agencies.

11.4   Force Majeure.  If Atlas' performance of this Agreement or any obligation hereunder is prevented, restricted or interfered with by causes beyond its reasonable control including, but not limited to, acts of G-d, fire, explosion, vandalism, power failure, cable cut, storm or other similar occurrence, supplier failure, any law, order, regulation, direction, action or request of the United States government, or state or local government, or of any department, agency, commission, court, bureau, corporation or other instrumentality of any one or more such governments, or of any civil or military authority, or by national emergency, insurrection, riot, war, strike, lockout or work stoppage or other labor difficulties, or supplier failure, shortage, breach or delay, then Atlas shall be excused, without incurring any liability, from such performance on a day-to-day basis to the extent of such restriction or interference.

11.5   Indemnification.  Purchaser agrees to indemnify Atlas, its affiliated companies, any third-party provider of Services or facilities employed in provision of Services and their respective officers, directors, employees, stockholders and affiliates (the "Indemnified Parties")

Initial _____

Initial _____

5

for, and hold the Indemnified Parties harmless from and against, any and all claims, demands, suits, actions, causes, losses, damages, assessments or payments that others receiving Services through Purchaser, or any other Person, may assert arising out of or relating in any way to this Agreement, to any Services supplied under this Agreement, including the FCC, PUC or other regulatory body or agency or marketing or sales practices of Purchaser. Purchaser further agrees to reimburse each Indemnified Party for all reasonable costs and expenses including attorneys' fees incurred by such Indemnified Party due to such Indemnified Party's direct participation either as a party or witness in any administrative, regulatory, civil or criminal proceeding initiated in respect to this Agreement, the Related Documents, by Atlas, Purchaser, or any other Person.

11.6    Blanket LOA. Purchaser shall deliver to Atlas the Blanket Letter of Agency in the form set forth within Schedule "D" attached hereto. Atlas need not commence providing services until Purchaser shall have duly executed and delivered same to Atlas.

11.7    Use of Names and Logos. Purchaser shall not publish or use any advertising, sales promotions, press releases, or other publicity matters which use the corporate or trade names, logos, trademarks, trade dress, service marks or any copyrighted material of Atlas or its underlying carrier without the prior written consent of Atlas. Customer shall provide to Atlas for its prior review and written approval, all promotions, advertising or other materials or activity whereby it proposes to use or display Atlas' name or describing or referring to the Services to be provided by Atlas.

11.8    Entire Agreement. This Agreement constitutes the entire agreement among the Parties hereto with respect to the specific services provided under this Agreement only. Nothing contained herein shall serve to alter the terms or rates set forth in any other agreement(s) between the Parties and any such agreement(s) shall remain in full force and effect as to the specific services provided therein. Neither this Agreement nor any provisions hereof may be changed, waived, discharged, or terminated orally, but only by an agreement in writing signed by the Party against whom or which the enforcement of such change, waiver, discharge or termination is sought.

11.9    Waiver. Any failure on the part of any Party hereto to comply with any of its obligations, agreements or conditions hereunder may be waived by any other Party to whom such compliance is owed. No waiver of any provision of this Agreement shall be deemed, or shall constitute, a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver.

11.10    Severability. In the event that any provision of this Agreement or any word, phrase, clause, sentence or other portion thereof should be held to be unenforceable or invalid for any reason, such provision or portion thereof shall be modified or deleted in such a manner so as to make this Agreement, as modified, legal and enforceable to the fullest extent permitted under applicable laws.

Initial

Initial

6

11.11  Governing Law.  This Agreement shall be governed by and construed under and interpreted in accordance with the laws of the Commonwealth of Pennsylvania without regard to that States' choice of law provisions.  The Parties consent to the settlement of all disputes through Arbitration in accordance with the then current procedures of the American Arbitration Association.  The arbitration shall be conducted by a single arbitrator and shall be held in Philadelphia, PA.  Judgment upon any award rendered may be entered in any court having jurisdiction thereof.  Decisions of the arbitrator shall be final and binding on the Parties.

11.12  Notices.   All notices, requests, demands or other communications required or permitted to be given or made hereunder shall be in writing and delivered personally by the sender or a private overnight courier service, or sent by pre-paid, first class, certified or registered mail, return receipt requested, or by facsimile transmission, to the intended recipient thereof at its address or facsimile number set out below.  Any such notice, demand or communication shall be deemed to have been duly given immediately if given or made by confirmed facsimile, on the next business day if sent by private courier, or five days after mailing, and in proving same it shall be sufficient to show that the envelope containing the same was duly addressed, stamped and posted, or that receipt of a facsimile was confirmed by the recipient.  The addresses and facsimile numbers of the Parties for purposes of this Agreement are:

ATLAS:   482 Norristown Road
Blue Bell, Pennsylvania 19422
Attn: President
Facsimile:  (610) 940-9049

PURCHASER:   U.S. Digitel, Inc.
1909 Tyler Street, 8th Floor
Hollywood, FL  33020
Attn: David Griffee
Facsimile:  (954) 927-7770

Any Party may change the address or facsimile number to which notices, requests, demands or other communications to such Party shall be delivered or mailed by giving notice thereof to the other Party hereto in the manner provided herein.

11.13  Amendments.  This Agreement may not be changed, altered or modified unless such change, alteration or modification is clearly established in writing and signed by an authorized representative of each Party.

Initial _____
Initial _____

11.14   _Assignment._  Neither Party shall assign any or all of its rights under this Agreement without the express written consent of the other Party, which consent shall not be unreasonably withheld.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their officers thereunto the day and year first written above.

ATLAS COMMUNICATIONS, LTD.

By: _____

Print: _____
      FRANK SCARDINO

Title: _____
      V. Chrm

U.S. DIGITEL, INC.

By: _____

Print: _____
      DAVID R. GREENE

Title: _____
      PRESIDENT

Initial
Initial

8

## SCHEDULE B

### CERTIFICATED CUSTOMER
### QUESTIONNAIRE AND AFFIDAVIT
### FOR ATLAS COMMUNICATIONS, LTD.

*N/H*

Please give <u>complete</u> answers to all of the following questions.  Your Wholesale Domestic Services Agreement ("Agreement") with Atlas Communications Ltd. ("ATLAS") may not be executed, and no orders may be accepted from you, until ATLAS receives a completed Questionnaire and Affidavit from you.  The Questionnaire and Affidavit is a part of the Agreement and inaccurate answers to this questionnaire are grounds for immediate suspension or termination of your Agreement.  You must submit a newly completed and updated questionnaire each year.  In the event any of the information provided herein changes prior to the scheduled update, you <u>must</u> inform ATLAS of those changes promptly in writing.

Name of Company: _____

Address: _____

Telephone: _____    Fax: _____

Name of person to contact with questions regarding responses to this form:

_____

a.    What is your state of incorporation? _____
      Is your company currently in good standing in that state?  Yes/No.
      **Please attach a copy of your certificate of incorporation.**

b.    What states do you currently do business in?

      _____

c.    Please attach copies of federal and applicable state tax-exempt certificates.  A state tax-exempt certificate must be presented for each state you are certified to resell in.

d.    **In which states are you qualified to do business as a foreign corporation?**

      _____

      _____

Initial _____

Initial _____

9

e.    In which states are you certified by the state utility commission to resell long distance service? _____

_____

Please attach copies of all certificates, and for those states which require an informational filing, please attach copies of those filings.

f.    Do you have an interstate tariff on file with the FCC?  Yes/No.  If so, please provide the date the first tariff was filed. _____

g.    Do you have an international tariff or Section 214 authorization on file with the FCC? Yes/No.  If so, please provide the date the first tariff or the Section 214 authorization was filed. _____

I swear the foregoing information is true and correct.

_____
Signature
_____
Print Name
_____
Title
_____
Company Name

STATE OF                              )
                                     SS.
COUNTY OF                            )

On this _____ day of _____, 199__, the foregoing instrument was acknowledged before me by _____.

In witness whereof, I have set my hand and official seal this _____ day of _____, 199__.

_____
Notary Public

My commission expires: _____

Initial _____
Initial ————————

10

## SCHEDULE C

### A.    *PAYPHONE SURCHARGE AFFIRMATION ADDENDUM*

Purchaser acknowledges that it is solely responsible to make any and all payphone service provider surcharges levied by the Federal Communications Commission, or any state regulatory body.  Neither Atlas nor any long distance provider from whom Atlas purchases long distance services has or will make payphone surcharge payments on your behalf.

Atlas shall provide Purchaser with any information in its possession that would permit the identification of payphones as the source for toll-free calls.

Acknowledged by:

Initial

Initial

11

## SCHEDULE D

## BLANKET LETTER OF AGENCY

On _____, Purchaser entered into an agreement with Atlas Communications, Ltd. for the purpose of ordering telecommunications services.

Under the terms of this agreement and by this letter, Purchaser authorizes Atlas Communications, Ltd. to issue orders for services which are in the name of Purchaser.

The parties each acknowledge that the LOAs AND/OR VLOAs with such orders are the property of Purchaser.

This Letter of Agency will remain in effect until rescinded in writing by Purchaser and delivered to Atlas Communications, Ltd. upon sixty (60) days written notice.

**U.S. Digitel, Inc.:**                    **Atlas Communications, Ltd.:**

_____            _____
**Name**                                   **Name**

_____            _____
**Signature**                              **Signature**

_____            _____
**Title**                                  **Title**

_____            _____
**Date**                                   **Date**

Initial _____

Initial _____

12

## SCHEDULE D

### BLANKET LETTER OF AGENCY

On _____, Purchaser entered into an agreement with Atlas

Communications, Ltd. for the purpose of ordering telecommunications services.

Under the terms of this agreement and by this letter, Purchaser authorizes Atlas

Communications, Ltd. to issue orders for services which are in the name of Purchaser.

The parties each acknowledge that the LOAs AND/OR VLOAs with such orders are the

property of Purchaser.

This Letter of Agency will remain in effect until rescinded in writing by Purchaser and

delivered to Atlas Communications, Ltd. upon sixty (60) days written notice.

**U.S. Digital, Inc.:**                         **Atlas Communications, Ltd.:**

John P. Scafidi
_____                          _____
Name                                         Name

John P. Scafidi
_____                          _____
Signature                                    Signature

Chief Financial Officer
_____                          _____
Title                                        Title

7/19/00
_____                          _____
Date                                         Date

Initial
Initial

12



# FACSIMILE TRANSMISSION

**TO:** ~~xxxxx~~ Don Shea

**COMPANY:** ~~xxxxx~~

**FAX NUMBER:** ~~xxxxx~~ 610-940-9049

**FROM:** ~~xxxxx~~ John Scafidi

**RE:**

**DATE:** 7/15/99

**PAGES (including cover sheet):**

---

### Message

Dave,

Would you please sign the 20A? Our counsel prefers to have one on file for each agreement. Please mail back to me as I will need fresh ink on the paper. Thank you

Don

This message is intended for the use of the individual or entity to whom it is addressed and may contain information that is privileged, confidential and/or exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original message to us at the address below via the Postal Service. Thank you.

Atlas Communications, 482 Norristown Road, Suite 200, Blue Bell, PA  19422    610-940-9040



### Schedule A - Q1
### Volume Discount Pricing Structure

| Volume Level Buckets | Discount % |
|---|---|
| $0 - $250,000 | 0% |
| $250,001 - $500,000 | 4% |
| $500,001 - $750,000 | 9% |
| $750,001 - $1,000,000 | 13% |
| $1,000,000 + ** | 15% |

\* Volume Level Buckets & Discounts are Product Type Specific.

\*\* Upon customer reaching $1,000,000+, all traffic for a given month
will be priced at the $1,000,000 + Pricing Strucute.

| LATA | PRIMARY STATE | CLASS | SWITCH MEETPOINT | | | | | | RATES - POP MEETPOINT | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | ATL | MW | NW | S | SE | SW | POP ATL | POP MW | POP S | POP SW |
| 120 | ME | RBOC | $0.0257 | $0.0273 | $0.0304 | $0.0304 | $0.0273 | $0.0319 | $0.0273 | $0.0319 | $0.0334 | $0.0365 |
| 120 | ME | ITC | $0.0796 | $0.0811 | $0.0842 | $0.0842 | $0.0811 | $0.0857 | $0.0811 | $0.0857 | $0.0873 | $0.0903 |
| 122 | NH | RBOC | $0.0257 | $0.0273 | $0.0304 | $0.0304 | $0.0273 | $0.0319 | $0.0273 | $0.0319 | $0.0334 | $0.0365 |
| 122 | NH | ITC | $0.0645 | $0.0660 | $0.0691 | $0.0691 | $0.0660 | $0.0706 | $0.0660 | $0.0706 | $0.0722 | $0.0752 |
| 124 | VT | RBOC | $0.0257 | $0.0273 | $0.0304 | $0.0304 | $0.0273 | $0.0319 | $0.0273 | $0.0319 | $0.0334 | $0.0365 |
| 124 | VT | ITC | $0.0730 | $0.0746 | $0.0777 | $0.0777 | $0.0746 | $0.0792 | $0.0746 | $0.0792 | $0.0807 | $0.0838 |
| 126 | MA | RBOC | $0.0257 | $0.0273 | $0.0304 | $0.0304 | $0.0273 | $0.0319 | $0.0273 | $0.0319 | $0.0334 | $0.0365 |
| 126 | MA | ITC | $0.1006 | $0.1021 | $0.1052 | $0.1052 | $0.1021 | $0.1068 | $0.1021 | $0.1068 | $0.1083 | $0.1114 |
| 128 | MA | RBOC | $0.0257 | $0.0273 | $0.0304 | $0.0304 | $0.0273 | $0.0319 | $0.0273 | $0.0319 | $0.0334 | $0.0365 |
| 128 | MA | ITC | $0.1006 | $0.1021 | $0.1052 | $0.1052 | $0.1021 | $0.1068 | $0.1021 | $0.1068 | $0.1083 | $0.1114 |
| 130 | RI | RBOC | $0.0257 | $0.0273 | $0.0304 | $0.0304 | $0.0273 | $0.0319 | $0.0273 | $0.0319 | $0.0334 | $0.0365 |
| 130 | RI | ITC | $0.0257 | $0.0273 | $0.0304 | $0.0304 | $0.0273 | $0.0319 | $0.0273 | $0.0319 | $0.0334 | $0.0365 |
| 132 | NY | RBOC | $0.0257 | $0.0273 | $0.0304 | $0.0304 | $0.0273 | $0.0319 | $0.0273 | $0.0319 | $0.0334 | $0.0365 |
| 132 | NY | ITC | $0.0587 | $0.0603 | $0.0634 | $0.0634 | $0.0603 | $0.0649 | $0.0603 | $0.0649 | $0.0664 | $0.0695 |
| 133 | NY | RBOC | $0.0257 | $0.0273 | $0.0304 | $0.0304 | $0.0273 | $0.0319 | $0.0273 | $0.0319 | $0.0334 | $0.0365 |
| 133 | NY | ITC | $0.0606 | $0.0622 | $0.0652 | $0.0652 | $0.0622 | $0.0668 | $0.0622 | $0.0668 | $0.0683 | $0.0714 |
| 134 | NY | RBOC | $0.0257 | $0.0273 | $0.0304 | $0.0304 | $0.0273 | $0.0319 | $0.0273 | $0.0319 | $0.0334 | $0.0365 |
| 134 | NY | ITC | $0.0936 | $0.0952 | $0.0982 | $0.0982 | $0.0952 | $0.0998 | $0.0952 | $0.0998 | $0.1013 | $0.1044 |
| 136 | NY | RBOC | $0.0257 | $0.0273 | $0.0304 | $0.0304 | $0.0273 | $0.0319 | $0.0273 | $0.0319 | $0.0334 | $0.0365 |
| 136 | NY | ITC | $0.1258 | $0.1274 | $0.1305 | $0.1305 | $0.1274 | $0.1320 | $0.1274 | $0.1320 | $0.1335 | $0.1366 |
| 138 | NY | RBOC | $0.0257 | $0.0273 | $0.0304 | $0.0304 | $0.0273 | $0.0319 | $0.0273 | $0.0319 | $0.0334 | $0.0365 |
| 138 | NY | ITC | $0.0415 | $0.0430 | $0.0461 | $0.0461 | $0.0430 | $0.0476 | $0.0430 | $0.0476 | $0.0492 | $0.0522 |
| 140 | NY | RBOC | $0.0257 | $0.0273 | $0.0304 | $0.0304 | $0.0273 | $0.0319 | $0.0273 | $0.0319 | $0.0334 | $0.0365 |
| 140 | NY | ITC | $0.1012 | $0.1027 | $0.1058 | $0.1058 | $0.1027 | $0.1074 | $0.1027 | $0.1074 | $0.1089 | $0.1120 |
| 220 | NJ | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 220 | NJ | ITC | $0.0252 | $0.0267 | $0.0298 | $0.0298 | $0.0267 | $0.0313 | $0.0267 | $0.0313 | $0.0329 | $0.0359 |
| 222 | NJ | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 222 | NJ | ITC | $0.0252 | $0.0267 | $0.0298 | $0.0298 | $0.0267 | $0.0313 | $0.0267 | $0.0313 | $0.0329 | $0.0359 |
| 224 | NJ | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 224 | NJ | ITC | $0.0252 | $0.0267 | $0.0298 | $0.0298 | $0.0267 | $0.0313 | $0.0267 | $0.0313 | $0.0329 | $0.0359 |
| 226 | PA | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 226 | PA | ITC | $0.0464 | $0.0479 | $0.0510 | $0.0510 | $0.0479 | $0.0525 | $0.0479 | $0.0525 | $0.0541 | $0.0571 |
| 228 | PA | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 228 | PA | ITC | $0.0697 | $0.0712 | $0.0743 | $0.0743 | $0.0712 | $0.0759 | $0.0712 | $0.0759 | $0.0774 | $0.0805 |
| 230 | PA | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 230 | PA | ITC | $0.0419 | $0.0434 | $0.0465 | $0.0465 | $0.0434 | $0.0480 | $0.0434 | $0.0480 | $0.0496 | $0.0526 |
| 232 | PA | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 232 | PA | ITC | $0.0596 | $0.0612 | $0.0643 | $0.0643 | $0.0612 | $0.0658 | $0.0612 | $0.0658 | $0.0673 | $0.0704 |
| 234 | PA | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 234 | PA | ITC | $0.0549 | $0.0564 | $0.0595 | $0.0595 | $0.0564 | $0.0610 | $0.0564 | $0.0610 | $0.0626 | $0.0656 |
| 236 | DC | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |



# Atlas Communications - RBOC / ITC
## Interstate Termination rates
### Schedule A - Q1

## Volume Discount Pricing Structure

| Volume Level Buckets ** | Discount % ** |
|---|---|
| $0 - $250,000 | 0% |
| $250,001 - $500,000 | 4% |
| $500,001 - $750,000 | 9% |
| $750,001 - $1,000,000 | 13% |
| $1,000,000 + ** | 15% |

\* Volume Level Buckets & Discounts are Product Type Specific.

\*\* Upon customer reaching $1,000,000+, all traffic for a given month
will be priced at the $1,000,000 + Pricing Strucute.

| LATA | PRIMARY STATE | CLASS | SWITCH MEETPOINT | | | | | | RATES - POP MEETPOINT | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | ATL | MW | NW | S | SE | SW | POP ATL | POP MW | POP S | POP SW |
| 236 | DC | ITC | $0.0626 | $0.0642 | $0.0672 | $0.0672 | $0.0642 | $0.0688 | $0.0642 | $0.0688 | $0.0703 | $0.0734 |
| 238 | MD | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 238 | MD | ITC | $0.1072 | $0.1087 | $0.1118 | $0.1118 | $0.1087 | $0.1133 | $0.1087 | $0.1133 | $0.1149 | $0.1180 |
| 240 | MD | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 240 | MD | ITC | $0.1072 | $0.1087 | $0.1118 | $0.1118 | $0.1087 | $0.1133 | $0.1087 | $0.1133 | $0.1149 | $0.1180 |
| 242 | MD | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 242 | MD | ITC | $0.1072 | $0.1087 | $0.1118 | $0.1118 | $0.1087 | $0.1133 | $0.1087 | $0.1133 | $0.1149 | $0.1180 |
| 244 | VA | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 244 | VA | ITC | $0.0447 | $0.0462 | $0.0493 | $0.0493 | $0.0462 | $0.0508 | $0.0462 | $0.0508 | $0.0524 | $0.0554 |
| 246 | VA | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 246 | VA | ITC | $0.0507 | $0.0522 | $0.0553 | $0.0553 | $0.0522 | $0.0568 | $0.0522 | $0.0568 | $0.0584 | $0.0615 |
| 248 | VA | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 248 | VA | ITC | $0.0624 | $0.0639 | $0.0670 | $0.0670 | $0.0639 | $0.0685 | $0.0639 | $0.0685 | $0.0701 | $0.0732 |
| 250 | VA | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 250 | VA | ITC | $0.0403 | $0.0418 | $0.0449 | $0.0449 | $0.0418 | $0.0464 | $0.0418 | $0.0464 | $0.0480 | $0.0510 |
| 252 | VA | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 252 | VA | ITC | $0.0630 | $0.0645 | $0.0676 | $0.0676 | $0.0645 | $0.0691 | $0.0645 | $0.0691 | $0.0706 | $0.0737 |
| 254 | WV | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 254 | WV | ITC | $0.0364 | $0.0379 | $0.0410 | $0.0410 | $0.0379 | $0.0426 | $0.0379 | $0.0426 | $0.0441 | $0.0472 |
| 256 | WV | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 256 | WV | ITC | $0.0933 | $0.0949 | $0.0979 | $0.0979 | $0.0949 | $0.0995 | $0.0949 | $0.0995 | $0.1010 | $0.1041 |
| 320 | OH | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 320 | OH | ITC | $0.0584 | $0.0569 | $0.0600 | $0.0600 | $0.0600 | $0.0615 | $0.0600 | $0.0615 | $0.0630 | $0.0661 |
| 322 | OH | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 322 | OH | ITC | $0.0513 | $0.0498 | $0.0528 | $0.0528 | $0.0528 | $0.0544 | $0.0528 | $0.0544 | $0.0559 | $0.0590 |
| 324 | OH | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 324 | OH | ITC | $0.0532 | $0.0516 | $0.0547 | $0.0547 | $0.0547 | $0.0563 | $0.0547 | $0.0563 | $0.0578 | $0.0609 |
| 325 | OH | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 325 | OH | ITC | $0.0534 | $0.0519 | $0.0550 | $0.0550 | $0.0550 | $0.0565 | $0.0550 | $0.0565 | $0.0580 | $0.0611 |
| 326 | OH | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 326 | OH | ITC | $0.0572 | $0.0556 | $0.0587 | $0.0587 | $0.0587 | $0.0602 | $0.0587 | $0.0602 | $0.0618 | $0.0648 |
| 328 | OH | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 328 | OH | ITC | $0.0541 | $0.0526 | $0.0557 | $0.0557 | $0.0557 | $0.0572 | $0.0557 | $0.0572 | $0.0587 | $0.0618 |
| 330 | IN | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 330 | IN | ITC | $0.0467 | $0.0451 | $0.0482 | $0.0482 | $0.0482 | $0.0498 | $0.0482 | $0.0498 | $0.0513 | $0.0544 |
| 332 | IN | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 332 | IN | ITC | $0.0566 | $0.0551 | $0.0582 | $0.0582 | $0.0582 | $0.0597 | $0.0582 | $0.0597 | $0.0612 | $0.0643 |
| 334 | IN | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 334 | IN | ITC | $0.0467 | $0.0451 | $0.0482 | $0.0482 | $0.0482 | $0.0498 | $0.0482 | $0.0498 | $0.0513 | $0.0544 |
| 336 | IN | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 336 | IN | ITC | $0.0616 | $0.0601 | $0.0632 | $0.0632 | $0.0632 | $0.0647 | $0.0632 | $0.0647 | $0.0662 | $0.0693 |

Atlas Communications - RBOC / ITC
Interstate Termination Rates
Schedule A - Q1

## Volume Discount Pricing Structure



| Volume Level Buckets * | Discount % * |
|---|---|
| $0 - $250,000 | 0% |
| $250,001 - $500,000 | 4% |
| $500,001 - $750,000 | 9% |
| $750,001 - $1,000,000 | 13% |
| $1,000,000 + ** | 15% |

\* Volume Level Buckets & Discounts are Product Type Specific.

\*\* Upon customer reaching $1,000,000+, all traffic for a given month
will be priced at the $1,000,000 + Pricing Strucute.

| LATA | PRIMARY STATE | CLASS | SWITCH MEETPOINT | | | | | | RATES - POP MEETPOINT | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | ATL | MW | NW | S | SE | SW | POP ATL | POP MW | POP S | POP SW |
| 338 | IN | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 338 | IN | ITC | $0.0609 | $0.0593 | $0.0624 | $0.0624 | $0.0624 | $0.0639 | $0.0624 | $0.0639 | $0.0655 | $0.0686 |
| 340 | MI | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 340 | MI | ITC | $0.0451 | $0.0435 | $0.0466 | $0.0466 | $0.0466 | $0.0481 | $0.0466 | $0.0481 | $0.0497 | $0.0528 |
| 342 | MI | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 342 | MI | ITC | $0.0492 | $0.0477 | $0.0508 | $0.0508 | $0.0508 | $0.0523 | $0.0508 | $0.0523 | $0.0538 | $0.0569 |
| 344 | MI | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 344 | MI | ITC | $0.0458 | $0.0442 | $0.0473 | $0.0473 | $0.0473 | $0.0488 | $0.0473 | $0.0488 | $0.0504 | $0.0534 |
| 346 | MI | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 346 | MI | ITC | $0.0604 | $0.0588 | $0.0619 | $0.0619 | $0.0619 | $0.0635 | $0.0619 | $0.0635 | $0.0650 | $0.0681 |
| 348 | MI | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 348 | MI | ITC | $0.0430 | $0.0414 | $0.0445 | $0.0445 | $0.0445 | $0.0461 | $0.0445 | $0.0461 | $0.0476 | $0.0507 |
| 350 | WI | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 350 | WI | ITC | $0.0580 | $0.0565 | $0.0596 | $0.0596 | $0.0596 | $0.0611 | $0.0596 | $0.0611 | $0.0627 | $0.0657 |
| 352 | WI | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 352 | WI | ITC | $0.0580 | $0.0565 | $0.0596 | $0.0596 | $0.0596 | $0.0611 | $0.0596 | $0.0611 | $0.0626 | $0.0657 |
| 354 | WI | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 354 | WI | ITC | $0.0554 | $0.0539 | $0.0569 | $0.0569 | $0.0569 | $0.0585 | $0.0569 | $0.0585 | $0.0600 | $0.0631 |
| 356 | WI | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 356 | WI | ITC | $0.0568 | $0.0553 | $0.0584 | $0.0584 | $0.0584 | $0.0599 | $0.0584 | $0.0599 | $0.0614 | $0.0645 |
| 358 | IL | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 358 | IL | ITC | $0.0621 | $0.0606 | $0.0636 | $0.0636 | $0.0636 | $0.0652 | $0.0636 | $0.0652 | $0.0667 | $0.0698 |
| 360 | IL | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 360 | IL | ITC | $0.0606 | $0.0590 | $0.0621 | $0.0621 | $0.0621 | $0.0637 | $0.0621 | $0.0637 | $0.0652 | $0.0683 |
| 362 | IL | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 362 | IL | ITC | $0.0751 | $0.0735 | $0.0766 | $0.0766 | $0.0766 | $0.0781 | $0.0766 | $0.0781 | $0.0797 | $0.0828 |
| 364 | IL | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 364 | IL | ITC | $0.0751 | $0.0735 | $0.0766 | $0.0766 | $0.0766 | $0.0781 | $0.0766 | $0.0781 | $0.0797 | $0.0828 |
| 366 | IL | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 366 | IL | ITC | $0.0751 | $0.0735 | $0.0766 | $0.0766 | $0.0766 | $0.0781 | $0.0766 | $0.0781 | $0.0797 | $0.0828 |
| 368 | IL | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 368 | IL | ITC | $0.0489 | $0.0473 | $0.0504 | $0.0504 | $0.0504 | $0.0519 | $0.0504 | $0.0519 | $0.0535 | $0.0566 |
| 370 | IL | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 370 | IL | ITC | $0.0498 | $0.0482 | $0.0513 | $0.0513 | $0.0513 | $0.0529 | $0.0513 | $0.0529 | $0.0544 | $0.0575 |
| 374 | IL | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 374 | IL | ITC | $0.0572 | $0.0557 | $0.0588 | $0.0588 | $0.0588 | $0.0603 | $0.0588 | $0.0603 | $0.0618 | $0.0649 |
| 376 | IL | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 376 | IL | ITC | $0.0518 | $0.0503 | $0.0534 | $0.0534 | $0.0534 | $0.0549 | $0.0534 | $0.0549 | $0.0565 | $0.0595 |
| 420 | NC | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 420 | NC | ITC | $0.0570 | $0.0585 | $0.0616 | $0.0570 | $0.0555 | $0.0585 | $0.0585 | $0.0632 | $0.0601 | $0.0632 |
| 422 | NC | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |

# Atlas Communications - RBOC / ITC

## Schedule A - Q1

### Volume Discount Pricing Structure

| Volume Level Buckets* | Discount (%)* |
|---|---|
| $0 - $250,000 | 0% |
| $250,001 - $500,000 | 4% |
| $500,001 - $750,000 | 9% |
| $750,001 - $1,000,000 | 13% |
| $1,000,000 + ** | 15% |

\* Volume Level Buckets & Discounts are Product Type Specific.

\*\* Upon customer reaching $1,000,000+, all traffic for a given month
will be priced at the $1,000,000 + Pricing Strucute.

| LATA | PRIMARY STATE | CLASS | SWITCH MEETPOINT | | | | | | RATES - POP MEETPOINT | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | ATL | MW | NW | S | SE | SW | POP ATL | POP MW | POP S | POP SW |
| 422 | NC | ITC | $0.0420 | $0.0435 | $0.0466 | $0.0420 | $0.0404 | $0.0435 | $0.0435 | $0.0481 | $0.0451 | $0.0481 |
| 424 | NC | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 424 | NC | ITC | $0.0373 | $0.0388 | $0.0419 | $0.0373 | $0.0358 | $0.0388 | $0.0388 | $0.0434 | $0.0404 | $0.0434 |
| 426 | NC | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 426 | NC | ITC | $0.0602 | $0.0618 | $0.0648 | $0.0602 | $0.0587 | $0.0618 | $0.0618 | $0.0664 | $0.0633 | $0.0664 |
| 428 | NC | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 428 | NC | ITC | $0.0441 | $0.0457 | $0.0487 | $0.0441 | $0.0426 | $0.0457 | $0.0457 | $0.0503 | $0.0472 | $0.0503 |
| 430 | SC | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 430 | SC | ITC | $0.0411 | $0.0427 | $0.0458 | $0.0411 | $0.0396 | $0.0427 | $0.0427 | $0.0473 | $0.0442 | $0.0473 |
| 432 | SC | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 432 | SC | ITC | $0.0537 | $0.0552 | $0.0583 | $0.0537 | $0.0522 | $0.0552 | $0.0552 | $0.0599 | $0.0568 | $0.0599 |
| 434 | SC | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 434 | SC | ITC | $0.0488 | $0.0503 | $0.0534 | $0.0488 | $0.0472 | $0.0503 | $0.0503 | $0.0549 | $0.0519 | $0.0549 |
| 436 | SC | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 436 | SC | ITC | $0.0508 | $0.0523 | $0.0554 | $0.0508 | $0.0492 | $0.0523 | $0.0523 | $0.0569 | $0.0539 | $0.0569 |
| 438 | GA | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 438 | GA | ITC | $0.0523 | $0.0539 | $0.0570 | $0.0523 | $0.0508 | $0.0539 | $0.0539 | $0.0585 | $0.0554 | $0.0585 |
| 440 | GA | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 440 | GA | ITC | $0.0568 | $0.0584 | $0.0614 | $0.0568 | $0.0553 | $0.0584 | $0.0584 | $0.0630 | $0.0599 | $0.0630 |
| 442 | GA | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 442 | GA | ITC | $0.0650 | $0.0665 | $0.0696 | $0.0650 | $0.0635 | $0.0665 | $0.0665 | $0.0712 | $0.0681 | $0.0712 |
| 444 | GA | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 444 | GA | ITC | $0.0917 | $0.0932 | $0.0963 | $0.0917 | $0.0901 | $0.0932 | $0.0932 | $0.0978 | $0.0948 | $0.0978 |
| 446 | GA | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 446 | GA | ITC | $0.0975 | $0.0990 | $0.1021 | $0.0975 | $0.0960 | $0.0990 | $0.0990 | $0.1036 | $0.1006 | $0.1036 |
| 448 | FL | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 448 | FL | ITC | $0.0322 | $0.0338 | $0.0369 | $0.0322 | $0.0307 | $0.0338 | $0.0338 | $0.0384 | $0.0353 | $0.0384 |
| 450 | FL | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 450 | FL | ITC | $0.0462 | $0.0478 | $0.0508 | $0.0462 | $0.0447 | $0.0478 | $0.0478 | $0.0524 | $0.0493 | $0.0524 |
| 452 | FL | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 452 | FL | ITC | $0.0305 | $0.0320 | $0.0351 | $0.0305 | $0.0289 | $0.0320 | $0.0320 | $0.0366 | $0.0335 | $0.0366 |
| 454 | FL | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 454 | FL | ITC | $0.0342 | $0.0357 | $0.0388 | $0.0342 | $0.0327 | $0.0357 | $0.0357 | $0.0404 | $0.0373 | $0.0404 |
| 456 | FL | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 456 | FL | ITC | $0.0462 | $0.0478 | $0.0508 | $0.0462 | $0.0447 | $0.0478 | $0.0478 | $0.0524 | $0.0493 | $0.0524 |
| 458 | FL | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 458 | FL | ITC | $0.0337 | $0.0352 | $0.0383 | $0.0337 | $0.0321 | $0.0352 | $0.0352 | $0.0398 | $0.0368 | $0.0398 |
| 460 | FL | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 460 | FL | ITC | $0.0404 | $0.0419 | $0.0450 | $0.0404 | $0.0388 | $0.0419 | $0.0419 | $0.0465 | $0.0435 | $0.0465 |
| 462 | KY | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 462 | KY | ITC | $0.0568 | $0.0583 | $0.0614 | $0.0568 | $0.0552 | $0.0583 | $0.0583 | $0.0629 | $0.0598 | $0.0629 |

# Atlas Communications - RBOC / ITC
## Interstate Termination rates
### Schedule A - Q1

**Volume Discount Pricing Structure**

| Volume Level Buckets * | Discount % ** |
|---|---|
| $0 - $250,000 | 0% |
| $250,001 - $500,000 | 4% |
| $500,001 - $750,000 | 9% |
| $750,001 - $1,000,000 | 13% |
| $1,000,000 + ** | 15% |

\* Volume Level Buckets & Discounts are Product Type Specific.

\*\* Upon customer reaching $1,000,000+, all traffic for a given month
will be priced at the $1,000,000 + Pricing Strucute.

| LATA | PRIMARY STATE | CLASS | SWITCH MEETPOINT | | | | | | RATES - POP MEETPOINT | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | ATL | MW | NW | S | SE | SW | POP ATL | POP MW | POP S | POP SW |
| 464 | KY | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 464 | KY | ITC | $0.0617 | $0.0633 | $0.0664 | $0.0617 | $0.0602 | $0.0633 | $0.0633 | $0.0679 | $0.0648 | $0.0679 |
| 466 | KY | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 466 | KY | ITC | $0.0244 | $0.0260 | $0.0290 | $0.0244 | $0.0229 | $0.0260 | $0.0260 | $0.0306 | $0.0275 | $0.0306 |
| 468 | TN | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 468 | TN | ITC | $0.0817 | $0.0833 | $0.0864 | $0.0817 | $0.0802 | $0.0833 | $0.0833 | $0.0879 | $0.0848 | $0.0879 |
| 470 | TN | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 470 | TN | ITC | $0.0715 | $0.0730 | $0.0761 | $0.0715 | $0.0699 | $0.0730 | $0.0730 | $0.0776 | $0.0746 | $0.0776 |
| 472 | TN | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 472 | TN | ITC | $0.0682 | $0.0697 | $0.0728 | $0.0682 | $0.0666 | $0.0697 | $0.0697 | $0.0743 | $0.0712 | $0.0743 |
| 474 | TN | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 474 | TN | ITC | $0.0624 | $0.0639 | $0.0670 | $0.0624 | $0.0608 | $0.0639 | $0.0639 | $0.0685 | $0.0654 | $0.0685 |
| 476 | AL | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 476 | AL | ITC | $0.0561 | $0.0576 | $0.0607 | $0.0561 | $0.0545 | $0.0576 | $0.0576 | $0.0622 | $0.0592 | $0.0622 |
| 477 | AL | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 477 | AL | ITC | $0.0588 | $0.0604 | $0.0634 | $0.0588 | $0.0573 | $0.0604 | $0.0604 | $0.0650 | $0.0619 | $0.0650 |
| 478 | AL | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 478 | AL | ITC | $0.0618 | $0.0634 | $0.0664 | $0.0618 | $0.0603 | $0.0634 | $0.0634 | $0.0680 | $0.0649 | $0.0680 |
| 480 | AL | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 480 | AL | ITC | $0.0737 | $0.0752 | $0.0783 | $0.0737 | $0.0722 | $0.0752 | $0.0752 | $0.0798 | $0.0768 | $0.0798 |
| 482 | MS | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 482 | MS | ITC | $0.0634 | $0.0649 | $0.0680 | $0.0634 | $0.0618 | $0.0649 | $0.0649 | $0.0695 | $0.0664 | $0.0695 |
| 484 | MS | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 484 | MS | ITC | $0.0634 | $0.0649 | $0.0680 | $0.0634 | $0.0618 | $0.0649 | $0.0649 | $0.0695 | $0.0664 | $0.0695 |
| 486 | LA | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 486 | LA | ITC | $0.0678 | $0.0694 | $0.0724 | $0.0678 | $0.0663 | $0.0694 | $0.0694 | $0.0740 | $0.0709 | $0.0740 |
| 488 | LA | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 488 | LA | ITC | $0.0696 | $0.0711 | $0.0742 | $0.0696 | $0.0681 | $0.0711 | $0.0711 | $0.0758 | $0.0727 | $0.0758 |
| 490 | LA | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 490 | LA | ITC | $0.1083 | $0.1098 | $0.1129 | $0.1083 | $0.1067 | $0.1098 | $0.1098 | $0.1144 | $0.1114 | $0.1144 |
| 492 | LA | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 492 | LA | ITC | $0.1083 | $0.1098 | $0.1129 | $0.1083 | $0.1067 | $0.1098 | $0.1098 | $0.1144 | $0.1114 | $0.1144 |
| 520 | MO | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 520 | MO | ITC | $0.0619 | $0.0604 | $0.0635 | $0.0635 | $0.0635 | $0.0650 | $0.0635 | $0.0650 | $0.0666 | $0.0696 |
| 521 | MO | RBOC | $0.0173 | $0.0158 | $0.0189 | $0.0189 | $0.0189 | $0.0204 | $0.0189 | $0.0204 | $0.0220 | $0.0250 |
| 521 | MO | ITC | $0.0482 | $0.0466 | $0.0497 | $0.0497 | $0.0497 | $0.0512 | $0.0497 | $0.0512 | $0.0528 | $0.0558 |
| 522 | MO | RBOC | $0.0173 | $0.0158 | $0.0189 | $0.0189 | $0.0189 | $0.0204 | $0.0189 | $0.0204 | $0.0220 | $0.0250 |
| 522 | MO | ITC | $0.0522 | $0.0507 | $0.0537 | $0.0537 | $0.0537 | $0.0553 | $0.0537 | $0.0553 | $0.0568 | $0.0599 |
| 524 | MO | RBOC | $0.0173 | $0.0158 | $0.0189 | $0.0189 | $0.0189 | $0.0204 | $0.0189 | $0.0204 | $0.0220 | $0.0250 |
| 524 | MO | ITC | $0.0606 | $0.0590 | $0.0621 | $0.0621 | $0.0621 | $0.0637 | $0.0621 | $0.0637 | $0.0652 | $0.0683 |
| 526 | AR | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |

# Atlas Communications - PROC / ITC
## Interstate Termination Rates
### Schedule A - Q1
### Volume Discount Pricing Structure

| Volume Level Buckets * | Discount % ** |
|---|---|
| $0 - $250,000 | 0% |
| $250,001 - $500,000 | 4% |
| $500,001 - $750,000 | 9% |
| $750,001 - $1,000,000 | 13% |
| $1,000,000 + ** | 15% |

\* Volume Level Buckets & Discounts are Product Type Specific.

\*\* Upon customer reaching $1,000,000+, all traffic for a given month
will be priced at the $1,000,000 + Pricing Strucute.

| LATA | PRIMARY STATE | CLASS | SWITCH MEETPOINT | | | | | | RATES - POP MEETPOINT | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | ATL | MW | NW | S | SE | SW | POP ATL | POP MW | POP S | POP SW |
| 526 | AR | ITC | $0.0609 | $0.0594 | $0.0609 | $0.0563 | $0.0578 | $0.0578 | $0.0624 | $0.0640 | $0.0594 | $0.0624 |
| 528 | AR | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 528 | AR | ITC | $0.0712 | $0.0697 | $0.0712 | $0.0666 | $0.0681 | $0.0681 | $0.0727 | $0.0743 | $0.0697 | $0.0727 |
| 530 | AR | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 530 | AR | ITC | $0.0685 | $0.0670 | $0.0685 | $0.0639 | $0.0654 | $0.0654 | $0.0701 | $0.0716 | $0.0670 | $0.0701 |
| 532 | KS | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 532 | KS | ITC | $0.0699 | $0.0683 | $0.0699 | $0.0653 | $0.0668 | $0.0668 | $0.0714 | $0.0730 | $0.0683 | $0.0714 |
| 534 | KS | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 534 | KS | ITC | $0.0679 | $0.0664 | $0.0679 | $0.0633 | $0.0648 | $0.0648 | $0.0695 | $0.0710 | $0.0664 | $0.0695 |
| 536 | OK | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 536 | OK | ITC | $0.0529 | $0.0514 | $0.0529 | $0.0483 | $0.0499 | $0.0499 | $0.0545 | $0.0560 | $0.0514 | $0.0545 |
| 538 | OK | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 538 | OK | ITC | $0.0482 | $0.0467 | $0.0482 | $0.0436 | $0.0451 | $0.0451 | $0.0497 | $0.0513 | $0.0467 | $0.0497 |
| 540 | TX | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 540 | TX | ITC | $0.0864 | $0.0849 | $0.0864 | $0.0818 | $0.0834 | $0.0834 | $0.0880 | $0.0895 | $0.0849 | $0.0880 |
| 542 | TX | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 542 | TX | ITC | $0.0856 | $0.0841 | $0.0856 | $0.0810 | $0.0825 | $0.0825 | $0.0871 | $0.0887 | $0.0841 | $0.0871 |
| 544 | TX | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 544 | TX | ITC | $0.0528 | $0.0512 | $0.0528 | $0.0481 | $0.0497 | $0.0497 | $0.0543 | $0.0558 | $0.0512 | $0.0543 |
| 546 | TX | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 546 | TX | ITC | $0.0612 | $0.0597 | $0.0612 | $0.0566 | $0.0582 | $0.0582 | $0.0628 | $0.0643 | $0.0597 | $0.0628 |
| 548 | TX | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 548 | TX | ITC | $0.0597 | $0.0581 | $0.0597 | $0.0551 | $0.0566 | $0.0566 | $0.0612 | $0.0628 | $0.0581 | $0.0612 |
| 550 | TX | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 550 | TX | ITC | $0.0304 | $0.0288 | $0.0304 | $0.0258 | $0.0273 | $0.0273 | $0.0319 | $0.0334 | $0.0288 | $0.0319 |
| 552 | TX | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 552 | TX | ITC | $0.0304 | $0.0288 | $0.0304 | $0.0258 | $0.0273 | $0.0273 | $0.0319 | $0.0334 | $0.0288 | $0.0319 |
| 554 | TX | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 554 | TX | ITC | $0.0304 | $0.0288 | $0.0304 | $0.0258 | $0.0273 | $0.0273 | $0.0319 | $0.0334 | $0.0288 | $0.0319 |
| 556 | TX | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 556 | TX | ITC | $0.0304 | $0.0288 | $0.0304 | $0.0258 | $0.0273 | $0.0273 | $0.0319 | $0.0334 | $0.0288 | $0.0319 |
| 558 | TX | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 558 | TX | ITC | $0.0304 | $0.0288 | $0.0304 | $0.0258 | $0.0273 | $0.0273 | $0.0319 | $0.0334 | $0.0288 | $0.0319 |
| 560 | TX | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 560 | TX | ITC | $0.0416 | $0.0401 | $0.0416 | $0.0370 | $0.0385 | $0.0385 | $0.0431 | $0.0447 | $0.0401 | $0.0431 |
| 562 | TX | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 562 | TX | ITC | $0.0304 | $0.0288 | $0.0304 | $0.0258 | $0.0273 | $0.0273 | $0.0319 | $0.0334 | $0.0288 | $0.0319 |
| 564 | TX | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 564 | TX | ITC | $0.0304 | $0.0288 | $0.0304 | $0.0258 | $0.0273 | $0.0273 | $0.0319 | $0.0334 | $0.0288 | $0.0319 |
| 566 | TX | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 566 | TX | ITC | $0.0304 | $0.0288 | $0.0304 | $0.0258 | $0.0273 | $0.0273 | $0.0319 | $0.0334 | $0.0288 | $0.0319 |

QDA-V QDA-V 5-20-99 -US Digitel                CONFIDENTIAL                Initials ___  Initials ___

# Atlas Communications - RBOC / ITC
## Interstate Termination Rates
### Schedule A - Q1
### Volume Discount Pricing Structure

| Volume Level Buckets * | Discount % * |
|---|---|
| $0 - $250,000 | 0% |
| $250,001 - $500,000 | 4% |
| $500,001 - $750,000 | 9% |
| $750,001 - $1,000,000 | 13% |
| $1,000,000 + ** | 15% |

\* Volume Level Buckets & Discounts are Product Type Specific.

\*\* Upon customer reaching $1,000,000+, all traffic for a given month
will be priced at the $1,000,000 + Pricing Strucute.

| LATA | PRIMARY STATE | CLASS | SWITCH MEETPOINT | | | | | | RATES - POP MEETPOINT | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | ATL | MW | NW | S | SE | SW | POP ATL | POP MW | POP S | POP SW |
| 568 | TX | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 568 | TX | ITC | $0.0304 | $0.0288 | $0.0304 | $0.0258 | $0.0273 | $0.0273 | $0.0319 | $0.0334 | $0.0288 | $0.0319 |
| 570 | TX | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 570 | TX | ITC | $0.0304 | $0.0288 | $0.0304 | $0.0258 | $0.0273 | $0.0273 | $0.0319 | $0.0334 | $0.0288 | $0.0319 |
| 620 | MN | RBOC | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0186 | $0.0202 | $0.0186 | $0.0202 | $0.0217 | $0.0248 |
| 620 | MN | ITC | $0.0592 | $0.0577 | $0.0608 | $0.0608 | $0.0608 | $0.0623 | $0.0608 | $0.0623 | $0.0639 | $0.0669 |
| 624 | MN | RBOC | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0186 | $0.0202 | $0.0186 | $0.0202 | $0.0217 | $0.0248 |
| 624 | MN | ITC | $0.0626 | $0.0611 | $0.0642 | $0.0642 | $0.0642 | $0.0657 | $0.0642 | $0.0657 | $0.0673 | $0.0703 |
| 626 | MN | RBOC | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0186 | $0.0202 | $0.0186 | $0.0202 | $0.0217 | $0.0248 |
| 626 | MN | ITC | $0.0620 | $0.0605 | $0.0636 | $0.0636 | $0.0636 | $0.0651 | $0.0636 | $0.0651 | $0.0667 | $0.0697 |
| 628 | MN | RBOC | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0186 | $0.0202 | $0.0186 | $0.0202 | $0.0217 | $0.0248 |
| 628 | MN | ITC | $0.0651 | $0.0636 | $0.0666 | $0.0666 | $0.0666 | $0.0682 | $0.0666 | $0.0682 | $0.0697 | $0.0728 |
| 630 | IA | RBOC | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0186 | $0.0202 | $0.0186 | $0.0202 | $0.0217 | $0.0248 |
| 630 | IA | ITC | $0.0832 | $0.0817 | $0.0848 | $0.0848 | $0.0848 | $0.0863 | $0.0848 | $0.0863 | $0.0878 | $0.0909 |
| 632 | IA | RBOC | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0186 | $0.0202 | $0.0186 | $0.0202 | $0.0217 | $0.0248 |
| 632 | IA | ITC | $0.0418 | $0.0403 | $0.0434 | $0.0434 | $0.0434 | $0.0449 | $0.0434 | $0.0449 | $0.0464 | $0.0495 |
| 634 | IA | RBOC | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0186 | $0.0202 | $0.0186 | $0.0202 | $0.0217 | $0.0248 |
| 634 | IA | ITC | $0.0707 | $0.0691 | $0.0722 | $0.0722 | $0.0722 | $0.0737 | $0.0722 | $0.0737 | $0.0753 | $0.0784 |
| 635 | IA | RBOC | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0186 | $0.0202 | $0.0186 | $0.0202 | $0.0217 | $0.0248 |
| 635 | IA | ITC | $0.0740 | $0.0725 | $0.0755 | $0.0755 | $0.0755 | $0.0771 | $0.0755 | $0.0771 | $0.0786 | $0.0817 |
| 636 | ND | RBOC | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0186 | $0.0202 | $0.0186 | $0.0202 | $0.0217 | $0.0248 |
| 636 | ND | ITC | $0.0639 | $0.0624 | $0.0654 | $0.0654 | $0.0654 | $0.0670 | $0.0654 | $0.0670 | $0.0685 | $0.0716 |
| 638 | ND | RBOC | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0186 | $0.0202 | $0.0186 | $0.0202 | $0.0217 | $0.0248 |
| 638 | ND | ITC | $0.0639 | $0.0624 | $0.0654 | $0.0654 | $0.0654 | $0.0670 | $0.0654 | $0.0670 | $0.0685 | $0.0716 |
| 640 | SD | RBOC | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0186 | $0.0202 | $0.0186 | $0.0202 | $0.0217 | $0.0248 |
| 640 | SD | ITC | $0.1097 | $0.1082 | $0.1113 | $0.1113 | $0.1113 | $0.1128 | $0.1113 | $0.1128 | $0.1144 | $0.1174 |
| 644 | NE | RBOC | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0186 | $0.0202 | $0.0186 | $0.0202 | $0.0217 | $0.0248 |
| 644 | NE | ITC | $0.0646 | $0.0630 | $0.0661 | $0.0661 | $0.0661 | $0.0676 | $0.0661 | $0.0676 | $0.0692 | $0.0723 |
| 646 | NE | RBOC | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0186 | $0.0202 | $0.0186 | $0.0202 | $0.0217 | $0.0248 |
| 646 | NE | ITC | $0.0622 | $0.0606 | $0.0637 | $0.0637 | $0.0637 | $0.0652 | $0.0637 | $0.0652 | $0.0668 | $0.0698 |
| 648 | MT | RBOC | $0.0202 | $0.0186 | $0.0156 | $0.0202 | $0.0217 | $0.0171 | $0.0217 | $0.0232 | $0.0232 | $0.0217 |
| 648 | MT | ITC | $0.1073 | $0.1058 | $0.1027 | $0.1073 | $0.1089 | $0.1043 | $0.1089 | $0.1104 | $0.1104 | $0.1089 |
| 650 | MT | RBOC | $0.0202 | $0.0186 | $0.0156 | $0.0202 | $0.0217 | $0.0171 | $0.0217 | $0.0232 | $0.0232 | $0.0217 |
| 650 | MT | ITC | $0.1178 | $0.1162 | $0.1132 | $0.1178 | $0.1193 | $0.1147 | $0.1193 | $0.1208 | $0.1208 | $0.1193 |
| 652 | ID | RBOC | $0.0202 | $0.0186 | $0.0156 | $0.0202 | $0.0217 | $0.0171 | $0.0217 | $0.0232 | $0.0232 | $0.0217 |
| 652 | ID | ITC | $0.0696 | $0.0681 | $0.0650 | $0.0696 | $0.0712 | $0.0665 | $0.0712 | $0.0727 | $0.0727 | $0.0712 |
| 654 | WY | RBOC | $0.0202 | $0.0186 | $0.0156 | $0.0202 | $0.0217 | $0.0171 | $0.0217 | $0.0232 | $0.0232 | $0.0217 |
| 654 | WY | ITC | $0.0882 | $0.0866 | $0.0836 | $0.0882 | $0.0897 | $0.0851 | $0.0897 | $0.0912 | $0.0912 | $0.0897 |
| 656 | CO | RBOC | $0.0217 | $0.0202 | $0.0171 | $0.0171 | $0.0186 | $0.0156 | $0.0232 | $0.0248 | $0.0202 | $0.0202 |
| 656 | CO | ITC | $0.0682 | $0.0667 | $0.0636 | $0.0636 | $0.0652 | $0.0621 | $0.0698 | $0.0713 | $0.0667 | $0.0667 |
| 658 | CO | RBOC | $0.0217 | $0.0202 | $0.0171 | $0.0171 | $0.0186 | $0.0156 | $0.0232 | $0.0248 | $0.0202 | $0.0202 |

QDA-V QDA-V 5-20-99 -US Digitel          CONFIDENTIAL          Initials _____  Initials _____

Atlas Communications - RBOC / ITC
Interstate Termination Rates
Schedule A - Q1

## Volume Discount Pricing Structure

| Volume Level Buckets** | Discount %*** |
|---|---|
| $0 - $250,000 | 0% |
| $250,001 - $500,000 | 4% |
| $500,001 - $750,000 | 9% |
| $750,001 - $1,000,000 | 13% |
| $1,000,000 + ** | 15% |

\* Volume Level Buckets & Discounts are Product Type Specific.

\*\* Upon customer reaching $1,000,000+, all traffic for a given month
will be priced at the $1,000,000 + Pricing Strucute.

| LATA | PRIMARY STATE | CLASS | SWITCH MEETPOINT | | | | | | RATES - POP MEETPOINT | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | ATL | MW | NW | S | SE | SW | POP ATL | POP MW | POP S | POP SW |
| 658 | CO | ITC | $0.1062 | $0.1047 | $0.1016 | $0.1016 | $0.1031 | $0.1001 | $0.1078 | $0.1093 | $0.1047 | $0.1047 |
| 660 | UT | RBOC | $0.0217 | $0.0202 | $0.0171 | $0.0171 | $0.0186 | $0.0156 | $0.0232 | $0.0248 | $0.0202 | $0.0202 |
| 660 | UT | ITC | $0.0654 | $0.0639 | $0.0608 | $0.0608 | $0.0624 | $0.0593 | $0.0670 | $0.0685 | $0.0639 | $0.0639 |
| 664 | NM | RBOC | $0.0217 | $0.0202 | $0.0171 | $0.0171 | $0.0186 | $0.0156 | $0.0232 | $0.0248 | $0.0202 | $0.0202 |
| 664 | NM | ITC | $0.0562 | $0.0547 | $0.0516 | $0.0516 | $0.0531 | $0.0501 | $0.0578 | $0.0593 | $0.0547 | $0.0547 |
| 666 | AZ | RBOC | $0.0217 | $0.0202 | $0.0171 | $0.0171 | $0.0186 | $0.0156 | $0.0232 | $0.0248 | $0.0202 | $0.0202 |
| 666 | AZ | ITC | $0.1053 | $0.1038 | $0.1007 | $0.1007 | $0.1022 | $0.0992 | $0.1069 | $0.1084 | $0.1038 | $0.1038 |
| 668 | AZ | RBOC | $0.0217 | $0.0202 | $0.0171 | $0.0171 | $0.0186 | $0.0156 | $0.0232 | $0.0248 | $0.0202 | $0.0202 |
| 668 | AZ | ITC | $0.1053 | $0.1038 | $0.1007 | $0.1007 | $0.1022 | $0.0992 | $0.1069 | $0.1084 | $0.1038 | $0.1038 |
| 670 | OR | RBOC | $0.0202 | $0.0186 | $0.0156 | $0.0202 | $0.0217 | $0.0171 | $0.0217 | $0.0232 | $0.0232 | $0.0217 |
| 670 | OR | ITC | $0.0630 | $0.0615 | $0.0584 | $0.0630 | $0.0645 | $0.0599 | $0.0645 | $0.0661 | $0.0661 | $0.0645 |
| 672 | OR | RBOC | $0.0202 | $0.0186 | $0.0156 | $0.0202 | $0.0217 | $0.0171 | $0.0217 | $0.0232 | $0.0232 | $0.0217 |
| 672 | OR | ITC | $0.0618 | $0.0603 | $0.0572 | $0.0618 | $0.0634 | $0.0587 | $0.0634 | $0.0649 | $0.0649 | $0.0634 |
| 674 | WA | RBOC | $0.0202 | $0.0186 | $0.0156 | $0.0202 | $0.0217 | $0.0171 | $0.0217 | $0.0232 | $0.0232 | $0.0217 |
| 674 | WA | ITC | $0.0463 | $0.0447 | $0.0416 | $0.0463 | $0.0478 | $0.0432 | $0.0478 | $0.0493 | $0.0493 | $0.0478 |
| 676 | WA | RBOC | $0.0202 | $0.0186 | $0.0156 | $0.0202 | $0.0217 | $0.0171 | $0.0217 | $0.0232 | $0.0232 | $0.0217 |
| 676 | WA | ITC | $0.0527 | $0.0511 | $0.0480 | $0.0527 | $0.0542 | $0.0496 | $0.0542 | $0.0557 | $0.0557 | $0.0542 |
| 720 | NV | RBOC | $0.0307 | $0.0292 | $0.0261 | $0.0261 | $0.0276 | $0.0246 | $0.0323 | $0.0338 | $0.0292 | $0.0292 |
| 720 | NV | ITC | $0.0735 | $0.0719 | $0.0689 | $0.0689 | $0.0704 | $0.0673 | $0.0750 | $0.0766 | $0.0719 | $0.0719 |
| 721 | NV | RBOC | $0.0307 | $0.0292 | $0.0261 | $0.0261 | $0.0276 | $0.0246 | $0.0323 | $0.0338 | $0.0292 | $0.0292 |
| 721 | NV | ITC | $0.0170 | $0.0155 | $0.0124 | $0.0124 | $0.0140 | $0.0109 | $0.0186 | $0.0201 | $0.0155 | $0.0155 |
| 722 | CA | RBOC | $0.0289 | $0.0274 | $0.0243 | $0.0243 | $0.0258 | $0.0228 | $0.0304 | $0.0320 | $0.0274 | $0.0274 |
| 722 | CA | ITC | $0.0486 | $0.0470 | $0.0439 | $0.0439 | $0.0455 | $0.0424 | $0.0501 | $0.0516 | $0.0470 | $0.0470 |
| 724 | CA | RBOC | $0.0289 | $0.0274 | $0.0243 | $0.0243 | $0.0258 | $0.0228 | $0.0304 | $0.0320 | $0.0274 | $0.0274 |
| 724 | CA | ITC | $0.0751 | $0.0736 | $0.0705 | $0.0705 | $0.0720 | $0.0689 | $0.0766 | $0.0782 | $0.0736 | $0.0736 |
| 726 | CA | RBOC | $0.0289 | $0.0274 | $0.0243 | $0.0243 | $0.0258 | $0.0228 | $0.0304 | $0.0320 | $0.0274 | $0.0274 |
| 726 | CA | ITC | $0.0709 | $0.0693 | $0.0662 | $0.0662 | $0.0678 | $0.0647 | $0.0724 | $0.0739 | $0.0693 | $0.0693 |
| 728 | CA | RBOC | $0.0289 | $0.0274 | $0.0243 | $0.0243 | $0.0258 | $0.0228 | $0.0304 | $0.0320 | $0.0274 | $0.0274 |
| 728 | CA | ITC | $0.0475 | $0.0460 | $0.0429 | $0.0429 | $0.0444 | $0.0414 | $0.0490 | $0.0506 | $0.0460 | $0.0460 |
| 730 | CA | RBOC | $0.0289 | $0.0274 | $0.0243 | $0.0243 | $0.0258 | $0.0228 | $0.0304 | $0.0320 | $0.0274 | $0.0274 |
| 730 | CA | ITC | $0.0228 | $0.0213 | $0.0182 | $0.0182 | $0.0198 | $0.0167 | $0.0244 | $0.0259 | $0.0213 | $0.0213 |
| 732 | CA | RBOC | $0.0289 | $0.0274 | $0.0243 | $0.0243 | $0.0258 | $0.0228 | $0.0304 | $0.0320 | $0.0274 | $0.0274 |
| 732 | CA | ITC | $0.0689 | $0.0673 | $0.0642 | $0.0642 | $0.0658 | $0.0627 | $0.0704 | $0.0719 | $0.0673 | $0.0673 |
| 734 | CA | RBOC | $0.0289 | $0.0274 | $0.0243 | $0.0243 | $0.0258 | $0.0228 | $0.0304 | $0.0320 | $0.0274 | $0.0274 |
| 734 | CA | ITC | $0.0689 | $0.0673 | $0.0642 | $0.0642 | $0.0658 | $0.0627 | $0.0704 | $0.0719 | $0.0673 | $0.0673 |
| 736 | CA | RBOC | $0.0289 | $0.0274 | $0.0243 | $0.0243 | $0.0258 | $0.0228 | $0.0304 | $0.0320 | $0.0274 | $0.0274 |
| 736 | CA | ITC | $0.0689 | $0.0673 | $0.0642 | $0.0642 | $0.0658 | $0.0627 | $0.0704 | $0.0719 | $0.0673 | $0.0673 |
| 738 | CA | RBOC | $0.0289 | $0.0274 | $0.0243 | $0.0243 | $0.0258 | $0.0228 | $0.0304 | $0.0320 | $0.0274 | $0.0274 |
| 738 | CA | ITC | $0.0674 | $0.0659 | $0.0628 | $0.0628 | $0.0644 | $0.0613 | $0.0690 | $0.0705 | $0.0659 | $0.0659 |
| 740 | CA | RBOC | $0.0289 | $0.0274 | $0.0243 | $0.0243 | $0.0258 | $0.0228 | $0.0304 | $0.0320 | $0.0274 | $0.0274 |
| 740 | CA | ITC | $0.0290 | $0.0275 | $0.0244 | $0.0244 | $0.0259 | $0.0228 | $0.0305 | $0.0321 | $0.0275 | $0.0275 |

# Atlas Communications - RBOC/ITC Interstate Termination Rates

## Schedule A - Q1

### Volume Discount Pricing Structure

| Volume Level Buckets * | Discount % * |
|---|---|
| $0 - $250,000 | 0% |
| $250,001 - $500,000 | 4% |
| $500,001 - $750,000 | 9% |
| $750,001 - $1,000,000 | 13% |
| $1,000,000 + ** | 15% |

\* Volume Level Buckets & Discounts are Product Type Specific.

\*\* Upon customer reaching $1,000,000+, all traffic for a given month
will be priced at the $1,000,000 + Pricing Strucute.

| LATA | PRIMARY STATE | CLASS | SWITCH MEETPOINT | | | | | | RATES - POP MEETPOINT | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | ATL | MW | NW | S | SE | SW | POP ATL | POP MW | POP S | POP SW |
| 820 | PR | N/A | $0.0746 | $0.0762 | $0.0792 | $0.0746 | $0.0731 | $0.0762 | $0.0762 | $0.0808 | $0.0777 | $0.0808 |
| 822 | USVI | N/A | $0.0746 | $0.0762 | $0.0792 | $0.0746 | $0.0731 | $0.0762 | $0.0762 | $0.0808 | $0.0777 | $0.0808 |
| 832 | AK | N/A | $0.0777 | $0.0762 | $0.0731 | $0.0777 | $0.0792 | $0.0746 | $0.0792 | $0.0808 | $0.0808 | $0.0792 |
| 834 | HI | N/A | $0.0792 | $0.0777 | $0.0746 | $0.0746 | $0.0762 | $0.0731 | $0.0808 | $0.0823 | $0.0777 | $0.0777 |
| 836 | MID/WAKE | N/A | $0.0792 | $0.0777 | $0.0746 | $0.0746 | $0.0762 | $0.0731 | $0.0808 | $0.0823 | $0.0777 | $0.0777 |
| 920 | CT | RBOC | $0.0266 | $0.0282 | $0.0313 | $0.0313 | $0.0282 | $0.0328 | $0.0282 | $0.0328 | $0.0343 | $0.0374 |
| 920 | CT | ITC | $0.0594 | $0.0610 | $0.0641 | $0.0641 | $0.0610 | $0.0656 | $0.0610 | $0.0656 | $0.0671 | $0.0702 |
| 921 | NY | RBOC | $0.0551 | $0.0566 | $0.0597 | $0.0597 | $0.0566 | $0.0612 | $0.0566 | $0.0612 | $0.0627 | $0.0658 |
| 921 | NY | ITC | $0.0566 | $0.0582 | $0.0612 | $0.0612 | $0.0582 | $0.0628 | $0.0582 | $0.0628 | $0.0643 | $0.0674 |
| 922 | OH | RBOC | $0.0178 | $0.0163 | $0.0194 | $0.0194 | $0.0194 | $0.0209 | $0.0194 | $0.0209 | $0.0224 | $0.0255 |
| 922 | OH | ITC | $0.0512 | $0.0496 | $0.0527 | $0.0527 | $0.0527 | $0.0542 | $0.0527 | $0.0542 | $0.0558 | $0.0589 |
| 923 | OH | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 923 | OH | ITC | $0.0496 | $0.0480 | $0.0511 | $0.0511 | $0.0511 | $0.0526 | $0.0511 | $0.0526 | $0.0542 | $0.0573 |
| 924 | PA | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 924 | PA | ITC | $0.0347 | $0.0362 | $0.0393 | $0.0393 | $0.0362 | $0.0408 | $0.0362 | $0.0408 | $0.0424 | $0.0455 |
| 927 | VA | RBOC | $0.0258 | $0.0273 | $0.0304 | $0.0304 | $0.0273 | $0.0319 | $0.0273 | $0.0319 | $0.0335 | $0.0365 |
| 927 | VA | ITC | $0.0191 | $0.0207 | $0.0237 | $0.0237 | $0.0207 | $0.0253 | $0.0207 | $0.0253 | $0.0268 | $0.0299 |
| 928 | VA | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 928 | VA | ITC | $0.0182 | $0.0198 | $0.0229 | $0.0229 | $0.0198 | $0.0244 | $0.0198 | $0.0244 | $0.0259 | $0.0290 |
| 929 | VA | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 929 | VA | ITC | $0.0866 | $0.0881 | $0.0912 | $0.0912 | $0.0881 | $0.0927 | $0.0881 | $0.0927 | $0.0942 | $0.0973 |
| 930 | VA | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 930 | VA | ITC | $0.0769 | $0.0785 | $0.0815 | $0.0815 | $0.0785 | $0.0831 | $0.0785 | $0.0831 | $0.0846 | $0.0877 |
| 932 | WV | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 932 | WV | ITC | $0.1080 | $0.1095 | $0.1126 | $0.1126 | $0.1095 | $0.1142 | $0.1095 | $0.1142 | $0.1157 | $0.1188 |
| 937 | IN | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 937 | IN | ITC | $0.0467 | $0.0451 | $0.0482 | $0.0482 | $0.0482 | $0.0498 | $0.0482 | $0.0498 | $0.0513 | $0.0544 |
| 938 | IN | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 938 | IN | ITC | $0.0467 | $0.0451 | $0.0482 | $0.0482 | $0.0482 | $0.0498 | $0.0482 | $0.0498 | $0.0513 | $0.0544 |
| 939 | FL | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 939 | FL | ITC | $0.0285 | $0.0300 | $0.0331 | $0.0285 | $0.0270 | $0.0300 | $0.0300 | $0.0347 | $0.0316 | $0.0347 |
| 949 | NC | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 949 | NC | ITC | $0.0212 | $0.0227 | $0.0258 | $0.0212 | $0.0196 | $0.0227 | $0.0227 | $0.0273 | $0.0242 | $0.0273 |
| 951 | NC | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 951 | NC | ITC | $0.0212 | $0.0227 | $0.0258 | $0.0212 | $0.0196 | $0.0227 | $0.0227 | $0.0273 | $0.0242 | $0.0273 |
| 952 | FL | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 952 | FL | ITC | $0.0184 | $0.0199 | $0.0230 | $0.0184 | $0.0168 | $0.0199 | $0.0199 | $0.0245 | $0.0215 | $0.0245 |
| 953 | FL | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 953 | FL | ITC | $0.0285 | $0.0300 | $0.0331 | $0.0285 | $0.0270 | $0.0300 | $0.0300 | $0.0347 | $0.0316 | $0.0347 |
| 955 | AL | RBOC | $0.0785 | $0.0800 | $0.0831 | $0.0785 | $0.0769 | $0.0800 | $0.0800 | $0.0846 | $0.0815 | $0.0846 |
| 955 | AL | ITC | $0.0785 | $0.0800 | $0.0831 | $0.0785 | $0.0769 | $0.0800 | $0.0800 | $0.0846 | $0.0815 | $0.0846 |

QDA-V QDA-V 5-20-99 -US Digitel          CONFIDENTIAL          Initials _____ Initials _____

CONFIDENTIAL



### Schedule A - Q1
### Volume Discount Pricing Structure

| Volume Level Buckets | Discounts |
|---|---|
| $0 - $250,000 | 0% |
| $250,001 - $500,000 | 4% |
| $500,001 - $750,000 | 9% |
| $750,001 - $1,000,000 | 13% |
| $1,000,000 + ** | 15% |

\* Volume Level Buckets & Discounts are Product Type Specific.

\*\* Upon customer reaching $1,000,000+, all traffic for a given month
will be priced at the $1,000,000 + Pricing Strucute.

| LATA | PRIMARY STATE | CLASS | SWITCH MEETPOINT | | | | | | RATES - POP MEETPOINT | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | ATL | MW | NW | S | SE | SW | POP ATL | POP MW | POP S | POP SW |
| 956 | TN | RBOC | $0.0171 | $0.0186 | $0.0217 | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0233 | $0.0202 | $0.0233 |
| 956 | TN | ITC | $0.0232 | $0.0248 | $0.0278 | $0.0232 | $0.0217 | $0.0248 | $0.0248 | $0.0294 | $0.0263 | $0.0294 |
| 958 | NE | RBOC | $0.0171 | $0.0156 | $0.0186 | $0.0186 | $0.0186 | $0.0202 | $0.0186 | $0.0202 | $0.0217 | $0.0248 |
| 958 | NE | ITC | $0.0255 | $0.0240 | $0.0270 | $0.0270 | $0.0270 | $0.0286 | $0.0270 | $0.0286 | $0.0301 | $0.0332 |
| 960 | ID | RBOC | $0.0202 | $0.0186 | $0.0156 | $0.0202 | $0.0217 | $0.0171 | $0.0217 | $0.0232 | $0.0232 | $0.0217 |
| 960 | ID | ITC | $0.0781 | $0.0766 | $0.0735 | $0.0781 | $0.0797 | $0.0751 | $0.0797 | $0.0812 | $0.0812 | $0.0797 |
| 961 | TX | RBOC | $0.0204 | $0.0189 | $0.0204 | $0.0158 | $0.0173 | $0.0173 | $0.0220 | $0.0235 | $0.0189 | $0.0220 |
| 961 | TX | ITC | $0.0304 | $0.0288 | $0.0304 | $0.0258 | $0.0273 | $0.0273 | $0.0319 | $0.0334 | $0.0288 | $0.0319 |
| 963 | MT | RBOC | $0.0172 | $0.0157 | $0.0126 | $0.0172 | $0.0188 | $0.0142 | $0.0188 | $0.0203 | $0.0203 | $0.0188 |
| 963 | MT | ITC | $0.1178 | $0.1162 | $0.1132 | $0.1178 | $0.1193 | $0.1147 | $0.1193 | $0.1208 | $0.1208 | $0.1193 |
| 973 | CA | RBOC | $0.0289 | $0.0274 | $0.0243 | $0.0243 | $0.0258 | $0.0228 | $0.0304 | $0.0320 | $0.0274 | $0.0274 |
| 973 | CA | ITC | $0.0228 | $0.0213 | $0.0182 | $0.0182 | $0.0198 | $0.0167 | $0.0244 | $0.0259 | $0.0213 | $0.0213 |
| 974 | NY | RBOC | $0.0257 | $0.0273 | $0.0304 | $0.0304 | $0.0273 | $0.0319 | $0.0273 | $0.0319 | $0.0334 | $0.0365 |
| 974 | NY | ITC | $0.0117 | $0.0133 | $0.0164 | $0.0164 | $0.0133 | $0.0179 | $0.0133 | $0.0179 | $0.0194 | $0.0225 |
| 976 | IL | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 976 | IL | ITC | $0.0458 | $0.0443 | $0.0474 | $0.0474 | $0.0474 | $0.0489 | $0.0474 | $0.0489 | $0.0504 | $0.0535 |
| 977 | IL | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 977 | IL | ITC | $0.0361 | $0.0345 | $0.0376 | $0.0376 | $0.0376 | $0.0392 | $0.0376 | $0.0392 | $0.0407 | $0.0438 |
| 978 | IL | RBOC | $0.0152 | $0.0136 | $0.0167 | $0.0167 | $0.0167 | $0.0182 | $0.0167 | $0.0182 | $0.0198 | $0.0229 |
| 978 | IL | ITC | $0.0751 | $0.0735 | $0.0766 | $0.0766 | $0.0766 | $0.0781 | $0.0766 | $0.0781 | $0.0797 | $0.0828 |
| 980 | AZ | RBOC | $0.0831 | $0.0815 | $0.0785 | $0.0785 | $0.0800 | $0.0769 | $0.0846 | $0.0862 | $0.0815 | $0.0815 |
| 980 | AZ | ITC | $0.0831 | $0.0815 | $0.0785 | $0.0785 | $0.0800 | $0.0769 | $0.0846 | $0.0862 | $0.0815 | $0.0815 |
| 981 | UT | RBOC | $0.0831 | $0.0815 | $0.0785 | $0.0785 | $0.0800 | $0.0769 | $0.0846 | $0.0862 | $0.0815 | $0.0815 |
| 981 | UT | ITC | $0.0831 | $0.0815 | $0.0785 | $0.0785 | $0.0800 | $0.0769 | $0.0846 | $0.0862 | $0.0815 | $0.0815 |
| 836 | MID/WAKE | N/A | $0.0792 | $0.0777 | $0.0746 | $0.0746 | $0.0762 | $0.0731 | $0.0808 | $0.0823 | $0.0777 | $0.0777 |
| 930 | VA | RBOC | $0.0113 | $0.0128 | $0.0159 | $0.0159 | $0.0128 | $0.0175 | $0.0128 | $0.0175 | $0.0190 | $0.0221 |
| 930 | VA | ITC | $0.0769 | $0.0785 | $0.0815 | $0.0815 | $0.0785 | $0.0831 | $0.0785 | $0.0831 | $0.0846 | $0.0877 |



**Atlas Communications; I.    QC ITC**
**Intrastate Termination Rates**
**Schedule A - Q2**

### Volume Discount Pricing Structure

| Volume Level Buckets* | Discount % * |
|---|---|
| $0 - $250,000 | 0% |
| $250,001 - $500,000 | 4% |
| $500,001 - $750,000 | 9% |
| $750,001 - $1,000,000 | 13% |
| $1,000,000 + ** | 15% |

\* Volume Level Buckets & Discounts are Product Type Specific.
\*\* Upon customer reaching $1,000,000+, all traffic for a given month
will be priced at the $1,000,000 + Pricing Strucute.

| STATE | RATES RBOC | ITC |
|---|---|---|
| AL | $0.0375 | $0.0707 |
| AR | $0.0643 | $0.0739 |
| AZ | $0.1075 | $0.3457 |
| CA | $0.0311 | $0.1035 |
| CO | $0.1290 | $0.1175 |
| CT | $0.0592 | $0.0755 |
| DC | $0.0592 | $0.0592 |
| DE | $0.0604 | $0.0547 |
| FL | $0.0612 | $0.1151 |
| GA | $0.0435 | $0.0459 |
| HI | $0.0555 | $0.0555 |
| IA | $0.0901 | $0.1256 |
| ID | $0.1743 | $0.1923 |
| IL | $0.0306 | $0.0537 |
| IN | $0.0306 | $0.0777 |
| KS | $0.0544 | $0.1169 |
| KY | $0.0340 | $0.0443 |
| LA | $0.0390 | $0.0428 |
| MA | $0.0751 | $0.0751 |
| MD | $0.0523 | $0.0523 |
| ME | $0.1307 | $0.1488 |
| MI | $0.0306 | $0.0629 |
| MN | $0.1023 | $0.1186 |
| MO | $0.0722 | $0.1934 |
| MS | $0.0467 | $0.1647 |
| MT | $0.0958 | $0.1794 |
| NC | $0.1209 | $0.1177 |
| ND | $0.1148 | $0.1148 |
| NE | $0.1379 | $0.1633 |
| NH | $0.0746 | $0.0961 |
| NJ | $0.0830 | $0.0875 |
| NM | $0.1110 | $0.1985 |
| NV | $0.0497 | $0.0584 |
| NY | $0.0689 | $0.0721 |
| OH | $0.0306 | $0.0754 |
| OK | $0.0474 | $0.0879 |
| OR | $0.0778 | $0.0902 |
| PA | $0.0604 | $0.1054 |
| RI | $0.0401 | $0.0401 |
| SC | $0.0899 | $0.0751 |
| SD | $0.0918 | $0.0918 |
| TN | $0.0807 | $0.0858 |

Atlas Communications; L...OC ITC
Intrastate Termination Rates
Schedule A - Q2

### Volume Discount Pricing Structure

| Volume Level Buckets * | Discount (%) * |
|---|---|
| $0 - $250,000 | 0% |
| $250,001 - $500,000 | 4% |
| $500,001 - $750,000 | 9% |
| $750,001 - $1,000,000 | 13% |
| $1,000,000 + ** | 15% |

\* Volume Level Buckets & Discounts are Product Type Specific.
\*\* Upon customer reaching $1,000,000+, all traffic for a given month
will be priced at the $1,000,000 + Pricing Strucute.

| STATE | RATES RBOC | ITC |
|---|---|---|
| TX | $0.1382 | $0.1592 |
| UT | $0.0533 | $0.0651 |
| VA | $0.0824 | $0.0745 |
| VT | $0.1029 | $0.1029 |
| WA | $0.0560 | $0.1222 |
| WI | $0.0306 | $0.0801 |
| WV | $0.0713 | $0.0867 |
| WY | $0.0695 | $0.1035 |



## Schedule A - QI

| Country | Country Code | City Code(s) | Rate |
|---|---|---|---|
| Afghanistan | 93 | N/A | $0.9588 |
| Albania | 355 | N/A | $0.2975 |
| Algeria | 213 | N/A | $0.3575 |
| American Samoa | 684 | N/A | $0.2163 |
| Andorra | 376 | N/A | $0.1975 |
| Angola | 244 | N/A | $0.4188 |
| Anguilla | 809/264 | N/A | $0.3963 |
| Antarctica | 672 | N/A | $0.3063 |
| Antigua | NPA 268 | N/A | $0.3975 |
| Argentina | 54 | N/A | $0.3713 |
| Argentina - Buenos Aires | 54 | 150-152,10,12,13,190-192,194,195,196, 198,199,18,17, 169,168, 157-166 | $0.1988 |
| Argentina - Mobile | 54 | 11,14,153,154, 155, 156,167,193,197 | $0.4338 |
| Armenia | 374 | N/A | $0.6100 |
| Aruba | 297 | N/A | $0.3125 |
| Ascension Island | 247 | N/A | $0.8213 |
| Australia | 61 | N/A | $0.0663 |
| Australia - Mobile | 61 | 14,15,16,17,18, 19,4,500 | $0.0850 |
| Austria | 43 | N/A | $0.1038 |
| Austria - Vienna | 43 | 1 | $0.1075 |
| Azerbaijan | 994 | N/A | $0.4338 |
| Azores | 992 | N/A | $0.2313 |
| Bahamas | NPA 242 | N/A | $0.1763 |
| Bahrain | 973 | N/A | $0.6550 |
| Bangladesh | 880 | N/A | $0.7500 |
| Barbados | 246 | N/A | $0.3838 |
| Belarus | 375 | N/A | $0.3963 |
| Belgium | 32 | N/A | $0.0675 |
| Belgium - Mobile | 32 | 16,17,18,45,47, 49,7,88,90,94,95, 96,98 | $0.5325 |
| Belize | 501 | N/A | $0.5413 |
| Benin | 229 | N/A | $0.5138 |
| Bermuda | 809 | N/A | $0.1638 |
| Bhutan | 975 | N/A | $0.4875 |
| Bolivia | 591 | N/A | $0.5325 |
| Bosnia & Herzegovina | 387 | N/A | $0.3300 |
| Botswana | 267 | N/A | $0.3475 |
| Brazil | 55 | N/A | $0.2888 |
| Brazil - Rio de Janiero | 55 | 210-218 | $0.2888 |
| Brazil - Sao Paulo | 55 | 110-118 | $0.1450 |

| Country | Country Code | City Code(s) | Rate |
|---|---|---|---|
| Brazil - Mobile | 55 | 119,219 | $0.3050 |
| British Virgin Islands | 809 | N/A | $0.3575 |
| Brunei | 673 | N/A | $0.3763 |
| Bulgaria | 359 | N/A | $0.3088 |
| Burkina Faso | 226 | N/A | $0.6813 |
| Burundi | 257 | N/A | $0.6013 |
| Cambodia | 855 | N/A | $0.9588 |
| Cameroon | 237 | N/A | $0.7913 |
| Canada (NPA 204) | 2 | N/A | $0.0538 |
| Canada (NPA 250) | 2 | N/A | $0.0438 |
| Canada (NPA 306) | 2 | N/A | $0.0538 |
| Canada (NPA 403) | 2 | N/A | $0.0538 |
| Canada (NPA 416) | 2 | N/A | $0.0363 |
| Canada (NPA 418) | 2 | N/A | $0.0388 |
| Canada (NPA 450) | 2 | N/A | $0.0538 |
| Canada (NPA 506) | 2 | N/A | $0.0538 |
| Canada (NPA 514) | 2 | N/A | $0.0338 |
| Canada (NPA 519) | 2 | N/A | $0.0388 |
| Canada (NPA 604) | 2 | N/A | $0.0400 |
| Canada (NPA 613) | 2 | N/A | $0.0375 |
| Canada (NPA 705) | 2 | N/A | $0.0388 |
| Canada (NPA 709) | 2 | N/A | $0.0538 |
| Canada (NPA 780) | 2 | N/A | $0.0538 |
| Canada (NPA 807) | 2 | N/A | $0.0538 |
| Canada (NPA 819) | 2 | N/A | $0.0388 |
| Canada (NPA 867) | 2 | N/A | $0.0538 |
| Canada (NPA 902) | 2 | N/A | $0.0538 |
| Canada (NPA 905) | 2 | N/A | $0.0363 |
| Cape Verde Islands | 238 | N/A | $0.5625 |
| Cayman Islands | 809/345 | N/A | $0.2863 |
| Central African Republic | 236 | N/A | $0.9863 |
| Chad | 235 | N/A | $1.1038 |
| Chile | 56 | N/A | $0.1688 |
| Chile - Santiago | 56 | 2 | $0.1725 |
| Chile - Mobile | 56 | 9 | $0.1688 |
| China | 86 | N/A | $0.3988 |
| China - Beijing | 86 | 10-19 | $0.3663 |
| China - Canton | 86 | 20 | $0.4038 |
| China - Shanghai | 86 | 21 | $0.3363 |
| China - Mobile | 86 | 13,8,9 | $0.4125 |
| Christmas & Cocos Islands | 672 | N/A | $0.3213 |
| Colombia | 57 | N/A | $0.6913 |
| Colombia - Baranquilla | 57 | 58 | $0.6913 |
| Colombia - Bogota | 57 | 1 | $0.1300 |
| Colombia - Cali | 57 | 23 | $0.2375 |
| Colombia - Medellin | 57 | 4 | $0.1513 |
| Colombia - Mobile | 57 | 3 | $0.6913 |
| Comros | 269 | N/A | $0.5638 |
| Congo, Republic of | 242 | N/A | $0.6463 |
| Cook Islands | 682 | N/A | $1.2025 |
| Costa Rica | 506 | N/A | $0.2525 |
| Costa Rica - Mobile | 506 | 283,284,3 | $0.2525 |
| Croatia | 385 | N/A | $0.3125 |
| Cuba | 53 | 0,1,3,6,8,5,4,2,7 | $0.6875 |

Carrier International Rates

| Country | Country Code | City Code(s) | Rate |
|---|---|---|---|
| Cyprus | 357 | N/A | $0.3275 |
| Czech Republic | 420 | N/A | $0.2438 |
| Denmark | 45 | N/A | $0.0913 |
| Denmark - Mobile | 45 | 20,21,22,26,28, 30,40 | $0.0913 |
| Diego Garcia | 246 | N/A | $0.7375 |
| Djibouti | 253 | N/A | $0.7963 |
| Dominica | 809 | N/A | $0.5300 |
| Dominican Republic | 809 | N/A | $0.1763 |
| Ecuador | 593 | N/A | $0.2888 |
| Ecuador - Mobile | 593 | 9 | $0.3888 |
| Ecuador - Quito | 593 | 2 | $0.2738 |
| Egypt | 20 | N/A | $0.5750 |
| Egypt - Cairo | 20 | 2 | $0.5775 |
| El Salvador | 503 | N/A | $0.3850 |
| El Salvador - Mobile | 503 | 8 | $0.4425 |
| Equatorial Guinea | 240 | N/A | $0.9288 |
| Eritrea | 291 | N/A | $1.0838 |
| Estonia | 372 | N/A | $0.2438 |
| Ethiopia | 251 | N/A | $1.0163 |
| Faeroe Islands | 298 | N/A | $0.2138 |
| Falkland Islands | 500 | N/A | $0.3363 |
| Fiji Islands | 679 | N/A | $0.7838 |
| Finland | 358 | N/A | $0.0963 |
| France | 33 | N/A | $0.0550 |
| France - Paris | 33 | 1 | $0.0550 |
| France - Mobile | 33 | 6 | $0.0888 |
| French Antilles (incl. Martinique) | 596 | N/A | $0.3275 |
| French Guiana | 594 | N/A | $0.3963 |
| French Polynesia | 689 | N/A | $0.5325 |
| Gabon Republic | 241 | N/A | $0.5625 |
| Gambia | 220 | N/A | $0.5613 |
| Georgia | 995 | N/A | $1.3263 |
| Germany | 49 | N/A | $0.0588 |
| Germany - Frankfurt | 49 | 69,335 | $0.0625 |
| Germany - Mobile | 49 | 16,17 | $0.9563 |
| Ghana | 233 | N/A | $0.4500 |
| Gibraltar | 350 | N/A | $0.3400 |
| Greece | 30 | N/A | $0.2825 |
| Greece - Athens | 30 | 1 | $0.1975 |
| Greenland | 299 | N/A | $0.3213 |
| Grenada | 809 | N/A | $0.5450 |
| Guadeloupe | 590 | N/A | $0.3963 |
| Guam | 671 | N/A | $0.0725 |
| Guantanamo Bay | 53 | 9 | $0.7188 |
| Guatemala | 502 | N/A | $0.3100 |
| Guatemala - Mobile | 502 | 20 | $0.3100 |
| Guinea | 224 | N/A | $0.4575 |
| Guinea - Bissau | 245 | N/A | $0.8513 |
| Guyana | 592 | N/A | $0.7413 |
| Haiti | 509 | N/A | $0.4813 |
| Honduras | 504 | N/A | $0.5300 |
| Hong Kong | 852 | N/A | $0.0725 |
| Hong Kong - Mobile | 852 | 1,812,819,821,9 | $0.0913 |

| Country | Country Code | City Code(s) | Rate |
|---|---|---|---|
| Hungary | 36 | N/A | $0.2225 |
| Iceland | 354 | N/A | $0.1163 |
| India | 91 | N/A | $0.6675 |
| India - Bombay | 91 | 22 | $0.6850 |
| India - Madras | 91 | 44 | $0.6850 |
| India - New Deli | 91 | 11 | $0.6100 |
| India - Mobile | 91 | 98 | $0.6850 |
| Indonesia | 62 | N/A | $0.4575 |
| Indonesia - Jakarta | 62 | 1 | $0.2113 |
| INMARSAT - Atlantic East | 871 | N/A | $6.6888 |
| INMARSAT - Atlantic West | 874 | N/A | $6.5363 |
| INMARSAT - Indian | 843 | N/A | $6.5363 |
| INMARSAT - Pacific | 872 | N/A | $6.5363 |
| Iran | 98 | N/A | $0.8063 |
| Iraq | 964 | N/A | $1.0200 |
| Ireland | 353 | N/A | $0.0988 |
| Ireland - Dublin | 353 | 1 | $0.0850 |
| Ireland - Mobile | 353 | 8 | $0.1400 |
| Iridium | 881 | N/A | $9.3750 |
| Israel | 972 | N/A | $0.1513 |
| Israel - Mobile | 972 | 5 | $0.1625 |
| Italy - Milan | 972 | 2 | $0.1075 |
| Italy - Rome | 972 | 6 | $0.1075 |
| Italy/Vatican City | 39 | N/A | $0.1075 |
| Italy/Vatican City - Mobile | 39 | 330,335,336,337, 338,347,348,360, 368 | $0.5013 |
| Ivory Coast | 225 | N/A | $0.9288 |
| Jamaica | 809/876 | N/A | $0.5088 |
| Japan | 81 | N/A | $0.1038 |
| Japan - Osaka | 81 | 62-69 | $0.0775 |
| Japan Sapporo | 81 | 11 | $0.1075 |
| Japan - Tokyo | 81 | 32-39 | $0.0763 |
| Japan - Mobile | 81 | 10,20,30,31,40, 50,60,61,70,80,90 | $0.1375 |
| Jordan | 962 | N/A | $0.7150 |
| Jordan - Mobile | 962 | 79 | $0.7150 |
| Kazakhstan | 7 | 310-318,320- 330,336 | $0.6100 |
| Kenya | 254 | N/A | $0.6250 |
| Kiribati | 686 | N/A | $0.8838 |
| Korea, North | 850 | N/A | $0.8213 |
| Korea, South | 82 | N/A | $0.1413 |
| Korea, South - Mobile | 82 | 11,16,17,18,19 | $0.2588 |
| Korea, South - Seoul | 82 | 2 | $0.1425 |
| Kuwait | 965 | N/A | $0.6775 |
| Kuwait - Mobile | 965 | 9 | $0.7463 |
| Kyrgyzstan | 7 or 996 | N/A | $0.6163 |
| Kyrgyzstan - Mobile | 7 or 996 | 31,32,34,35,36, 37,39 | $0.6163 |
| Laos | 856 | N/A | $0.8363 |
| Latvia | 371 | N/A | $0.3413 |
| Lebanon | 961 | N/A | $0.5850 |
| Lebanon - Mobile | 961 | 3 | $0.6463 |

| Country | Country Code | City Code(s) | Rate |
|---|---|---|---|
| Lesotho | 266 | N/A | $0.3688 |
| Liberia | 231 | N/A | $0.4338 |
| Libya | 218 | N/A | $0.3363 |
| Liechtenstein | 41 | 75 | $0.1100 |
| Lithuania | 370 | N/A | $0.3513 |
| Luxembourg | 352 | N/A | $0.1225 |
| Macau | 853 | N/A | $0.3625 |
| Macedonia | 389 | N/A | $0.4113 |
| Madagascar | 261 | N/A | $0.7313 |
| Malawi | 265 | N/A | $0.4563 |
| Malaysia | 60 | N/A | $0.2063 |
| Maldives | 960 | N/A | $0.7538 |
| Mali Republic | 223 | N/A | $0.8513 |
| Malta | 356 | N/A | $0.2375 |
| Marshall Islands | 692 | N/A | $0.3813 |
| Mauritania | 222 | N/A | $0.6550 |
| Mauritius | 230 | N/A | $0.8100 |
| Mayotte Island | 269 | N/A | $0.5638 |
| Mexico - Rate Step 1 | N/A | N/A | $0.1613 |
| Mexico - Rate Step 2 | N/A | N/A | $0.1613 |
| Mexico - Rate Step 3 | N/A | N/A | $0.1613 |
| Mexico - Rate Step 4 | N/A | N/A | $0.1963 |
| Mexico - Rate Step 5 | N/A | N/A | $0.1963 |
| Mexico - Rate Step 6 | N/A | N/A | $0.1963 |
| Mexico - Rate Step 7 | N/A | N/A | $0.1963 |
| Mexico - Rate Step 8 | N/A | N/A | $0.1963 |
| Micronesia | 691 | N/A | $0.6850 |
| Moldova | 373 | N/A | $0.4425 |
| Monaco | 377 | N/A | $0.1238 |
| Mongolia | 976 | N/A | $0.9813 |
| Montserrat | 664 | N/A | $0.6463 |
| Morocco | 212 | N/A | $0.5025 |
| Mozambique | 258 | N/A | $0.4725 |
| Myanmar (Formely Burma) | 95 | N/A | $0.9350 |
| Namibia | 264 | N/A | $0.2500 |
| Nauru | 674 | N/A | $0.7088 |
| Nepal | 977 | N/A | $0.8063 |
| Netherlands | 31 | N/A | $0.0688 |
| Netherlands - Mobile | 31 | 6,9 | $0.0963 |
| Netherlands Antilles | 599 | N/A | $0.4175 |
| Nevis | 869 | N/A | $0.3813 |
| New Caledonia | 687 | N/A | $0.6925 |
| New Zealand | 64 | N/A | $0.0925 |
| New Zealand - Mobile | 64 | 21,22,23,24,25, 26,29,8,900 | $0.0925 |
| Nicaragua | 505 | N/A | $0.4575 |
| Niger Republic | 227 | N/A | $0.5950 |
| Nigeria | 234 | N/A | $0.7463 |
| Niue | 683 | N/A | $1.1100 |
| Norfolk Island | 672 | N/A | $0.5013 |
| Northern Mariana Islands | 670 | N/A | $0.0725 |
| Norway | 47 | N/A | $0.0913 |
| Norway - Mobile | 47 | 90,92,94 | $0.0913 |
| Oman | 968 | N/A | $0.7613 |

**Carrier International Rates**
**Schedule A - Q1**

| Country | Country Code | City Code(s) | Rate |
|---|---|---|---|
| Pakistan | 92 | N/A | $0.7563 |
| Pakistan - Karachi | 92 | 21 | $0.7463 |
| Palau, Republic of | 680 | N/A | $0.6100 |
| Panama | 507 | N/A | $0.5413 |
| Papua New Guinea | 675 | N/A | $0.3750 |
| Paraguay | 595 | N/A | $0.5775 |
| Peru | 51 | N/A | $0.4113 |
| Peru - Lima | 51 | 14 | $0.3425 |
| Peru - Mobile | 51 | 19 | $0.4113 |
| Philippines | 63 | N/A | $0.3238 |
| Philippines - Manila | 63 | 20-23, 25,26,28,240, 243-249, 290, 292-299 | $0.2888 |
| Poland | 48 | N/A | $0.2475 |
| Portugal | 351 | N/A | $0.2313 |
| Portugal - Lisbon | 351 | 1 | $0.2063 |
| Qatar | 974 | N/A | $0.6663 |
| Reunion Island | 262 | N/A | $0.5175 |
| Romania | 40 | N/A | $0.4038 |
| Russia | 7 | N/A | $0.3538 |
| Russia - St. Petersburg | 7 | 812 | $0.1763 |
| Russia - Moscow | 7 | 095 | $0.1050 |
| Rwanda | 250 | N/A | $0.8513 |
| San Marino | 378 | N/A | $0.2888 |
| Sao Tome | 239 | N/A | $2.1175 |
| Saudi Arabia | 966 | N/A | $0.7313 |
| Senegal Republic | 221 | N/A | $0.9138 |
| Seychelles Islands | 248 | N/A | $0.9588 |
| Sierra Leone | 232 | N/A | $0.8213 |
| Singapore | 65 | N/A | $0.1763 |
| Slovak Republic | 421 | N/A | $0.3063 |
| Slovenia | 386 | N/A | $0.2313 |
| Solomon Islands | 677 | N/A | $0.6100 |
| Somalia | 252 | N/A | $0.7838 |
| South Africa | 27 | N/A | $0.3738 |
| South Africa - Johannesburg | 27 | 11 | $0.2675 |
| South Africa - Mobile | 27 | 3,82 | $0.3663 |
| Spain | 34 | N/A | $0.1450 |
| Spain - Barcelona | 34 | 93 | $0.1363 |
| Spain - Madrid | 34 | 91 | $0.1363 |
| Spain - Mobile | 34 | 6 | $0.1488 |
| Sri Lanka | 94 | N/A | $0.8300 |
| St. Helena | 290 | N/A | $0.7313 |
| St. Kitts | 869 | N/A | $0.3813 |
| St. Lucia | 758 | N/A | $0.5300 |
| St. Pierre/Miquelon | 508 | N/A | $0.2675 |
| St. Vincent/Grenadines | 809 | N/A | $0.5025 |
| Sudan | 249 | N/A | $0.4100 |
| Suriname | 597 | N/A | $0.9438 |
| Swaziland | 268 | N/A | $0.2975 |
| Sweden | 46 | N/A | $0.0588 |
| Sweden - Mobile | 46 | 10,70,73 | $0.0688 |
| Switzerland | 41 | N/A | $0.0775 |

# Carrier International Rates
## Schedule A - Q1

| Country | Country Code | City Code(s) | Rate |
|---|---|---|---|
| Switzerland - Mobile | 41 | 20,40,70,74,77,79,89 | $0.6325 |
| Syrian Arab Republic | 963 | N/A | $0.6850 |
| Taiwan | 886 | N/A | $0.2138 |
| Tawain - Tainan | 886 | 6 | $0.1638 |
| Taiwan - Taipei | 886 | 2 | $0.1150 |
| Taiwan - Mobile | 886 | 9 | $0.2138 |
| Tajikistan | 7 | 364,377,379,431,433 | $1.5863 |
| Tanzania | 255 | N/A | $0.5563 |
| Thailand | 66 | N/A | $0.4038 |
| Thailand - Bangkok | 66 | 2 | $0.3775 |
| Togo | 228 | N/A | $0.8363 |
| Tokelau | 690 | N/A | $0.1475 |
| Tonga Islands | 676 | N/A | $0.9813 |
| Trinidad & Tobago | 809 | N/A | $0.5300 |
| Tunisia | 216 | N/A | $0.4425 |
| Turkey | 90 | N/A | $0.2063 |
| Turkey - Mobile | 90 | 5 | $0.3213 |
| Turkey - Istanbul | 90 | 212,216 | $0.2138 |
| Turkmenistan | 7 or 993 | N/A | $0.8738 |
| Turks & Caicos | 809/868 | N/A | $0.4338 |
| Tuvalu | 688 | N/A | $0.9438 |
| Uganda | 256 | N/A | $0.3613 |
| Ukraine | 380 | N/A | $0.3663 |
| United Arab Emirates | 971 | N/A | $0.4575 |
| United Kingdom | 44 | N/A | $0.0388 |
| United Kingdom - London | 44 | 171,181 | $0.0388 |
| United Kingdom - Mobile | 44 | 0,2,3,4,5,6,7,8,9 | $0.0613 |
| Uruguay | 598 | N/A | $0.5325 |
| Uzbekistan | 7 or 998 | N/A | $0.5950 |
| Vanuatu, Republic of | 678 | N/A | $0.8363 |
| Venezuela | 58 | N/A | $0.3100 |
| Venezuela - Caracas | 58 | 20,21,22,24,25,26,28,27,29,230,231-237 | $0.1450 |
| Venezuela - Mobile | 58 | 14,16 | $0.3363 |
| Vietnam | 84 | N/A | $0.9488 |
| Vietnam - Ho Chi Min City | 84 | 8 | $0.9588 |
| Wallis & Futuna Islands | 681 | N/A | $0.3850 |
| Western Samoa | 685 | N/A | $0.6850 |
| Yemen Arab Republic | 967 | N/A | $0.8363 |
| Yemen Democratic Republic | 969 | N/A | $0.9888 |
| Yugoslavia (incl. Serbia) | 381 | N/A | $0.3513 |
| Zaire, Republic of | 243 | N/A | $0.6700 |
| Zambia | 260 | N/A | $0.5075 |
| Zimbabwe | 263 | N/A | $0.3363 |

Plan:Q-I.   QDA-V 5-20-99 -US Digitel                    Confidential                    Initial: _____ Initial: _____

**Rock Sound Communications Corporation**
**1909 Tyler Street**
**Hollywood, Florida**

**January 21, 2000**

## COMMITMENT OF FINANCIAL UNDERTAKING

This document memorializes our verbal undertaking and agreement that Rock Sound Communications Corporation and its principal, commit and promise to pay for all communication services provided to it by Atlas Communications, Ltd. We make this commitment based upon our faith in your representations concerning your commitments in working together with us to ameliorate our current temporary problems and your good faith effort concerning rate implementation and invoice details.


Rock Sound Communications Corporation


By:_____
    Henry D. Ritter
    Executive Vice President


In addition, as you have requested, we acknowledge the receipt of your invoice of approximately $700,000 and we are moving forward and will have the debt resolved today.


Rock Sound Communications Corporation

By:_____
    Henry D. Ritter
    Executive Vice President



EXHIBIT A

Ex. D

## FORBEARANCE AGREEMENT

This Forbearance Agreement ("Agreement") is made and entered into this 24ᵗʰ day of September 1999 by and between Atlas Communications, Ltd. ("Atlas") a Pennsylvanian corporation with its principal offices located at 482 Norristown Road, Blue Bell, PA 19422, Telecard Dispensing Corporation ("TDC") a Florida corporation with offices located at 1909 Tyler Street, 5ᵗʰ Floor, Hollywood, FL 33020 and U.S. Digitel, Inc. ("U.S. Digitel") a Florida corporation with offices located at 1909 Tyler Street, 8ᵗʰ Floor, Hollywood, FL 33020 (hereinafter collective referred to as the "Party" or "Parties").

**WHEREAS,** TDC shares common ownership in U.S. Digitel; and

**WHEREAS,** on February 9, 1998 Atlas and U.S. Digitel entered into a Carrier Dedicated Services Agreement and subsequently a Wholesale Services Agreement on July 14, 1999 (hereinafter collectively referred to as the, "Carrier Agreement") under which Atlas agreed to provide and U.S. Digitel agreed to purchase certain telecommunications services; and

**WHEREAS,** U.S. Digitel has failed to make certain payments in accordance with the terms of the Carrier Agreement and as a result, presently owes to Atlas the sum of $2,013,713.07; and

**WHEREAS,** Atlas has agreed to forbear from terminating service to U.S. Digitel and will continue to provide telecommunication services in consideration of the various warrants and representations from both U.S. Digitel and TDC as more fully set forth below.

**NOW THEREFORE,** in consideration of mutual covenants set forth herein, together with other good and valuable consideration, the receipt of which is hereby acknowledged by the Parties hereto, the Parties agrees as follows:

1. On or before September 27, 1999 U.S. Digitel and TDC shall issue warrants containing anti-dilution provisions to Atlas that provide Atlas with the right to purchase fourteen percent (14%) of the total ownership interest in U.S. Digitel and TDC at a price of $1.00. Atlas agrees to remit back to both U.S. Digitel and TDC one-twelfth (1/12) of the warrants given to Atlas for each weekly payment that is timely made in accordance with paragraphs 4 and 5 below. Failure to remit a weekly payment in a timely fashion will preclude both U.S. Digitel and TDC from reclaiming that one-twelfth portion of the warrants from Atlas. In the event that all payments are timely made, Atlas shall return one hundred percent (100%) of the warrants to both U.S. Digitel and TDC. However, in order to further secure the obligations of U.S. Digitel, Steven Taschman shall provide Atlas with a personal guarantee. The guarantee shall be in a form acceptable to Atlas and in

the amount of $2,013,713.07. In addition, U.S. Digitel agrees that it will retain David Griffee as an employee and David Griffee agrees to remain employed by U.S. Digitel during the term of the repayment of U.S. Digitel's debt to Atlas.

2.  U.S. Digitel has provided Atlas with a cash deposit of $130,000 together with two letters of credit. The first Letter of Credit is in the amount of $20,000 and will expire on November 10, 1999. The second Letter of Credit is in the amount of $75,000 and will expire on February 9, 2000. U.S. Digitel shall cause both of these Letters of Credit to be renewed under the same terms and conditions.

3.  On or before September 24, 1999, U.S. Digitel shall provide Atlas with its most recent audited financial statements together with all interim management statements evidencing the current financial condition of U.S. Digitel as of September 24, 1999.

4.  Commencing on September 27, 1999 and for eleven (11) weeks thereafter, U.S. Digitel (or TDC on behalf of U.S. Digitel) shall make weekly payments to Atlas in the amount of $167,809. Each payment must be received by Monday of each week.

5.  In addition to the above payments, U.S. Digitel (or TDC on behalf of U.S. Digitel) shall make weekly estimated payments to Atlas of $750,000 per week commencing on September 27, 1999 that shall be applied against all future services provided to U.S. Digitel. These estimated payments will be either increased or reduced (as the case may be) in the event U.S. Digitel's traffic fluctuates by ten percent (10%) or more from its current usage.

6.  Effective October 1, 1999, Atlas shall provide U.S. Digitel with the pricing as set forth within the attached Addendum.

7.  As further consideration under this Agreement, U.S. Digitel agrees that as of September 27, 1999 Atlas shall be its exclusive supplier of telecommunications services as it relates to inbound 800, toll free traffic and other existing services provided by Atlas for a period of not less than one (1) year. However, in the event that U.S. Digitel receives lower pricing on future services, then Atlas shall retain the right of first refusal to match any bona fide price that is presented by U.S. Digitel to Atlas in the following manner:

    *All third party pricing must be substantiated to Atlas in writing;
    *Atlas shall have fifteen (15) days in which to respond;
    *In the event that Atlas elects not to match the pricing that is presented, then U.S. Digitel shall provide Atlas with fifteen (15)

day prior written notice that it intends to move its traffic.

8. U.S. Digitel acknowledges that Atlas shall have no obligation to
continue to forebear from exercising all of its remedies at law in the
event U.S. Digitel fails to cure any breach of the terms set forth herein
within twenty-four (24) hours of its receipt of written notice from
Atlas.

**THE PARTIES** hereto have caused this Agreement to be executed by their
Officers thereunto the day and year first written above.

Atlas Communications, Ltd.          U.S. Digitel, Inc.

By                                  By:

                                    Telecard Dispensing Corporation

                                    By:

Secured Party: Atlas Communications, Inc.
                482 Norristown Road
                Suite 200
                Blue Bell, PA  19422

Debtor:       U.S. Digitel, Inc.
                1909 Tyler Street
                Third Floor
                Hollywood FL  33020

## Exhibit "A":  Collateral Description

All of Debtor's right, title and interest in, to and under the following (the "Collateral") (a) all accounts (as defined in the Uniform Commercial Code "UCC") of Debtor, including (but not limited to) all moneys due and to become due to Debtor under any guarantee (including a letter of credit) for services rendered and all general intangibles (as defined in the UCC) of Debtor constituting any right to the payment of money in respect of goods sold or leased or for services rendered (including, but not limited to, End User accounts pursuant to the TelComm Agreement)(such accounts, general intangibles and moneys due and to become due being herein called collectively "Accounts"); (b) the equipment, fixtures, and other property now owned or hereafter acquired by Debtor (the "Assets"); (c) all instruments, chattel paper or letters of credit of Debtor evidencing, representing, arising from or existing in respect of, relating to, securing or otherwise supporting the payment of, any of the Accounts, including(but not limited to) promissory notes, drafts, bills of exchange and trade acceptances; (d)  all documents of title (as defined in the UCC) or other receipts evidencing or representing any of the Assets; and (e) to the extent not included in the foregoing, all proceeds of any and all of the foregoing Collateral.

_____
Debtor

FOR US, DIGITEL

_____
Secured Party

BK27732PG11988

RECORDED IN THE OFFICIAL RECORDS BOOK
OF BROWARD COUNTY, FLORIDA
COUNTY ADMINISTRATOR

J:\Word Documents\USDIGIT\Collatl.rtf

**UNIFORM COMMERCIAL CODE - FINANCING STATEMENT - FORM UCC**

REORDER FROM
Registrd, Inc.
114 PIERCE ST
(NOKA), FL 33618
(813) 421-1713

INSTRUCTIONS
1. Please type this form and only _____ _____ for mailing.
2. Remove Secured Party and Debtor copies and send other 3 copies with interleaved carbon paper to the filing officer. Enclose filing fee.
3. If the space provided for any item(s) on the form is inadequate the item(s) should be continued on additional sheets, preferably 5" x 8" or 8" x 10". Only one copy of such additional sheets need be presented to the filing officer with a set of three copies of the financing statement. Long schedule of collateral, indentures, etc., may be on any size paper that is convenient for the secured party. Indicate the number of additional sheets attached.
4. If collateral is crops or goods which are or are to become fixtures, describe generally the real estate and give name of record owner.
5. When a copy of the security agreement is used as a financing statement, it is requested that it be accompanied by a completed but unsigned set of these forms, without extra fee.
6. At the time of original filing, filing officer should return third copy as an acknowledgement. At a later time, secured party may date and sign Termination Legend and use third copy as a Termination Statement.

**83153**

This FINANCING STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code:

| 1. Debtor(s) (Last Name First) and address(es) | 2. Secured Party(ies) and address(es) | For Filing Officer (Date, Time, Number, and Filing Office) |
|---|---|---|
| U.S. Digitel, Inc.<br>1909 Tyler St., 3rd Floor<br>Hollywood, FL  33020 | Atlas Communications, Ltd<br>482 Norristown Road<br>Blue Bell, PA  19422 | 98-098987   T#001<br>02-18-98   05:20PM |
| Tax ID/Social Security No. | Tax ID/Social Security No. | |

| 3. Maturity date (if any): |
|---|

4. This financing statement covers the following types (or items) of property:

See Exhibit A:  Collateral Description, attached
hereto and made a part hereof.

Florida Stamp Tax is not required.

BK27732PG0987

5. Assignee(s) of Secured Party and Address(es)

---

This statement is filed without the debtor's signature to perfect a security interest in collateral. (check ☒ if so)

☐ already subject to a security interest in another jurisdiction when it was brought into this state.

☐ which is proceeds of the original collateral described above in which a security interest was perfected:

Check ☒ if covered:  ☒ Proceeds of Collateral are also covered.  ☐ Products of Collateral are also covered. No. of additional Sheets presented:  __1__

Filed with:

By: U.S. Digitel, Inc.
Signature(s) of Debtor(s)

By: Atlas Communications, Ltd.
Signature(s) of Secured Party(ies)

(1) Filing Officer Copy - Alphabetical

XXXXXXX  DAVID GRIFFEE, PRESIDENT    ZACHARY I. GRAYSON, GENERAL

STANDARD FORM - FORM UCC-1



## ADDENDUM TO FORBEARANCE AGREEMENT

This Addendum to Forbearance Agreement ("Addendum"), executed on this 3rd day of December 1999 amends that certain Forbearance Agreement ("Agreement") by and between Atlas Communications, Ltd. ("Atlas"), Telecard Dispensing Corporation ("TDC"), and U.S. Digitel, Inc. ("U.S. Digitel") which was entered into on September 24, 1999 (the parties shall hereafter be referred to individually as the "Party" and collectively as the "Parties").

WHEREAS, under the terms of the Agreement, Atlas has agreed to forbear from terminating service to U.S. Digitel in return for U.S. Digitel and TDC's repayment of the $2,013,713.07 which was then due and owing to Atlas; and

WHEREAS, U.S. Digitel and TDC have been making payments under the Agreement. However, the Parties now seek to modify certain terms of the Agreement including the repayment of the remaining balance due of $839,045.00 (hereafter referred to as, "old debt") together with all additional payments due to Atlas as hereinafter set forth.

NOW THEREFORE, in consideration of mutual covenants set forth herein, together with other good and valuable consideration, the receipt of which is hereby acknowledged by the Parties hereto, the Parties agree as follows:

1. Atlas agrees to modify the repayment terms relating to the old debt as set forth below. In exchange, U.S. Digitel and TDC shall each issue warrants to Atlas which contain anti-dilution provisions that will provide Atlas with the right to purchase an additional six percent (6%) (for a total of twenty percent [20%]) of the issued and outstanding shares of U.S. Digitel and TDC at a price of $1.00. However, Atlas shall return the corresponding warrants to U.S. Digitel and TDC contingent upon the date that the old debt is repaid as follows:

   A. Atlas will return all of the warrants it has received to both U.S. Digitel and TDC without any further consideration if, and only if, U.S. Digitel (or TDC on U.S. Digitel's behalf) pays the old debt on or before December 31, 1999; or if payment in full is not received,

   B. Atlas will return all of said warrants to both U.S. Digitel and TDC upon Atlas' receipt of an additional payment of $250,000.00 but only if the old debt is repaid to Atlas on or before January 31, 2000; or if payment in full is not received,

   C. Atlas will return all of said warrants to both U.S. Digitel and TDC upon Atlas' receipt of an additional payment of $500,000 but only if the old debt is paid in full on or before February 29, 2000; or

D.  In the event that the old debt is not repaid in full on or before February 29, 2000, then Atlas shall retain all of the aforementioned warrants. At such time, Atlas may exercise said warrants at any time thereafter, at its sole discretion.

2.  In addition U.S. Digitel (or TDC on U.S. Digitel's behalf) shall pay to Atlas the sum of $848,142.36 of which there is a remaining balance due as of December 3, 1999 of $27,345.07. U.S. Digitel shall pay the remaining balance by wire transfer on or before December 6, 1999.

3.  U.S. Digitel (or TDC on behalf of U.S. Digitel) shall pay its estimated weekly payments in accordance with paragraph five (5) of the Agreement within three (3) business days following the date of the weekly invoice (by each Monday of the following week). Atlas shall provide U.S. Digitel with monthly true-ups comparing actual usage to the estimated invoices provided to U.S. Digitel. Any balance due Atlas upon the issuance of said true-up shall be paid by U.S. Digitel (or by TDC on U.S. Digitel's behalf) on or before the 25th day of the month in which the true-up is provided. In the event payments are not received by the due dates, then Atlas shall be entitled to a late penalty equal to one percent (1%) of the overdue amount compounded daily until the overdue amount is paid in full.

4.  All terms set forth in the Agreement that are not specifically modified within this Addendum shall remain in full force and effect.

**THE PARTIES** hereto have caused this Addendum to be executed by their Officers thereunto the day and year first written above.

Atlas Communications, Ltd.                     U.S. Digitel, Inc.

By: _____          By: _____

                                               Telecard Dispensing Corporation

                                               By: _____

THIS WARRANT HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 AND MAY NOT BE SOLD, OFFERED FOR SALE, PLEDGED OR HYPOTHECATED IN THE ABSENCE OF A REGISTRATION STATEMENT IN EFFECT WITH RESPECT TO THE SECURITIES UNDER SUCH ACT OR AN OPINION OF COUNSEL SATISFACTORY TO THE COMPANY THAT SUCH REGISTRATION IS NOT REQUIRED.

No. WA - 01                                Warrant to Purchase 140 Common Shares
Date: September __, 1999                    (subject to adjustment as to amount)

## WARRANT TO PURCHASE SHARES
## OF
## U.S. DIGITEL, INC.

This certifies that, for value received, Atlas Communications, Ltd., or its registered permitted assigns ("Holder") is entitled, subject to the terms set forth below, to purchase from U.S. Digitel, Inc. (the "Company"), a Florida corporation, one hundred and forty (140) shares of the Company (subject to adjustment), as constituted on the date hereof, upon surrender hereof, at the principal office of the Company referred to below, with the subscription form attached hereto duly executed, and simultaneous payment therefor in lawful money of the United States or otherwise as hereinafter provided, of the Exercise Price as set forth in Section 2 below. The number, character and Exercise Price of such shares are subject to adjustment as provided below. The term "Warrant" as used herein shall include this Warrant and any warrants delivered in substitution or exchange therefor as provided herein.

1.   **Vesting of Warrant**.   This Warrant shall be exercisable, in whole or in part, commencing on the date hereof as to all of the shares subject to this Warrant. This Warrant (and any shares acquired pursuant to this Warrant) is subject to partial redemption, without consideration, by the Company upon the occurrence of a Repayment Date. For purposes of this Warrant, each Repayment Date shall mean a weekly payment by Company to Holder commencing on Monday, September 27, 1999 and for the following eleven (11) weeks thereafter, of $167,809. Each payment must be received by Monday of each week in order to qualify for redemption by Company. Upon the occurrence of each Repayment Date, the Company shall be entitled to redeem this Warrant as to the percentage of the total number of shares covered hereby in accordance with the following schedule:

2.   **Percentage of Shares**      14% of the issued and outstanding stock of Company

3.   **Amount of Shares Subject to Redemption**          **Repayment Date**

1.167%                                            September 27, 1999
1.167%                                            October 4, 1999

| | | |
|---|---|---|
| 1 | 1.167% | October 11, 1999 |
| 2 | 1.167% | October 18, 1999 |
| 3 | 1.167% | October 25, 1999 |
| 4 | 1.167% | November 1, 1999 |
| 5 | 1.167% | November 8, 1999 |
| 6 | 1.167% | November 15, 1999 |
| 7 | 1.167% | November 22, 1999 |
| 8 | 1.167% | November 29, 1999 |
| 9 | 1.167% | December 6, 1999 |
| 10 | 1.167% | December 13, 1999 |

If the Company notifies the Holder that the Company intends to effect a redemption pursuant to this Section, the Company shall provide five (5) days prior written notice to the Holder of the total number of units to be redeemed. Any redemption shall be first applied to shares subject to this Warrant which have not been acquired pursuant to exercise of this Warrant, and thereafter, only after the number of shares subject to this Warrant has been reduced to zero, to units previously acquired by the Holder upon exercise of this Warrant.

4.    **Exercise Price.** The Exercise Price at which this Warrant may be exercised shall be [$.01] per share, as adjusted from time to time pursuant to Section 11 hereof.

5.    **Exercise of Warrant.**

    5.1    **Manner of Exercise.** The purchase rights represented by this Warrant are exercisable by the Holder, at any time after the week of December 13, 1999 but only to the extent vested as described in Section 1 above. However, Holder acknowledges that the purchase rights under this Warrant can only be exercised on the remaining shares, if any, that exist after the week of December 13, 1999 and which have not already been redeemed by Company pursuant to the redemption schedule set forth within paragraph 3 above. Any purchase rights that are exercised may be by the surrender of this Warrant and the Notice of Exercise annexed hereto duly completed and executed on behalf of the Holder, at the office of the Company (or such other office or agency of the Company as it may designate by notice in writing to the Holder at the address of the Holder appearing on the books of the Company), upon payment (i) in cash or by check, (ii) by cancellation by the Holder of indebtedness of the Company to the Holder, or (iii) by a combination of (i) and (ii), of the purchase price of the shares to be purchased.

    5.2    **Time of Exercise.** This Warrant shall be deemed to have been exercised immediately prior to the close of business on the date of its surrender for exercise as provided above, and the person entitled to receive the shares issuable upon such exercise

shall be treated for all purposes as the holder of record of such shares as of the close of business on such date. As promptly as practicable on or after such date and in any event within ten (10) days thereafter, the Company at its expense shall issue and deliver to the person or persons entitled to receive the same a certificate or certificates for the number of shares issuable upon such exercise.

6.    **Replacement of Warrant**.  On receipt of evidence reasonably satisfactory to the Company of the loss, theft, destruction or mutilation of this Warrant and, in the case of loss, theft or destruction, on delivery of an indemnity agreement reasonably satisfactory in form and substance to the Company or, in the case of mutilation, on surrender and cancellation of this Warrant, the Company at its expense shall execute and deliver, in lieu of this Warrant, a new warrant of like tenor and amount.

7.    **Rights of Members**.  The Holder shall not be entitled to vote or receive distributions or be deemed the holder of shares or any other securities of the Company that may at any time be issuable on the exercise hereof for any purpose, nor shall anything contained herein be construed to confer upon the Holder, as such, any of the rights of a shareholder of the Company or any right to vote for the election of officers and directors or upon any matter submitted to shareholders at any meeting thereof, or to give or withhold consent to any company action (whether upon any recapitalization, issuance of shares, reclassification of shares, consolidation, merger, conveyance, or otherwise) or to receive notice of meetings, or to receive distributions or subscription rights or otherwise until the Warrant shall have been exercised as provided herein.

8.    **Transfer of Warrant**.

8.1    Warrant Register.  The Company will maintain a register (the "Warrant Register") containing the names and addresses of the Holder or Holders. Any Holder of this Warrant or any portion thereof may change his address as shown on the Warrant Register by written notice to the Company requesting such change. Any notice or written communication required or permitted to be given to the Holder may be delivered or given by mail to such Holder as shown on the Warrant Register and at the address shown on the Warrant Register. Until this Warrant is transferred on the Warrant Register of the Company, the Company may treat the Holder as shown on the Warrant Register as the absolute owner of this Warrant for all purposes.

8.2    Warrant Agent.  The Company may, by written notice to the Holder, appoint an agent for the purpose of maintaining the Warrant Register referred to in Section 8.1 above, issuing the shares or other securities then issuable upon the exercise of this Warrant, exchanging this Warrant, replacing this Warrant, or any or all of the foregoing.

Thereafter, any such registration, issuance, exchange, or replacement, as the case may be, shall be made at the office of such agent.

8.3    _Transferability and Non-negotiability of Warrant_.  This Warrant may not be transferred or assigned in whole or in part without the prior written consent of the Company in its sole discretion and without compliance with all applicable federal and state securities laws by the transferor and the transferee.  Subject to the provisions of the preceding sentence, title to this Warrant may be transferred by endorsement (by the Holder executing the Assignment Form annexed hereto) and delivery in the same manner as a negotiable instrument transferable by endorsement and delivery.

8.4    _Exchange of Warrant Upon a Transfer_.  On surrender of this Warrant for exchange, properly endorsed on the Assignment Form and subject to the provisions of the first sentence of Section 8.3 of this Warrant and with the other limitations on assignments and transfers contained in this Section 8, the Company at its expense shall issue to or on the order of the Holder a new warrant or warrants of like tenor, in the name of the Holder or as the Holder may direct, for the number of shares issuable upon exercise hereof.

9.    _Covenants of the Company_.  The Company covenants that all shares that may be issued upon the exercise of rights represented by this Warrant and payment of the Exercise Price, all as set forth herein, will be free from all taxes, liens and charges in respect of the issue thereof (other than taxes in respect of any transfer occurring contemporaneously or otherwise specified herein).  The Company agrees that its issuance of this Warrant shall constitute full authority to its officers who are charged with the duty of executing share certificates, to execute and issue the necessary certificates for shares upon the exercise of this Warrant.

10.    _Notices of Certain Events_.

10.1    Holder shall be notified of any of the following events:

(i)    the Company shall take a record of the holders of its shares (or other securities at the time receivable upon the exercise of this Warrant) for the purpose of entitling them to receive any dividend or other distribution, or any right to subscribe for or purchase any shares or any other securities, or to receive any other rights; or

(ii)    there is a reorganization of the Company, any reclassification of the capital of the Company, any consolidation or merger of the Company with or into another entity, or any conveyance of all or substantially all of the assets of the Company to another entity; or

(iii)     there is any voluntary dissolution, liquidation or winding-up of the Company;

10.2     Company will mail or cause to be mailed to the Holder a notice specifying, as the case may be, (A) the date on which a record is to be taken for the purpose of such dividend, distribution or right, and stating the amount and character of such dividend, distribution or right, or (B) the date on which such reorganization, reclassification, consolidation, merger, conveyance, dissolution, liquidation or winding-up is to take place, and the time, if any is to be fixed, as of which the holders of record of shares (or such securities at the time receivable upon the exercise of this Warrant) shall be entitled to exchange their shares (or such other securities) for securities or other property deliverable upon such reorganization, reclassification, consolidation, merger, conveyance, dissolution, liquidation or winding-up.  Such notice shall be mailed at least 20 days prior to the date therein specified.

10.3     All such notices and communications shall be deemed to have been received (i) when delivered personally, (ii) three business days after being mailed by first class mail, postage prepaid, or (iii) one business day after being sent by a reputable national overnight delivery service, postage or deliver charges prepaid.

11.     Amendments and Waivers.

11.1     Manner of Amendment.  This Warrant and any term of this Warrant may be amended, changed, waived, discharged or terminated only by an instrument in writing signed by the party against which enforcement of such amendment, change, waiver, discharge or termination is sought.

11.2     No Continuing Waiver.  No waivers of, or exceptions to, any term, condition or provision of this Warrant, in any one or more instances, shall be deemed to be, or construed as a further or continuing waiver of any such term, condition or provision.

12.     Adjustments.  The Exercise Price and the number of shares purchasable hereunder are subject to adjustment from time to time as follows:

12.1     Merger, Sale of Assets, etc.  If at any time while this Warrant, or any portion thereof, is outstanding and unexpired there shall be (i) a reorganization (other than a combination, reclassification, exchange or subdivision of shares otherwise provided for herein), (ii) a merger or consolidation of the Company with or into a corporation or another

entity in which the Company is not the surviving entity, or a reverse triangular merger in which the Company is the surviving entity but the shares of the Company outstanding immediately prior to the merger are converted by virtue of the merger into other property whether in the form of securities, cash or otherwise, or (iii) a sale or transfer of the Company's properties and assets as, or substantially as, an entirety to any other person, then as a part of such reorganization, merger, consolidation, sale or transfer, lawful provision shall be made so that the holder of this Warrant, during the period specified herein and upon payment of the Exercise Price then in effect, receives the number of shares of stock or other securities or property of the successor entity resulting from such reorganization, merger, consolidation, sale or transfer that a holder of the shares deliverable upon exercise of this Warrant would have been entitled to receive in such reorganization, consolidation, merger, sale or transfer if this Warrant had been exercised immediately before such reorganization, merger, consolidation, sale or transfer, all subject to further adjustment as provided in this Section 11. The foregoing provisions of this Section 11.1 shall similarly apply to successive reorganizations, consolidations, mergers, sales and transfers and to the stock or securities of any other corporation that are at the time receivable upon the exercise of this Warrant. If the per-unit consideration payable to the holder hereof for shares in connection with any such transaction is in a form other than cash or marketable securities, then the value of such consideration shall be determined in good faith by the Company's Board of Directors. In all events, appropriate adjustment (as determined in good faith by the Company's Board of Directors) shall be made in the application of the provisions of this Warrant with respect to the rights and interests of the Holder after the transaction, to the end that the provisions of this Warrant shall be applicable after that event, as near as reasonably may be, in relation to any shares or other property deliverable after the event upon exercise of this Warrant.

      12.2   Reclassification, etc. If the Company, at any time while this Warrant, or any portion thereof, remains outstanding and unexpired by reclassification of securities or otherwise, shall change any of the securities as to which purchase rights under this Warrant exist into the same or a different number of securities of any other class or classes, this Warrant shall thereafter represent the right to acquire such number and kind of securities as would have been issuable as the result of such change with respect to the securities that were subject to the purchase rights under this Warrant immediately prior to such reclassification or other change and the Exercise Price therefor shall be appropriately adjusted, all subject to further adjustment as provided in this Section 12.

      12.3   Split, Subdivision or Combination of Units. If the Company at any time while this Warrant, or any portion thereof, remains outstanding and unexpired shall split, subdivide or combine the securities as to which purchase rights under this Warrant exist, into a different number of securities of the same class, the Exercise Price for such

securities shall be proportionately decreased in the case of a split or subdivision or proportionately increased in the case of a combination.

12.4  Adjustments for Distributions in shares or Other Securities or Property. If while this Warrant, or any portion hereof, remains outstanding and unexpired the holders of the securities as to which purchase rights under this Warrant exist at the time shall have received, or, on or after the record date fixed for the determination of eligible members, shall have become entitled to receive, without payment therefor, other or additional shares or other securities or property (other than cash) of the Company by way of distribution, then and in each case, this Warrant shall represent the right to acquire, in addition to the number of shares of the security receivable upon exercise of this Warrant, and without payment of any additional consideration therefor, the amount of such other or additional shares or other securities or property (other than cash) of the Company that such holder would hold on the date of such exercise had it been the holder of record of the security receivable upon exercise of this Warrant on the date hereof and had thereafter, during the period from the date hereof to and including the date of such exercise, retained such shares and/or all other additional shares available to it as aforesaid during such period, giving effect to all adjustments called for during such period by the provisions of this Section

12.5  Issuance of Additional Shares. If at any time the Company issues any additional shares (excluding issuances pursuant to transactions described in Sections 12.1, 12.2, 12.3 or 12.4 hereof) at a time when this Warrant is outstanding and not expired for a consideration per share less than the Exercise Price in effect immediately prior to such issuance of shares, then the Exercise Price shall be adjusted as of the date of such issuance or sale so that the same shall equal the price determined by dividing (i) the sum of (A) the number of shares outstanding immediately prior to such issuance or sale multiplied by the Exercise Price plus (B) the consideration received by the Company upon such issuance or sale by (ii) the total number of shares outstanding after such issuance or sale.

12.6  Certificate as to Adjustments. Upon the occurrence of each adjustment or readjustment pursuant to this Section 12, the Company at its expense shall promptly compute such adjustment or readjustment in accordance with the terms hereof and furnish to the Holder of this Warrant a certificate setting forth, in reasonable detail, the event requiring the adjustment or readjustment, the amount of such adjustment or readjustment, the method by which such adjustment or readjustment was calculated, the Exercise Price at the time in effect, and the number of shares and the amount, if any, of other property that at the time would be received upon the exercise of the Warrant. The Company shall upon the written request, at any time, of the Holder, furnish or cause to be furnished to the Holder a like certificate.

12.7    Adjustment in Number of Shares.    Upon each adjustment of the Exercise Price pursuant to this Section 12, this Warrant shall thereafter evidence the right to receive upon payment of the adjusted Exercise Price that number of shares (calculated to the nearest hundredth) obtained from the following formula:

$$X = \frac{Y \times A}{B}$$

X =    the adjusted number of shares issuable upon exercise of the Warrant by payment of the adjusted Exercise Price.

Y =    the number of shares previously issuable upon the exercise of the Warrant by payment of the Exercise Price prior to adjustment.

A =    the Exercise Price prior to adjustment.

B =    the adjusted Exercise Price.

13.    Miscellaneous.    This Warrant shall be construed and enforced in accordance with the laws of the State of Florida, without regard to its conflicts of law rules.   The headings in this Warrant are for purposes of reference only, and shall not limit or otherwise affect any of the terms hereof.

IN WITNESS WHEREOF, the Company has caused this Warrant to be executed by its officers thereunto duly authorized as of the date first above written.

U.S. DIGITEL, INC.

By: _____

Name: DAVID R. GRIFFETH

Title: PRESIDENT

## NOTICE OF EXERCISE

To:    U.S. Digitel, Inc.

1.    The undersigned hereby elects to purchase _____ shares of U.S. Digitel pursuant to the terms of the attached Warrant, and tenders herewith payment of the purchase price for such shares in full.

2.    Please issue a certificate or certificates representing said shares in the name of the undersigned or in such other name as is specified below:

_____
(Name)


_____
(Name)


_____(Date)

## ASSIGNMENT FORM

FOR VALUE RECEIVED, the undersigned registered owner of this Warrant hereby sells, assigns and transfers unto the Assignee named below all of the rights of the undersigned under the within Warrant, with respect to the number of shares set forth below:

| Name of Assignee | Address | No. of Shares |
|---|---|---|

and does hereby irrevocably constitute and appoint Attorney _____ to make such transfer on the books of U.S. Digitel, Inc. maintained for that purpose, with full power of substitution in the premises.

The undersigned also represents that, by assignment hereof, the Assignee acknowledges that this Warrant and the shares to be issued upon exercise hereof or conversion thereof are being acquired for investment and that the Assignee will not offer, sell or otherwise dispose of this Warrant or any shares to be issued upon exercise hereof or conversion thereof except under circumstances which will not result in a violation of the Securities Act of 1933, as amended, or any state securities laws. Further, the Assignee has acknowledged that upon exercise of this Warrant, the Assignee shall, if requested by the Company, confirm in writing, in a form satisfactory to the Company, that the shares so purchased are being acquired for investment and not with a view toward distribution or resale.

_____
Signature of Holder

Dated:

# PERSONAL GUARANTEE

The undersigned, Steven Tashman, residing at 2440 N.E., 197th Street, North Miami Beach, FL 33180 (hereinafter referred to as, "GUARANTOR"), has requested that Atlas Communications, Ltd. ("Atlas") forebear from terminating service to U.S. Digitel, Inc. ("OBLIGOR") pursuant to the Carrier and Wholesale Carrier Agreements entered into between Atlas and OBLIGOR.

In consideration of Atlas' forbearance as more fully set forth within that certain Forbearance Agreement by and between Atlas and the OBLIGOR, GUARANTOR does hereby unconditionally guarantee the payment to Atlas of the $2,013,713.07 due and owing from OBLIGOR on account of services provided to OBLIGOR by Atlas. **THIS IS A PERSONAL, UNCONDITIONAL and UNLIMITED GUARANTEE.**

The GUARANTOR waives diligence by Atlas in the collection of any indebtedness for the obligations guaranteed herein and waives notice of non-payment, protest, notice of protest, presentment, or any other notice whatsoever provided however, as a condition precedent to filing suit on this Guarantee, Atlas shall provide GUARANTOR with one (1) day prior written notice of OBLIGOR'S default and give GUARANTOR the opportunity to cure within twenty-four (24) hours thereof. Such notice shall be provided by facsimile to GUARANTOR at the following address or to the last known address of the GUARANTOR or to such other address, as the GUARANTOR shall furnish to Atlas from time to time:
2440 N.E., 197th Street, North Miami Beach, FL 33180 and 1909 Tyler Street. 8th Floor, Hollywood, FL 33020.

Atlas may, in its sole discretion, pursue the GUARANTOR herein without first instituting a collection action or suit against the OBLIGOR, without prior demand for payment under this Guarantee, without having to exhaust any prior remedies it may have against the OBLIGOR, without having to give notice to OBLIGOR or GUARANTOR of acceptance of this Guarantee and may in its sole discretion, seek to enforce this Guarantee solely against GUARANTOR.

Should there exist any additional GUARANTOR(S) to this indebtedness whatsoever, this Guarantee shall not be affected by the death, release, or insolvency of such GUARANTOR(S).

**READ CAREFULLY. THIS IS AN AGREEMENT TO GUARANTEE THE DEBT OF ANOTHER. THIS MEANS THAT YOU MAY HAVE TO PAY THE ENTIRE DEBT OR OBLIGATION OF OBLIGOR.**

This Guarantee constitutes the entire agreement between the parties and may only be modified by a written instrument executed by both parties. In the event of the occurrence

of any delinquency, GUARANTOR agrees to pay any and all attendant costs of collection including but not limited to, court filing fees, service of process fees, paralegal fees, and attorneys' fees.

This Guarantee shall be construed pursuant to the laws of the Commonwealth of Pennsylvania and any action arising under this Guarantee shall be brought exclusively within the U.S. District Court for the Eastern District of Pennsylvania.

Dated this 21st day of September 1999.

STEphEN TAshMAN
Printed Name of Guarantor

Signature of Guarantor

2

THIS WARRANT HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 AND MAY NOT BE SOLD, OFFERED FOR SALE, PLEDGED OR HYPOTHECATED IN THE ABSENCE OF A REGISTRATION STATEMENT IN EFFECT WITH RESPECT TO THE SECURITIES UNDER SUCH ACT OR AN OPINION OF COUNSEL SATISFACTORY TO THE COMPANY THAT SUCH REGISTRATION IS NOT REQUIRED.

No. WA - 01                                 Warrant to Purchase 140 Common Shares
Date: September ___, 1999                   (subject to adjustment as to amount)

**WARRANT TO PURCHASE SHARES**
**OF**
**TELECARD DISPENSING CORPORATION, INC.**

---

This certifies that, for value received, Atlas Communications, Ltd., or its registered permitted assigns ("Holder") is entitled, subject to the terms set forth below, to purchase from Telecard Dispensing Corporation, Inc. (the "Company"), a Florida corporation, one hundred and forty (140) shares of the Company (subject to adjustment), as constituted on the date hereof, upon surrender hereof, at the principal office of the Company referred to below, with the subscription form attached hereto duly executed, and simultaneous payment therefor in lawful money of the United States or otherwise as hereinafter provided, of the Exercise Price as set forth in Section 2 below. The number, character and Exercise Price of such shares are subject to adjustment as provided below. The term "Warrant" as used herein shall include this Warrant and any warrants delivered in substitution or exchange therefor as provided herein.

1.   <u>Vesting of Warrant</u>.   This Warrant shall be exercisable, in whole or in part, commencing on the date hereof as to all of the shares subject to this Warrant. This Warrant (and any shares acquired pursuant to this Warrant) is subject to partial redemption, without consideration, by the Company upon the occurrence of a Repayment Date. For purposes of this Warrant, each Repayment Date shall mean each weekly payment made by U.S. Digitel, Inc. or by Company on U.S. Digitel's behalf, to Holder commencing on Monday, September 27, 1999 and for the following eleven (11) weeks thereafter, of $167,809. Each payment must be received by Monday of each week in order to qualify for redemption by Company. Upon the occurrence of each Repayment Date, the Company shall be entitled to redeem this Warrant as to the percentage of the total number of shares covered hereby  in accordance with the following schedule:

2.   <u>Percentage of Shares</u>        14% of the issued and outstanding stock of Company

3.   <u>Amount of Shares Subject to Redemption</u>                    <u>Repayment Date</u>

     1.167%                                              September 27, 1999

| | | |
|---|---|---|
| 1 | 1.167% | October 4, 1999 |
| 2 | 1.167% | October 11, 1999 |
| 3 | 1.167% | October 18, 1999 |
| 4 | 1.167% | October 25, 1999 |
| 5 | 1.167% | November 1, 1999 |
| 6 | 1.167% | November 8, 1999 |
| 7 | 1.167% | November 15, 1999 |
| 8 | 1.167% | November 22, 1999 |
| 9 | 1.167% | November 29, 1999 |
| 10 | 1.167% | December 6, 1999 |
| 11 | 1.167% | December 13, 1999 |

If the Company notifies the Holder that the Company intends to effect a redemption pursuant to this Section, the Company shall provide five (5) days prior written notice to the Holder of the total number of units to be redeemed. Any redemption shall be first applied to shares subject to this Warrant which have not been acquired pursuant to exercise of this Warrant, and thereafter, only after the number of shares subject to this Warrant has been reduced to zero, to units previously acquired by the Holder upon exercise of this Warrant.

4.    **Exercise Price**. The Exercise Price at which this Warrant may be exercised shall be [$.01] per share, as adjusted from time to time pursuant to Section 11 hereof.

5.    **Exercise of Warrant**.

        5.1    **Manner of Exercise**. The purchase rights represented by this Warrant are exercisable by the Holder, at any time after the week of December 13, 1999 but only to the extent vested as described in Section 1 above. However, Holder acknowledges that the purchase rights under this Warrant can only be exercised on the remaining shares, if any, that exist after the week of December 13, 1999 and which have not already been redeemed by Company pursuant to the redemption schedule set forth within paragraph 3 above. Any purchase rights that are exercised may be by the surrender of this Warrant and the Notice of Exercise annexed hereto duly completed and executed on behalf of the Holder, at the office of the Company (or such other office or agency of the Company as it may designate by notice in writing to the Holder at the address of the Holder appearing on the books of the Company), upon payment (i) in cash or by check, (ii) by cancellation by the Holder of indebtedness of the Company to the Holder, or (iii) by a combination of (i) and (ii), of the purchase price of the shares to be purchased.

        5.2    **Time of Exercise**.    This Warrant shall be deemed to have been exercised immediately prior to the close of business on the date of its surrender for exercise

as provided above, and the person entitled to receive the shares issuable upon such exercise shall be treated for all purposes as the holder of record of such shares as of the close of business on such date. As promptly as practicable on or after such date and in any event within ten (10) days thereafter, the Company at its expense shall issue and deliver to the person or persons entitled to receive the same a certificate or certificates for the number of shares issuable upon such exercise.

6.    **Replacement of Warrant**. On receipt of evidence reasonably satisfactory to the Company of the loss, theft, destruction or mutilation of this Warrant and, in the case of loss, theft or destruction, on delivery of an indemnity agreement reasonably satisfactory in form and substance to the Company or, in the case of mutilation, on surrender and cancellation of this Warrant, the Company at its expense shall execute and deliver, in lieu of this Warrant, a new warrant of like tenor and amount.

7.    **Rights of Members**. The Holder shall not be entitled to vote or receive distributions or be deemed the holder of shares or any other securities of the Company that may at any time be issuable on the exercise hereof for any purpose, nor shall anything contained herein be construed to confer upon the Holder, as such, any of the rights of a shareholder of the Company or any right to vote for the election of officers and directors or upon any matter submitted to shareholders at any meeting thereof, or to give or withhold consent to any company action (whether upon any recapitalization, issuance of shares, reclassification of shares, consolidation, merger, conveyance, or otherwise) or to receive notice of meetings, or to receive distributions or subscription rights or otherwise until the Warrant shall have been exercised as provided herein.

8.    **Transfer of Warrant**.

8.1    **Warrant Register**. The Company will maintain a register (the "Warrant Register") containing the names and addresses of the Holder or Holders. Any Holder of this Warrant or any portion thereof may change his address as shown on the Warrant Register by written notice to the Company requesting such change. Any notice or written communication required or permitted to be given to the Holder may be delivered or given by mail to such Holder as shown on the Warrant Register and at the address shown on the Warrant Register. Until this Warrant is transferred on the Warrant Register of the Company, the Company may treat the Holder as shown on the Warrant Register as the absolute owner of this Warrant for all purposes.

8.2    **Warrant Agent**. The Company may, by written notice to the Holder, appoint an agent for the purpose of maintaining the Warrant Register referred to in Section 8.1 above, issuing the shares or other securities then issuable upon the exercise of this

Warrant, exchanging this Warrant, replacing this Warrant, or any or all of the foregoing. Thereafter, any such registration, issuance, exchange, or replacement, as the case may be, shall be made at the office of such agent.

8.3    Transferability and Non-negotiability of Warrant. This Warrant may not be transferred or assigned in whole or in part without the prior written consent of the Company in its sole discretion and without compliance with all applicable federal and state securities laws by the transferor and the transferee. Subject to the provisions of the preceding sentence, title to this Warrant may be transferred by endorsement (by the Holder executing the Assignment Form annexed hereto) and delivery in the same manner as a negotiable instrument transferable by endorsement and delivery.

8.4    Exchange of Warrant Upon a Transfer. On surrender of this Warrant for exchange, properly endorsed on the Assignment Form and subject to the provisions of the first sentence of Section 8.3 of this Warrant and with the other limitations on assignments and transfers contained in this Section 8, the Company at its expense shall issue to or on the order of the Holder a new warrant or warrants of like tenor, in the name of the Holder or as the Holder may direct, for the number of shares issuable upon exercise hereof.

9.    Covenants of the Company. The Company covenants that all shares that may be issued upon the exercise of rights represented by this Warrant and payment of the Exercise Price, all as set forth herein, will be free from all taxes, liens and charges in respect of the issue thereof (other than taxes in respect of any transfer occurring contemporaneously or otherwise specified herein). The Company agrees that its issuance of this Warrant shall constitute full authority to its officers who are charged with the duty of executing share certificates, to execute and issue the necessary certificates for shares upon the exercise of this Warrant.

10.    Notices of Certain Events.

10.1    Holder shall be notified of any of the following events:

(i)    the Company shall take a record of the holders of its shares (or other securities at the time receivable upon the exercise of this Warrant) for the purpose of entitling them to receive any dividend or other distribution, or any right to subscribe for or purchase any shares or any other securities, or to receive any other rights; or

(ii)    there is a reorganization of the Company, any reclassification of the capital of the Company, any consolidation or merger of the Company with or into another

entity, or any conveyance of all or substantially all of the assets of the Company to another entity; or

(iii)    there is any voluntary dissolution, liquidation or winding-up of the Company;

10.2    Company will mail or cause to be mailed to the Holder a notice specifying, as the case may be, (A) the date on which a record is to be taken for the purpose of such dividend, distribution or right, and stating the amount and character of such dividend, distribution or right, or (B) the date on which such reorganization, reclassification, consolidation, merger, conveyance, dissolution, liquidation or winding-up is to take place, and the time, if any is to be fixed, as of which the holders of record of shares (or such securities at the time receivable upon the exercise of this Warrant) shall be entitled to exchange their shares (or such other securities) for securities or other property deliverable upon such reorganization, reclassification, consolidation, merger, conveyance, dissolution, liquidation or winding-up.  Such notice shall be mailed at least 20 days prior to the date therein specified.

10.3    All such notices and communications shall be deemed to have been received (i) when delivered personally, (ii) three business days after being mailed by first class mail, postage prepaid, or (iii) one business day after being sent by a reputable national overnight delivery service, postage or deliver charges prepaid.

11.    **Amendments and Waivers**.

11.1    Manner of Amendment.  This Warrant and any term of this Warrant may be amended, changed, waived, discharged or terminated only by an instrument in writing signed by the party against which enforcement of such amendment, change, waiver, discharge or termination is sought.

11.2    No Continuing Waiver.  No waivers of, or exceptions to, any term, condition or provision of this Warrant, in any one or more instances, shall be deemed to be, or construed as a further or continuing waiver of any such term, condition or provision.

12.    Adjustments.  The Exercise Price and the number of shares purchasable hereunder are subject to adjustment from time to time as follows:

12.1    Merger, Sale of Assets, etc.  If at any time while this Warrant, or any portion thereof, is outstanding and unexpired there shall be (i) a reorganization (other than a

combination, reclassification, exchange or subdivision of shares otherwise provided for herein), (ii) a merger or consolidation of the Company with or into a corporation or another entity in which the Company is not the surviving entity, or a reverse triangular merger in which the Company is the surviving entity but the shares of the Company outstanding immediately prior to the merger are converted by virtue of the merger into other property whether in the form of securities, cash or otherwise, or (iii) a sale or transfer of the Company's properties and assets as, or substantially as, an entirety to any other person, then as a part of such reorganization, merger, consolidation, sale or transfer, lawful provision shall be made so that the holder of this Warrant, during the period specified herein and upon payment of the Exercise Price then in effect, receives the number of shares of stock or other securities or property of the successor entity resulting from such reorganization, merger, consolidation, sale or transfer that a holder of the shares deliverable upon exercise of this Warrant would have been entitled to receive in such reorganization, consolidation, merger, sale or transfer if this Warrant had been exercised immediately before such reorganization, merger, consolidation, sale or transfer, all subject to further adjustment as provided in this Section 11. The foregoing provisions of this Section 11.1 shall similarly apply to successive reorganizations, consolidations, mergers, sales and transfers and to the stock or securities of any other corporation that are at the time receivable upon the exercise of this Warrant. If the per-unit consideration payable to the holder for shares in connection with any such transaction is in a form other than cash or marketable securities, then the value of such consideration shall be determined in good faith by the Company's Board of Directors. In all events, appropriate adjustment (as determined in good faith by the Company's Board of Directors) shall be made in the application of the provisions of this Warrant with respect to the rights and interests of the Holder after the transaction, to the end that the provisions of this Warrant shall be applicable after that event, as near as reasonably may be, in relation to any shares or other property deliverable after the event upon exercise of this Warrant.

12.2    Reclassification, etc. If the Company, at any time while this Warrant, or any portion thereof, remains outstanding and unexpired by reclassification of securities or otherwise, shall change any of the securities as to which purchase rights under this Warrant exist into the same or a different number of securities of any other class or classes, this Warrant shall thereafter represent the right to acquire such number and kind of securities as would have been issuable as the result of such change with respect to the securities that were subject to the purchase rights under this Warrant immediately prior to such reclassification or other change and the Exercise Price therefor shall be appropriately adjusted, all subject to further adjustment as provided in this Section 12.

12.3    Split, Subdivision or Combination of Units. If the Company at any time while this Warrant, or any portion thereof, remains outstanding and unexpired shall split, subdivide or combine the securities as to which purchase rights under this Warrant

1  exist, into a different number of securities of the same class, the Exercise Price for such
2  securities shall be proportionately decreased in the case of a split or subdivision or
3  proportionately increased in the case of a combination.
4

5      12.4  Adjustments for Distributions in shares or Other Securities or
6  Property. If while this Warrant, or any portion hereof, remains outstanding and unexpired
7  the holders of the securities as to which purchase rights under this Warrant exist at the time
8  shall have received, or, on or after the record date fixed for the determination of eligible
9  members, shall have become entitled to receive, without payment therefor, other or
10 additional shares or other securities or property (other than cash) of the Company by way of
11 distribution, then and in each case, this Warrant shall represent the right to acquire, in
12 addition to the number of shares of the security receivable upon exercise of this Warrant,
13 and without payment of any additional consideration therefor, the amount of such other or
14 additional shares or other securities or property (other than cash) of the Company that such
15 holder would hold on the date of such exercise had it been the holder of record of the
16 security receivable upon exercise of this Warrant on the date hereof and had thereafter,
17 during the period from the date hereof to and including the date of such exercise, retained
18 such shares and/or all other additional shares available to it as aforesaid during such period,
19 giving effect to all adjustments called for during such period by the provisions of this Section
20

21     12.5  Issuance of Additional Shares.  If at any time the Company issues any
22 additional shares (excluding issuances pursuant to transactions described in Sections 12.1,
23 12.2, 12.3 or 12.4 hereof) at a time  when this Warrant is outstanding and not expired for a
24 consideration per share less than the Exercise Price in effect immediately prior to such
25 issuance of shares, then the Exercise Price shall be adjusted as of the date of such issuance or
26 sale so that the same shall equal the price determined by dividing (i) the sum of (A) the
27 number of shares outstanding immediately prior to such issuance or sale multiplied by the
28 Exercise Price plus (B) the consideration received by the Company upon such issuance or
29 sale by (ii) the total number of shares outstanding after such issuance or sale.
30

31     12.6  Certificate as to Adjustments.  Upon the occurrence of each adjustment
32 or readjustment pursuant to this Section 12, the Company at its expense shall promptly
33 compute such adjustment or readjustment in accordance with the terms hereof and furnish
34 to the Holder of this Warrant a certificate setting forth, in reasonable detail, the event
35 requiring the adjustment or readjustment, the amount of such adjustment or readjustment,
36 the method by which such adjustment or readjustment was calculated, the Exercise Price at
37 the time in effect, and the number of shares and the amount, if any, of other property that at
38 the time would be received upon the exercise of the Warrant. The Company shall upon the
39 written request, at any time, of the Holder, furnish or cause to be furnished to the Holder a
40 like certificate.

12.7 <u>Adjustment in Number of Shares</u>.  Upon each adjustment of the Exercise Price pursuant to this Section 12, this Warrant shall thereafter evidence the right to receive upon payment of the adjusted Exercise Price that number of shares (calculated to the nearest hundredth) obtained from the following formula:

$$X = Y \times \frac{A}{B}$$

X =   the adjusted number of shares issuable upon exercise of the Warrant by payment of the adjusted Exercise Price.

Y =   the number of shares previously issuable upon the exercise of the Warrant by payment of the Exercise Price prior to adjustment.

A =   the Exercise Price prior to adjustment.

B =   the adjusted Exercise Price.

**13.**   <u>Miscellaneous</u>.  This Warrant shall be construed and enforced in accordance with the laws of the State of Florida, without regard to its conflicts of law rules.  The headings in this Warrant are for purposes of reference only, and shall not limit or otherwise affect any of the terms hereof.

IN WITNESS WHEREOF, the Company has caused this Warrant to be executed by its officers thereunto duly authorized as of the date first above written.

TELECARD DISPENSING CORPORATION

By:_____

Name: Harris Cohen

Title: President

# NOTICE OF EXERCISE

To:    Telecard Dispensing Corporation, Inc.

1.    The undersigned hereby elects to purchase _____ shares of Telecard Dispensing Corporation, Inc. pursuant to the terms of the attached Warrant, and tenders herewith payment of the purchase price for such shares in full.

2.    Please issue a certificate or certificates representing said shares in the name of the undersigned or in such other name as is specified below:

_____

(Name)


_____

(Name)


_____(Date)

## ASSIGNMENT FORM

FOR VALUE RECEIVED, the undersigned registered owner of this Warrant hereby sells, assigns and transfers unto the Assignee named below all of the rights of the undersigned under the within Warrant, with respect to the number of shares set forth below:

<u>Name of Assignee</u>                    <u>Address</u>                    <u>No. of Shares</u>

and does hereby irrevocably constitute and appoint Attorney _____ to make such transfer on the books of Telecard Dispensing Corporation, Inc. maintained for that purpose, with full power of substitution in the premises.

The undersigned also represents that, by assignment hereof, the Assignee acknowledges that this Warrant and the shares to be issued upon exercise hereof or conversion thereof are being acquired for investment and that the Assignee will not offer, sell or otherwise dispose of this Warrant or any shares to be issued upon exercise hereof or conversion thereof except under circumstances which will not result in a violation of the Securities Act of 1933, as amended, or any state securities laws.  Further, the Assignee has acknowledged that upon exercise of this Warrant, the Assignee shall, if requested by the Company, confirm in writing, in a form satisfactory to the Company, that the shares so purchased are being acquired for investment and not with a view toward distribution or resale.

_____

Signature of Holder

Dated:

Ex- E

<u>**UCC-1**</u>

<u>DEBTOR</u>:          U.S. Digitel, Inc.

<u>SECURED PARTY</u>:  Atlas Communications, Ltd.

<u>DATE OF FILING</u>:  February 18, 1998 – 5:20 PM

<u>DESCRIPTION OF COLLATERAL</u>:

    All of Debtor's right, title and interest in and to the following:

1.  All accounts (as defined in the Uniform Commercial Code "UCC") of Debtor, including (but not limited to) all moneys due and to become due to Debtor under any guarantee (including a letter of credit) for services rendered and all general intangibles (as defined in the UCC) of Debtor constituting any right to the payment of money in respect of goods sold or leased or for services rendered (including, but not limited to, End User accounts pursuant to the TelComm Agreement) (such accounts, general intangibles and moneys due and to become due being herein called collectively "Accounts").

2.  The equipment, fixtures, and other property now owned or hereafter acquired by Debtor (the "Assets").

3.  All instruments, chattel paper or letters of credit of Debtor evidencing, representing, arising from or existing in respect of, relating to, securing or otherwise supporting the payment of, any of the Accounts, including (but not limited to) promissory notes, drafts, bills of exchange and trade acceptances.

4.  All documents of title (as defined in the UCC) or other receipts evidencing or representing any of the Assets.

5.  To the extent not included in the foregoing, all proceeds of any and all of the foregoing Collateral.